### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,<br><br>    Defendants. | Case No. 2:25-cv-02384 |

### DEFENDANTS CIGNA CORPORATE SERVICES, LLC AND
### THE CIGNA GROUP'S MOTION TO DISMISS

Defendants Cigna Corporate Services, LLC and The Cigna Group move pursuant to

Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I through IV of the Complaint.  In

Support of this Motion, Defendants incorporate by reference the accompanying Memorandum of

Law.  A proposed form of Order is attached.

Dated: July 11, 2025

By:    /s/ Katherine E. Driscoll
        Katherine E. Driscoll

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
KDriscoll@mofo.com

TIFFANY CHEUNG (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Email:  TCheung@mofo.com

ELISABETH HUTCHINSON (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202-5638
Telephone:  (303) 592-1500
Email:  EHutchinson@mofo.com

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email:  JNguyen@stradley.com
Email:  BGiroud@stradley.com

***Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-02384 |
| Plaintiffs, | |
| v. | |
| CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP, | |
| Defendants. | |

### [PROPOSED] ORDER GRANTING CIGNA CORPORATE SERVICES, LLC AND THE CIGNA GROUP'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Before the Court is Defendants Cigna Corporate Services, LLC and The Cigna Group's (together, "Cigna") Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the papers filed in support and in opposition to the motion, the arguments of counsel, the pleadings and papers on file in this action, and all other matters properly before the Court, and good cause appearing,

IT IS HEREBY ORDERED that Cigna's Motion to Dismiss Plaintiffs' Complaint is GRANTED in its entirety without leave to amend, as each of Plaintiffs' causes of action fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

IT IS SO ORDERED.

Dated: July ____, 2025

_____
Hon. Wendy Beetlestone

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,<br><br>      Defendants. | Case No. 2:25-cv-02384 |

**MEMORANDUM OF LAW IN SUPPORT DEFENDANTS CIGNA CORPORATE
SERVICES, LLC AND THE CIGNA GROUP'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL BACKGROUND ........................................................................... 4

    A.    The Complaint ..................................................................................... 4

    B.    Plaintiffs Do Not Allege That They Entered Protected Health Information
        On a Webpage With an Online Technology ........................................ 5

    C.    Plaintiffs Consented to Online Technologies ...................................... 6

III.    LEGAL STANDARD ...................................................................................... 9

IV.     ARGUMENT ................................................................................................. 10

    A.    Plaintiffs Fail to Establish Article III Standing.................................. 10

    B.    Plaintiffs' Allegations Are Impermissibly Vague............................... 14

    C.    Plaintiffs' Claims Fail Because They Consented to the Activity at Issue .......... 15

    D.    Plaintiffs Fail to State a Claim Under WESCA ................................. 17

        1.    Plaintiffs Fail to Allege Any Interception in Pennsylvania .................... 18

        2.    The Choice-of-Law Provision Does Not Change This Result................. 19

        3.    Plaintiffs Do Not Allege That Their Communication "Contents"
            Were Intercepted ............................................................................ 21

    E.    The Court Should Dismiss Plaintiffs' Common Law Claims for Failure to
        State a Claim Under Rule 12(b)(6) .................................................... 24

        1.    Plaintiffs' Allegations Do Not Justify the Extraterritorial
            Application of Pennsylvania Common Law ........................................... 24

        2.    Plaintiffs Fail to State a Claim for Invasion of Privacy ......................... 25

        3.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ................. 27

        4.    Plaintiffs Fail to State a Claim for Unjust Enrichment ........................... 29

V.      CONCLUSION .............................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. Johnson*,
  194 F.3d 1149 (10th Cir. 1999) ...................................................................20

*Adamski v. Johnson*,
  80 Pa. D. & C. 4th 69, 2006 WL 4129308 (Pa. Ct. Comm. Pleas 2006).................................27

*Am. Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003)...........................................................................20, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................10

*Audenreid v. Cir. City Stores, Inc.*,
  97 F. Supp. 2d 660 (E.D. Pa. 2000) ...........................................................21

*Bailey v. Hosp. of the Univ. of Pa.*,
  266 A.3d 654, 2021 WL 4958772 (Pa. Super. Ct. 2021)........................................29

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007)..............................................................................9

*Baum v. Keystone Mercy Health Plan*,
  826 F. Supp. 2d 718 (E.D. Pa. 2011) .........................................................29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................10, 14

*Blackman v. Lincoln Nat'l Corp.*,
  No. 10-6946, 2012 WL 6151732 (E.D. Pa. Dec. 10, 2012).....................................24

*In re BPS Direct, LLC*,
  705 F. Supp. 3d 333 (E.D. Pa. 2023) .........................................................13

*Burns v. Heyns*,
  No. 1:14-cv-733, 2015 WL 4391983 (W.D. Mich. July 15, 2015) .............................23

*Checchia v. SoLo Funds, Inc.*,
  771 F. Supp. 3d 594 (E.D. Pa. 2025) .........................................................16

*Chicarella v. Passant*,
  494 A.2d 1109 (Pa. Super. Ct. 1985)..........................................................27

*Commonwealth v. Beauford*,
    475 A.3d 783 (Pa. Super. Ct. 1984)..................................................................22

*Commonwealth v. Byrd*,
    235 A.3d 311 (Pa. Super. Ct. 2020)..................................................................15

*Commonwealth v. Spangler*,
    809 A.2d 234 (Pa. Super. Ct. 2002)..................................................................21

*Commonwealth v. Stehley*,
    338 A.2d 686 (Pa. Super. Ct. 1975)..................................................................21

*Cook v. GameStop, Inc.*,
    689 F. Supp. 3d 58 (W.D. Pa. 2023) ................................................................11

*Credico v. Commonwealth of Pa. State Police*,
    No. 09-cv-691, 2010 WL 331700 (E.D. Pa. Jan. 27, 2010)..................................28

*De Lage Landen Financial Services, Inc. v. Cardservice Int'l, Inc.*,
    No. CIV. A. 00-2355, 2001 WL 799870 (E.D. Pa. July 12, 2001) ..................19, 20

*Del. River Waterfront Corp. v. Wellspring Software Inc.*,
    No. 22-1905, 2022 WL 17869139 (E.D. Pa. Dec. 22, 2022)..................................16

*Doe v. Wyoming Valley Health Care Sys., Inc.*,
    987 A.2d 758 (Pa. Super. Ct. 2009) .................................................................25

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) ...............................................................6

*Doe I v. UPMC*,
    No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020) ...........................20

*Fero v. Excellus Health Plan, Inc.*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017)................................................................14

*Gerhart v. Energy Transfer Partners, L.P.*,
    No. 1:17-cv-01726, 2020 WL 1503674 (M.D. Pa. Mar. 30, 2020) .......................27

*Goldstein v. Costco Wholesale Corp.*,
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) ..............................................................23

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015)...............................................................22, 23, 24

*Grimm v. Discover Fin. Servs.*,
    Nos. 08-747, 08-832, 2008 WL 4821695 (W.D. Pa. Nov. 4, 2008) ......................19

*Grimminger v. Maitra*,
    887 A.2d 276 (Pa. Super. Ct. 2005)........................................................................28

*Gubala vs. Time Warner Cable, Inc.*,
    846 F.3d 909 (7th Cir. 2017) ...............................................................................14

*Happy v. Marlette Funding, LLC*,
    744 F. Supp. 3d 403 (W.D. Pa. 2024)....................................................................19

*Harris by Harris v. Easton Pub. Co.*,
    483 A.2d 1377 (Pa. Super. Ct. 1984).....................................................................26

*Hartley v. Urban Outfitters, Inc.*,
    740 F. Supp. 3d 410 (E.D. Pa. 2024).....................................................................13

*Heaven v. Prime Hydration LLC*,
    761 F. Supp. 3d 812 (E.D. Pa. 2025).....................................................................12

*Ingrao v. AddShoppers, Inc*,
    No. 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ............................12, 19

*Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*,
    848 F. Supp. 569 (E.D. Pa. 1994)..........................................................................25

*Khan v. Children's Nat'l Health Sys.*,
    188 F. Supp. 3d 524 (D. Md. 2016)........................................................................14

*Kurowski v. Rush System for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023) .....................................................................26

*Kury v. Abbott Laboratories, Inc.*,
    No. 11-803 FLW, 2012 WL 124026 (D.N.J. Jan. 17, 2012) ..................................13

*Lasche v. New Jersey*,
    No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022)..........................................13

*Lincoln Nat'l Life Ins. Co. v. Snyder*,
    722 F. Supp. 2d 546 (D. Del. 2010)........................................................................1

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................9, 11

*Massie v. Gen. Motors*,
    No. 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ...................11, 12, 14

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
    748 F. Supp. 3d 262 (E.D. Pa. 2024) .....................................................................30

*In re Nickelodeon Consumer Priv. Litig.*,
  No. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) ...........................................21, 23, 24

*Parkell v. Markell*,
  622 F. App'x 136 (3d Cir. 2015) (per curiam) ......................................................................10

*Commonwealth ex rel. Platt v. Platt*,
  404 A.2d 410 (Pa. Super. Ct. 1979)........................................................................................29

*Pompa v. St. Luke's Hosp.*,
  No. 3:21-1378, 2023 WL 2332250 (M.D. Pa. Mar. 2, 2023) ..................................................30

*Popa v. Harriet Carter Gifts, Inc.*,
  426 F. Supp. 3d. 108 (W.D. Pa. 2019)...............................................................................25, 26

*Popa v. Harriet Carter Gifts, Inc.*,
  52 F.4th 121 (3d Cir. 2022) ....................................................................................................18

*Popa v. Harriet Carter Gifts, Inc.*,
  No. 2:19-cv-450, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025)........................................16, 17

*Prepared Foods Photo, Inc. v. La Strada Rest., Inc.*,
  No. 24cv28 (EP) (AME), 2024 WL 3199918 (D.N.J. June 25, 2024) .....................................1

*Pro Golf Mfg. v. Tribune Review Newspaper Co.*,
  809 A.2d 243, 247 (Pa. 2002) .................................................................................................27

*PSINet, Inc. v. Chapman*,
  362 F.3d 227 (4th Cir. 2004) ...................................................................................................20

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*,
  136 F.4th 456 (3d Cir. 2025) ...................................................................................................11

*Renfer v. Kopena*,
  No. 3554 EDA 2016, 2017 WL 4280630 (Pa. Super. Ct. Sept. 27, 2017) .............................28

*Salvitti v. Lascelles*,
  669 F. Supp. 3d 405 (E.D. Pa. 2023) ................................................................................29, 30

*Schall v. Vazquez*,
  322 F. Supp. 2d 594 (E.D. Pa. 2004) ......................................................................................16

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................................................................11

*Steinberg v. CVS Caremark Corp.*,
  899 F. Supp. 2d 331 (E.D. Pa. 2012).......................................................................................26

*Stevens v. TD Bank, N.A.*,
    No. 24-8311, 2025 WL 1779164 (D.N.J. June 27, 2025)................................................12, 30

*Tagouma v. Investigative Consultant Servs., Inc.*,
    4 A.3d 170 (Pa. Super. Ct. 2010) ...........................................................................................25

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
    588 U.S. 504 (2019)................................................................................................................20

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................................................................11

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977)................................................................................................................21

*United States v. Stanley*,
    No. 11-272, 2012 WL 5512987 (W.D. Pa. Nov. 14, 2012)....................................................22

*Wiggins v. Lab'y Corp. of Am. Holdings*,
    No. 24-0648, 2024 WL 4476646 (E.D. Pa. 2024) ..................................................................17

*Woods v. Nat'l Life & Acc. Ins. Co.*,
    347 F.2d 760 (3d Cir. 1965)...................................................................................................29

*Yerger v. Landis Mfg. Sys., Inc.*,
    No. 88-7694, 1989 WL 66443 (E.D. Pa. June 16, 1989).......................................................27

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................................ 22-23

*Zimmerman v. Highmark, Inc.*,
    No. 2:23-cv-250-NR, 2025 WL 1220364 (W.D. Pa. Apr. 28, 2025) .....................................28

**Statutes**

42 U.S.C. § 1320d *et seq.*.................................................................................................................29

18 Pa. Cons. Stat.
    § 5702.................................................................................................................................21, 22
    § 5703.........................................................................................................................................18
    § 5704(4)....................................................................................................................................15

35 Pa. Stat. § 7607 ...........................................................................................................................29

**Other Authorities**

Fed. R. Civ. P.
    8(a)(2) ............................................................................................................10, 14
    12(b)(1) .....................................................................................................................9
    12(b)(6) ....................................................................................................10, 14, 24

28 Pa. Code § 115.27 ..............................................................................................29

49 Pa. Code § 25.213(c) ...........................................................................................29

Restatement (Second) of Torts,
    § 652B, comment d ...............................................................................................26
    § 892A ...................................................................................................................16

Defendants Cigna Corporate Services, LLC and The Cigna Group (together, "Cigna") submit this Memorandum of Law in support of their Motion to Dismiss Counts I through IV of the Complaint.

## I.    INTRODUCTION

Plaintiffs fail to state a claim under any of their causes of action because their core theory of liability does not connect the use of the cookies and pixels at issue ("Online Technologies") to their alleged use of Cigna's websites. Specifically, Plaintiffs assert a theory that through embedded Online Technologies on two public-facing Cigna websites, third parties "intercepted" their protected health information. But fatally missing from the Complaint is an allegation that Plaintiffs entered *any* information, let alone protected health information, on either of the public-facing websites (identified in the Complaint as www.cigna.com or plans.cigna.com) where they allege the Online Technologies were present. These public-facing websites can be accessed by any individual regardless of whether they are a member of Cigna, and they do not capture website visitors' protected health information.[1] Therefore, based on their own allegations, Plaintiffs' theory does not match how Online Technologies work.

For an Online Technology to capture any information, it must be embedded on the specific webpage where that information was input, and it must be configured to capture the

---

[1] As discussed in the accompanying Request for Judicial Notice, the Court should incorporate by reference or take judicial notice of Cigna's websites (www.cigna.com (Declaration of Tiffany Cheung ("Cheung Decl."), Ex. A), plans.cigna.com (Cheung Decl., Ex. C), and my.cigna.com (Cheung Decl., Ex. B)), as well as Cigna's Terms of Use (Cheung Decl., Ex. D) and Website Privacy Notice (Cheung Decl., Ex. E), which are posted on its websites, including prior versions available via the Wayback Machine. *See Prepared Foods Photo, Inc. v. La Strada Rest., Inc.*, No. 24cv28 (EP) (AME), 2024 WL 3199918, at *4 (D.N.J. June 25, 2024) ("Courts have taken judicial notice of the Internet Archive."); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 552 n.4 (D. Del. 2010) ("[I]f a contract or essential document, whose authenticity is not challenged, is the basis of a complaint, it is incorporated by reference and properly relied on by the court on a motion to dismiss.").

information at issue.  Here, a mismatch exists between the public-facing webpages that allegedly contain Online Technologies and the myCigna portal webpages that Plaintiffs would have utilized to enter any type of protected health information.  The failure to plead any connection between the location of the Online Technologies and the location where Plaintiffs would enter any protected health information warrants dismissal of all of Plaintiffs' claims—they do not have standing and they do not state a claim for which relief may be granted.

Moreover, even if Plaintiffs had alleged that they entered this information, they affirmatively consented to Cigna's use of the very Online Technologies identified in the Complaint.  That Cigna uses Online Technologies on its website is not a secret.  It is conspicuously and repeatedly disclosed to website visitors and Cigna members alike.  Plaintiffs in fact concede that they agreed to the website's Terms of Use and Website Privacy Notice, and their consent is dispositive of all claims.  To be able to register for a password-protected online account through the myCigna portal that Plaintiffs identify in the Complaint, Plaintiffs were required to agree to the Website Privacy Notice which disclosed the use of Online Technologies on the websites.  Plaintiff Pham also consented through the "widely accepted industry-standard" pop-up banner in California (ECF No. 26 at 2), which again disclosed the use of Online Technologies on the public-facing pages of the websites when the website was accessed from any California IP address.  Consent is an additional and independent reason why all of Plaintiffs' claims must be dismissed.  Additional reasons also support dismissal here.

*First*, Plaintiffs do not have standing because they have failed to allege an injury-in-fact.  Plaintiffs offer no factual allegations showing that the Online Technologies actually collected any information *from them* that was personal or private.  Nor do they allege any other injuries sufficient to establish standing.

*Second*, Plaintiffs' claims fail to meet pleading requirements because they are impermissibly vague.  Rather than including the requisite detail to enable Cigna to challenge the specific allegations, Plaintiffs offer only vague references to having visited the website and general descriptions that Online Technologies capture visitors' public web activity.

*Third*, Plaintiffs' WESCA claim also fails because Plaintiffs, all of whom are out-of-state residents, do not allege that their information (whatever that may be) was "intercepted" in Pennsylvania as required by binding Third Circuit precedent, or that the information at issue consisted of "contents" as required under WESCA.  Without alleging that they were harmed by conduct in Pennsylvania, Plaintiffs ask the Court to impermissibly expand the scope of WESCA in violation of the Commerce Clause.

*Fourth*, the Complaint's invasion of privacy claim fails because its allegations fall far short of "extreme" or "highly offensive" conduct.  Cigna's alleged collection of data such as mouse movements and clicks on a public website, which was repeatedly disclosed to website visitors, does not come close to meeting this standard.

*Fifth*, the Complaint's breach of fiduciary duty claim fails because Plaintiffs' allegations do not sufficiently allege that their confidential information was disclosed or that they were injured by any such disclosure.

*Sixth*, Plaintiffs' unjust enrichment claim fails because it is premised on the above-described insufficient allegations.  Additionally, Plaintiffs have not adequately alleged that any benefits were conferred upon Cigna by the Plaintiffs, or that Plaintiffs suffered actual damages from browsing Cigna's public website.

Plaintiffs' Complaint should be dismissed in its entirety.

## II.    FACTUAL BACKGROUND

### A.    The Complaint

Plaintiffs allege that they are Cigna members residing outside Pennsylvania—in California, Massachusetts, Ohio, New York, and Minnesota—who, at some point in time between May 9, 2023 and the present, visited the public-facing www.cigna.com.  (Class Action Complaint ("Compl.") ¶¶ 22-26, 293, ECF No. 1.)  Indeed, The Cigna Group provides a range of services, including medical, dental, and vision insurance plans to its members across the United States.  (*Id.* ¶¶ 27-28.)  Plaintiffs allege that Cigna Corporate Services is an affiliate of The Cigna Group that administers the digital infrastructure enabling members' online access to health plan information.  (*Id.* ¶ 29.)

Plaintiffs further allege that Cigna used seven commonplace online analytic tools and web-enhancement technologies (Pinterest, Snapchat, The Trade Desk, LiveRamp, Demandbase, MediaMath, and Meta) on the public-facing websites, www.cigna.com and plans.cigna.com.  (*Id.* ¶ 5, Figs. 1-7.)  Specifically, Plaintiffs claim that The Trade Desk, LiveRamp, Demandbase, MediaMath, Pinterest, and Snapchat each utilize a cookie[2] on one of these websites that captures limited, non-sensitive information related to a visitor's activity on the webpage, such as the URL visited, the user's operating system (*e.g.*, Windows 10, 64-bit (*id.* Fig. 1)), the user's web browser software and version (*e.g.*, Microsoft Edge version 134.0.0.0 (*id.*)), and the date and time of the visit (*e.g.*, Thursday, 27 March 2025, 19:41:44 GMT (*id.*)).[3]  Similarly, they allege

---

[2] As explained in Cigna's Privacy Notice that Plaintiffs consented to, "[a] cookie is a small alphanumeric identifier that is placed on [a website visitor's] browser when [the individual] visit[s] a website.  Cookies are transferred to [the individual's] hard drive through [their] web browser for record-keeping purposes."  (Cheung Decl., Ex. E (Website Privacy Notice at 6).)

[3] (*See* Compl. ¶ 170, Fig. 1 (The Trade Desk); *id.* ¶ 181, Fig. 2 (LiveRamp); *id.* ¶ 192, Fig. 3 (Demandbase); *id.* ¶ 200, Fig. 4 (MediaMath); *id.* ¶ 210, Fig. 5 (Pinterest); *id.* ¶ 223, Figs. 6, 7 (Snapchat).)

that Meta provides a pixel, which is a snippet of JavaScript code that can be embedded on a specific webpage, such as on www.cigna.com. (*Id*. ¶ 232, Fig. 8.) As alleged, the Meta Pixel's only function is to confirm that the user is present on the webpage. (*Id*. ¶ 236, Fig. 8.)

Plaintiffs do not allege that they provided any information—let alone protected health information—to any webpage where an Online Technology is allegedly embedded. They provide hypotheticals through the figures discussed above. But Plaintiffs never allege that they themselves entered any protected health information or that their use of a specific webpage where Online Technologies were embedded resulted in their data being captured. Instead, they vaguely allege that they "routinely use the [website]," "use the [website] regularly," or have "used [the website] on multiple occasions." (*Id.* ¶¶ 22-26.)

Based on generic allegations that their private data *could have* been captured by the Online Technologies on some unidentified pages, Plaintiffs baldly assert that their sensitive personal information or protected health information was "intercepted" (*id. passim*) and bring a putative class action on behalf of themselves and "all insureds of Cigna whose Website Communications were wiretapped and intercepted via the code embedded on Defendant's Website." (*Id.* ¶ 20.)

### B. Plaintiffs Do Not Allege That They Entered Protected Health Information On a Webpage With an Online Technology

The Complaint conflates the public-facing webpages on which Plaintiffs allege that the Online Technologies are deployed (*id.* ¶¶ 162-237) with the allegation that they engaged with some unidentified webpages within the password-protected myCigna portal (*id.* ¶¶ 18, 30, 243-44, 246, 274). In their Complaint, Plaintiffs allege that they used Cigna's website to "access password-protected health benefit information." (*Id.* ¶ 18.) More specifically, Plaintiff Adair allegedly used Cigna's website to "review covered procedures, download copies of his insurance

card to present to medical providers, and check policy limits, copays, and deductibles" (*id.* ¶ 22); and Plaintiffs Pham and Danielson allegedly visited a portal titled "Get Access to Your Personal Health Information." (*Id.* ¶¶ 243-44.)  But Plaintiffs never allege that Online Technologies were embedded on any of the unidentified pages where they purportedly entered such information.

Put simply, Plaintiffs have not alleged that they entered any information on any page where they allege the Online Technologies were deployed.  Online Technologies must be embedded on a *specific* webpage within a website operator's domain in order to capture any data. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (explaining that the source code of an online tracking tool "can exist on one page of a website but not another"). Without any specifics tying each Plaintiff's use of a specific Cigna webpage to the "interception" of their data by an Online Technology, what remains are only vague assertions that Plaintiffs have "used and continue to use" Cigna's website.  (Compl. ¶¶ 23-26.)

### C.    Plaintiffs Consented to Online Technologies

But even if Plaintiffs asserted that they interacted with the public-facing webpages where Online Technologies are allegedly used, Plaintiffs affirmatively and repeatedly consented to the use of Online Technologies.

*First*, Plaintiffs affirmatively consented to Cigna's Terms of Use and Website Privacy Notice when they registered for a myCigna account.  Plaintiffs allege that they are Cigna members (*id.* ¶¶ 2, 19) and that they utilize Cigna's password-protected patient portal, *i.e.*, the myCigna portal (*id.* ¶¶ 18, 243-44, 246).  To have done so, Plaintiffs must have consented to Cigna's Terms of Use and Website Privacy Notice:



(Cheung Decl., Ex. F (myCigna portal's registration page).)

  Indeed, the Complaint concedes that Plaintiffs agreed to the website's Terms of Use: "Plaintiffs used the Website and therefore accepted these Terms of Use and entered into a direct agreement with Defendants."  (Compl. ¶ 46.)  The Terms of Use provide that "[b]y accessing or using th[is] Site, you confirm that you have read, understand, and acknowledge the Site's privacy notice(s)," which "describes [Cigna's] data collection, sharing, and other privacy practices for the Site and is hereby incorporated by reference into these Terms of Use."  (Cheung Decl., Ex. D (Terms of Use).)

  Plaintiffs also concede that the Website Privacy Notice discloses the website's use of Online Technologies.  (Compl. ¶¶ 257-63.)  Specifically, the Notice states that Cigna's website "may use cookies, tags, and other tracking mechanisms to track information about your use of

[Cigna's] Services, and to provide, customize, evaluate, and improve [Cigna's] Services."
(Cheung Decl., Ex. E (Website Privacy Notice at 6).)  The Privacy Notice goes on to explain
that, in addition to cookies, the website uses "Clear GIFs, Pixel Tags and Other Technologies,"
and defines each of those technologies.  (*Id.*)

      The Website Privacy Notice also makes clear that Cigna partners with "third-party ad
networks, analytics, marketing partners, and others . . . to personalize content and display
advertising" on the website, "as well as to manage our advertising on third-party Websites."  (*Id.*
at *7.)  Plaintiffs were on notice of and agreed to the fact that Cigna "and these third-party ad
companies may use cookies, pixel tags, and other tools to collect browsing and activity
information" from the website, "as well as IP address, unique ID, cookie and advertising IDs,
and other online identifiers."  (*Id.*)  They also agreed that Cigna "and these third-party ad
companies use this information to provide you more relevant ads and content" on the website
"and on third-party websites, and to evaluate the success of such ads and content."  (*Id.*)
Although Plaintiffs consented to the disclosure of limited record information to receive more
relevant content based on their use of the website, Plaintiffs do ***not*** allege they received a single
advertisement from Cigna connected to activity on any Cigna website.  (*See generally* Compl.)

      *Second*, Plaintiffs also concede that the Website Privacy Notice is available in the footer
of each page on the website allegedly containing Online Technologies.  (*Id.* ¶ 255.)  Indeed, both
within the Terms of Use and under "Privacy," all governing privacy disclosures are conspicuous
and available in the conspicuous and persistent footer, with white font on a bright blue
background:



(Cheung Decl., Ex. A (footer on www.cigna.com); Compl. ¶ 255.)

*Third*, Plaintiff Pham alleges he is a resident of California.  (Compl. ¶ 25.)  Visitors, like Pham, to the Cigna website from a California IP address would have also encountered a pop-up cookie banner upon entering the website.  This persistent cookie banner once again unambiguously discloses the use of the Online Technologies at issue in the Complaint:

(Cheung Decl., Ex. G (cookie banner from California IP address).)  In fact, website visitors from a California IP address cannot navigate within the two webpages identified in the complaint as using Online Technologies (www.cigna.com or plans.cigna.com) until they engage with the banner.  (Cheung Decl., Exs. A, C, G.)

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court should dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing.  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  Plaintiffs, as the party seeking to invoke the Court's subject matter jurisdiction, have the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain

statement of the claim showing that the pleader is entitled to relief" in order to "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ.

P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted).  A complaint

must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)

where, as here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient

facts establishing a claim is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 570).  "[L]abels and conclusions" or "a formulaic recitation of the

elements" do not suffice.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

This plausibility standard "asks for more than a sheer possibility that a defendant has

acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  If a complaint

"pleads facts that are merely consistent with a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief.  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557); *see also Parkell v. Markell*, 622 F. App'x 136, 141 (3d Cir. 2015)

(per curiam) (allegations "equally consistent with lawful and [unlawful] behavior" are

"insufficient to state a plausible claim").  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  The

same is true for "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting

*Twombly*, 550 U.S. at 557)

## IV.    ARGUMENT

### A.    Plaintiffs Fail to Establish Article III Standing

Plaintiffs lack Article III standing to bring this action, because they fail to allege an

"injury in fact."  As a result, their Complaint should be dismissed.

"To have standing, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision.'" *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136

F.4th 456, 461 (3d Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  "An

injury in fact exists if a plaintiff has suffered 'an invasion of a legally protected interest which is

(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"

*Pub. Int. Legal Found.*, 136 F.4th at 461 (quoting *Lujan*, 504 U.S. at 560).  "Only those plaintiffs

who have been *concretely harmed* by a defendant's statutory violation may sue that private

defendant over that violation in federal court."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427

(2021).  Courts must consider whether the alleged harm bears "a 'close relationship' to a harm

'traditionally' recognized as providing a basis for a lawsuit in American courts."  *Id.* at 424

(quoting *Spokeo*, 578 U.S. at 341).

      Plaintiffs cannot meet this standard.  Courts in the Third Circuit have held that plaintiffs

lacked standing in circumstances nearly identical to those at issue here.  In *Cook v. GameStop,

Inc.*, plaintiff alleged that GameStop violated WESCA by incorporating session replay software

that "allow[ed] website operators to record, save, and replay website visitors' interactions with a

website."  689 F. Supp. 3d 58, 62 (W.D. Pa. 2023).  Applying the analysis set out by the United

States Supreme Court in *TransUnion*, the *GameStop* court emphasized that injury-in-fact

requires information that "encompass[es] the individual's control of information **concerning his

or her person**," so purported "[e]avesdropping on communications that do not involve personal

information, personally identifiable information, or information over which a party has a

reasonable expectation of privacy does not amount to a concrete injury."  *Id.* at 66 (quoting

*Massie v. Gen. Motors*, No. 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022)).

      The court then dismissed plaintiff's claims because she "d[id] not allege that GameStop

captured any such personal information."  689 F. Supp. 3d at 67; *see also Massie*, 2022 WL

534468, at *3 (holding plaintiff lacked standing to bring claims under federal and state wiretapping statutes because there was no injury in fact where "GM only recorded Plaintiffs' browsing while Plaintiffs were on GM's own website, GM obtained no personal or protected health information from Plaintiffs, and Plaintiffs make no allegations that GM attempted to sell or monetize the information it collected in any way"); *Stevens v. TD Bank, N.A.*, No. 24-8311 (RMB/AMD), 2025 WL 1779164, at *6 (D.N.J. June 27, 2025) (dismissing complaint alleging non-consensual use of pixel technologies for lack of standing where plaintiff failed to allege "what *he in fact* provided to [defendant]") (emphasis in original).

The same is true here. Plaintiffs Danielson, Emrick, Pham, and Recchia allege only that they "used" or "continue[] to use" the website "regularly," "frequently," on "multiple occasions," or on "numerous occasions." (Compl. ¶¶ 23-26.) Equally inadequate, Plaintiff Adair alleges that he "routinely used the [website] to review covered procedures, download copies of his insurance card to present to medical providers, and check policy limits, copays, and deductibles." (*Id.* ¶ 22.) But Plaintiffs fail to allege that they provided any personal information on webpages where Online Technologies were embedded; whether, how, and why the information they communicated on pages with Online Technologies, if any, was confidential; or how they were injured as a result. These omissions are fatal.

Plaintiffs' allegations that their certain unspecified activities on a public website were "recorded" simply are not enough to establish an injury-in-fact. (*Id.* ¶ 2.) Courts in this district have repeatedly found that the disclosure of non-sensitive data, like search queries on a public-facing website, does not constitute sufficient harm for standing. *See, e.g.*, *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 816 (E.D. Pa. 2025); *see also Ingrao v. AddShoppers, Inc*, No. 24-1022, 2024 WL 4892514, at *2 (E.D. Pa. Nov. 25, 2024) (holding "a person's internet

browsing activity . . . is not sufficiently sensitive information to support the concrete injury

requirement for Article III standing"); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 355 (E.D. Pa.

2023) (holding website users who "did not disclose highly sensitive personal information such as

medical diagnosis information or financial data from banks or credit cards cannot establish

concrete harm"); *Hartley v. Urban Outfitters, Inc.*, 740 F. Supp. 3d 410, 414 (E.D. Pa. 2024)

(finding no injury-in-fact when plaintiff alleged defendant used "spy pixels" to record

information about consumers opening promotional emails, including their email addresses).

Nor are Plaintiffs' conclusory allegations that Cigna's conduct caused Plaintiffs "loss of

privacy, embarrassment, and greatly increased vulnerability to identity theft and fraud, as well as

having their confidential financial information used for the benefit of [Cigna] and others"

sufficient.  (Compl. ¶ 19.)  These allegations are unsupported by any facts and are exactly the

type of allegations that courts must disregard on a motion to dismiss.  *See Kury v. Abbott*

*Laboratories, Inc.*, No. 11-803 FLW, 2012 WL 124026, at *6 (D.N.J. Jan. 17, 2012) (finding

"conclusory and vague allegations that Plaintiff suffered damages, mental anguish and pain and

suffering" insufficient and dismissing plaintiff's claim); *Lasche v. New Jersey*, No. 20-2325,

2022 WL 604025, at *3 (3d Cir. Mar. 1, 2022) (noting that courts should "disregard"

"allegations that are 'so threadbare or speculative that they fail to cross the line between the

conclusory and the factual'" on a motion to dismiss) (quoting *Iqbal*, 556 U.S. at 790).

Finally, Plaintiffs' vague allegations that Cigna "benefit[s] financially by obtaining and

analyzing data that enables them to add new customers," (Compl. ¶ 13), and that Cigna has

"deprived Plaintiffs of the economic value of their data without providing proper consideration"

(*id*. ¶ 340) cannot confer standing.  Plaintiffs do not allege that they actually provided any

personal or protected health information to Cigna on a webpage where Online Technologies are

embedded and cannot allege that they were deprived of any economic value attached to it.  *See Massie*, 2022 WL 534468, at *5 (finding plaintiffs did not suffer an injury because "none of Plaintiffs' personal information [was] implicated by the allegations they make" because they "fail[ed] to explain how either [defendants'] possession of anonymized, non-personal data regarding their browsing activities on [defendants'] website harm[ed] their privacy interests in any way").  Moreover, it is well-established that a diminution in the value of personal information cannot establish standing.  *See Fero v. Excellus Health Plan, Inc*., 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value.") (citation omitted).[4]

Thus, Plaintiffs' Complaint should be dismissed in its entirety for lack of standing.

## B.    Plaintiffs' Allegations Are Impermissibly Vague

The Complaint should independently be dismissed under Rule 12(b)(6) for failure to comply with Rule 8, because Plaintiffs fail to specify what (if any) data *they* allegedly input into the specific Cigna websites where Online Technologies are allegedly embedded.

The purpose of Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (citation omitted).  Rather than being given fair notice and an opportunity to challenge the specifics of Plaintiffs' claims, Cigna is left to speculate about what is at issue in this litigation.  Plaintiffs do not allege the date on which they registered with Cigna via the myCigna portal, the personal information or protected

---

[4] *See also, e.g.*, *Gubala vs. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) (rejecting as "gibberish" plaintiff's theory that defendant's retention of his personal information "deprived Plaintiff of the full value of his transaction with Defendant" because "[defendant] did not take the plaintiff's personal information away from him; he still has it"); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting standing based on diminution in value theory because plaintiff did not "explain how the hackers' possession of that information has diminished its value, nor does she assert that she would ever actually sell her own personal information").

health information (if any) they purportedly input into Cigna's website, the specific Cigna

webpage(s) on which they did so, or whether Online Technologies were allegedly deployed on

the particular webpages where they allegedly input protected health information.

Instead, Plaintiffs offer only vague references to visiting the Cigna website "routinely,"

"regularly," "on multiple occasions," "on numerous occasions," and "frequently" "during the

relevant time periods," and allege that they were "insured under a health policy of Cigna" "for

the past seven years" or "during the relevant time period." (Compl. ¶¶ 22-26.) Plaintiff Adair is

the only one who makes an allegation about having entered any data (*id*. ¶ 22), but that too does

not explain on which webpage he entered or obtained such information or whether Online

Technologies were used on those same pages.

The absence of any factual allegations as to Plaintiffs' own conduct on the website,

information that was allegedly captured, and their relationship with Cigna cannot meet the

demands of Rule 8. The Complaint should be dismissed in its entirety.

### C.    Plaintiffs' Claims Fail Because They Consented to the Activity at Issue

All of Plaintiffs' claims additionally and independently fail because Plaintiffs repeatedly

consented to the alleged wrongful conduct, as they concede in the Complaint. Consent is a

complete defense to any purported interception under the WESCA. 18 Pa. Cons. Stat. § 5704(4).

Consent does not require actual knowledge of recording—if "the person being recorded 'knew or

should have known[] that the conversation was being recorded'" and proceeded to make the

communication, the person is deemed to have consented by conduct. *Commonwealth v. Byrd*,

235 A.3d 311, 319 (Pa. Super Ct. 2020) (citation omitted). The standard is one of a "reasonably

intelligent person." *Id*. (citation omitted). Consent equally demands dismissal of Plaintiffs'

common law tort claims, because "[o]one who effectively consents to the conduct of another

intended to invade his interests cannot recover in an action of tort for the conduct or for the harm

resulting from it." *Schall v. Vazquez*, 322 F. Supp. 2d 594, 601 (E.D. Pa. 2004) (quoting Restatement (Second) Torts § 892A).  Here, as Plaintiffs concede and outlined above (*see supra* § II.C), Plaintiffs repeatedly agreed to Cigna's Terms of Use and Website Privacy Notice disclosing the use of Online Technologies.

A contract entered into on the internet is enforceable if it puts a website user on inquiry notice of the site's terms.  *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 607 (E.D. Pa. 2025).  It is sufficient if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* (citation omitted); *see also Del. River Waterfront Corp. v. Wellspring Software Inc.*, No. 22-1905, 2022 WL 17869139, at *4 (E.D. Pa. Dec. 22, 2022) (enforcing terms of a clickwrap agreement, which "presents users with a message on his or her computer screen, requiring the user to manifest his or her assent to the terms of the . . . agreement by clicking on an icon") (citation omitted).

A recent ruling in a WESCA case in the Western District Court of Pennsylvania is exactly on point.  There, the court held that plaintiff consented to the technology at issue because defendant's privacy policy was hyperlinked to the bottom of each page of the defendant's website, as is "in line with common usage." *Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-cv-450, 2025 WL 896938, at *10-11 (W.D. Pa. Mar. 24, 2025).  Specifically, the privacy policy was hyperlinked in the website's persistent footer, highlighted in white text contrasting a blue background, and provided in the drop-down menu on the left side of the website. *Id.*  Because the hyperlink was also labeled "Privacy Statement," the court found that any website visitor "could have easily seen the link and understood exactly what it contained." *Id.* at *10.

Here, like in *Popa*, the Website Privacy Notice is embedded in the persistent footer of www.cigna.com and plans.cigna.com under the "Privacy" hyperlink and the hyperlink is conspicuous with white text on a blue background. (*Compare supra* § II.C *with Popa*, 2025 WL 896938, at *10-11.) But Plaintiffs' concessions in the Complaint show that a finding of consent is even stronger here. Plaintiffs not only implicitly consented, but also affirmatively agreed to the Website Privacy Notice when they registered for myCigna accounts. (*See supra* § II.C.) And Plaintiff Pham, a California resident, consented a third time when he encountered the cookie banner that pops up for users associated with a California IP address. (*See id.*) Conspicuously hyperlinked through each of these mediums, the Notice repeatedly put Plaintiffs on notice that Cigna's website uses "third-party tools . . . to evaluate usage of [its] Services," and that "[t]hese third-party analytics companies use cookies, pixels, and other tracking technologies to collect usage data about [its] services to provide [Cigna] with reports and metrics that help [it] evaluate usage of [its] Services, improve [its] Services, and enhance performance and user experiences." (Cheung Decl., Ex. E (Website Privacy Notice at 6-7).)

Plaintiffs' consent is dispositive. *See Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-0648, 2024 WL 4476646, at *8 (E.D. Pa. 2024) (finding that plaintiffs agreed to relevant terms of service where they "had to check a box indicating they 'have read, understand and agree to the [] Terms of Use and Web Privacy Statement,'" where "[t]he text containing this affirmation [was] small but legible," and where "the phrase 'Terms of Use' [was] marked in blue text as typically indicates a hyperlink"). Because Plaintiffs' own allegations demonstrate that they agreed that their activities on Cigna's public website could be recorded, each of Plaintiffs' claims necessarily fail as a result.

### D.    Plaintiffs Fail to State a Claim Under WESCA

Plaintiffs' WESCA claims fail for two additional reasons: (1) they do not allege

interception in Pennsylvania, and (2) they do not allege the contents of their communications were captured.

### 1.    Plaintiffs Fail to Allege Any Interception in Pennsylvania

Plaintiffs also cannot state a viable wiretapping claim under Pennsylvania law because they do not allege that their communications were "intercepted" in Pennsylvania.

To state a claim under WESCA, Plaintiffs must allege that their electronic communications were *intercepted*. 18 Pa. C.S. § 5703. This is true regardless of whether Plaintiffs are relying on the interception, disclosure, or use prong of the statute. Section 5703 covers (1) intentional interception, (2) intentional disclosure, or (3) intentional use. *Id.* Disclosure and use are expressly limited to circumstances where the defendant knows or has reason to know "that the information was obtained through the ***interception*** of a wire, electronic or oral communication." *Id.* § 5703(2)-(3) (emphasis added). And that interception must occur in Pennsylvania for the statute to apply. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129-30 (3d Cir. 2022) ("Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly outside the Commonwealth[.]").

In cases involving website analytics, the Third Circuit has limited liability under WESCA only to those communications "intercepted" within Pennsylvania's borders. *Id.* at 131. In *Popa*, the Third Circuit held that interception takes place where the communication is first routed to defendant's servers, which occurs at the location of the plaintiff's browser. *Id.* In *Popa*, the case proceeded because there was a question as to where the plaintiff was located when accessing defendant's website through their browser, and Plaintiff alleged she was a Pennsylvania resident. *See* Compl., *Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-cv-00450-WSS, ECF No. 1-2 at ¶ 3 (W.D. Pa. 2019). Not so here.

Plaintiffs are spread across the country. (Compl. ¶¶ 22-26.) None of the Plaintiffs reside

in Pennsylvania—Plaintiffs allege they are residents of New York, Minnesota, Ohio, California, and Massachusetts. (*Id.*) They do not even allege that they were located in Pennsylvania when they accessed a Cigna webpage embedded with Online Technologies. (*See generally* Compl.) As a result, Plaintiffs' Complaint must be dismissed because they do not allege the key conduct (i.e., the "interception") at issue occurred or could have occurred in Pennsylvania. *See Ingrao*, 2024 WL 4892514, at *13 (dismissing WESCA claim premised on defendants' alleged use of web-enhancement technologies where plaintiff, a California resident, failed to allege that she accessed the website at issue from Pennsylvania).

### 2.    The Choice-of-Law Provision Does Not Change This Result

As out-of-state residents, Plaintiffs rely on a choice-of-law provision in Cigna's Terms of Use as a basis to assert claims under Pennsylvania law. (Compl. ¶¶ 60-61.) Specifically, the Term's choice-of-law provision states: "These Terms of Use and the Site Specific Terms shall be governed by and construed in accordance with the laws of the State of Pennsylvania, U.S.A., excluding its conflict of laws rules." (Cheung Decl., Ex. D (Terms of Use).) This narrow provision does not expand WESCA to reach extraterritorial conduct.

"Pennsylvania courts analyze choice of law provisions to 'determine, based on their narrowness or breadth, whether the parties intended to encompass all elements of their association.'" *Happy v. Marlette Funding, LLC*, 744 F. Supp. 3d 403, 410 (W.D. Pa. 2024) (quoting *Grimm v. Discover Fin. Servs.*, Nos. 08-747, 08-832, 2008 WL 4821695, at *8 (W.D. Pa. Nov. 4, 2008)). The court's analysis in *De Lage Landen Financial Services, Inc. v. Cardservice International, Inc.* is instructive. No. CIV. A. 00-2355, 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001). There, the court reviewed a choice of law provision requiring the parties' agreement be "governed by and construed in accordance with the laws of Pennsylvania"—the exact language used in Cigna's Terms of Use—and found that the

"operative terms" limited the provision's scope "to the interpretation and enforcement of the agreement," and did not encompass claims not directly related to the validity or construction of the agreement in dispute. *Id.*

Like in *De Lage*, Cigna's choice-of-law provision in its Terms is narrow and does not suggest in any way that Plaintiffs are covered by Pennsylvania-specific privacy laws or do not need to otherwise plead that interception occurred in Pennsylvania to assert a WESCA claim. Indeed, applying Pennsylvania law to the receipt of information in a foreign state would raise significant Commerce Clause issues. The Dormant Commerce Clause "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). District courts within this Circuit, as well as other circuit courts, have noted the Commerce Clause problems inherent in state-level internet regulation. *See, e.g.*, *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240-41 (4th Cir. 2004); *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103-04 (2d Cir. 2003); *ACLU v. Johnson*, 194 F.3d 1149, 1161-63 (10th Cir. 1999).

In *Doe I v. UPMC*, for example, the defendant, a large healthcare system, was accused of violating Pennsylvania privacy laws, including WESCA. No. 2:20-cv-359, 2020 WL 4381675, at *7 (W.D. Pa. July 31, 2020). The plaintiffs accused the defendant of causing communications to its patient portal website to be redirected to third parties for advertising purposes. *Id.* at *1. In ruling on a motion to remand, the district court evaluated whether there were colorable federal defenses and specifically examined whether the Dormant Commerce Clause offered a potential defense. *Id.* at *7. It concluded that it did, noting that UPMC had providers and patients outside Pennsylvania and that its website was interstate and international, so that allowing "legislative proscriptions of the Commonwealth's wiretapping and trade practices statutes" to restrict the design and management of its website potentially violated the Dormant Commerce Clause. *Id.*

In support, it cited the Second Circuit's decision in *American Booksellers Foundation*, 342 F.3d at 103, for the proposition that "it is difficult, if not impossible, for a state to regulate internet activities without project[ing] its legislation into other states." *Id*. (citation omitted).

### 3.    Plaintiffs Do Not Allege That Their Communication "Contents" Were Intercepted

Plaintiffs' claims under WESCA must be dismissed for the additional and independent reason that they do not allege that Cigna intercepted the "contents" of their communications. WESCA defines "[i]ntercept" as the "acquisition of the *contents* of any wire, electronic or oral communication." 18 Pa. Cons. Stat. § 5702 (emphasis added). Plaintiffs must therefore plausibly allege that the purported information that *Plaintiffs* entered and was allegedly intercepted constituted the "contents" of a communication. They fail to do so.

Contents are statutorily limited to "information concerning the substance, purport, or meaning of that communication." *Id*. "[T]o fall within the confines of the wiretapping control acts, the interception must involve the acquisition of the contents of a conversation, i.e., the actual hearing of sound." *Audenreid v. Cir. City Stores, Inc.*, 97 F. Supp. 2d 660, 663 (E.D. Pa. 2000). Historically, courts have held that where "[the device] does not record aural communications," "the content of any message sent . . . is not provable." *Commonwealth v. Stehley*, 338 A.2d 686, 688 (Pa. Super. Ct. 1975).[5] As technology has evolved, the Third Circuit continues to contrast non-content data like routing, addressing, or signal information (which are not actionable) with the message in an email (which may constitute content), emphasizing "the

---

[5] This is consistent with the well-established meaning of "contents" under the federal Wiretap Act, which "Pennsylvania's Wiretap Act is generally modeled after." *Commonwealth v. Spangler*, 809 A.2d 234, 237 (Pa. Super. Ct. 2002). There, too, "contents" refers to "information the user intended to communicate, such as the spoken words of a telephone call," *In re Nickelodeon Consumer Priv. Litig.*, No. 12-07829, 2014 WL 3012873, at *14 (D.N.J. July 2, 2014) (citation omitted), or the actual sounds of a call, *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 167 (1977).

important difference between extrinsic information used to route a communication and the communicated content itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). Data that reflects the "means of establishing communication" do not give rise to a WESCA claim and are not "contents"—this includes data such as routing information, the length and time of a call, whether a call was completed, whether a communication took place, and phone numbers dialed. *See Commonwealth v. Beauford*, 475 A.3d 783, 786 (Pa. Super. Ct. 1984); *United States v. Stanley*, No. 11-272, 2012 WL 5512987, at *12 (W.D. Pa. Nov. 14, 2012), *aff'd*, 753 F.3d 114 (3d Cir. 2014); *In re Google*, 806 F.3d at 136 (federal analogue).

Here, Plaintiffs allege that Cigna used the Online Technologies to record Plaintiffs' "mouse movements, clicks, keystrokes (such as text entered into a search box or information box), web addresses (i.e., 'URLs') of individual pages visited, and/or other electronic communications." (Compl. ¶ 6.) Such basic data is not "content," and Plaintiffs' vague references to "other electronic communications" offer nothing to change that.

Mouse movements and clicks are not contents—they are analogous to routing, addressing, or signal data. In *Beauford*, the court held that a "Dialed Number Recorder[]" device was not involved in intercepting "content" because it collected data on the phone numbers dialed, length of calls, and date of calls—as opposed to the sounds transmitted. 475 A.2d at 786. Capturing when and where a cursor moved similarly does not rise to "the substance, purport, or meaning" of any communication to give rise to a WESCA claim. 18 Pa. Con. Stat. § 5702. Numerous other courts have likewise concluded that mouse movements or clicks do not constitute "contents," because "[n]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.*, 549 F.

Supp. 3d 1073, 1082-83 (C.D. Cal. 2021); *see also Burns v. Heyns*, No. 1:14-cv-733, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015) (holding that data containing "the time, order and duration the computer spent on each web page as well as which files were accessed and/or downloaded . . . does not convey the 'substance, purport, or meaning' of a prisoner's communication"); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) ("[T]his mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information.").

Plaintiffs' allegations regarding keystrokes are insufficiently vague, mentioned only as conclusory statements in summarizing Cigna's alleged conduct. (Compl. ¶¶ 6, 274, 326.) Nowhere do Plaintiffs allege that Cigna captured Plaintiffs' keystrokes, what those keystrokes were, or on what page they were captured. Plaintiffs' conclusory and generalized allegations that protected health information was captured in the form of URLs containing search queries fare no better. (*See*, *e.g.*, *id*. ¶¶ 6, 170, 181, 200.) Some courts have suggested that highly detailed URLs may constitute content when they reproduce search queries, *e.g.*, *In re Google Inc.*, 806 F.3d at 138, but Plaintiffs never allege that ***they*** entered any such queries on pages where Online Technologies might have been embedded (or that they entered a search query at all). The Complaint only lists URLs as examples of what type of information *may have* been recorded by the Online Technologies—it never once connects those allegations to Plaintiffs' purported actions on the website. (*Id.*)

Without highly detailed search queries, URLs are not communications content. A URL is a Uniform Resource Location, "used to identify the physical location of documents on servers connected to the internet." *In re Nickelodeon*, 2014 WL 3012873, at *15 (citation omitted). URLs are thus "addressing information" and "do not necessarily reveal any more about the

underlying contents of communications than do phone numbers." *Id*. (citation omitted).  URLs

are a textbook example of "dialing, routing, addressing, or signaling" function.  *In re Google*

*Inc.*, 806 F.3d at 137; *see also In re Nickelodeon*, 2014 WL 3012873, at *15 ("[T]he 'file path'

for a specific . . . file contained in a folder on a web server owned or operated by [Cigna]" has

"less in common with 'the spoken words of a telephone call,' than [it] do[es] with the telephone

number dialed to initiate the call.") (citation omitted).

Because Plaintiffs never allege to have entered any "contents" of written electronic

communications on any pages where Online Technologies are allegedly used, their WESCA

claim fails and must be dismissed.

### E.     The Court Should Dismiss Plaintiffs' Common Law Claims for Failure to State a Claim Under Rule 12(b)(6)

#### 1.     Plaintiffs' Allegations Do Not Justify the Extraterritorial Application of Pennsylvania Common Law

As outlined above, the Complaint's reliance on the choice-of-law provision in the Terms

of Use is not sufficient to enable these out-of-state Plaintiffs to bring claims under Pennsylvania

law.  (*See supra* § IV.D.2.)  Nonetheless, Plaintiffs allege that their common law invasion of

privacy claim is premised on Pennsylvania law.  (Compl. ¶ 331.)  And while they do not specify

the law that would govern their breach of fiduciary duty and unjust enrichment claims, they

reference a Pennsylvania law recognizing a duty regarding patient confidentiality.  (*Id*. ¶ 346.)

Plaintiffs cannot seek to apply Pennsylvania law extraterritorially.

Consistent with the Third Circuit's holding that WESCA applies only to "interceptions"

occurring at a user's browser in Pennsylvania, there is a presumption against the extraterritorial

application of state law to "avoid running afoul of the Commerce Clause of the United States

Constitution."  *Blackman v. Lincoln Nat'l Corp.*, No. 10-6946, 2012 WL 6151732, at *4 (E.D.

Pa. Dec. 10, 2012) (applying presumption against extraterritorial application of statutes "in

determining whether [state] statutes apply to nonresidents of that state") (citation omitted).

Pennsylvania federal courts have made clear that forum selection and choice-of-law clauses do

not govern common law claims between the parties—"[c]ontractual choice of law provisions . . .

do not govern tort claims between contracting parties unless the fair import of the provision

embraces all aspects of the legal relationship." *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848

F. Supp. 569, 576 (E.D. Pa. 1994).

Here, as explained above, nothing about Cigna's choice-of-law provision in the Terms of

Use rebuts that presumption or suggests Pennsylvania law would apply to any of Plaintiffs'

common law claims. Plaintiffs cannot bring claims under Pennsylvania common law.[6] And if

they could, Plaintiffs' common law claims still fail for the reasons set forth below.

### 2.     Plaintiffs Fail to State a Claim for Invasion of Privacy

To state a claim for common law intrusion upon seclusion[7] under Pennsylvania law, a

plaintiff must show that a defendant "intentionally intrude[d], physically or otherwise, upon the

solitude or seclusion of another or his private affairs or concerns," and that "the intrusion would

be highly offensive to a reasonable person." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d.

108, 120 (W.D. Pa. 2019) (quoting Restatement (Second) of Torts § 625B). Plaintiffs fail to

---

[6] To the extent that Plaintiffs intended to assert common law claims under the laws of their respective states, the Complaint should be dismissed under Rule 8 because Plaintiffs nowhere allege that they are asserting claims under the laws of their states of residence.

[7] "Under Pennsylvania law, invasion of privacy involves four separate torts: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness for commercial purposes; (3) publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Tagouma v. Investigative Consultant Servs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (quoting *Doe v. Wyoming Valley Health Care Sys., Inc.*, 987 A.2d 758, 765 (Pa. Super. Ct. 2009)). Plaintiffs assert that an invasion of privacy occurred because "Defendants intentionally intruded on Plaintiffs' private life, seclusion, or solitude, without consent." (Compl. ¶ 335.) Although they do not properly label it as such, it is clear they are asserting an intrusion upon seclusion claim.

meet this standard for three reasons.

*First*, an intrusion upon seclusion claim must be dismissed if the alleged intrusion was carried out by third parties.  In *Kurowski v. Rush System for Health*, the court rejected the argument that a healthcare provider "intruded upon its patients' seclusion when it allowed third-party source code to collect the data [the plaintiff] alleges it later disclosed," holding that "[t]he actual intrusion upon patients' seclusion, via interception of their communications, [was] carried out by third parties."  659 F. Supp. 3d 931, 943-44 (N.D. Ill. 2023); *see also Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 342-43 (E.D. Pa. 2012) (finding no intrusion upon seclusion claim can be brought where defendant legitimately obtains information from a plaintiff, even if the facts are later disclosed to a third party).

By Plaintiffs' own allegations, the alleged intrusion at issue was not carried out by Cigna, but by various third parties.  (*See*, *e.g.*, Compl. ¶¶ 162 ("Defendants have embedded the tracking technology of Third-Party Vendor The Trade Desk on the Website in order to ***enable the interception and collection*** of users' private data and communications, including health-related queries, without user consent.") (emphasis added); 172 ("LiveRamp is another Third-Party Vendor for which Defendants have embedded tracking technology that ***enables LiveRamp*** to harvest the private data of users of Defendants' Website[.]") (emphasis added); *see id.* ¶¶ 184, 194, 202, 212, 226.)  Plaintiffs thus allege that only third parties, not Cigna, "intercepted" data.

*Second*, Plaintiffs have not alleged any conduct that is "highly offensive" to a person with ordinary sensibilities.  *See Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383-84 (Pa. Super. Ct. 1984) ("There is [] no liability unless the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person.") (citing Restatement (Second) of Torts § 652B, comment d).  The Superior Court has expressly held that

obtaining "brief descriptions of [a plaintiff's] medical treatment cannot be deemed a substantial intrusion." *Chicarella v. Passant*, 494 A.2d 1109, 1114 (Pa. Super. Ct. 1985); *Popa*, 426 F. Supp. 3d at 122 ("The act of collecting Popa's keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach.").

*Third*, Plaintiffs fail to plausibly allege that "the information disclosed would have caused mental suffering, shame[,] or humiliation to a person of normal sensibilities." *Gerhart v. Energy Transfer Partners, L.P.*, No. 1:17-cv-01726, 2020 WL 1503674, at *26 (M.D. Pa. Mar. 30, 2020) (quoting *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002)). Nowhere in Plaintiffs' sprawling Complaint is there a single allegation detailing the information that ***Plaintiffs*** entered that was allegedly captured by the Online Technologies. And even if the Court were to accept Plaintiffs' baseless suggestion that their health-related information *could have* been captured by Cigna's website, Pennsylvania courts have routinely held that disclosure of such information is not sufficient to sustain a claim for intrusion upon seclusion. *See Yerger v. Landis Mfg. Sys., Inc.*, No. 88-7694, 1989 WL 66443, at *7 (E.D. Pa. June 16, 1989) ("Medical reports or brief descriptions of common ailments or treatments are insufficient as a matter of law to meet this standard."); *accord Chicarella*, 494 A.2d at 1114 ("[T]he information disclosed by the hospital records is not of the sort which would 'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'") (citation omitted); *Adamski v. Johnson*, 80 Pa. D. & C. 4th 69, 75, 2006 WL 4129308 (Pa. Ct. Comm. Pleas 2006) ("There is no suggestion in the complaint that the description of Adamski's pending surgery would cause her mental suffering, shame or humiliation.").

For all of these reasons, Plaintiffs' intrusion upon seclusion claim should be dismissed.

### 3.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

To establish breach of a fiduciary duty in Pennsylvania based on a confidential

relationship with a medical provider, a plaintiff must allege that the defendant disclosed (1) confidential information; (2) that was learned by a physician through communication to him by a patient; (3) in attending to and treating the patient; (4) the release of which would blacken the character of the patient. *Grimminger v. Maitra*, 887 A.2d 276, 279-80 (Pa. Super. Ct. 2005). Plaintiffs' claim fails at each step.

Plaintiffs' failure to specify precisely what information of theirs was disclosed necessarily dooms their claim at the outset. As explained in detail above, Plaintiffs have failed to plead that they incurred any loss or damage, or that Cigna disclosed or caused any disclosure of actionable confidential information. *See Credico v. Commonwealth of Pa. State Police*, No. 09-cv-691, 2010 WL 331700, at *6 (E.D. Pa. Jan. 27, 2010) (dismissing complaint for failing to "allege that [the doctor] treated Plaintiff for any physical or mental illness or injury or that he acquired any of the information that he allegedly disclosed in the course of such treatment").

Even if Plaintiffs could somehow adequately allege that their health-related information was entered on a page with Online Technologies, that is still not enough: the relationship between an insurance company and its members generally does not impute the confidential relationship necessary to support a claim of fiduciary duty. *See Zimmerman v. Highmark, Inc.*, No. 2:23-cv-250-NR, 2025 WL 1220364, at *8 (W.D. Pa. Apr. 28, 2025), *certificate of appealability denied*, 2025 WL 1724924 (W.D. Pa. June 20, 2025). While Pennsylvania courts have held that a doctor-patient relationship can support such a claim, Cigna is plainly not a physician, and disclosure of information about run-of-the-mill medical conditions does not "blacken the character" sufficient to state a claim for breach of fiduciary duty. *See Renfer v. Kopena*, No. 3554 EDA 2016, 2017 WL 4280630, at *3-4 (Pa. Super. Ct. Sept. 27, 2017) (stating that information regarding appellant's drug prescriptions did not "blacken the character" of

appellant); *Commonwealth ex rel. Platt v. Platt*, 404 A.2d 410, 415 (Pa. Super. Ct. 1979) ("Since psychiatric treatment does not evidence the existence of a loathsome disease, evidence of such treatment could not blacken the reputation of one who has sought it for only evidence of such a disease would tend to blacken a person's reputation."); *Woods v. Nat'l Life & Acc. Ins. Co.*, 347 F.2d 760, 764 (3d Cir. 1965) ("The revealing of a name, address and other identifying data given by a patient is not a communication which tends to blacken the character of the patient.").

Faced with this non-starter, Plaintiffs attempt to manufacture an alternative confidential relationship by relying on Cigna's obligations as a covered entity under the Health Insurance Portability and Accountability Act ("HIPAA"), as well as the requirements for the confidential treatment of medical records set out in various federal and state statutes. 42 U.S.C. § 1320d *et seq.*; *see* 28 Pa. Code § 115.27; 35 Pa. Stat. § 7607; 49 Pa. Code § 25.213(c). (Compl. ¶¶ 15-18, 344-45.) However, Plaintiffs do not point to any authority establishing a private right of action under these statutes; as such, they cannot be the basis for a breach of fiduciary duty claim. *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011) ("There is no federal private right of action under HIPPA [*sic*]."); *Bailey v. Hosp. of the Univ. of Pa.*, 266 A.3d 654, 2021 WL 4958772, at *7 (Pa. Super. Ct. 2021) (noting parties' agreement there is "no expressed right of action under 28 Pa. Code § 115.27" or under HIPAA, and that therefore those statutes cannot be the source of the duty owed to plaintiff in support of her negligence claim).

### 4.    Plaintiffs Fail to State a Claim for Unjust Enrichment

"[T]o prove unjust enrichment, [a plaintiff] must show that '1) they conferred benefits on the defendant, 2) the defendant appreciated such benefits, and 3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value.'" *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 412 (E.D. Pa. 2023) (citations omitted). Plaintiffs fail to allege any specific allegations to support any of these

elements, demanding dismissal of their claim. *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 279 (E.D. Pa. 2024) (dismissing claim of unjust enrichment because "vague allegations that [the defendant] collected information for 'commercial gain' are not sufficient to state a claim for unjust enrichment") (citation omitted); *Salvitti*, 669 F. Supp. 3d at 415 (dismissing claim of unjust enrichment because the benefit conferred "cannot be based on 'speculative' or 'intangible benefits'") (citations omitted).

Moreover, Plaintiffs' unjust enrichment claim is premised on the same baseless and insufficient allegations as the rest of their claims, and therefore fails along with them. *See Pompa v. St. Luke's Hosp.*, No. 3:21-1378, 2023 WL 2332250, at *6 (M.D. Pa. Mar. 2, 2023) ("Defendants' unjust enrichment claim is based on the same wrongful conduct alleged in their first three counterclaims; those claims failed, so the unjust enrichment claim 'fall[s] with them.'") (citations omitted). In that the Complaint "improperly relies on the general functionality of the [Online Technologies] and [their] hypothetical capacity to transmit sensitive information," Plaintiffs claim for unjust enrichment must be dismissed. *TD Bank, N.A.*, 2025 WL 1779164, at *5.

## V.    CONCLUSION

For the forgoing reasons, Cigna respectfully requests that the Court enter an order dismissing Plaintiffs' Complaint in its entirety. They do not have standing, consented to the very conduct at issue, and have otherwise failed to state a claim upon which relief may be granted.

Dated: July 11, 2025

By:    */s/ Katherine E. Driscoll*
        Katherine E. Driscoll

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
KDriscoll@mofo.com

TIFFANY CHEUNG (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Email:  TCheung@mofo.com

ELISABETH HUTCHINSON (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202-5638
Telephone:  (303) 592-1500
Email:  EHutchinson@mofo.com

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email:  JNguyen@stradley.com
Email:  BGiroud@stradley.com

**Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group**

### CERTIFICATE OF SERVICE

I, Katherine E. Driscoll, hereby certify that on July 11, 2025, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

 /s/ *Katherine E. Driscoll*

Katherine E. Driscoll
