**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-02384 |
| Plaintiffs, | |
| v. | |
| CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP, | |
| Defendants. | |

**DEFENDANTS CIGNA CORPORATE SERVICES, LLC
AND THE CIGNA GROUP'S MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Defendants Cigna Corporate Services, LLC and The Cigna Group move pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims in the First

Amended Complaint (Counts I through IV).  In Support of this Motion, Defendants incorporate

by reference the accompanying Memorandum of Law.  A proposed form of Order is attached.

Dated: September 3, 2025

By:    /s/ Tiffany Cheung
        Tiffany Cheung

TIFFANY CHEUNG (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone:  (415) 268-7000
Email:  TCheung@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone:  (202) 887-1500
Email:  KDriscoll@mofo.com

ELISABETH HUTCHINSON (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, CO 80202-5638
Telephone:  (303) 592-1500
Email:  EHutchinson@mofo.com

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone:  (215) 564-8000
Email:  JNguyen@stradley.com
Email:  BGiroud@stradley.com

***Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group***

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-02384 |
| Plaintiffs, | |
| v. | |
| CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP, | |
| Defendants. | |

**[PROPOSED] ORDER GRANTING CIGNA
CORPORATE SERVICES, LLC AND THE CIGNA GROUP'S
<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Before the Court is Defendants Cigna Corporate Services, LLC and The Cigna Group's (together, "Cigna") Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Having considered the papers filed in support and in opposition to the motion, the arguments of counsel, the pleadings and papers on file in this action, and all other matters properly before the Court, and good cause appearing:

IT IS HEREBY ORDERED that Cigna's Motion to Dismiss Plaintiffs' First Amended Complaint is GRANTED in its entirety without leave to amend, as each of Plaintiffs' causes of action fails to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

IT IS SO ORDERED.

Dated: _____, 2025

_____
Chief Judge Wendy Beetlestone

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-02384 |
| Plaintiffs, | |
| v. | |
| CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CIGNA CORPORATE SERVICES, LLC AND THE CIGNA GROUP'S MOTION TO DISMISS PLAINTIFFS' <u>FIRST AMENDED COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................ 3

        A.      The Amended Complaint ........................................................................... 3

                1.      Allegations About Cigna's Public Webpages ............................. 3

                2.      Allegations as to myCigna ......................................................... 5

        B.      Plaintiffs Consented to Online Technologies ........................................... 6

III.    LEGAL STANDARD ........................................................................................... 9

IV.     ARGUMENT ...................................................................................................... 10

        A.      Plaintiffs Fail to Establish Article III Standing ..................................... 10

        B.      Plaintiffs' Claims Fail Because They Consented to the Activity at Issue .......... 13

        C.      Plaintiffs' ECPA Claim Fails on Multiple Grounds ............................. 16

                1.      Cigna Was a Party to the Communications ............................. 16

                2.      ECPA's Crime-Tort Exception Does Not Apply ..................... 17

                3.      Plaintiffs' Aiding and Abetting Theory Fails ......................... 19

        D.      Out-of-State Plaintiffs Cannot Bring a Claim Under WESCA .......................... 20

                1.      Plaintiffs Fail to Allege Any Interception in Pennsylvania .................... 20

                2.      The Choice-of-Law Provision Does Not Change This Result ................ 22

        E.      The Court Should Dismiss Plaintiffs' Common Law Claims ............................ 24

                1.      Plaintiffs' Allegations Do Not Justify the Extraterritorial
                        Application of Pennsylvania Common Law ............................. 24

                2.      Plaintiffs Fail to State a Claim for Invasion of Privacy ......................... 25

                3.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ................ 27

                4.      Plaintiffs Fail to State a Claim for Unjust Enrichment ........................... 29

V.      CONCLUSION ................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) ...............................................................23

*Adamski v. Johnson*,
80 Pa. D. & C. 4th 69, 2006 WL 4129308 (Pa. Ct. Comm. Pleas 2006)...............................27

*Allen v. Quicken Loans Inc.*,
No. 17-12352 (ES) (MAH), 2018 WL 5874088 (D.N.J. Nov. 9, 2018)..................................17

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)......................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................9, 10

*B.K. v. Eisenhower Med. Ctr.*,
No. 23-2092 JGB, 721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024)......................................29

*Bailey v. Hosp. of the Univ. of Pa.*,
266 A.3d 654, 2021 WL 4958772 (Pa. Super. Ct. 2021)........................................28

*Ballentine v. United States*,
486 F.3d 806 (3d Cir. 2007)......................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................9, 10, 20

*Blackman v. Lincoln Nat'l Corp.*,
No. 10-6946, 2012 WL 6151732 (E.D. Pa. Dec. 10, 2012)....................................24

*Checchia v. SoLo Funds, Inc.*,
771 F. Supp. 3d 594 (E.D. Pa. 2025) ...................................................14

*Chicarella v. Passant*, 494 A.2d 1009 (Pa. Super. Ct. 1985) .................................27

*Ciox Health, LLC v. Azar*,
435 F. Supp. 3d 30 (D.D.C. 2020) ....................................................19

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. Super. Ct. 2020).....................................................13

*Cook v. GameStop, Inc.*,
No. 23-2574, 2025 WL 2250261 (3d Cir. Aug. 7, 2025) ....................................11

*De Lage Landen Financial Services, Inc. v. Cardservice International, Inc.*,
  No. CIV. A. 00-2355, 2001 WL 799870 (E.D. Pa. July 12, 2001)........................................22

*Del. River Waterfront Corp. v. Wellspring Software Inc.*,
  No. 22-1905, 2022 WL 17869139 (E.D. Pa. Dec. 22, 2022)...................................................14

*Delong v. PHE, Inc.*,
  No. 24-5212, 2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) ...............................................2, 10

*Doe v. Kaiser Found. Health Plan, Inc.*,
  No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)................................18

*Doe v. Wyoming Valley Health Care Sys., Inc.*,
  987 A.2d 758 (Pa. Super. Ct. 2009) .....................................................................................25

*Doe I v. UPMC*,
  No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020)............................................23

*In re Facebook Priv. Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ..................................................................................17

*Fero v. Excellus Health Plan, Inc.*,
  236 F. Supp. 3d 735 (W.D.N.Y. 2017)..................................................................................12

*Gerhart v. Energy Transfer Partners, L.P.*,
  No. 1:17-cv-01726, 2020 WL 1503674 (M.D. Pa. Mar. 30, 2020) ......................................27

*In re Google Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3rd Cir. 2015) (*"In re Google"*)....................................................................17

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
  934 F.3d 316 (3d Cir. 2019) (*Google II*) .............................................................................11

*Grimminger v. Maitra*,
  887 A.2d 276 (Pa. Super. Ct. 2005)......................................................................................13

*Gubala vs. Time Warner Cable, Inc.*,
  846 F.3d 909 (7th Cir. 2017) ...............................................................................................12

*Happy v. Marlette Funding, LLC*,
  744 F. Supp. 3d 403 (W.D. Pa. 2024)...................................................................................22

*Harris by Harris v. Easton Pub. Co.*,
  483 A.2d 1377 (Pa. Super. Ct. 1984).....................................................................................26

*Ingrao v. AddShoppers, Inc.*,
  No. 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ............................................21, 22

*Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*,
    848 F. Supp. 569 (E.D. Pa. 1994) ....................................................................24

*Katz-Lacabe v. Oracle Am., Inc.*,
    No. 22-cv-04792-RS, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024).......................17

*Khan v. Children's Nat'l Health Sys.*,
    188 F. Supp. 3d 524 (D. Md. 2016) ...................................................................12

*Kirch v. Embarq Mgmt. Co.*,
    702 F.3d 1245 (10th Cir. 2012) .........................................................................20

*Kurowski v. Rush Sys. for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023) .......................................................17, 25, 26

*Kurowski v. Rush System for Health*,
    683 F. Supp. 3d 836 (N.D. Ill. 2023) .................................................................29

*Kury v. Abbott Labs., Inc.*,
    No. 11-803 FLW, 2012 WL 124026 (D.N.J. Jan. 17, 2012) ...................................12

*Lasche v. New Jersey*,
    No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022).........................................12

*Lincoln Nat'l Life Ins. Co. v. Snyder*,
    722 F. Supp. 2d 546 (D. Del. 2010).....................................................................2

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................................9

*Marion v. Bryn Mawr Tr. Co.*,
    288 A.3d 76 (Pa. 2023).....................................................................................27

*McDonald v. Wells Fargo Bank, N.A.*,
    374 F. Supp. 3d 462 (W.D. Pa. 2019)..................................................................23

*Monarch Fire Prot. Dist. of St. Louis Cnty., Mo. v. Freedom Consulting &*
    *Auditing Servs., Inc.*,
    678 F. Supp. 2d 927 (E.D. Mo. 2009), *aff'd*, 644 F.3d 633 (8th Cir. 2011) ............19

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
    748 F. Supp. 3d 262 (E.D. Pa. 2024) ................................................................29

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)........................................................................11, 17

*Nienaber v. Overlake Hosp. Med. Ctr.*,
    733 F. Supp. 3d 1072 (W.D. Wash. 2024)...........................................................29

*Parkell v. Markell*,
    622 F. App'x 136 (3d Cir. 2015) (per curiam) .........................................................9

*Peavy v. WFAA-TV, Inc.*,
    221 F.3d 158 (5th Cir. 2000) .......................................................................................20

*Pena v. GameStop, Inc.*,
    670 F. Supp. 3d 1112 (S.D. Cal. 2023)........................................................................17

*Perloff v. Transamerica Life Ins. Co.*,
    393 F. Supp. 3d 404 (E.D. Pa. 2019) ...........................................................................28

*Pompa v. St. Luke's Hosp.*,
    No. 3:21-1378, 2023 WL 2332250 (M.D. Pa. Mar. 2, 2023) ......................................30

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019)...........................................................13, 25, 27

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022) .........................................................................................21

*Popa v. Harriet Carter Gifts, Inc.*,
    No. 2:19-cv-450, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025)...................................15

*Popa v. Microsoft Corp.*,
    No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .............................................10

*Prepared Foods Photo, Inc. v. La Strada Rest., Inc.*,
    No. 24cv28 (EP) (AME), 2024 WL 3199918 (D.N.J. June 25, 2024) ...........................2

*Pro Golf Mfg. v. Tribune Review Newspaper Co.*,
    809 A.2d 243 (Pa. 2002)..........................................................................................25, 27

*PSINet, Inc. v. Chapman*,
    362 F.3d 227 (4th Cir. 2004) .......................................................................................23

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*,
    136 F.4th 456 (3d Cir. 2025) .......................................................................................10

*Rodriguez v. Google LLC*,
    No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ..........................18

*Salvitti v. Lascelles*,
    669 F. Supp. 3d 405 (E.D. Pa. 2023) ...........................................................................29

*Schall v. Vazquez*,
    322 F. Supp. 2d 594 (E.D. Pa. 2004) ...........................................................................13

*Steinberg v. CVS Caremark Corp.*,
  899 F. Supp. 2d 331 (E.D. Pa. 2012) ...............................................................13, 26

*Stevens v. TD Bank, N.A.*,
  No. CV 24-8311, 2025 WL 1779164 (D.N.J. June 27, 2025) ..................................30

*Tagouma v. Investigative Consultant Servs., Inc.*,
  4 A.3d 170 (Pa. Super. Ct. 2010) ............................................................................25

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
  588 U.S. 504 (2019) ..................................................................................................23

*Tignor v Energy Fund, Inc.*,
  745 F. Supp. 3d 189 (W.D. Pa. 2024) .......................................................................30

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..................................................................................................10

*Wiggins v. Lab'y Corp. of Am. Holdings*,
  No. 24-0648, 2024 WL 4476646 (E.D. Pa. Oct. 11, 2024) .....................................14

*Yerger v. Landis Mfg. Sys., Inc.*,
  No. 88-7694, 1989 WL 66443 (E.D. Pa. June 16, 1989) .........................................26

*Zimmerman v. Highmark, Inc.*,
  No. 2:23-cv-250-NR, 2025 WL 1220364 (W.D. Pa. Apr. 28, 2025) .......................28

**Statutes & Rules**

18 U.S.C.
  § 2511 .............................................................................................................13, 16, 20
  § 2520 ........................................................................................................................20

18 Pa. Cons. Stat.
  § 5703 ........................................................................................................................21
  § 5704 ........................................................................................................................13

45 C.F.R.
  § 160.103 ...................................................................................................................18
  § 164.502 ...................................................................................................................19

Fed. R. Civ. P.
  8 .......................................................................................................................9, 20, 25
  12(b)(1) .......................................................................................................................9
  12(b)(6) .......................................................................................................................9

Defendants Cigna Corporate Services, LLC and The Cigna Group (together, "Cigna") submit this Memorandum of Law in support of their Motion to Dismiss Counts I through V of Plaintiffs' First Amended Complaint (ECF No. 31 ("FAC")).

## I.    INTRODUCTION

Plaintiffs' amended complaint changes the packaging, not the product.  Despite new phrasing, the same fatal defects remain because they are inherent to Plaintiffs' Pennsylvania wiretapping claims:  Plaintiffs are out-of-state residents trying to assert a Pennsylvania wiretapping claim without alleging that any purported interception occurred in Pennsylvania. Plaintiffs' theory fails as a matter of law.  The Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") applies only to interceptions in the commonwealth, and Plaintiffs cannot amend around the defect in Plaintiffs' WESCA claims.  Plaintiffs instead try to save their complaint by adding in a non-starter federal wiretapping claim under the Electronic Communications Privacy Act ("ECPA").  But the consent of *either* party to the communication is a complete defense to an ECPA claim.  Here, Plaintiffs concede that Cigna is a party to the communication, and by allegedly deploying the cookies and pixels at issue (collectively, "Online Technologies"), Cigna plainly consented.  Both purported wiretapping claims should be dismissed with prejudice.

Moreover, not only did Cigna consent, but Plaintiffs also consented, demanding dismissal of all their claims.  Plaintiffs consented through multiple channels—expressly through their agreement to Cigna's privacy policies when they registered for an account with Cigna; through their use of Cigna's webpages after receiving notice of Cigna's privacy policies via the conspicuous footer on each of Cigna's webpages; and, for California-based Plaintiffs, through

their acceptance of the cookie pop-up banner.[1]  Cigna's multiple privacy policies, including its Website Privacy Notice ("Privacy Notice") and HIPAA Notice of Privacy Practices ("HIPAA Notice"), expressly informed Plaintiffs of Cigna's use of the Online Technologies on the relevant webpages, including that Cigna works with HIPAA business associates to improve user experiences on the authenticated portal, and Plaintiffs accepted and agreed to these policies.

Particularly in light of Plaintiffs' clear consent, they cannot allege any concrete harm sufficient to establish standing. A court in this District recently dismissed similar claims for lack of standing, noting "[i]t is widely understood that most online activity is not entirely private." *Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787, at *5 (E.D. Pa. Aug. 25, 2025).  Here, Cigna's use of the technologies at issue was disclosed to Plaintiffs (repeatedly), and they consented to the same (repeatedly).  Based on this notice and consent, as well as Plaintiffs' continued failure to allege with specificity what sensitive information they entered onto Cigna's webpages and which webpages it was entered, Plaintiffs fail to show they have standing to bring their claims.

Plaintiffs' common law claims should be dismissed for additional reasons.  Plaintiffs' allegations fall far short of "extreme" or "highly offensive" conduct required to state a viable invasion of privacy claim—Cigna's alleged collection of what amounts to metadata on public

---

[1] As discussed in the accompanying Request for Judicial Notice, the Court should incorporate by reference or take judicial notice of Cigna's webpages:  www.cigna.com (Declaration of Tiffany Cheung ("Cheung Decl.") Ex. A); plans.cigna.com (*id.* Ex. C); my.cigna.com (*id.* Ex. B); and www.cigna.com/knowledge-center/ (*id.* Ex. F), as well as Cigna's Terms of Use (*id.* Ex. D), Website Privacy Notice (*id.* Ex. E), and HIPAA Notice of Privacy Practices (*id.* Ex. H) on its webpages, including prior versions available via the Wayback Machine.  *See Prepared Foods Photo, Inc. v. La Strada Rest., Inc.*, No. 24cv28 (EP) (AME), 2024 WL 3199918, at *4 (D.N.J. June 25, 2024) ("Courts have taken judicial notice of the Internet Archive."); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 552 n.4 (D. Del. 2010) ("[I]f a contract or essential document, whose authenticity is not challenged, is the basis of a complaint, it is incorporated by reference and properly relied on by the court on a motion to dismiss.").

webpages or use of an analytics tool provided by a business associate, all of which were repeatedly disclosed to the webpage visitors, cannot support an invasion of privacy claim.  Similarly, Plaintiffs' breach of fiduciary duty claim fails because they do not sufficiently allege that their confidential information was disclosed, that they were injured by any such disclosure, or that Cigna owes them a fiduciary duty.  Plaintiffs' unjust enrichment claim fails because it is premised on the above-described insufficient allegations.  Additionally, Plaintiffs have not adequately alleged that any benefits were conferred upon Cigna by the Plaintiffs, or that Plaintiffs suffered actual damages from browsing Cigna's public webpages or from Cigna's partnership with a business associate providing services that enables Cigna to serve members.

Despite their opportunity to attempt to cure defects in their original complaint, Plaintiffs still do not state a claim, and the amended complaint should be dismissed in its entirety.

## II.    FACTUAL BACKGROUND

### A.    The Amended Complaint

Plaintiffs allege they are Cigna members who reside in California, Massachusetts, Ohio, New York, and Minnesota (***not*** Pennsylvania) who, at some point between May 9, 2023, and the present, visited Cigna's webpages: www.cigna.com, "together with [unidentified] subpages and portals."  (FAC ¶¶ 3, 23-27, 348.)  The Cigna Group provides a range of services, including medical, dental, and vision insurance plans to members across the United States.  (*Id*. ¶¶ 28-29.) Plaintiffs allege that Cigna Corporate Services is an affiliate of The Cigna Group that administers the digital infrastructure enabling members' online access to health plan information.  (*Id*. ¶ 30.)

### 1.    Allegations About Cigna's Public Webpages

Plaintiffs make no allegations about *their* use of the public-facing webpages they

reference: www.cigna.com, plans.cigna.com, and www.cigna.com/knowledge-center/.[2]  But they allege that Cigna used eight online analytic tools and web-enhancement technologies (Pinterest, Snapchat, The Trade Desk, LiveRamp, Demandbase, MediaMath, Google, and Meta) on these three webpages.  (*Id.* ¶ 5, Figs. 3-17.)[3]  Plaintiffs claim that The Trade Desk, LiveRamp, Demandbase, MediaMath, Pinterest, Snapchat, and Google each utilize a cookie[4] on one of these webpages that captures limited, non-sensitive information related to a visitor's general activity on the webpage, such as the URL visited, the user's operating system (*e.g.*, Windows 10, 64-bit (*id.* Fig. 3)), the user's web browser software and version (*e.g.*, Microsoft Edge version 134.0.0.0 (*id.*)), and the date and time of the visit (*e.g.*, Thursday, March 27, 2025, 19:41:44 GMT (*id.*)).[5]  In addition, Plaintiffs allege the Meta pixel can be embedded on a specific webpage, such as on www.cigna.com.  (*Id.* ¶ 254, Fig. 14.)  As alleged, the Meta Pixel's only function is to confirm that the user is present on the webpage.  (*Id.* ¶ 258.)  None captures sensitive information or PHI.

In the FAC, Plaintiffs include new allegations that Cigna embedded these Online Technologies on another public-facing webpage called the Knowledge Center, accessible at www.cigna.com/knowledge-center/.  (FAC ¶¶ 172-73, 209, 230, 246, 262-63.)  The Knowledge

---

[2] Plaintiffs define the "Website" at issue as www.cigna.com, including unidentified subpages and portals.  (*Id.* ¶ 3.)  Although the FAC also references my.cigna.com, this is a separate webpage from www.cigna.com and accessible only if users have registered and entered login information.

[3] Figures 3-17 in the FAC purport to be screenshots indicating that the Snapchat, The Trade Desk, LiveRamp, Demandbase, MediaMath, Google, and Meta technologies were allegedly deployed on www.cigna.com, and that the Pinterest technology was allegedly deployed on plans.cigna.com.  (*Id.*)  Both www.cigna.com and plans.cigna.com are public-facing webpages that any visitor can access without logging in.  (Cheung Decl. Exs. A, C.)

[4] As explained in Cigna's Privacy Notice that Plaintiffs consented to, "[a] cookie is a small alphanumeric identifier that is placed on [a website visitor's] browser when [the individual] visit[s] a website."  (Cheung Decl., Ex. E at 6.)

[5] (*See* FAC ¶ 185, Fig. 3 (The Trade Desk); *id.* ¶ 196, Fig. 4 (LiveRamp); *id.* ¶ 207, Fig. 5 (Demandbase); *id.* ¶ 218, Fig. 8 (MediaMath); *id.* ¶ 228, Fig. 9 (Pinterest); *id.* ¶ 243, Figs. 11, 12 (Snapchat); *id.* ¶ 261, Fig. 15 (Google).)

Center is a public-facing resource to "[f]ind helpful articles and information on a wide range of insurance and health care topics." (Cheung Decl. Ex. F.) Despite Plaintiffs' attempts to frame the Knowledge Center as a portal where users can enter sensitive personal or protected health information ("PHI"), the Knowledge Center is like an online wiki or encyclopedia with general information and resources on a variety of topics. (*Id.* (including generic sub-sections such as "Understanding Insurance," and "Understanding Medicare).) There are no data fields in the Knowledge Center for entering *any* personal information from users, let alone PHI. And Plaintiffs never allege that ***they*** accessed this public resource center at all.

### 2.    Allegations as to myCigna

Only Adobe is alleged to have been deployed in Cigna's "secure" user portal called "myCigna," which is accessible through a separate webpage (my.cigna.com) after a user has registered and entered their login information. (FAC ¶¶ 174-75, 268-82; *see* Cheung Decl. Ex. B.) The FAC does not include any specific allegations that the Adobe technology captured any of ***Plaintiffs'*** information, instead relying on hypotheticals such as, "[w]hen insureds like Plaintiffs search for medical conditions or providers . . . their searches are transmitted to Adobe in real time[.]" (FAC ¶ 273.) According to the FAC, the Adobe technology resolves to a Cigna domain, smetrics.cigna.com—not to Adobe. (*Id.* ¶¶ 174-75, 268.) And as explained in the Adobe resource cited in the FAC, the specific technology that is alleged, the Adobe Experience Platform, is used for enhancing consumer experience and providing analytics ***back to the website's host***, not for marketing purposes. (Cheung Decl. Ex. G.)

Just as Plaintiffs were on notice of and consented to Cigna's use of Online Technologies generally in the Privacy Notice, discussed in detail *infra*, Cigna also expressly discloses in its HIPAA Notice that business associates acting on Cigna's behalf, like Adobe, may provide services to consumers, and in doing so, are required by law and contract to protect the privacy of

sensitive information.  The HIPAA Notice makes clear that "[Cigna] may use and disclose

[users'] PHI to carry on [its] business planning and administrative operations" and that it partners

with business associates "so that they may help [Cigna] operate more efficiently."  (Cheung

Decl. Ex. H.)  Specifically, the HIPAA Notice provides:

> We arrange to provide some services through contracts with business associates
> so that they may help us operate more efficiently.  We may disclose your PHI to
> business associates acting on our behalf.  Business Associates are required by law
> and contract to protect the privacy of sensitive information.  If any PHI is
> disclosed, we will protect your information from unauthorized use and disclosure
> using confidentiality agreements.

(*Id.*)

### B.    Plaintiffs Consented to Online Technologies

Plaintiffs affirmatively and repeatedly consented to the use of Online Technologies on the

webpages at issue.

*First*, Plaintiffs affirmatively consented to Cigna's Terms of Use and Privacy Notice

when they registered for a myCigna account.  Plaintiffs allege that they are Cigna members

(FAC ¶¶ 2, 20) and that they utilize Cigna's password-protected patient portal, *i.e.*, the myCigna

portal (*id.* ¶¶ 19, 283-89, 295-96, 298).  To access the myCigna portal, Plaintiffs must have

consented both to Cigna's Terms of Use and Privacy Notice, which covers all webpages at

issue:[6]

---

[6] The Privacy Notice specifies that "this Privacy Notice may supplement, or be superseded by,
other applicable policies, practices, and notices that may relate to the specific relationship you
have with us."  (Cheung Decl., Ex. E at 1.)  The Privacy Notice includes a link to Cigna's other
incorporated privacy notices, including Cigna's HIPAA Notice.  (*Id.*)



(Cheung Decl., Ex. J (myCigna portal's registration page).)  Plaintiffs concede that Plaintiffs agreed to Cigna's Terms of Use:  "Plaintiffs used the Website and therefore accepted these Terms of Use and entered into a direct agreement with Defendants."  (FAC ¶ 48.)  By agreeing to the Terms of Use, Plaintiffs "confirm[ed] that [they] have read, understand, and acknowledge the Site's privacy notice(s)," including the Privacy Notice, which "describes [Cigna's] data collection, sharing, use and other privacy practices for the Site and is hereby incorporated by reference into these Terms of Use."  (Cheung Decl. Ex. D.)

Plaintiffs also concede that the Privacy Notice, incorporated into the Terms of Use, discloses Cigna's use of Online Technologies.  (FAC ¶¶ 310-15).  Specifically, the Privacy Notice states that Cigna "may use cookies, tags, and other tracking mechanisms to track information about your use of [Cigna's] Services, and to provide, customize, evaluate, and improve [Cigna's] Services."  (Cheung Decl., Ex. E at 6.)  The Privacy Notice goes on to explain that, in addition to cookies, Cigna uses "Clear GIFs, Pixel Tags and Other Technologies," and defines each of those technologies.  (*Id.*)

The Privacy Notice also notifies users that Cigna partners with "third-party ad networks, analytics, marketing partners, and others . . . to personalize content and display advertising" on Cigna's webpages.  (*Id.* at 7.)  Plaintiffs specifically agreed that Cigna "and these third-party ad

companies may use cookies, pixel[] tags, and other tools to collect browsing and activity information" from the webpages at issue, "as well as IP address, unique ID, cookie and advertising IDs, and other online identifiers." (*Id.*) Although Plaintiffs consented to the disclosure of limited record information to receive more relevant content based on their use of the webpages, Plaintiffs **do not** allege they received a single advertisement from Cigna connected to activity on any Cigna webpage. (*See generally* FAC.)

 *Second*, Plaintiffs also concede that the Privacy Notice is readily available in the footer of each page allegedly containing Online Technologies. (*Id.* ¶ 308.) Indeed, all relevant privacy disclosures, including the Privacy Notice and the HIPAA Notice, are contained within the "Privacy" and the "Terms of Use" hyperlinks that are conspicuous and available in the persistent footer, in white font on a bright blue background:



(Cheung Decl. Ex. A (footer on www.cigna.com); FAC ¶ 308.) A similar footer is found on myCigna. (Cheung Decl. Ex. B (footer on my.cigna.com with white font on grey background).)

 *Third*, Plaintiff Pham alleges he is a resident of California. (FAC ¶ 26.) Visitors to any Cigna webpage from a California IP address also encounter a pop-up cookie banner as soon as they land on the page. This persistent cookie banner once again unambiguously discloses the use of the Online Technologies at issue in the FAC. Upon landing at a Cigna webpage, a conspicuous banner pops up to inform the visitor that the webpage "use[s] cookies to enhance your website experience, analyze website traffic, and support our marketing efforts." (Cheung

Decl., Ex. I (cookie banner from California IP address).)  Visitors from a California IP address cannot navigate within Cigna's webpages until they engage with the banner.  (*Id.*)

## III.    LEGAL STANDARD

Under Rule 12(b)(1), a court should dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing.  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  Plaintiffs, as the party seeking to invoke the Court's subject matter jurisdiction, have the burden of establishing that such jurisdiction exists.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted).  A complaint must be dismissed for failure to state a claim under Rule 12(b)(6) where, as here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts establishing that a claim is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "[L]abels and conclusions" or "a formulaic recitation of the elements" do not suffice.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  If a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Parkell v. Markell*, 622 F. App'x 136, 141 (3d Cir. 2015) (per curiam) (allegations "equally consistent with lawful and [unlawful] behavior" are "insufficient to state a plausible claim").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  The

same is true for "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

### A.    Plaintiffs Fail to Establish Article III Standing

Plaintiffs lack Article III standing to bring this action because they fail to allege an injury in fact.  As a result, their FAC should be dismissed.

"To have standing, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456, 461 (3d Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).  To this end, in dismissing wiretapping claims for lack of standing, the court in *Delong* analyzed whether the alleged actions would be "highly offensive to a reasonable person," such as whether defendant made, and then broke, promises that it would not disclose plaintiff's information.  2025 WL 2447787, at *4 (citation omitted); *see also Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025).  Plaintiffs cannot meet this standard.

Here, the alleged use of Online Technologies was disclosed and consistent with Cigna's Terms of Use, Privacy Notice, and HIPAA Notice.  For the eight technologies allegedly deployed in Cigna's public-facing webpages, Plaintiffs assert only conclusory allegations that they "used" or "continue[] to use" the publicly-facing webpages "regularly," "frequently," on "multiple occasions," or on "numerous occasions."  (FAC ¶¶ 24-27.)  Moreover, as discussed above, Plaintiffs affirmatively agreed to Cigna's use of Online Technologies when they

registered for Cigna accounts, and also repeatedly received notice of such use through the policies hyperlinked on each webpage.  (Cheung Decl. Exs. E, J.)  Meanwhile, the only technology that Plaintiffs allege captured information from the authenticated portal was Adobe.  (FAC ¶¶ 283-89.)  But Plaintiffs make no allegation that Cigna's use of Adobe technology fell outside the scope of a HIPAA-compliant business associate agreement.  Plaintiffs' allegations thus are entirely consistent with conduct that Plaintiffs expressly agreed to when Plaintiffs agreed that Cigna may partner with business associates to provide services.  (Cheung Decl. Ex. H at 2.)  As Cigna explains, its business associates are "required by law and contract to protect the privacy of sensitive information."  (*Id.*)

This is in stark contrast to instances in which courts have found that website operators have created a reasonable expectation of privacy by promising not to disclose users' online activity and then broken those promises.  *See In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 324-25 (3d Cir. 2019) (*Google II*); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 293-95 (3d Cir. 2016); *Cook v. GameStop, Inc.*, No. 23-2574, 2025 WL 2250261, at *6 (3d Cir. Aug. 7, 2025) ("[T]he allegations in *Google II* and *Nickelodeon* were 'indistinguishable' from one another — and distinguishable from this case — because the 'plaintiffs alleged that a third party . . . tracked their personal internet browsing information in violation of the third party's own promises not to do so.'" (quoting *Google II*, 934 F.3d at 325)).  Unlike those cases, Plaintiffs here do not allege that Cigna broke any promises in its Terms of Use, Privacy Notice, or HIPAA Notice.  Plaintiffs have not alleged any cognizable harm.

Plaintiffs' conclusory allegations that Cigna's conduct caused Plaintiffs "loss of privacy, embarrassment, and greatly increased vulnerability to identity theft and fraud, as well as having their confidential financial information used for the benefit of [Cigna] and others" are wholly

insufficient to demonstrate concrete harm.  (FAC ¶ 20.)  The allegations are unsupported by factual allegations and are exactly the type of vague assertions that courts must disregard on a motion to dismiss.  *See Kury v. Abbott Labs., Inc.*, No. 11-803 FLW, 2012 WL 124026, at *6 (D.N.J. Jan. 17, 2012) (dismissing plaintiff's claim based on "conclusory and vague allegations that Plaintiff suffered damages, mental anguish and pain and suffering"); *Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *3 (3d Cir. Mar. 1, 2022) (courts should "disregard" "allegations that are 'so threadbare or speculative that they fail to cross the line between the conclusory and the factual'" on a motion to dismiss) (citation omitted).

Plaintiffs' vague allegations that Cigna "benefit[s] financially by obtaining and analyzing data that enables them to add new customers," (FAC ¶ 14), and that Cigna has "deprived Plaintiffs of the economic value of their data without providing proper consideration" (*id*. ¶ 406) cannot confer standing.  Plaintiffs do not allege that they were deprived of any economic value attached to their information, and diminution in the value of personal information—information allegedly captured from a *public* webpage or under a business associate agreement—cannot establish standing.  *See Fero v. Excellus Health Plan, Inc*., 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value.") (citation omitted).[7]

Because Plaintiffs challenge conduct that Cigna fully and accurately disclosed to

---

[7] *See also, e.g.*, *Gubala vs. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) (rejecting as "gibberish" plaintiff's theory that defendant's retention of his personal information "deprived Plaintiff of the full value of his transaction with Defendant" because "[defendant] did not take the plaintiff's personal information away from him; he still has it"); *Khan v. Children's Nat'l Health Sys*., 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting standing based on diminution in value theory because plaintiff did not "explain how the hackers' possession of that information has diminished its value, nor does she assert that she would ever actually sell her own personal information").

Plaintiffs and Plaintiffs have not alleged any cognizable harm, Plaintiffs' FAC should be dismissed in its entirety for lack of standing.

### B.    Plaintiffs' Claims Fail Because They Consented to the Activity at Issue

All of Plaintiffs' claims also fail because Plaintiffs repeatedly consented to the alleged conduct. Consent is a complete defense to any purported interception under ECPA and WESCA. 18 U.S.C. § 2511(2)(d); 18 Pa. Cons. Stat. § 5704(4). Consent does not require actual knowledge of recording—if "the person being recorded 'knew or should have known[] that the conversation was being recorded'" and proceeded to make the communication, the person is deemed to have consented by conduct. *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. Super. Ct. 2020) (finding no ECPA violation concerning recordings of jail visit conversations based on consent). The standard is one of a "reasonably intelligent person." *Id*. (citation omitted).

Consent is also dispositive of Plaintiffs' common law claims, which are each predicated upon the meritless theory that Cigna intercepted their communications without their consent. *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 121 (W.D. Pa. 2019) (stating that "[o]ne cannot intrude when one has permission" in the context of an invasion of privacy claim) (citation omitted); *Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa. Super. Ct. 2005) (finding that a patient's consent is an affirmative defense for breach of physician-patient confidentiality); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341-42 (E.D. Pa. 2012) (finding that consent of plaintiffs weighed against finding receipt of profits "unjust" in dismissal of unjust enrichment claim). "One who effectively consents to the conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for the harm resulting from it." *Schall v. Vazquez*, 322 F. Supp. 2d 594, 601 (E.D. Pa. 2004) (quoting Restatement (Second) Torts § 892A).

As Plaintiffs concede and outlined above (*see supra* § II.B), Plaintiffs expressly agreed to

Cigna's alleged use of Online Technologies when they registered for a myCigna account and agreed to Cigna's Terms of Use, Privacy Notice, and HIPAA Notice.  (*See* FAC Fig. 26; Cheung Decl. Ex. H.)  A contract entered into on the internet is enforceable if it puts a webpage visitor on inquiry notice of the page's terms.  *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 607 (E.D. Pa. 2025).  It is sufficient if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Id.* (citation omitted); *see also Del. River Waterfront Corp. v. Wellspring Software Inc.*, No. 22-1905, 2022 WL 17869139, at *4 (E.D. Pa. Dec. 22, 2022) (enforcing agreement that "presents users with a message on his or her computer screen, requiring the user to manifest his or her assent to the terms of the . . . agreement by clicking on an icon") (citation omitted).

Each Plaintiff expressly agreed to Cigna's use of the Online Technologies at issue when they registered for a myCigna account.  Each Plaintiff's registration manifested their agreement to Cigna's Terms of Use and privacy policies, including the Privacy Notice and HIPAA Notice. *See, e.g.*, *Checchia*, 771 F. Supp. 3d at 606 ("Thus if a website offers contractual terms to those who use the site, and a user engaged in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed.") (citation omitted); *Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-0648, 2024 WL 4476646, at *8 (E.D. Pa. Oct. 11, 2024) (plaintiffs agreed to terms where they "had to check a box indicating they 'have read, understand and agree to the [] Terms of Use and Web Privacy Statement,'" "[t]he text containing this affirmation [was] small but legible," and "the phrase 'Terms of Use' [was] marked in blue text as typically indicates a hyperlink").  Indeed, Plaintiffs concede that they agreed to the Terms of Use and incorporated privacy policies.  (FAC ¶¶ 47-48.)

Each Plaintiff again consented to the conduct at issue each time they accessed Cigna's webpages.  A recent ruling in a WESCA case in the Western District Court of Pennsylvania is exactly on point.  There, the court held that plaintiff consented to the technology at issue because defendant's privacy policy was hyperlinked to the bottom of each page of the defendant's website, as is "in line with common usage."  *Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-cv-450, 2025 WL 896938, at *10-11 (W.D. Pa. Mar. 24, 2025).  Specifically, the privacy policy was hyperlinked in the webpage's persistent footer, highlighted in white text against a blue background, and provided in the drop-down menu on the left side of the webpage.  *Id.*  Because the hyperlink was labeled "Privacy Statement," the court found that any webpage visitor "could have easily seen the link and understood exactly what it contained."  *Id.* at *10.

Here, like in *Popa*, the Privacy Notice and HIPAA Notice are accessible through the "Privacy" hyperlink conspicuously displayed on white text against a dark background in the persistent footers of www.cigna.com, plans.cigna.com, www.cigna.com/knowledge-center/, and my.cigna.com.  (*Compare supra* § II.B *with Popa*, 2025 WL 896938, at *10-11.)  As in *Popa*, each Plaintiff was provided with reasonable notice of the terms of the Privacy Notice and HIPAA Notice clearly hyperlinked on each of these webpages.  Thus, in addition to expressly consenting when each Plaintiff registered for a myCigna account, Plaintiffs repeatedly consented again each time they accessed and used Cigna's webpages, as they concede.  (*See* FAC ¶ 48 ("Plaintiffs used the Website and therefore accepted these Terms of Use and entered into a direct agreement with Defendants.").)

And Plaintiff Pham, a California resident, consented through yet another channel when he encountered the cookie banner that pops up for users associated with a California IP address. (*See id.*)  The pop-up notice is displayed to California users immediately upon landing on any of

Cigna's webpages, stating that "[Cigna uses] cookies and similar technologies to enhance your website experience, analyze website traffic, and support [its] marketing efforts" and providing a link to the Privacy Notice.  (Cheung Decl. Ex. I.)

Through any of these channels, Plaintiffs' consent is dispositive.  Conspicuously hyperlinked through the myCigna registration page, the footer of each Cigna webpage, and the pop-up, the Privacy Notice expressly disclosed that Cigna uses "third-party tools . . . to evaluate usage of [its] Services," and that "[t]hese third-party analytics companies use cookies, pixels, and other tracking technologies to collect usage data about [its] services to provide [Cigna] with reports and metrics that help [it] evaluate usage of [its] Services, improve [its] Services, and enhance performance and user experiences."  (Cheung Decl., Ex. E at 6-7.)  Because Plaintiffs' own allegations demonstrate that they agreed to the alleged collection of their information through the Online Technologies, each of Plaintiffs' claims fail.

## C.    Plaintiffs' ECPA Claim Fails on Multiple Grounds

### 1.    Cigna Was a Party to the Communications

To state a claim under ECPA, Plaintiffs must adequately allege that Cigna "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).  Consent by either party to the communication, however, is a complete defense to an ECPA claim.  *Id*. § 2511(2)(d).  As explained above, Plaintiffs consented to the activity to which they now object. (*Supra* §§ II.B, IV.B.)  But even if Plaintiffs' consent is not considered, Cigna's consent alone is sufficient to defeat the ECPA claim.

Courts across the country have recognized that the consent of one party to the communication (*i.e.*, a website host) is a complete defense to an ECPA claim based on the host's

use of an Online Technology.  *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 275 (dismissing ECPA claim against website operator because the operator was a party to the allegedly intercepted communications); *Allen v. Quicken Loans Inc.*, No. 17-12352 (ES) (MAH), 2018 WL 5874088, at *4 (D.N.J. Nov. 9, 2018) (same).  As the Third Circuit explained regarding similar claims against Viacom, as the owner of the website at issue, Viacom's consent to the use of Google's technologies on its own website defeated the ECPA claims against both Viacom and Google.  *In re Nickelodeon*, 827 F.3d at 274; *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2024 WL 1471299, at *4 (N.D. Cal. Apr. 3, 2024) ("Oracle's customers chose to deploy Oracle's tools on their websites, and it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'") (quoting 18 U.S.C. § 2511(2)(d)); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117-18 (S.D. Cal. 2023) (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 937-38 (N.D. Ill. 2023) (same); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (same).

Here, because Cigna was the intended recipient of any allegedly intercepted communications with its webpages, Cigna was necessarily a party to each communication.  By "embedding" the Online Technologies in its own webpages, Cigna consented to any alleged "interception" of its communications.  (FAC ¶¶ 5-7.)  Plaintiffs' ECPA claim must be dismissed.

### 2.    ECPA's Crime-Tort Exception Does Not Apply

Plaintiffs' reliance on the crime-tort exception to ECPA's single-party consent rule is unavailing.  To invoke the exception, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication **for the purpose** of a tortious or criminal act that is **independent** of the intentional act of recording."  *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3rd Cir. 2015) (*"In re Google"*) (citation omitted) (emphasis added).  Because Plaintiffs do not (and cannot) plead any such tortious or

criminal **_purpose_**, the crime-fraud exception does not apply. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *9 (N.D. Cal. Apr. 11, 2024) ("Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere . . . . [T]he 'criminal or tortious purpose must be separate and independent from the act of the recording [*i.e.*, the act of interception].'") (citations omitted); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) ("Alleged interceptions fall within the tort or crime exception only where 'the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously,' . . . [and] cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'") (citations omitted).

Although Plaintiffs suggest they have pled a separate HIPAA violation to satisfy the crime-tort exception, Plaintiffs do not plausibly allege any HIPAA violation. Their conclusory allegation that Cigna "use[d] or disclose[d]" "individually identifiable health information" in violation of HIPAA is unavailing. (FAC ¶ 339 (citing 42 U.S.C. § 1320d-6).)

HIPAA defines PHI as "[i]ndividually identifiable health information" ("IIHI"). 45 C.F.R. § 160.103. In turn, HIPAA defines IIHI as:

> [I]nformation that is a subset of health information, including demographic information collected from an individual, **_and_**: (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; **_and_** (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; **_and_** (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 CFR § 160.103 (emphasis added). Here, Plaintiffs fail to allege that Cigna disclosed any information that constitutes IIHI. Plaintiffs fail to identify **_any_** information from Plaintiffs at all—let alone their IIHI—that was allegedly disclosed on the public-facing webpages. (*See infra*

§ II.A.1.)  And as to myCigna, Plaintiffs Emrick, Pham, and Danielson similarly only vaguely allege that they used the portal to "find a provider," "search for prescriptions," "research health conditions," "research health topics," and "review [] health issues"—again, such generic searches and interactions do not constitute IIHI.  (FAC ¶¶ 284, 286-87.)

The same is true for Plaintiffs Adair and Recchia, who claim that in using myCigna, they disclosed unidentified "sensitive medical information" and an unidentified "medical condition." (*Id*. ¶¶ 283, 385.)  Plaintiffs, however, fail to allege that Cigna's alleged transfer of this unidentified information to Adobe—the only technology allegedly deployed on myCigna—fell outside a HIPAA-compliant business associate agreement.  45 C.F.R. § 164.502(e)(1).  HIPAA permits covered entities to disclose PHI to their business associates when a BAA is in place.  *See id.* § 164.502(e)(1)(i) ("A covered entity may disclose protected health information to a business associate and may allow a business associate to create, receive, maintain, or transmit protected health information on its behalf, if the covered entity obtains satisfactory assurance that the business associate will appropriately safeguard the information."); *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 39 (D.D.C. 2020) (explaining covered entities may share PHI with business associates); *Monarch Fire Prot. Dist. of St. Louis Cnty., Mo. v. Freedom Consulting & Auditing Servs., Inc.*, 678 F. Supp. 2d 927, 932 (E.D. Mo. 2009), *aff'd*, 644 F.3d 633 (8th Cir. 2011) (same).  Because Plaintiffs do not and cannot allege that the challenged disclosure to Adobe fell outside an appropriate BAA, Plaintiffs fail to allege any HIPAA violation and cannot satisfy the requirements of the crime-tort exception.

### 3.    Plaintiffs' Aiding and Abetting Theory Fails

Plaintiffs' theory that Cigna aided or procured Online Technologies providers to allegedly intercept metadata about Plaintiffs' non-sensitive communications or as business

associates is not actionable under ECPA.[8]  ECPA's private right of action creates a scope of civil liability that is narrower than the criminal liability codified in Section 2511.  18 U.S.C. § 2520. Section 2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of wire, oral, or electronic communication—not against any other person for procuring, enabling, or aiding and abetting another's interceptions.  *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (holding that there is no civil ECPA claim for "procur[ing]" or "aiding and abetting" an interception); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same).  When Congress enacted ECPA in 1986, it specifically excluded civil liability for procurement (or aiding and abetting), which had previously existed under the 1968 predecessor to ECPA.  *See Kirch*, 702 F.3d at 1246-47 (addressing the statutory distinctions between civil and criminal liability under ECPA).

Because ECPA does not provide a private cause of action against an entity that allegedly procured or aided and abetted another party to intercept a communication, Plaintiffs' ECPA claim against Cigna must be dismissed on this independent ground as well.

### D.    Out-of-State Plaintiffs Cannot Bring a Claim Under WESCA

#### 1.    Plaintiffs Fail to Allege Any Interception in Pennsylvania

Plaintiffs also cannot state a viable wiretapping claim under Pennsylvania law because

---

[8] Plaintiffs inconsistently allege that Cigna *and* the Online Technology providers were the interceptors of their communications, so the FAC should also be dismissed for failure to comply with Rule 8.  (*Compare*, *e.g.*, FAC ¶ 2) ("Plaintiffs seek damages and injunctive relief to redress **Defendants' unlawful interception** and misuse of this data.") (emphasis added), *with id.* ¶ 13 ("Defendants thereby permit the **Third-Party Vendors to intercept** Website users' private healthcare data.") (emphasis added).  Rule 8 requires a plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (citation omitted).  Without sufficient notice as to *which entity* allegedly intercepted Plaintiffs' communications, Cigna is unable to properly defend itself in this litigation.

they do not allege that the contents of their communications were "intercepted" in Pennsylvania. Despite their opportunity to amend their allegations in the FAC, Plaintiffs have added nothing to adequately allege that any purported "interceptions" occurred in Pennsylvania.

To state a claim under any prong under WESCA, Plaintiffs must allege that the contents of their electronic communications were *intercepted*.  18 Pa. Cons. Stat. § 5703.[9]  And that interception must occur within Pennsylvania's borders.  *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129-30 (3d Cir. 2022) ("Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly outside the Commonwealth[.]").  When it comes to Online Technologies, the Third Circuit has held that interception takes place where the communication is first routed to defendant's servers, which occurs at the location of the plaintiff's browser.  *Id*. at 131.  In *Popa*, the case proceeded because there was no question as to where the plaintiff was located when accessing defendant's webpage through their browser, and the plaintiff alleged that she was a Pennsylvania resident.  *See* Compl., *Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-cv-00450-WSS, ECF No. 1-2 ¶ 3 (W.D. Pa. 2019).  Not so here.

***None*** of the Plaintiffs reside in Pennsylvania—they claim to be residents of New York, Minnesota, Ohio, California, and Massachusetts.  (FAC ¶¶ 23-27.)  And they do not allege that they were in Pennsylvania when they accessed a Cigna webpage.  (*See generally* FAC.) Plaintiffs' WESCA claim must be dismissed because they do not allege that any "interception" occurred in Pennsylvania.  *See Ingrao v. AddShoppers, Inc.*, No. 24-1022, 2024 WL 4892514, at

---

[9] Section 5703 encompasses (1) intentional interception, (2) intentional disclosure, or (3) intentional use.  *Id*.  The first prong expressly requires an interception; the second and third prongs also require a predicate interception.  Under the "intentional disclosure" and "intentional use" prongs, a plaintiff must demonstrate that the defendant knows or has reason to know "that the information was obtained through the ***interception*** of a wire, electronic or oral communication."  *Id*. § 5703(2)-(3) (emphasis added).

*13 (E.D. Pa. Nov. 25, 2024) (dismissing WESCA claim premised on defendants' alleged use of web-enhancement technologies where plaintiff, a California resident, failed to allege that she accessed the webpage at issue from Pennsylvania).

### 2.    The Choice-of-Law Provision Does Not Change This Result

As out-of-state residents, Plaintiffs rely on a choice-of-law provision in Cigna's Terms of Use as a basis to assert claims under Pennsylvania law.  (FAC ¶¶ 62-63.)  Specifically, the Term's choice-of-law provision states:  "These Terms of Use and the Site Specific Terms shall be governed by and construed in accordance with the laws of the State of Pennsylvania, U.S.A., excluding its conflict of laws rules."  (Cheung Decl. Ex. D.)  This narrow provision does not expand WESCA to reach extraterritorial conduct.

"Pennsylvania courts analyze choice of law provisions to 'determine, based on their narrowness or breadth, whether the parties intended to encompass all elements of their association.'"  *Happy v. Marlette Funding, LLC*, 744 F. Supp. 3d 403, 410 (W.D. Pa. 2024) (citation omitted).  In *De Lage Landen Financial Services, Inc. v. Cardservice International, Inc.*, the court reviewed a choice of law provision requiring the parties' agreement be "governed by and construed in accordance with the laws of Pennsylvania"—the exact language in Cigna's Terms—and found the "operative terms" limited the provision's scope "to the interpretation and enforcement of the agreement" and did not encompass claims not directly related to the validity or construction of the agreement.  No. CIV. A. 00-2355, 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001).

Like in *De Lage*, Cigna's choice-of-law provision is narrow and does not suggest that Pennsylvania-specific privacy laws can be expanded to out-of-state Plaintiffs.  Where a choice of law provision is narrow, courts have found that the contractual provision does not manifest an intent to litigate all tort or statutory claims under Pennsylvania law, nor expand the scope of the

relevant statute.  *McDonald v. Wells Fargo Bank, N.A.*, 374 F. Supp. 3d 462, 478 (W.D. Pa.

2019).  Indeed, applying Pennsylvania law to the receipt of information in a foreign state would

raise significant Commerce Clause issues.  The Dormant Commerce Clause "prohibits state laws

that unduly restrict interstate commerce."  *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588

U.S. 504, 514 (2019).  Federal courts across the country have acknowledged the Commerce

Clause problems inherent in state-level internet regulation.  *See*, *e.g.*, *PSINet, Inc. v. Chapman*,

362 F.3d 227, 240-41 (4th Cir. 2004); *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103-04 (2d

Cir. 2003); *ACLU v. Johnson*, 194 F.3d 1149, 1161-63 (10th Cir. 1999).

  In *Doe I v. UPMC*, for example, the defendant, a large healthcare system, was accused of

violating Pennsylvania privacy laws, including WESCA.  No. 2:20-cv-359, 2020 WL 4381675,

at *7 (W.D. Pa. July 31, 2020).  The plaintiffs accused the defendant of causing communications

to its patient portal to be improperly redirected to third parties.  *Id*. at *1.  In ruling on a motion

to remand, the district court evaluated whether there were colorable federal defenses and

specifically examined whether the Dormant Commerce Clause offered a potential defense.  *Id*.

at *7.  It concluded that it did, noting that UPMC had providers and patients outside

Pennsylvania and that its website was interstate and international, so allowing "legislative

proscriptions of the Commonwealth's wiretapping and trade practices statutes" to restrict the

design and management of its website potentially violated the Dormant Commerce Clause.  *Id*.

In support, it cited the Second Circuit's decision in *American Booksellers Foundation*, 342 F.3d

at 103, to reason that "it is difficult, if not impossible, for a state to regulate internet activities

without project[ing] its legislation into other states."  *Id*. (citation omitted).  Here, the concerns

raised in *UPMC* are only amplified: the *UPMC* plaintiffs were residents of Pennsylvania, but

Plaintiffs here are not. Yet, Plaintiffs attempt to improperly wield a Pennsylvania statute to

impose restrictions on Cigna's nationally-utilized webpages. The Court should reject Plaintiffs' attempt to improperly expand WESCA's scope in a manner that would even more clearly interfere with interstate commerce in violation of the Dormant Commerce Clause.

**E.    The Court Should Dismiss Plaintiffs' Common Law Claims**

**1.    Plaintiffs' Allegations Do Not Justify the Extraterritorial Application of Pennsylvania Common Law**

As outlined above, the FAC's reliance on the choice-of-law provision in the Terms of Use is not sufficient to enable these out-of-state Plaintiffs to bring claims under Pennsylvania law. (*See supra* § IV.D.2.) Nonetheless, Plaintiffs purport to bring their common law invasion of privacy claim under Pennsylvania law. (FAC ¶ 397.) While they reference a Pennsylvania law recognizing a duty regarding patient confidentiality, Plaintiffs do not specify which state's law allegedly governs their breach of fiduciary duty and unjust enrichment claims. (*Id*. ¶ 412.) In any event, Plaintiffs cannot apply Pennsylvania law extraterritorially.

Consistent with the Third Circuit's holding that WESCA applies only to "interceptions" occurring at a user's browser in Pennsylvania, there is a presumption against the extraterritorial application of state law to "avoid running afoul of the Commerce Clause of the United States Constitution." *Blackman v. Lincoln Nat'l Corp.*, No. 10-6946, 2012 WL 6151732, at *4 (E.D. Pa. Dec. 10, 2012). Pennsylvania federal courts have thus made clear that forum selection and choice-of-law clauses do not govern common law claims between the parties—"[c]ontractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994).

Here, as explained above, nothing about Cigna's choice-of-law provision in the Terms of Use rebuts that presumption or suggests Pennsylvania law would apply to any of Plaintiffs'

common law claims.  The choice-of-law provision is a narrow one—it does not direct that

Pennsylvania law can be extended to out-of-state Plaintiffs' common law tort claims.  (*See supra*

§ IV.D.2.)  Plaintiffs' claims under Pennsylvania common law must be dismissed.[10]  And even if

they could assert such claims, Plaintiffs' common law claims fail for the reasons set forth below.

### 2. Plaintiffs Fail to State a Claim for Invasion of Privacy

To state a claim for common law intrusion upon seclusion[11] under Pennsylvania law, a

plaintiff must show that a defendant "intentionally intrude[d], physically or otherwise, upon the

solitude or seclusion of another or his private affairs or concerns," and that "the intrusion would

be highly offensive to a reasonable person."  *Popa*, 426 F. Supp. 3d. at 120 (quoting Restatement

(Second) of Torts § 625B).  In determining whether conduct would be highly offensive to a

reasonable person in the context of intrusion upon seclusion, courts look to whether the

information disclosed would have caused "mental suffering, shame, or humiliation to a person of

normal sensibilities."  *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 248 (Pa.

2002).  Plaintiffs fail to meet this standard.

*First*, intrusion upon seclusion must be dismissed if the alleged intrusion was carried out

by third parties.  In *Kurowski*, the court rejected the argument that a healthcare provider

---

[10] To the extent that Plaintiffs intended to assert common law claims under the laws of their
respective states, the FAC should be dismissed under Rule 8 because Plaintiffs failed to provide
notice of which state's laws they are purporting to invoke.

[11] "Under Pennsylvania law, invasion of privacy involves four separate torts:  (1) unreasonable
intrusion upon the seclusion of another; (2) appropriation of another's name or likeness for
commercial purposes; (3) publicity given to another's private life; and (4) publicity that
unreasonably places another in a false light before the public."  *Tagouma v. Investigative
Consultant Servs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (quoting *Doe v. Wyoming Valley
Health Care Sys., Inc.*, 987 A.2d 758, 765 (Pa. Super. Ct. 2009)).  Plaintiffs assert that an
invasion of privacy occurred because "Defendants intentionally intruded on Plaintiffs' private
life, seclusion, or solitude, without consent."  (FAC ¶ 401.)  Although they do not properly label
it as such, Plaintiffs appear to be attempting to plead an intrusion upon seclusion claim.

"intruded upon its patients' seclusion when it allowed third-party source code to collect the data [the plaintiff] alleges it later disclosed," holding that "[t]he actual intrusion upon patients' seclusion, via interception of their communications, [was] carried out by third parties." 659 F. Supp. 3d at 943-44; *see also Steinberg*, 899 F. Supp. 2d at 342-43 (finding no intrusion upon seclusion claim can be brought where defendant legitimately obtains information from a plaintiff, even if the facts are later disclosed to a third party). By Plaintiffs' own allegations, the alleged intrusion at issue was carried out by third parties, not Cigna. (*See*, *e.g.*, FAC ¶¶ 177 ("Defendants have embedded the tracking technology of Third-Party Vendor The Trade Desk on the Website in order to **enable the interception and collection** of users' private data and communications….") (emphasis added); 197 ("LiveRamp is another Third-Party Vendor for which Defendants have embedded tracking technology that ***enables LiveRamp*** to harvest the private data of users of Defendants' Website[.]") (emphasis added); *see id.* ¶¶ 199, 212, 220, 232, 248.) Because Plaintiffs allege that third parties, not Cigna, "intercepted" their data, their intrusion upon seclusion claim should be dismissed.

*Second*, Plaintiffs have not alleged conduct that is "highly offensive" to a person with ordinary sensibilities—they allege that Cigna uses Online Technologies that were disclosed to Plaintiffs (repeatedly) and to which they consented (repeatedly). *See Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383-84 (Pa. Super. Ct. 1984) ("There is [] no liability unless the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person.") (citing Restatement (Second) of Torts § 652B, comment d). Consent aside, Pennsylvania courts routinely hold that disclosure of health-related information is not sufficient to sustain a claim for intrusion upon seclusion. *See Yerger v. Landis Mfg. Sys., Inc.*, No. 88-7694, 1989 WL 66443, at *7 (E.D. Pa. June 16, 1989) ("Medical reports or brief

descriptions of common ailments or treatments are insufficient as a matter of law . . . ."); *accord Chicarella v. Passant*, 494 A.2d 1009, 1114 (Pa. Super. Ct. 1985) ("[T]he information disclosed by the hospital records is not of the sort which would 'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'"); *Adamski v. Johnson*, 80 Pa. D. & C. 4th 69, 75, 2006 WL 4129308 (Pa. Ct. Comm. Pleas 2006) ("There is no suggestion in the complaint that the description of Adamski's pending surgery would cause her mental suffering, shame or humiliation.").

Here, the type of information allegedly disclosed – keystrokes, mouse clicks, mere presence on a webpage, and generic references to "medical issues" or "providers" (FAC ¶¶ 283-89) in the context of a business associate agreement – do not constitute the type of "highly offensive" conduct that "would have caused mental suffering, shame[,] or humiliation to a person of normal sensibilities."  *Gerhart v. Energy Transfer Partners, L.P.*, No. 1:17-cv-01726, 2020 WL 1503674, at *26 (M.D. Pa. Mar. 30, 2020) (quoting *Pro Golf Mfg.*, 809 A.2d at 247); *see also Popa*, 426 F. Supp. 3d at 122 ("The act of collecting Popa's keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach.").

For all of these reasons, Plaintiffs' intrusion upon seclusion claim should be dismissed.

### 3.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

To establish breach of a fiduciary duty in Pennsylvania, a plaintiff must show "the existence of a fiduciary duty between the plaintiff and the defendant, and that defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit, and that the plaintiff suffered an injury cause by the defendant's breach of its fiduciary duty." *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023) (cleaned up).  Plaintiffs' claim fails each element.

Plaintiffs rely on Cigna's status as a covered entity to establish a fiduciary duty (FAC

¶ 410), but Pennsylvania courts have held that the relationship between an insurance company and its members does not impute the confidential relationship necessary to support a claim of fiduciary duty. *See Zimmerman v. Highmark, Inc.*, No. 2:23-cv-250-NR, 2025 WL 1220364, at *8 (W.D. Pa. Apr. 28, 2025) (dismissing a breach of fiduciary duty claim brought by insureds against their insurer based on allegations that their personal data was compromised); *Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 411 (E.D. Pa. 2019) (holding that life insurance company did not have fiduciary duty to insured despite allegations that the relationship was confidential and the company "held itself out as a guard keeper of its policyowner's private personal and sensitive information"). Like in *Transamerica*, Plaintiffs have not alleged that Cigna "had substantial decision-making control over [their] affairs" necessary to establish a fiduciary duty. 393 F. Supp. 3d at 411.

Faced with this flaw, Plaintiffs attempt to manufacture an alternative theory based on Cigna's obligations for handling medical records set out in various statutes. (FAC ¶ 412 (citing 28 Pa. Code § 115.27; [35] Pa. Stat. § 7607; 49 Pa. Code § 25.213(c)).) But Plaintiffs do not point to any authority establishing a private right of action under these statutes, and a statute that does not provide a private right of action cannot be the source of a duty necessary to support a breach of fiduciary duty claim. *See Bailey v. Hosp. of the Univ. of Pa.*, 266 A.3d 654, 2021 WL 4958772, at *7 (Pa. Super. Ct. 2021) (noting there is "no expressed right of action under 28 Pa. Code § 115.27" or under HIPAA, and, thus, those statutes cannot be the source of the duty owed to plaintiff in support of her negligence claim); *Zimmerman*, 2025 WL 1724924 (explaining that Pennsylvania does not recognize a claim for negligence *per se* based on statutes without a private right of action, and HIPAA does not provide a private right of action).

In addition, Plaintiffs fail to allege that they suffered an injury. Vague and generalized

allegations that an Online Technology could be used to capture personal information are not sufficient to plead an injury recoverable in tort. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024) (finding no injury where plaintiff provided no information "regarding what information she entered on Defendant's Public Website containing information-sharing browser plugins"); *B.K. v. Eisenhower Med. Ctr.*, No. 23-2092 JGB (KKx), 721 F. Supp. 3d 1056, 1064 (C.D. Cal. Feb. 29, 2024) ("Plaintiffs fail to allege what, if any, medical information or medical records were transmitted or disclosed."); *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) ("Kurowski's allegations are far too vague to allow an inference to be drawn that Rush was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata.").

### 4.    Plaintiffs Fail to State a Claim for Unjust Enrichment

"[T]o prove unjust enrichment, [a plaintiff] must show that '1) [they] conferred benefits on the defendant, 2) the defendant appreciated such benefits, and 3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value.'" *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 412, 415 (E.D. Pa. 2023) (dismissing claim of unjust enrichment because the benefit conferred "cannot be based on 'speculative' or 'intangible benefits'") (citations omitted). Plaintiffs fail to allege any specific allegations to support any of these elements. (*See* FAC ¶¶ 419-26.)

Courts regularly dismiss unjust enrichment claims where, like here, plaintiffs assert nothing more than vague allegations that plaintiffs conferred a benefit to defendant in the form of their personal information. *See, e.g.*, *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 279 (E.D. Pa. 2024) (dismissing unjust enrichment claim because "vague allegations that [the defendant] collected information for 'commercial gain' are not sufficient to state a claim for unjust enrichment") (citation omitted). In dismissing the unjust enrichment

claim in *Tignor v Energy Fund, Inc.*, for instance, the court noted that plaintiff did not confer a monetary benefit to defendant by providing her personally identifiable information.  745 F. Supp. 3d 189, 205 (W.D. Pa. 2024).  And the court expressly rejected plaintiff's "scatter-shot" approach filled with a "multitude of conclusory allegations in the hopes that at least one will prove persuasive."  *Id.*  As the court explained, "bare conclusions are not entitled to the assumption of truth," and "at this stage of the litigation, the Court is not compelled to accept unsupported conclusions and unwarranted inferences." *Id.*  The same is true here. Plaintiffs do not plausibly allege that Cigna retained any benefit at their expense because Plaintiffs do not show that they expended their own resources or that any purported value in their information was reduced.

Moreover, Plaintiffs' unjust enrichment claim fails because it is premised on the same baseless and insufficient allegations as the rest of their claims—*i.e.*, the purported disclosure of non-sensitive metadata or information under a business associate agreement to which Plaintiffs consented.  *See Pompa v. St. Luke's Hosp.*, No. 3:21-1378, 2023 WL 2332250, at *6 (M.D. Pa. Mar. 2, 2023) ("Defendants' unjust enrichment claim is based on the same wrongful conduct alleged in their first three counterclaims; those claims failed, so the unjust enrichment claim 'fall[s] with [them].'") (citations omitted).  Because the FAC "improperly relies on the general functionality of the [Online Technologies] and [their] hypothetical capacity to transmit sensitive information," Plaintiffs' claim for unjust enrichment must be dismissed.  *Stevens v. TD Bank, N.A.*, No. CV 24-8311 (RMB/AMD), 2025 WL 1779164, at *5 (D.N.J. June 27, 2025).

## V.    CONCLUSION

For the forgoing reasons, Cigna respectfully requests that the Court dismiss Plaintiffs' FAC in its entirety with prejudice.  They do not have standing, consented to the conduct at issue, and have failed to state a claim upon which relief may be granted.

Dated:  September 3, 2025

By:     /s/ Tiffany Cheung
        Tiffany Cheung

TIFFANY CHEUNG (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone:  (415) 268-7000
Email:  TCheung@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone:  (202) 887-1500
Email:  KDriscoll@mofo.com

ELISABETH HUTCHINSON (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, CO 80202-5638
Telephone:  (303) 592-1500
Email:  EHutchinson@mofo.com

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone:  (215) 564-8000
Email:  JNguyen@stradley.com
Email:  BGiroud@stradley.com

***Counsel for Defendants Cigna Corporate
Services, LLC and The Cigna Group***

## <u>CERTIFICATE OF SERVICE</u>

I, Tiffany Cheung, hereby certify that on September 3, 2025, the foregoing document was filed electronically with the Clerk of the Court using the ECF system.  This document is available for reviewing and downloading from the ECF system.

<u>  /s/ *Tiffany Cheung*  </u>

Tiffany Cheung