**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,

Defendants.

Case No. 2:25-cv-02384

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Judge: Hon. Wendy Beetlestone

Date Action Filed: May 9, 2025

# TABLE OF CONTENTS

Table of Authorities ... iv

Preliminary Statement ... 1

Background ... 3

I. Defendants' Use of Tracking Technologies to Intercept Plaintiffs' Communications ... 3

A. Defendants' Interception of Plaintiffs' Communications on Defendants' Website ... 3

B. Defendants' Interception of Plaintiffs' Communications in the myCigna Portal ... 4

II. Defendants' Interception of Plaintiffs' Private Health Data ... 4

III. Defendants Immediately Intercepted Plaintiffs' Data and Concealed Disclosures. ... 5

IV. Defendants' Incomplete and Inaccurate Purported Disclosures ... 5

V. Defendants' Inaccurate Public Statements Regarding Data Privacy ... 6

Arguments ... 7

I. Plaintiffs Allege Concrete, Particularized Injuries ... 7

A. Defendants' Unauthorized Interceptions of Plaintiffs' Private Health Data Constitute Concrete Injuries. ... 7

B. Defendants' Authorities That Do Not Concern Private Health Data Are Inapposite. ... 9

C. Defendants' Broken Promises Reinforce Standing ... 11

II. Plaintiffs Plausibly State Claims Upon Which Relief May Be Granted. ... 12

A. Plaintiffs Plausibly State an ECPA Claim ... 13

B. Plaintiffs Plausibly State a Claim for Intrusion Upon Seclusion. ... 15

C. Plaintiffs Plausibly State a Claim for Breach of Fiduciary Duty. ... 16

D. Plaintiffs Plausibly State a Claim for Unjust Enrichment. ... 18

III. Defendants' Residency and Territorial Arguments Fail. ... 19

A. Defendants' Own Terms of Use Require Application of Pennsylvania Law. ... 19

B. Controlling Authority Confirms that Pennsylvania Statutes May Apply to Non-Residents.... 20

C. Pennsylvania's Strong Interest in Regulating its Corporations .... 22

D. Situs of Interception Is a Factual Issue Inappropriate for Determination at the Motion-to-Dismiss Stage. .... 24

IV. Defendants' Consent Defense Is Premature and Baseless.... 24

A. Because Consent is Fundamentally a Factual Question, Defendants' Consent Argument Is Premature. .... 25

B. Defendants Cannot Establish WESCA Consent..... 26

V. Plaintiffs Adequately Allege Defendants' Interceptions Fall Within the Crime-Tort Exception. .... 28

Conclusion .... 30

Certificate of Service .... 32

# TABLE OF AUTHORITIES

**Cases**


*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24-1404, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sep. 9, 2024) .................................... 29

*Almond v. Janssen Pharms., Inc.*,
No. 20-2183, U.S. Dist. LEXIS 207900 (E.D. Pa. Nov. 6, 2020) ........................................... 21

*Arkema Inc. v. Maviro Catalyst, Inc.*,
No. 24-6130, 2025 U.S. Dist. LEXIS 87697 (E.D. Pa. May 8, 2025)...................................... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................... 12, 13

*Boring v. Google Inc.*,
362 F. App'x 273 (3d Cir. 2010) ........................................................................................ 15

*Borse v. Piece Goods Shop, Inc.,*
963 F.2d 611 (3d Cir. 1992)............................................................................................... 15

*Brahm v. Hosp. Sisters Health Sys.*,
No. 23-444, 2024 U.S. Dist. LEXIS 114827 (W.D. Wis. Jun. 28, 2024)............................... 18

*Braun v. Philadelphia Inquirer LLC*,
No. 22-4185, 2023 U.S. Dist. LEXIS 202528 (E.D. Pa. Nov. 13, 2023) ................................ 25

*Britton v. Whittmanhart, Inc.*,
No. 09-1593, 2009 U.S. Dist. LEXIS 71813 (E.D. Pa. Aug. 14, 2009) .................................. 20

*Brown v. Google LLC*,
685 F. Supp.3d 909 (N.D. Cal. 2023) .................................................................................. 11

*Castillo v. Costco Wholesale Corp.*,
No. 23-1548, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024)............................ 8

*Commonwealth v. Spangler*,
809 A.2d 234 (Pa. 2022) ..................................................................................................... 23

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)................................................................................. 29

*Danganan v. Guardian Protection Servs., Inc.*,
645 Pa. 181 (Pa. 2018)......................................................................................... 20, 21, 22

*Daubert v. NRA Grp., LLC*,
861 F.3d 382 (3d Cir. 2017)........................................................................................ 25

*Delong v. Phe, Inc.*,
No. 24-5212, 2025 U.S. Dist. LEXIS 164060 (E.D. Pa. Aug. 25, 2025) .................................. 9

*Doe I v. UPMC,*
No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020).............................................. 23

*Doe v. City of New York*,
15 F.3d 264 (2d Cir. 1994)........................................................................................... 10

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........................................................................ 26

*Doe v. Kaiser Found. Health Plan*,
No. 23-2865, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11, 2024)................................. 25

*Doe v. Post Acute Med, LLC*,
No. 24-547, 2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) .................................... 24

*Doe v. Tenet Healthcare Corp.*,
No. 23-1106, 2025 U.S. Dist. LEXIS 109134 (E.D. Cal. Jun. 9, 2025) .................................... 8

*Dukich v. Ikea US Retail LLC*,
No. 20-2182, 2021 U.S. Dist. LEXIS 7271 (E.D. Pa. Jan. 14, 2021)...................................... 21

*Farrell v. David Davis Enters., Inc.*,
No. 95-2986, 1996 U.S. Dist. LEXIS 481 (E.D. Pa. Jan. 19, 1996)........................................ 23

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ......................................................................... 11

*Frowen v. Blank*,
493 Pa. 137 (1981) .................................................................................................... 16

*Gay v. Garnet Health*,
No. 23-6950, 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024)................................. 8

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ........................................................................... 10

*In re Experian Data Breach Litig.*,
No. 15-1592, 2016 U.S. Dist. LEXIS 184500 (C.D. Cal. Dec. 29, 2016) ............................... 11

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 11

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 9

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.,*
846 F.3d 625 (3d Cir. 2017) .......... 8, 10

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 11

*In re Meta Pixel Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 25, 30

*In re NCB Mgtmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024) .......... 19

*In re Nickelodeon Consumer Priv. Litig.,*
827 F.3d 262 (3d Cir. 2016) .......... 7, 11, 12, 14

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.,*
934 F.3d 316 (3d Cir. 2019) .......... 7, 8, 11, 12, 28

*Ingrao v. Addshoppers, Inc.*,
No. 24-1022, 2024 U.S. Dist. LEXIS 214748 (Nov. 25, 2024) .......... 22

*James v. Global Tel*Link Corp.*,
852 F.3d 262 (3d Cir. 2017) .......... 26

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 26

*Kane v. University of Rochester*,
No. 23-6027, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) .......... 9

*Kruzits v. Okuma Mach. Tool Inc.*,
40 F.3d 52 (3d Cir. 1994) .......... 20

*Kurowski v. Rush Sys. for Health*,
No. 22-5380, 2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023) .......... 9

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .......... 14

*M.R. v. Salem Health Hosps. & Clinics*,
No. 23-1691, 2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024)..................................... 10

*McCown v. Fraser,*
327 Pa. 561 (1937)........................................................................................................... 17

*McTernan v. City of York,*
564 F.3d 636 (3d Cir. 2009)............................................................................................. 13

*Murphy v. Thomas Jefferson Univ. Hosps. Inc.*,
No. 22-4674, 2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) ................................ 29

*Nat'l Pork Producers Council v. Ross,*
598 U.S. 356 (2023)......................................................................................................... 23

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................................................................... 30

*Ott v. Goodwin*,
No. 14-785, 2018 U.S. Dist. LEXIS 50783 (M.D. Pa. Mar. 27, 2018) .................................. 15

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016)............................................................................................. 23

*Pennsylvania v. Navient Corp.*,
967 F.3d 273 (3d Cir. 2020)............................................................................................. 25

*Perloff v. Transamerica Life Ins. Co.*,
393 F. Supp. 3d 404 (E.D. Pa. 2019) ............................................................................... 17

*Phillips v. Cnty. of Allegheny,*
515 F.3d 224 (3d Cir. 2008)............................................................................................. 13

*Physicians Healthsource, Inc. v. Cephalon, Inc.*,
954 F.3d 615 (3d Cir. 2020)............................................................................................. 25

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)......................................................................................................... 23

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .................................................................. 19, 22, 24, 26, 27

*Popa v. Harriet Carter Gifts, Inc.*,
772 F. Supp. 3d 592 (W.D. Pa. 2025)...................................................................... 27, 28

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) .................................. 9, 10

*Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*,
809 A.2d 243 (Pa. 2002) ............................................................................................. 15, 16

*Putt v. Tripadvisor Inc.*,
No. 20-3836, 2021 U.S. Dist. LEXIS 12997 (E.D. Pa. Jan 25, 2021) .................................... 25

*Riganian v. LiveRamp Holdings, Inc.*,
No. 25-824, 2025 U.S. Dist. LEXIS 138122 (N.D. Cal. Jul. 18, 2025) ................................. 19

*Santoro v. Tower Health*,
No. 22-4580, 2024 U.S. Dist. LEXIS 74348 (E.D. Pa. Apr. 24, 2024) .................................. 13

*Smith v. Loyola Univ. Med. Ctr.*,
No. 23-15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. Jul. 9, 2024)..................................... 8

*Strong v. LifeStance Health Grp. Inc.*,
No. 23-00682, 2025 U.S. Dist. LEXIS 14601 (D. Ariz. Jan. 27, 2025) .................................... 8

*Styer v. Hugo*,
422 Pa. Super. 262 (1993)........................................................................................... 18

*Sweat v. Houston Methodist Hosp.*,
No. 24-775, 2024 U.S. Dist. LEXIS 108806 (S.D. Tex. Jun. 20, 2024).................................... 9

*T.D.H. v. Kazi Foods of New Jersey, Inc.*,
No. 5:23-cv-00634, 2023 U.S. Dist. LEXIS 122195 (E.D. Pa. July 17, 2023) ........................ 26

*Tignor v. Energy Fund, Inc.*,
745 F. Supp.3d 189 (W.D. Pa. 2024)............................................................................ 19

*Torchia v. Torchia*,
346 Pa. Super. 229 (1985)........................................................................................... 18

*Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*,
864 F. Supp.2d 301 (E.D. Pa. 2012) ............................................................................. 22

*Unisys Fin. Corp. v. U.S. Vision, Inc.*,
428 Pa. Super. 107 (Pa. 1993)...................................................................................... 22

*W.W. v. Orlando Health, Inc.*,
No. 24-1068, 2025 U.S. Dist. LEXIS 40038 (M.D. Fla. Mar. 6, 2025) ................................. 29

*Wolfson v. Lewis*,
924 F. Supp. 1413 (E.D. Pa. 1996) .......... 15
*Yenchi v. Ameriprise Financial, Inc.*,
639 Pa. 618 (2017). .......... 16, 17
*Young v. Kaye*,
443 Pa. 335 (1971) .......... 16
*Zimmerman v. Highmark, Inc.*,
No. 23-250, 2025 U.S. Dist. LEXIS 79813 (W.D. Pa. Apr. 28, 2025) .......... 17

**Statutes**

18 Pa. C.S. § 5703 .......... 22
18 Pa. C.S. § 5704(4) .......... 27
18 Pa. C.S. §§ 5701 et seq. .......... 1
18 U.S.C. § 2511 .......... 2
18 U.S.C. § 2511(1)(a) .......... 14
18 U.S.C. § 2511(2)(d) .......... 28
18 U.S.C. §§ 2511(c) .......... 15
18 U.S.C. §§ 2511(d) .......... 14
28 Pa. Code § 115. 35 .......... 18
28 Pa. Code § 115.27 .......... 18
42 U.S.C. § 1320d .......... 27
42 U.S.C. § 1320d-6 .......... 29
49 Pa. Code § 25.213(c) .......... 18
73 P.S. § 201-9.2(a) .......... 22
Pa. Stat. § 7607 .......... 18

**Regulations**

45 C.F.R § 164.508(a)(3) .......... 30
45 C.F.R. § 160.103 .......... 5, 10, 27, 29
45 C.F.R. § 164.508(c)(6)(vi) .......... 30

**Other Authorities**

Restatement (Second) of Torts § 652B .......... 15

## PRELIMINARY STATEMENT

In their memorandum supporting their motion to dismiss ("Mem."), Defendants do not, because they cannot, dispute that Plaintiffs' 92-page Amended Complaint ("FAC") alleges *extensive*, detailed facts supporting Plaintiffs' claims that Defendants surreptitiously intercepted their private health information, and provided this information to third parties for commercial gain. Instead, Defendants improperly urge the Court to resolve disputed factual questions in their favor at the motion-to-dismiss stage, and assert legal arguments that are directly contrary to controlling Third Circuit authority, entirely unsupported, or both. Because each of Defendants' arguments is without merit, the Court should deny Defendants' motion to dismiss.

*First*, Defendants' argument that Plaintiffs lack standing to bring claims that Defendant intercepted and disclosed their private health information is baseless. The Third Circuit has specifically held that the unauthorized interception and disclosure of electronic communications gives rise to concrete injuries, and federal courts throughout the country have overwhelmingly held that the disclosure of private health information confers Article III standing.

*Second*, Defendants' assertion that the Amended Complaint lacks "specifics," and that Plaintiffs have therefore failed to state claims upon which relief can be granted, ignores the Amended Complaint's 426 paragraphs of *highly* detailed factual allegations describing Defendants' misconduct. Among other things, these allegations include more than a dozen screenshots of source code showing that Defendants embedded tracking technologies from third parties into its website and customer portal, and used these technologies to harvest and disclose the private health information of individuals insured by Defendants' health plans. These and other allegations state plausible claims under Pennsylvania's Wiretapping and Electronic Surveillance Act, 18 Pa. C.S. §§ 5701 et seq. ("WESCA") and the Electronic Communications

Privacy Act, 18 U.S.C. § 2511 ("ECPA"), as well as for instruction upon seclusion, breach of fiduciary duty, and unjust enrichment.

*Third*, Defendants' position that only plaintiffs located in Pennsylvania can bring suit under WESCA, notwithstanding Defendants' terms of use that *require* the application of Pennsylvania law, is incorrect as a matter of law. Controlling Pennsylvania authority confirms that out-of-state plaintiffs may sue under Pennsylvania statutes where, as here, a choice-of-law provision selects Pennsylvania law and the defendant's misconduct occurs in Pennsylvania. At minimum, the question of where Defendants' interception of Plaintiffs' health information occurred is fact-intensive and inappropriate for resolution at the motion-to-dismiss stage.

*Fourth*, Defendants' purported defense that Plaintiffs consented to the interception of their highly sensitive personal health information is based wholly on factual questions that cannot be resolved on a motion to dismiss, which merely tests the adequacy of a complaint. The consent defense is thus premature at best. In any event, the purported disclosures on which Defendants' consent defense is premised do not in any way support Defendants' argument that Plaintiffs consented to the interception and disclosure of their private health information.

*Fifth*, Defendants' argument that Plaintiffs' ECPA claim must be dismissed because the statute's "crime-tort" exception does not apply is both groundless and inconsistent with the Amended Complaint, which plausibly alleges that Defendants' interception of Plaintiffs' confidential health information furthered other tortious acts. Defendants' attempt to suggest that it can escape ECPA liability based on agreements with the third parties to which Defendants improperly disclosed Plaintiffs' private health information is legally inaccurate, and ignores the fact that Plaintiffs never consented to Defendants' disclosure.

For these reasons, and those below, Defendants' motion to dismiss should be denied.

## BACKGROUND

### I. Defendants' Use of Tracking Technologies to Intercept Plaintiffs' Communications

Plaintiffs are insureds of Defendants' health plans whose electronic communications were surreptitiously intercepted by Defendants. FAC at ¶¶ 3–15. Between May 2023 and the present, Plaintiffs accessed Defendants' www.cigna.com website (the "Website") and the myCigna portal to manage their healthcare. *Id.* Plaintiffs allege that Defendants embedded on the Website and the myCigna portal tracking technologies – including tracking pixels and session replay code[1] – from certain third-party vendors (the "Third-Party Vendors"). *Id.* These tracking technologies captured Plaintiffs' private communications, including keystrokes, search queries, and portal activity ("Website Communications"), and transmitted data concerning Plaintiffs' communications to Defendants and the Third-Party Vendors. *Id.* at ¶¶ 176, 274–75, 313.

#### A. Defendants' Interception of Plaintiffs' Communications on Defendants' Website

Plaintiffs allege that the tracking technologies embedded on Defendants' Website allowed Defendants and the Third-Party Vendors to intercept the health-related communications of Plaintiffs and other individuals insured by Defendants' health plans. *Id.* at ¶¶ 171–282. For instance, when an insured individual entered a private query on the Website, Defendants' code captured the full search text, placed cookies on the individual's device to track subsequent activity, and assigned the individual's device a unique identifier – a digital "tag" that allowed Defendants and the Third-Party Vendors to monitor the individual's activities. *Id.* These tracking technologies allowed Defendants and the Third-Party Vendors to intercept confidential search

[1] A tracking pixel is a "a piece of code that tracks users' interactions with a website, including their pages visited, any buttons clicked, and the full text of any search queries entered." FAC at ¶ 235. Session replay is code that "logs and tracks *everything* a user does on a webpage, including mouse movements, clicks, scrolls, and taps[.]" FAC at ¶ 118.

queries and build profiles that followed insured individuals whenever they accessed Defendants' Website. *Id.* at ¶¶ 177–86, 187–98, 199–208, 212–19, 220–26.

In addition, Defendants employed session replay technology on their Website. *Id.* at ¶¶ 260–67. Unlike tracking pixels, which record discrete interactions, the session replay code that Defendants embedded recreated entire browsing session in real time, logging every keystroke, mouse movement, scroll, and click, and transmitting that private data to Defendants and the Third-Party Vendors. *Id.* This allowed Defendants and the Third-Party Vendors to covertly observe *all* health-related activities of insured individuals on Defendants' website. *Id.*

### B. Defendants' Interception of Plaintiffs' Communications in the myCigna Portal

Plaintiffs further allege that Defendants deployed additional tracking technology inside the myCigna portal for insured individuals. While this tracking technology appeared to send private health-related data to the "smetrics.cigna" domain, the "smetrics.cigna" domain actually transmitted Plaintiffs' confidential health-related information to Adobe, a Third-Party Vendor. Through such tracking, Defendants not only enabled third parties to collect and monetize sensitive information, but also benefited directly. The data intercepted from searches and portal interactions allowed Defendants to segment insureds into categories and refine its marketing strategies to increase enrollment and revenue. *Id.* at ¶¶ 176, 183, 192, 204, 216, 225.

## II. Defendants' Interception of Plaintiffs' Private Health Data

Plaintiffs allege that each Plaintiff was tracked in the ordinary course of managing his or her healthcare on the Website and in the myCigna portal, and that the intercepted information falls within the Health Insurance Portability and Accountability Act's ("HIPAA") definition of "protected health information." *Id.* at ¶¶ 283–89. This is because Plaintiffs allege that queries entered by insured individuals on the Website and myCigna portal are individually identifiable

and "relate[] to the past, present, or future physical or mental health condition of an individual; the provision of health care to an individual, or the payment for health care." 45 C.F.R. § 160.103; *id.* at ¶¶ 16, 278, 373. Plaintiffs further allege that the act of logging in and interacting with the myCigna portal constitutes protected health information, because it discloses that an identified individual has received or is receiving health benefits and services *Id.* at ¶ 270.

## III. Defendants Immediately Intercepted Plaintiffs' Data and Concealed Disclosures.

Plaintiffs allege that their health information was intercepted from the moment they loaded the Website, even before they logged into the myCigna portal. *Id.* at ¶¶ 2, 323–25. Plaintiffs thus allege that Defendants' interception of their health information occurred before they were given an opportunity to consent to Defendants' conduct, and that Defendants provided no opportunity to immediately opt out of tracking. *Id.* Plaintiffs further allege that, rather than displaying a "pop-up" when a user first begins interacting with the website, Defendants concealed its disclosures concerning its tracking, which were themselves incomplete and misleading, behind multiple hard-to-locate links. *Id.* at ¶¶ 308–10 n. 91. To access Defendants' deficient disclosures, Plaintiffs allege that a Website user was required to click through a series of links, download a PDF, and then scroll to page six of the PDF. *Id.*

## IV. Defendants' Incomplete and Inaccurate Purported Disclosures

Plaintiffs additionally allege that Defendants' purported disclosures are incomplete and inaccurate. Among other things, Defendants' purported disclosures merely state that Defendants work with "third-party ad companies" to "personalize content," without disclosing that page views, queries, and interactions are directly transmitted to Third-Party Vendors for profiling and ad targeting. *Id.* at ¶¶ 311–12. Additionally, Defendants' purported disclosures make incomplete references to "third-party tools;" do not identify recipients of confidential health data; and do not

reveal that the embedded tracking technologies transmit sensitive health data to third parties. *Id.* Defendants also do not inform Website users that the interception of their data occurs in connection with a range of health-related searches. *Id.* at ¶¶ 313–14.

Plaintiffs further allege that Defendants' purported disclosures are incomplete, are written using dense jargon (e.g., "clear GIFs," pixel tags," "web bugs"), and fail to plainly explain that Defendants intercept the sensitive health inquiries of their insured customers. *Id.* at ¶ 315. The purported disclosures further imply that any data obtained by Defendants are used for Defendants' own purposes, when in reality Plaintiffs' intercepted health information was used by Defendants *and* third parties, and Defendants' tracking technologies enable advertisers to target individuals across the Internet. *Id.* at ¶ 316. Defendants' purported disclosures do not mention HIPAA, do not explain that protected health information is intercepted, and do not disclose any right to restrict disclosure of that information. *Id.* at ¶¶ 319–22.

## V. Defendants' Inaccurate Public Statements Regarding Data Privacy

Plaintiffs allege that Defendants touted awards for "safeguarding consumer data and privacy" and promised a "secure and confidential digital experience." *Id.* at ¶ 290. Among other things, Defendants' "Legal and Privacy Information" page assured members that "[w]e value your trust in us and are committed to protecting your personal health information." *Id.* at ¶ 292. Insureds accessing the myCigna portal, additionally, were invited to "Get Access to Your Personal Health Information," a phrase that, along with password-protection and repeated references to "personal," reinforced Plaintiffs' reasonable expectations of privacy. *Id.* at ¶ 295–97. Even inside the secure myCigna portal, Defendants asserted that "[i]nformation is not shared with any third parties," while simultaneously tracking insureds' information through the tracking technologies described above and in Plaintiffs' Amended Complaint. *Id.* at ¶ 299.

## ARGUMENT

Defendants' motion to dismiss is wholly without merit. *First*, Plaintiffs unquestionably allege concrete, particularized injuries giving rise to Article III standing. *Second*, Plaintiffs' *highly* detailed and specific Amended Complaint plausibly alleges violations of WESCA and ECPA, breach of Defendants' fiduciary duties, unjust enrichment, and instruction upon seclusion. *Third* and *fourth*, Defendants' premature affirmative-defensive arguments regarding WESCA's applicability and Plaintiffs' consent are wholly inappropriate at the motion-to-dismiss stage, and, in any event, groundless. *Fifth*, Plaintiffs far more than sufficiently allege that they did not consent to Defendants' interception of their private health data under the crime-tort exception to ECPA.

### I. Plaintiffs Allege Concrete, Particularized Injuries

Under governing Third Circuit authority, Defendants' assertion that Plaintiffs have not alleged concrete injuries, and therefore lack standing, is legally incorrect. *Contra* Mem. at 10–13.

#### A. Defendants' Unauthorized Interceptions of Plaintiffs' Private Health Data Constitute Concrete Injuries.

As the Third Circuit has consistently recognized, unauthorized interceptions and disclosures of electronic communications constitute concrete injuries. *See, e.g.*, *In re: Google Inc. Cookie Placement Consumer Priv. Litig.,* 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262 (3d Cir. 2016) (disclosure of video-viewing data of children on the Nickelodeon website constituted concrete injury). "In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company

surreptitiously collects private data . . . is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise." *In re Google Cookie,* 934 F.3d at 325.

Plaintiffs allege *more* intrusive harms than those alleged in *In re Google Cookie* and *In re Nickelodeon*: the unauthorized capture and disclosure of Plaintiffs' private, protected health information, including search queries regarding highly sensitive medical issues. *See, e.g.*, FAC at ¶¶ 177–86, 187–98, 199–208, 212–19, 220–25, 273, 278. This alleged misconduct is unequivocally a concrete injury giving rise to Article III standing, as the Third Circuit and courts across the country have overwhelmingly found. *E.g.*, *In re Horizon Healthcare Servs. Inc. Data Breach Litig.,* 846 F.3d 625, 638–41 (3d Cir. 2017) (privacy invasion gave rise to Article III standing where healthcare insurer failed to safeguard protected health information); *Doe v. Tenet Healthcare Corp.*, No. 23-1106, 2025 U.S. Dist. LEXIS 109134, at *32 (E.D. Cal. Jun. 9, 2025) ("[Plaintiffs] each allege facts showing they used Defendants' Web Properties, submitted personal information, and Defendants invaded their privacy rights by disclosing their information to third parties without consent through the use of tracking technology[.]"); *Strong v. LifeStance Health Grp. Inc.*, No. 23-00682, 2025 U.S. Dist. LEXIS 14601 (D. Ariz. Jan. 27, 2025) (denial of motion to dismiss in case with nationwide class of mental health website users); *Castillo v. Costco Wholesale Corp.*, No. 23-1548, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) (denial of motion to dismiss in case with nationwide class of website users who reviewed or had prescriptions refilled on pharmacy website); *Gay v. Garnet Health*, No. 23-6950, 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024) (denial of motion to dismiss in case with class of website users with health website almost identical to Defendants' website, including an internal portal and search bars); *Smith v. Loyola Univ. Med. Ctr.*, No. 23-15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. Jul. 9, 2024) (denial of motion to dismiss in case with nationwide class

of healthcare provider's website users); *Sweat v. Houston Methodist Hosp.*, No. 24-775, 2024 U.S. Dist. LEXIS 108806 (S.D. Tex. Jun. 20, 2024) (denial of motion to dismiss in case with class of website users of the hospital, including public-facing portions of website); *Kane v. University of Rochester*, No. 23-6027, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) (denial of motion to dismiss in case with class of website users whose communications intercepted by Facebook tracking pixel); *Kurowski v. Rush Sys. for Health*, No. 22-5380, 2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023) (denial of motion to dismiss in case involving tracking inside the portal of a hospital system where patients viewed appointments or reviewed treatment results); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (motion to dismiss denied in case with health insurer whose website intercepted and tracked users' "duration spent on web pages, button clicks, viewed pages, and typed text or phrases").

### B. Defendants' Authorities That Do Not Concern Private Health Data Are Inapposite.

Defendants attempt to support their argument that Plaintiffs have not alleged concrete injuries by relying on two cases, *Delong v. Phe, Inc.*, No. 24-5212-JFM, 2025 U.S. Dist. LEXIS 164060 (E.D. Pa. Aug. 25, 2025), and *Popa v. Microsoft Corp.,* No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025). Mem. at 2, 10. But these (nonbinding) authorities are inapposite, because neither case involved health-related data or the disclosure of protected health information. *Delong* involved a retail website for adult toys, and the court found no injury from the disclosure of consumer browsing activity that could be "freely observed" in a "brick-and-mortar" store. *Delong*, 2025 U.S. Dist. LEXIS 164060, at *2. *Microsoft* involved an online pet supplies store, and again addressed only routine consumer browsing information, not private health-related information. *Microsoft*, 2025 U.S. App. LEXIS 21946, at *16 ("Indeed, the monitoring of Popa's interactions with [defendant's] website seems most similar to a store

clerk's observing shoppers[.]"). Unlike in those cases, the data at issue here includes protected health information relating to "the past, present, or future physical or mental health or condition of an individual." 45 C.F.R. § 160.103. And unlike retail transactions, visits to a physician and communications with a health insurer occur privately. For this reason, courts recognize that the unauthorized disclosure of private health information is more sensitive, causes concrete injury, and is governed by federal privacy standards. *E.g.*, *In re Horizon,* 846 F.3d at 638–41.

Significantly, moreover, Defendants have not cited a *single* decision in which allegations that private, protected health information was impermissibly tracked did not give rise to standing. This is because courts universally agree that private health data is sensitive information in which people have a reasonable expectation of privacy. *See, e.g.*, *M.R. v. Salem Health Hosps. & Clinics*, No. 23-1691, 2024 U.S. Dist. LEXIS 155513, at *16 (D. Or. Aug. 28, 2024) ("Congress and courts have consistently noted that personal medical information is among the most sensitive information that could be collected about a person."); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) ("Extension of the right to confidentiality to personal medical information recognizes there are few matters that are quite so personal as the status of one's health"). Even cases like *Microsoft* that have dismissed digital wiretapping cases in the retail sphere have recognized that the tracking of medical information and protected health information is different. *Microsoft*, 2025 U.S. App. LEXIS 21946, at *17 ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances [e.g., involving sensitive medical or financial information], Popa does not plausibly allege the infringement of any such privacy interest."); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 355 (E.D. Pa. 2023) (intercepted medical information *would* give rise to standing).

In any event, Plaintiffs *do* allege economic injuries: they allege that Defendants unjustly

enriched themselves by extracting commercial value from Plaintiffs' private health data. FAC at ¶¶ 9, 133, 204, 216, 322, 341; *see also In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 599–60 (9th Cir. 2020) (explaining how Facebook profited from intercepted data). And Defendants omit cases holding that the interception of sensitive health information gives rise to an economic injury. Mem. at 12; *see also e.g.*, *In re Facebook Internet Tracking*. 956 F.3d at 599–60 (supra); *Brown v. Google LLC*, 685 F. Supp.3d 909, 942 (N.D. Cal. 2023) (denying summary judgment where "Plaintiffs have shown that there is a market for their browsing data and Google's alleged surreptitious collection of the data inhibited plaintiffs' ability to participate in that market"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information.") (citing *In re Experian Data Breach Litig.*, No. 15-1592, 2016 U.S. Dist. LEXIS 184500, at *14 (C.D. Cal. Dec. 29, 2016) ("[A] growing number of federal courts have now recognized Loss of Value of PII [personally identifiable information] as a viable damages theory.")).[2]

### C. Defendants' Broken Promises Reinforce Standing.

Under Third Circuit authority, Defendants' inaccurate representations regarding their interception and disclosure of Plaintiffs' private health data support standing. *In re Google Cookie*, 934 F.3d at 325; *In re Nickelodeon*, 827 F.3d at 295. Defendants erroneously contend that this authority stands for the proposition that Plaintiffs must plead a "broken promise" regarding tracking to establish standing. Mem. at 11. No so; *In re Google Cookie* and *In re*

[2] Defendants attempt to cite an out-of-Circuit case, *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017), to assert that such data has no value, Mem. at 12, but *Fero* was an *accidental* data breach case where the court found that plaintiffs had not alleged that the at-issue data had even been used, and could only speculate as to the increased risk of identity theft. *Id.* at 753 (granting in part and denying in part motion to dismiss).

*Nickelodeon* both hold that surreptitious tracking *can* violate privacy expectations, and that a defendant's "broken promise" is just one fact that makes privacy expectations salient. *In re Google Cookie*, 934 F.3d at 325; *In re Nickelodeon*, 827 F.3d at 295.

Moreover, even if Defendants were correct that alleging a "broken promise" is required for Article III standing – which it is not – Plaintiffs have extensively alleged that Defendants broke their promises to Plaintiffs. This is because Plaintiffs allege that Defendants held themselves out as safeguarding insured individuals' confidential information, and limiting the disclosure and use of that information to narrow, health-related purposes, while simultaneously deploying undisclosed tracking technologies and harvesting highly sensitive, protected information. FAC at ¶¶ 290, 292, 295–97, 299 (alleging that Defendants, among other things, touted data-privacy awards, promised a "secure and confidential digital experience," and assured members' health information would not be shared). Accordingly, Plaintiffs have plausibly alleged that Defendants violated the promises they made to Plaintiffs, and that is more than sufficient to establish a reasonable expectation of privacy and cognizable injury at the pleading stage, even if pleading a "broken promise" were required. *In re Nickelodeon*, 827 F.3d at 295.

## II. Plaintiffs Plausibly State Claims Upon Which Relief May Be Granted.

Plaintiffs' allegations in the Amended Complaint plausibly state claims upon which relief may be granted. To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter" to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 requires only a "short and plain statement" that makes relief plausible. *Twombly*, 550 U.S. at 573.[3] This "'does not impose a probability requirement at the pleading

[3] While Rule 8 applies to the pleadings in this matter, even under a heightened pleading standard, such as that of Rule 9, Plaintiffs adequately allege the who (Defendants and the Third-Party Vendors), the what (tracking technologies like session replay and pixels), the where (Defendants' public website pages and myCigna portal), the when (since May 2023), and the how (capturing and transmitting health-related

stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.'" *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 550 U.S. at 556). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009).

Defendants' assertion that Plaintiffs' allegations lack "specifics," Mem. at 29–30, is demonstrably false. As one example, Plaintiffs include more than a dozen screenshots of source code that illustrates what data was transmitted to the Third-Party Vendors and precisely how text typed into search fields on Defendants' Website was sent to the Third-Party Vendors in real time. FAC at Figures 3–17, 20, 268–69, 273, 275–78; *cf. Santoro v. Tower Health*, No. 22-4580-JFM, 2024 U.S. Dist. LEXIS 74348 (E.D. Pa. Apr. 24, 2024) (dismissing claims where plaintiffs failed to plead any pages or searches actually transmitted). The Amended Complaint further includes screenshots of intercepted communications inside Defendants' portal to show how searching for medical procedures and reviewing claim details resulted in transmissions to Adobe. FAC at ¶¶ 288–89, 292, 295–97. These detailed allegations far more than adequately state each claim Plaintiffs assert.[4]

**A. Plaintiffs Plausibly State an ECPA Claim**

Plaintiffs plausibly allege that Defendants violated the ECPA by embedding tracking technologies on their Website that intercepted Website Communications in real-time and transmitted them to the Third-Party Vendors. Defendants' contention that that they cannot be liable under the ECPA because they were a "party" to Plaintiffs' Website Communications,

---

content). *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

[4] Defendants do not dispute that Plaintiffs have adequately alleged a violation of WESCA; rather, they contend that the Plaintiffs consented or are nonresidents of Pennsylvania. Mem at 1, 13, 15, 21.

Mem. at 19–21, is incorrect as a matter of governing law. This is because Defendants' "party" status does not immunize simultaneous third-party interception under ECPA Section 2511(1)(a), which makes it unlawful not only to "intercept" a communication but also to "procure[] any other person to intercept" an electronic communication. 18 U.S.C. § 2511(1)(a). Since procurement refers to the act of causing or arranging for another party to carry out the interception, a defendant that arranges for a third party to intercept a communication that the Defendant receives is subject to ECPA liability. *See In re Nickelodeon*, 827 F.3d at 276 n. 78 (acknowledging procurement as a valid theory of liability under the ECPA but finding it was pleaded in a conclusory manner). Here, Plaintiffs specifically allege, in extensive detail, not only that Defendants collected their own Website data, but that Defendants embedded tracking technologies that captured the contents of Plaintiffs' Website Communications in real time and transmitted that private information to the Third-Party Vendors. FAC at ¶¶ 171–282. At the pleading stage, this is far more than sufficient to proceed. *Luis v. Zang*, 833 F.3d 619, 638–39 (6th Cir. 2016) (procurement theory valid where defendant engaged in wiretap violation).

Nor do Plaintiffs allege that Defendants merely "aided" the interceptions of the Third-Party Vendors. *Cf.* Mem. at 19–20. Instead, Plaintiffs allege that Defendants *directly embedded* the at-issue tracking code on the Website. FAC at ¶¶ 5–12, 177, 187, 199, 212, 220, 248. That alleged conduct falls squarely within the ECPA's prohibition that renders liable any person who "intercepts, endeavors to intercept, or procures any other person to intercept" a communication. 18 U.S.C. § 2511(1)(a); *Zang*, 833 F.3d at 638–39. Plaintiffs' allegations that Defendants profited from their intercepted protected health information, FAC at ¶¶ 176, 183, 192, 204, 216, 225, also fit squarely within the ECPA's prohibition on using or disclosing the contents of communications with knowledge that they were unlawfully intercepted. 18 U.S.C. §§ 2511(c)–

(d); *Ott v. Goodwin*, No. 14-785, 2018 U.S. Dist. LEXIS 50783, at *35 (M.D. Pa. Mar. 27, 2018) ("[I]t must be established that there was an unlawful interception and that the defendant knew or had reason to know that the information obtained from that unlawful interception was in violation of the Federal Wiretap Act.").

**B. Plaintiffs Plausibly State a Claim for Intrusion Upon Seclusion.**

Contrary to Defendant's assertions, Mem. at 25, Plaintiffs adequately state a claim for intrusion upon seclusion. FAC at ¶¶ 396–408. Intrusion upon seclusion is the intentional intrusion, "physical[] or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611, 622 (3d Cir. 1992) (recognizing Restatement (Second) of Torts § 652B as the Pennsylvania standard); *see also Boring v. Google Inc.*, 362 F. App'x 273, 278–79 (3d Cir. 2010). Intrusion upon seclusion may occur through "(1) physical intrusion into a place where the plaintiff has secluded himself or herself; (2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns." *Borse,* 963 F.2d at 622. Generally, harms arising from intrusion upon seclusion involve invasions of privacy that disturb reasonable expectations of solitude, causing "mental suffering, shame[,] or humiliation" to "a person of ordinary sensibilities." *Id.* at 278-79 (quoting *Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.,* 809 A.2d 243, 247 (Pa. 2002) (citations omitted).

Plaintiffs have plausibly pleaded such an intrusion here. Plaintiffs allege that Defendants intentionally embedded tracking technologies within the Website and the myCigna portal designed to surreptitiously capture Plaintiffs' personal, and protected, health information. FAC at ¶¶ 290, 292, 295–97, 299; *Wolfson v. Lewis*, 924 F. Supp. 1413, 1419 (E.D. Pa. 1996) ("It may also be by the use of the defendant's sense, with or without mechanical aids, to oversee or

overhear the plaintiff's private affairs . . . [like] taping his telephone wires."). This conduct is plausibly "highly offensive to a reasonable person," because secretly diverting and then broadly disclosing to third parties private health-related interactions, including those occurring in a password-protected "secure" portal, is the kind of offensive intrusion that Pennsylvania law prohibits. *See Pro Golf*, 809 A.2d at 248 ("information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities").

### C. Plaintiffs Plausibly State a Claim for Breach of Fiduciary Duty.

Contrary to Defendants' claim that no fiduciary duty was owed to its own insureds, Mem. at 27–29, Plaintiffs adequately state a claim for breach of fiduciary duties. FAC at ¶¶ 409–17. A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing another's interests. *Young v. Kaye*, 443 Pa. 335, 342 (1971); *see also Frowen v. Blank*, 493 Pa. 137, 145 (1981) (a fiduciary duty "appears when the circumstances make it certain the parties do not deal on equal terms, but, on one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed"). Whether such a relationship exists is "fact specific and cannot be reduced to a particular set of facts or circumstances." *Yenchi v. Ameriprise Financial, Inc.*, 639 Pa. 618, 633 (2017). Once a fiduciary relationship is established, the burden shifts to the fiduciary to demonstrate that its conduct was "fair, conscientious, and beyond the reach of suspicion." *Young*, 433 Pa. at 342.

Here, Plaintiffs entrusted Defendants with their most sensitive medical and health information by using Defendants' Website and password-protected portal. FAC at ¶¶ 283–90, 292, 299. Defendants thereby occupied a position of superior knowledge and control: Plaintiffs could not monitor or direct how their information was handled, and they were dependent on Defendants to maintain the confidentiality of that information. *Id.* That is precisely the kind of relationship where trust and dependence by Plaintiffs justify a finding of fiduciary obligations.

*Yenchi*, 639 Pa. at 633 ("The unique degree of trust and confidence involved in these relationships typically allows for one party to gain easy access to the property or other valuable resources of the other, thus necessitating appropriate legal protections."). At the very least, the existence of a fiduciary relationship is a factual question that cannot now be resolved. *Id.* at 633.

The cases Defendants cite to argue that they either had no duty or did not breach any duty are readily distinguishable. *Zimmerman v. Highmark, Inc.*, No. 23-250, 2025 U.S. Dist. LEXIS 79813, at *2 (W.D. Pa. Apr. 28, 2025), involved an *accidental* data breach, where an employee of the defendant clicked on a "phishing" link that allowed hackers to gain access to a database of sensitive information. Mem. at 28. As the *Zimmerman* court emphasized, that was a negligent, one-time act, and not intentional self-dealing. *Id.* In contrast, Plaintiffs here allege a *systematic*, *intentional* practice of intercepting and monetizing Plaintiffs' highly sensitive health information through covert interception and tracking technologies. FAC at ¶¶ 3–22. Defendants, despite their fiduciary status, intentionally misused information entrusted to them by Plaintiffs, thereby abusing Plaintiffs' trust. *Id.*

*Perloff* (Mem. at 28) is also inapplicable. *Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404 (E.D. Pa. 2019). In *Perloff*, an insurer allegedly sent policy information to policy beneficiaries in violation of an insured's request to mail it to a different address. *Perloff*, 393 F. Supp.3d at 407. As in *Zimmerman*, the claims in *Perloff* arose from an *accidental* mishandling of data. *Id.* Here, in contrast, Defendants' deliberate tracking and monetization of Plaintiffs' sensitive health data was not a clerical issue but an intentional business practice that involved exploiting entrusted information to a fiduciary's advantage. FAC at ¶¶ 3–22; *see also McCown v. Fraser,* 327 Pa. 561, 569 (1937) (gifts obtained by abuse of trust and affection).[5]

---

[5] Though Defendants assert that there is no private right of action under statutes setting out Defendants' "obligations for handling medical records," Mem. at 28, Plaintiffs do not contend that 28 Pa. Code §

### D. Plaintiffs Plausibly State a Claim for Unjust Enrichment.

Plaintiffs adequately plead unjust enrichment. The elements of unjust enrichment in Pennsylvania are (1) benefits conferred on the defendant by the plaintiff, (2) appreciation of such benefits by the defendant, and (3) acceptance and retention of such benefits under circumstances pursuant to which it would be inequitable for the defendant to retain the benefit. *Styer v. Hugo*, 422 Pa. Super. 262, 267 (1993). Unjust enrichment focuses on the benefit to the defendant, not the diminution to the plaintiff. *Torchia v. Torchia*, 346 Pa. Super. 229, 233 (1985).

Defendants' assertion that Plaintiffs' unjust-enrichment allegations are "vague" or "speculative," Mem. at 12, are demonstrably false: Plaintiffs have pleaded detailed facts showing that Defendants affirmatively monetized Plaintiffs' confidential protected health information by transmitting it to Third-Party Vendors, who in turn used it to assist Defendants with profiling, targeted marketing, and analytics related to Plaintiffs. FAC at ¶¶ 176, 183, 192, 204, 216, 226. Further, Plaintiffs have alleged that Defendants obtained a substantial benefit by monetizing protected health information without compensating or adequately obtaining the consent of those whose data made that profit possible. *Id.* at ¶¶ 130, 176, 183.

Moreover, as noted above, courts have recognized that personal data, in particular protected health information that is protected by HIPAA, has independent economic value and that its misappropriation can sustain an unjust enrichment claim. *See, e.g.*, *Brahm v. Hosp. Sisters Health Sys.*, No. 23-444, 2024 U.S. Dist. LEXIS 114827, at *21 (W.D. Wis. Jun. 28, 2024) (monetization of personal health information adequately pleaded unjust enrichment);

115.27, 35 Pa. Stat. § 7607, and 49 Pa. Code § 25.213(c) are enforceable by private action. Instead, these statutes indicate a legislative determination that medical records and patient data must be safeguarded with the highest degree of confidentiality. These statutes illustrate how Defendants' role in collecting, storing, and using Plaintiffs' medical information placed them in a position of special trust, thereby giving rise to fiduciary duties, even if the statutes themselves do not supply an independent cause of action.

*Riganian v. LiveRamp Holdings, Inc.*, No. 25-824, 2025 U.S. Dist. LEXIS 138122, at *39 (N.D. Cal. Jul. 18, 2025) ("Because the [complaint] contains detailed factual allegations as to how LiveRamp [one of the Third-Party Vendors] has violated Plaintiffs' privacy rights to create a 'surveillance ecosystem' at the heart of its revenue generation without their consent, Plaintiffs have sufficiently stated a claim for unjust enrichment.").

Defendants' reliance on *In re NCB Mgtmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262 (E.D. Pa. 2024), Mem. at 29, is misplaced. That case involved allegations that defendants collected information for "commercial gain" without any allegation of actual use or profit. *Id.* at 278. Here, in contrast, Plaintiffs specifically allege Defendants' partnerships with the Third-Party Vendors, who tracked Plaintiffs' health-related communications in real-time for marketing and other specific commercial benefits. FAC at ¶¶ 9, 216, 240–41. Nor is this case comparable to *Tignor v. Energy Fund, Inc.*, 745 F. Supp.3d 189 (W.D. Pa. 2024), where the plaintiff speculated about "potential" value and had no allegations as to how personal information could be monetized. *Id.* at 206. The allegations here are in stark contrast. *See* FAC at ¶¶ 9, 216, 240–41.

## III. Defendants' Residency and Territorial Arguments Fail.

Plaintiffs' WESCA claims are properly before this Court because Defendants' own terms of use and controlling Pennsylvania and Third Circuit precedent compel application of WESCA to the interceptions at issue. Defendant's contrary position (Mem. at 20–23) is contrary to binding authority from the Pennsylvania Supreme Court and the Third Circuit. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132–33 (3d Cir. 2022) (situs of interception is a factual issue).

### A. Defendants' Own Terms of Use Require Application of Pennsylvania Law.

Defendants' terms of use expressly provide that disputes arising from use of the Website

and portals are governed by Pennsylvania law. FAC at ¶¶ 57–63.[6] Courts enforce such choice-of-law provisions. *E.g.*, *Kruzits v. Okuma Mach. Tool Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them"); *Britton v. Whittmanhart, Inc.*, No. 09-1593-JCY, 2009 U.S. Dist. LEXIS 71813, at *6 (E.D. Pa. Aug. 14, 2009) (applying a choice-of-law clause as written and applying Illinois law). And this Court recently held that a similar choice-of-law provision required application of Pennsylvania law. *Arkema Inc. v. Maviro Catalyst, Inc.*, No. 24-6130-WB, 2025 U.S. Dist. LEXIS 87697, at *16 (E.D. Pa. May 8, 2025) (Beetlestone, J.).

Here, because Defendants drafted and inserted the at-issue choice-of-law clause, they cannot credibly argue that Pennsylvania's wiretap statute is inapplicable. Accordingly, the governing law clause in Defendants' terms of use ("These Terms of Use and the Site Specific Terms shall be governed by and construed in accordance with the laws of the state of Pennsylvania, U.S.A.") requires applying WESCA. Mem. at 22 (quoting the governing law clause). No authority cited by Defendants suggests otherwise.[7]

### B. Controlling Authority Confirms that Pennsylvania Statutes May Apply to Non-Residents.

Defendants' argument that Plaintiffs WESCA claims are not properly before this Court is contrary to precedent from the Pennsylvania Supreme Court, which has confirmed Pennsylvania statutes apply to non-residents where a choice-of-law clause is present and the at-issue misconduct occurred in Pennsylvania. In *Danganan v. Guardian Protection Servs., Inc.*, 645 Pa. 181 (Pa. 2018), the Pennsylvania Supreme Court held that the Pennsylvania Unfair Trade

[6] Defendants admit that Plaintiffs agreed to these terms of use. Mem. at 7.
[7] Defendants cite *De Lage Landen Fin. Servs. v. Cardservice Int'l, Inc.*, No. 00-2355-JCW, 2001 U.S. Dist. LEXIS 9692, *8-9 (Jul. 11, 2001), but that case predates more recent contrary authority noted above, and, in any event, involved far narrower language than in Defendants' terms of use. FAC at ¶ 49.

Practices and Consumer Protection Law ("UTPCPL") applied to a Washington, D.C. resident whose transaction arose from conduct occurring in Pennsylvania. The plaintiff had contracted with Guardian, a Pennsylvania-based home security company, for monitoring services. *Id.* at 183. As part of that contract, he signed a service agreement governed by Pennsylvania law. *Id.* He later sought to cancel the contract and brought suit against Guardian. *Id.* at 184. Guardian argued that the UTPCPL was limited to Pennsylvania residents and an out-of-state customer could not invoke it. *Id.* at 195.

However, in reasoning that is directly analogous here, the Pennsylvania Supreme Court rejected Guardian's argument, holding that the UTPCPL is a statute that protects "the public at large" and applies to wrongful acts arising from Pennsylvania conduct. *Id.* at 186. What mattered to the Pennsylvania Supreme Court was that the defendant's conduct took place in Pennsylvania and the parties' agreement contemplated Pennsylvania law. Here, just as in *Danganan*, the combination of (1) a contract governed by Pennsylvania law and (2) conduct tied to Pennsylvania strongly supports application WESCA to out-of-state plaintiffs. Notably, federal courts have cited *Danganan* to reject residency-based attacks on Pennsylvania statutory claims. *See Dukich v. Ikea US Retail LLC*, No. 20-2182-HB, 2021 U.S. Dist. LEXIS 7271 (E.D. Pa. Jan. 14, 2021) (allowing Minnesota plaintiffs to represent a nationwide class in case arising under the UTPCPL); *cf. Almond v. Janssen Pharms., Inc.*, No. 20-2183-WB, U.S. Dist. LEXIS 207900 (E.D. Pa. Nov. 6, 2020) (Beetlestone, J.) (declining to apply *Danganan* to a common law medical monitoring tort claim *without* a choice-of-law provision).

Defendants cannot distinguish *Danganan* by asserting it should be limited to the UTPCPL because the UTPCPL and WESCA are construed with the same territorial scope and therefore apply similarly. *Danganan*, 645 Pa. 186–88. Again, the *Danganan* court held that the

UTPCPL applies to out-of-state plaintiffs because the statute regulates the conduct of persons engaged in trade in Pennsylvania: as the court found, the UTPCPL text covers "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes," 73 P.S. § 201-9.2(a), and "trade" and "commerce" are defined broadly so that Pennsylvania businesses cannot avoid liability merely because their unfair practices reached beyond state borders. *Danganan*, 645 Pa. 187–88. WESCA functions similarly, with its prohibitions applying to "any person" who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept" a communication, 18 Pa. C.S. § 5703, and its definitions of the terms "intercept" and "oral, wire, or electronic communications" lack in-state limitations. Defendants' contrary argument that only Pennsylvania residents may bring suit here, Mem. at 21, is not supported by WESCA or other authority. *See Harriet Carter Gifts*, 52 F.4th at 131-32 (situs of interception under WESCA is a factual question); *cf. Ingrao v. Addshoppers, Inc.*, No. 24-1022-JHM, 2024 U.S. Dist. LEXIS 214748, at *38 (Nov. 25, 2024) (granting dismissal at pleadings stage where, unlike here, there were no alleged facts tying situs to Pennsylvania). Nothing in the statute's text, or in any other controlling authority, limits WESCA's application to violations committed against Pennsylvania residents where a choice-of-law clause requires adjudication of any lawsuit in Pennsylvania. 18 Pa. C.S. § 5703.

### C. Pennsylvania's Strong Interest in Regulating its Corporations

Conversely, Pennsylvania has a strong interest in regulating the conduct of its corporations. *See Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp.2d 301, 312 (E.D. Pa. 2012) (applying Pennsylvania law to the defendant because "Pennsylvania's interest in regulating insurance contracts made in Pennsylvania, and issued to Pennsylvania corporations that transact all of their business from their Pennsylvania headquarters 'is paramount'"); *Unisys Fin. Corp. v. U.S. Vision, Inc.*, 428 Pa. Super. 107, 111 (Pa. 1993)

(affirming application of Pennsylvania law to a statute-of-limitations issue because "[t]he role of Pennsylvania in the instant litigation goes beyond that of the forum state to a state which has an interest in the protection of one of the parties, i.e., a corporate entity organized and existing pursuant to its laws"); *Farrell v. David Davis Enters., Inc.*, No. 95-2986-JRP, 1996 U.S. Dist. LEXIS 481, at *12 (E.D. Pa. Jan. 19, 1996) (holding "this case presents a 'false conflict' warranting the application of Pennsylvania law" because "[a]pplying the foreign law . . . would hamper Pennsylvania's interest in deterring tortious conduct by its resident corporations").

Defendants assert, wholly without support,[8] that WESCA violates the Dormant Commerce Clause (Mem. at 23), but WESCA is indisputably an exercise of the Pennsylvania's protection of private communications, not a regulation of commerce. *See Commonwealth v. Spangler*, 809 A.2d 234, 236 (Pa. 2022) ("General Assembly has enacted a comprehensive legislative scheme, [setting] forth specific requirements for the interception of communications"). Accordingly, this Court should decline Defendants' invitation to overrule WESCA. As the Supreme Court explained in *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023), the Dormant Commerce Clause analysis focuses on whether a state law discriminates against interstate commerce, and if not, whether it imposes a substantial burden under the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Because WESCA is evenhanded in applying to any actor who intercepts communications, WESCA does not meet this standard – and, nevertheless, Defendants cannot demonstrate any substantial

---

[8] Defendants cite to an order denying remand in *Doe I v. UPMC* to support their argument that WESCA violates the Dormant Commerce Clause. *Doe I v. UPMC,* No. 2:20-cv-359, 2020 WL 4381675, at *7 (W.D. Pa. July 31, 2020). Mem. at 23. *UPMC* supports no such conclusion. The *UPMC* court simply found that, because the Dormant Commerce Clause is federal law, and because it presents a defense that is "[could] reasonably be asserted," *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815 (3d Cir. 2016) (internal quotations omitted), UPMC raised a defense that supported denial of Plaintiffs' motion to remand.

burden in complying with it before any discovery has been taken.

### D. Situs of Interception Is a Factual Issue Inappropriate for Determination at the Motion-to-Dismiss Stage.

Additionally, Defendants' assertion that the at-issue interceptions occurred outside Pennsylvania is factually premature. In *Harriet Carter Gifts*, the Third Circuit explained that an interception occurs "where [the defendants] routed those communications to its own servers," which can include both the user's browser *and* the Defendants' infrastructure. 52 F.4th at 131–32. That is because, the *Harriet Carter Gifts* court noted, Pennsylvania courts have interpreted WESCA's "acquisition" requirement to mean that interceptions that occur at least *in part* within the Commonwealth are covered by WESCA, and that an acquisition may happen at *multiple* locations. *Id.* at 130. Here, Plaintiffs allege that Defendants deployed third-party tracking technologies that acquired their information at the point of transmission and through infrastructure tied to Defendants' operations and management of the Website in Pennsylvania. At a minimum, the question of where the interception occurred is a fact issue inappropriate for resolution at this time. *Doe v. Post Acute Med., LLC*, No. 24-547, 2025 U.S. Dist. LEXIS 26667 at *12 (M.D. Pa. Feb. 14, 2025) (denying motion to dismiss and finding that "Doe includes sufficient factual material to support the plausible inference that the intercept happened in Pennsylvania, where defendants maintain their respective principal places of business, and not Ohio, where he accessed the webpage").

## IV. Defendants' Consent Defense Is Premature and Baseless

Defendants' consent arguments fail because (1) consent is a factual question[9] more appropriate for adjudication on summary judgment, (2) Plaintiffs adequately allege crime-tort exceptions, and (3) Defendants, as a matter of law, cannot establish consent under WESCA.

[9] The cookie banner that Mr. Pham allegedly agreed to, although not pleaded in the Amended Complaint

### A. Because Consent is Fundamentally a Factual Question, Defendants' Consent Argument Is Premature.

Defendants' argument that Plaintiffs "consented" to the interception of Website Communications fails because it is axiomatic that consent is a factual question. *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 283 n.7 (3d Cir. 2020). Resolving such a fact-base defense at the motion-to-dismiss stage would be fundamentally improper. *See, e.g.*, *Braun v. Philadelphia Inquirer LLC*, No. 22-4185-JMY, 2023 U.S. Dist. LEXIS 202528, at *15 (E.D. Pa. Nov. 13, 2023) ("The question about whether Plaintiffs gave consent to disclosure under the PA Wiretapping Act would appear to be factual in nature – involving issues of factual dispute and interpretation [that are inappropriate to resolve before discovery]."); *Putt v. Tripadvisor Inc.*, No. 20-3836-GJP, 2021 U.S. Dist. LEXIS 12997, at *16 (E.D. Pa. Jan 25, 2021) (whether or not a browserwrap agreement is enforceable cannot be resolved at the motion-to-dismiss stage).

After discovery, Defendants' burden will be to prove consent. *See Daubert v. NRA Grp., LLC*, 861 F.3d 382, 390 (3d Cir. 2017) (acknowledging that the defendant is "required to prove [prior express consent] at trial"); *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 622–23 n.9 (3d Cir. 2020) (confirming that the defendant who "seek[s] to prove consent . . . must carry the burden of proof"). This inquiry may be fact-intensive, involving what a "reasonable person" would understand Defendants' statements meant. *See, e.g.*, *Doe v. Kaiser Found. Health Plan*, No. 23-2865, 2024 U.S. Dist. LEXIS 66733, at *18 (N.D. Cal. Apr. 11, 2024) ("there seem to be factual questions related to consent, including how a reasonable person would construe the statements made by Kaiser in its Privacy Statement"); *In re Meta Pixel Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) ("Meta's policies do not, however, specifically indicate that Meta may

---

and improperly introduced as factual evidence at the motion-to-dismiss stage by Defendants, is similarly vague in stating only that the Website "use[s] cookies to enhance your website experience, analyze website traffic, and support our marketing efforts." Mem. at 8–9.

acquire health data obtained from Facebook users' interactions with their medical providers' websites. Its generalized notice is not sufficient to establish consent.") (emphasis in original); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) ("How reasonable persons would interpret the totality of the disclosures has not been decided. Accordingly, the claims will not be dismissed for any defendant based on consent.").[10]

The Third Circuit's decision in *Harriet Carter Gifts* is instructive. 52 F.4th at 131–33. There, the Third Circuit emphasized that disputes about consent must be addressed on a developed record, and on this basis reversed summary judgment and remanded. *Id.*; *see also James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) ("Disney may have an argument that website users agreed to tracking when they used the website, but that is a question of fact that cannot be determined at the 12(b)(6) phase of the proceedings.").

In any event, Plaintiffs cannot have consented to something they did not see. *James v. Global Tel*Link Corp.*, 852 F.3d 262, 266–67 (3d Cir. 2017) (affirming the refusal to enforce agreement the class never saw before unlawful interception began). Defendants cannot rely on their purported disclosures to establish Plaintiffs' consent to Defendants' improper practices when the interception of Plaintiffs' Website Communications began immediately upon loading the Website and before Plaintiffs had any opportunity to review, much less affirmatively understand and consent to, Defendants' statements. *Id.*; FAC at ¶¶ 301–03.

### B. Defendants Cannot Establish WESCA Consent.

---

[10] Defendants' other fact-based assertions are likewise premature and improper. For example, Defendant argues that the only tool in the myCigna portal was Adobe and that it only analyzed "experience analytics" (Mem. at 5). Similarly, Defendants attach exhibits purportedly related to the Plaintiffs' alleged consent. Mem. at 2 (requesting judicial notice and describing exhibits). But it is fundamentally improper for a court to make findings of fact to resolve a motion to dismiss. *See T.D.H. v. Kazi Foods of New Jersey, Inc.*, No. 5:23-cv-00634, 2023 U.S. Dist. LEXIS 122195, at *10 (E.D. Pa. July 17, 2023) (drawing inferences to resolve contested facts is improper at the motion-to-dismiss stage).

Plaintiffs have more than adequately alleged they did not consent to Defendants' conduct for purposes of WESCA. This is because WESCA requires *all* parties to a communication to consent to a third party's interception of the communication. 18 Pa. C.S. § 5704(4) ("A person, to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception."). The generic disclosures that Defendants rely on, including a privacy policy behind a footer link and a cookie banner that references enhancing user experience, in no way inform Website users that their provider searches, condition lookups and research, or benefit-and-claims navigation will be transmitted to the Third-Party Vendors.[11]

Defendants misplace their heavy reliance on *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592 (W.D. Pa. 2025), a summary judgment decision following the Third Circuit's remand of the appellate case. *Harriet Carter Gifts*, 52 F.4th at 131–33 (remanding for an analysis of the disclosures). As an initial matter, Defendants fail to acknowledge that the *Harriet Carter Gifts* district court order was a *summary judgment* decision. *Harriet Carter Gifts*, 772 F. Supp. 3d at 596 (noting "additional discovery"). Further, that case is inapposite: *Harriet Carter Gifts* involved a retailer gift store website and a conspicuous privacy policy hyperlink that the court found sufficient to put *consumers* on notice of *ordinary retail tracking* (e.g., what items they put in their cart like popcorn or dog treats, or searches for certain products). *Harriet Carter Gifts*, 772 F. Supp. 3d at 598. In contrast, Defendants are HIPAA-regulated entities handling protected health information that is subject to heightened legal duties of confidentiality. 42 U.S.C. § 1320d et seq. (covered entities); 45 C.F.R. § 160.103 (business associate like website operator is covered). The interception and disclosure of private health information to data brokers and advertisers through the Third-Party Vendors without *written* and *signed* authorization is

[11] Defendants admit that the cookie banner was only presented to certain users. Mem. at 8.

expressly prohibited under HIPAA and regulatory guidance on tracking technologies. FAC at ¶¶ 152–60. Here, moreover, Defendants buried their privacy links in small font in a dense footer and failed to disclose that Website Communications would be transmitted in real-time to the Third-Party Vendors. *Id.* at ¶¶ 308–22. Defendants then misled users through statements about protecting data and by routing data through domains such as "smetrics.cigna" that actually resolved to third-party servers, creating the false impression that Plaintiffs' private communications remained on Defendants' servers while they were in fact diverted to third parties. *Id.* at ¶¶ 174–75, 271, 290–99. Finally, Plaintiffs had to register and sign in as *themselves* researching their *own* medical conditions in a "secure" portal, *id.* at ¶¶ 283–89; in *Harriet Carter Gifts*, in contrast, the court noted the anonymity of the browsing that the plaintiff undertook, and that the gift website had no secure portal and the plaintiff browsed it anonymously as a visitor. *Harriet Carter Gifts*, 772 F. Supp. 3d at 598. That precludes any finding of consent at this stage.

## V. Plaintiffs Adequately Allege Defendants' Interceptions Fall Within the Crime-Tort Exception.

Defendants' argument that Plaintiffs ECPA claim should be dismissed additionally fail because Plaintiffs sufficiently allege that Defendants' interceptions fall within the crime-tort exceptions of ECPA. ECPA allows interceptions with the consent of one party, but that provision does not apply if the interception was undertaken "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). The Third Circuit has explained that, to invoke this exception, the alleged purpose of the at-issue conduct must be tortious or criminal in a way that is independent of the act of interception. *In re Google Cookie*, 806 F.3d at 145. Here, Plaintiffs plausibly allege that Defendants' interceptions were carried out to further tortious acts, including violations of WESCA, intrusion upon seclusion, and the unauthorized disclosure of personal health information in violation of HIPAA's marketing restrictions. Additionally,

Plaintiffs allege that Defendants violated 42 U.S.C. § 1320d-6 of HIPAA, which makes it a federal crime to knowingly disclose individually identifiable health information[12] to third parties. FAC at ¶¶ 339, 374. At a minimum, this presents factual questions that are inappropriate for resolution on a motion to dismiss.

Moreover, although a small minority of nonbinding cases outside the Third Circuit have held that alleged HIPAA violations do not vitiate party consent to third-party interceptions, the overwhelming majority of courts have rejected that view and found consent no defense where the at-issue interception resulted in HIPAA violations. *See, e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps. Inc.*, No. 22-4674-CMR, 2024 U.S. Dist. LEXIS 177625, at *11 (E.D. Pa. Sep. 30, 2024) ("Courts have found the intention to violate HIPAA sufficient to invoke the crime-tort exception to the ECPA."); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-1404, 2024 U.S. Dist. LEXIS 161090, at *7 (N.D. Ill. Sep. 9, 2024) (allegations that defendant disclosed PHI for financial gain "in violation of 42 U.S.C. 1320d–6 [the same statute alleged in Plaintiffs' Amended Complaint] sufficient at pleading stage"); *W.W. v. Orlando Health, Inc.*, No. 24-1068, 2025 U.S. Dist. LEXIS 40038, at *23–24 (M.D. Fla. Mar. 6, 2025) (allegations plausibly support inference defendant "for commercial ends, intentionally disclosed" PHI in violation of HIPAA; denying motion to dismiss Wiretap Act claim); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (denying motion to dismiss because intentional disclosure of PHI constitutes a crime under HIPAA, with enhanced penalties for disclosures made for "commercial

[12] Individually identifiable health information is defined under HIPAA as information that is a subset of health information, including demographic information collected from an individual, and (1) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) that identifies the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual. 45 C.F.R. § 160.103.

advantage" or "personal gain"). In any event, HIPAA violations are but one category of tortious or criminal acts that Plaintiffs allege.

Defendants' attempted reliance on their "business associate" agreements with the Third-Party Vendors is also unavailing. Mem. at 19. HIPAA permits covered entities to share information with "business associates" for limited health care operations, but requires a *signed* patient authorization for marketing or analytics uses. 45 C.F.R. § 164.508(a)(3); (c)(6)(vi) ("Signature of the individual and date."). No such authorizations are present here. Furthermore, by embedding their improper tracking inside the myCigna portal, Defendants violated HIPAA's privacy rules by improperly disclosing personal health information to third parties. This violation occurred even if Plaintiffs had not done a single search, as patient status *itself* is protected health information under HIPAA, and Plaintiffs' logins confirmed that they are receiving or have received care. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081–82 (W.D. Wash. 2024) (stating, under HIPAA, "[a]s other Courts within this Circuit have acknowledged, the transmission of information submitted to a *private patient portal*—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information."); *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d at 799 ("patient status is protected health information" under HIPAA).

## **CONCLUSION**

This Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

Dated: October 6, 2025

s/ Andrew D. Schlichter
Nathan D. Stump (PA Bar No. 90169)
Jerome J. Schlichter (*pro hac vice*)
Andrew D. Schlichter (*pro hac vice*)
Alexander L. Braitberg (*pro hac vice*)
Chen Kasher (*pro hac vice*)
Sean M. Milford (*pro hac vice*)
Schlichter Bogard LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-5934 (fax)
jschlichter@uselaws.com
aschlichter@uselaws.com
abraitberg@uselaws.com
nstump@uselaws.com
ckasher@uselaws.com
smilford@uselaws.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October 2025, a true and correct copy of the foregoing document was filed via the Court's CM/ECF filing system and is available to all counsel of record through that system.

s/ Andrew D. Schlichter
Andrew D. Schlichter