**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,

Defendants.

Case No. 2:25-cv-02384

**DEFENDANTS CIGNA CORPORATE SERVICES, LLC AND**
**THE CIGNA GROUP'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Cigna Corporate Services, LLC and The Cigna Group (together, "Cigna") submit this Reply in support of their Motion to Dismiss the First Amended Complaint ("FAC").

## I. INTRODUCTION

Plaintiffs' theory of liability rests on two untenable positions: (1) that their protected health information ("PHI") was captured on Cigna's *public* websites, and (2) that Cigna's use of a HIPAA-compliant business associate agreement ("BAA") to conduct analytics within a secure, authenticated environment violates their privacy rights. Neither is plausible, and both fail as a matter of law. This is especially true because Plaintiffs consented—multiple times—to Cigna's use of cookies, pixels, and session replay tools ("Online Technologies") and to Cigna's sharing of PHI under HIPAA-compliant BAAs.

Plaintiffs cannot have it both ways. They cannot concede that they agreed to the Terms of Use while at the same time denying that they agreed to the collection of their information set forth in the Privacy Notice incorporated into the Terms. Cigna's Terms of Use and Website Privacy Notice ("Privacy Notice"), which incorporates the HIPAA Notice of Privacy Practices ("HIPAA Notice"), are presented together during registration and posted in the footer of each page of the website. A link to the Privacy Notice was further displayed prominently for all website visitors from California, including Plaintiff Pham, who had to engage with the website cookie banner notice before accessing the public webpages. Plaintiffs' consent is dispositive.

Plaintiffs' opposition does not address the fundamental flaws identified in Cigna's motion. None of their arguments cures the FAC's threshold jurisdictional and pleading deficiencies: they fail to allege any concrete injury; they cannot overcome their consent; their wiretapping claims remain barred by WESCA's territorial limits and ECPA's party-consent rule; and their common-law clams fail both independently and because they rely on the same deficient statutory claims.

## II. ARGUMENT

### A. Plaintiffs Fail to Allege Concrete, Particularized Injuries

Plaintiffs' reliance on *In re Nickelodeon* and *In re Google Cookie* to establish standing for their wiretapping claims is misplaced. In those pre-*TransUnion* cases, the Third Circuit found standing only where defendants had made specific representations that users' online activity would not be tracked and then violated those assurances. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 295 (3d Cir. 2016); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019). Here, by contrast, Cigna's Terms of Use and Privacy Notice disclosed Cigna's use of Online Technologies, and its HIPAA Notice disclosed Cigna's use of third-party service providers, including business associates. Plaintiffs consented to these disclosures through multiple channels. (ECF No. 45 ("Mot.") at 6-9.) Nor does *In re Horizon Healthcare Services Inc. Data Breach Litigation*, advance their position. 846 F.3d 625, 630 (3d Cir. 2017). That case involved a data breach and potential misuse of personal information, *see id.*, not the lawful, disclosed Online Technologies at issue here.

Equally unpersuasive is Plaintiffs' attempt to distinguish *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025), and *Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787 (E.D. Pa. Aug. 25, 2025), as cases concerning "retail" websites. Both decisions addressed the same type of harm alleged here and rejected it, holding that the use of Online Technologies to capture routine analytics data such as IP addresses, browsing behavior, or clicks on public websites does not create a concrete injury or "highly offensive" intrusion under Article III. *Delong* specifically noted that "most online activity is not entirely private" and that users have no reasonable expectation of privacy absent an explicit promise of confidentiality. 2025 WL 2447787, at *5-6. *Popa* likewise explained that the use of session replay technology on defendant's website was not "remotely similar" to the "highly offensive"

interferences or disclosures that were actionable at common law. *Popa*, 2025 WL 2448824, at *5. The same is true here. Plaintiffs cite cases involving the disclosure of sensitive medical information without consent, but their allegations here concern only general information available on a *public* website—not PHI—and analytics conducted within a HIPAA-compliant BAA, a lawful and routine practice. Critically, Plaintiffs consented, multiple times, to precisely this activity, undermining their argument of harm and reliance on the cited cases. (Mot. at 6-9.) There is no "highly offensive" conduct or concrete harm sufficient to confer standing here.

Nor do Plaintiffs allege any plausible disclosure of PHI. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("The data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history."). Their claim that they merely "loaded the website on their browsers" (FAC ¶ 2) and that Online Technologies allegedly deployed on Cigna's authenticated webpages *could have* captured their PHI is speculative, at best, given that there is no allegation that Adobe collected data outside a HIPAA-approved BAA. Speculation is not injury. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 894 (3d Cir. 2020) (rejecting speculative risk of harm in Article III standing analysis because there were no allegations of an actual injury). Their alleged loss of data value is likewise insufficient, as "courts have rejected allegations that the diminution of value of personal information can support standing." *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 799 (D.N.J. 2025) (citation omitted) (collecting cases). Because Plaintiffs have not plausibly alleged unlawful disclosure of medical information or concrete harm, they lack Article III standing. The case should be dismissed.

**B. Consent Bars Each of Plaintiffs' Claims**

Plaintiffs' argument that consent cannot be resolved at this stage is baseless—courts have long dismissed wiretapping claims on consent grounds at the pleading stage. (*Contra* ECF

No. 47 ("Opp.") at 24-25.) *See, e.g.*, *Smith*, 745 F. App'x at 9 (affirming dismissal of wiretapping claim where plaintiffs consented to data collection of publicly available information). And they continue to do so regularly, with prejudice. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025) (dismissing wiretapping claim with prejudice where plaintiff consented to defendant's use of Online Technologies); *Washington v. Flixbus, Inc.*, No. 3:25-cv-00212-H-MSB, 2025 WL 1592961, at *6 (S.D. Cal. June 5, 2025) (same). The same result should follow here. In their opposition, Plaintiffs concede that they agreed to Cigna's Terms of Use by using Cigna's website (FAC ¶ 48; Opp. at 20 n.6), and do not dispute that those Terms incorporate Cigna's Privacy Notice. Plaintiffs also accepted these terms when registering for and using the myCigna portal. (FAC ¶¶ 2, 19-20, 283-89, 295-96, 298; *see also* Mot. at 6-9; ECF No. 45-7.)

Attempting to avoid the implications of their consent, Plaintiffs claim that the Privacy Notice is "deficient." (Opp. at 5.) But contrary to Plaintiffs' argument, Cigna's Privacy Notice expressly discloses that Cigna:

- May collect "Personal Information," including "online identifiers" and "Internet or Network Activity Information such as browsing history, interactions with our website, Internet Protocol (IP) address" about website visitors "automatically when [they] use [Cigna's] Services" (ECF No. 45-6 at 3);
- May disclose Personal Information to third parties, including "analytics providers" and "Third-Party Ad Networks and Providers" who "may use cookies, JavaScript, web beacons (including clear GIFs), and other tracking technologies to measure the effectiveness of their ads and to personalize advertising content" (*id.* at 5-6); and
- "[M]ay use cookies, tags, and other tracking mechanisms to track information about your use of our Services" and partners with "third-party ad companies [that] may use cookies, pixel tags, and other tools to collect browsing and activity information within [Cigna's] Services (as well as on third-party websites and services)" (*id.* at 6-7).

These disclosures are more than sufficient to put Plaintiffs on notice of Cigna's use of Online Technologies. Additionally, the Privacy Notice also makes clear, on the very first page,

that "[i]n some circumstances, [Cigna's] collection and use of Personal Information will be subject to the requirements of . . . HIPAA," and refers members to the hyperlinked HIPAA Notice. (ECF No. 45-6 at 1.)

### C. WESCA Only Applies in Pennsylvania

Plaintiffs' argument that they, as out-of-state residents, can assert a claim under the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") hinges on a narrow choice-of-law provision and ignores binding Third Circuit precedent limiting WESCA to interceptions that occur within Pennsylvania. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022). The Third Circuit has held that for web-based technology, an interception occurs "where [the technology] routed those communications to its own servers," that is, at the location of the user's browser. *Id.* at 130-31. Because all Plaintiffs reside outside Pennsylvania and none alleges that they accessed Cigna's website from within the Commonwealth, their browsers were not located in Pennsylvania at the time of the purported interception. That fact alone defeats their WESCA claim. *See Ingrao v. AddShoppers, Inc.*, No. 24-1022, 2024 WL 4892514, at *13 (E.D. Pa. Nov. 25, 2024) (dismissing California resident's WESCA claim).

Cigna's contractual choice-of-law clause governs the interpretation of the agreement itself—not the extraterritorial reach of a state statute limited to interceptions in Pennsylvania. *See De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.*, No. 00-2355, 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001). Nor does *Danganan v. Guardian Protection Services* assist Plaintiffs. 645 Pa. 181 (2018). *Danganan* interpreted Pennsylvania's consumer protection statute, 73 Pa. Stat. Ann. § 201-3—not WESCA, a privacy statute limited to interceptions within the Commonwealth. *Compare id.* at 193-94 *with Popa*, 52 F.4th at 130-31. *Danganan*'s reasoning has no application to WESCA's territorial limits. Plaintiffs' attempt to sidestep the Third Circuit's controlling precedent should be rejected and their WESCA claim dismissed.

### D. ECPA's One-Party Consent Rule Forecloses Plaintiffs' Claim

Plaintiffs cannot escape the fact that Cigna's consent as a party to the communication bars their Electronic Communications Privacy Act ("ECPA") claim. *See* 18 U.S.C. § 2511(2)(d). Courts in this Circuit consistently hold that website operators, as recipients of online communications, are parties who may consent to alleged "interceptions." *In re Nickelodeon*, 827 F.3d at 275; *Allen v. Quicken Loans Inc.*, No. 17-12352 (ES) (MAH), 2018 WL 5874088, at *4 (D.N.J. Nov. 9, 2018) (dismissing ECPA claim, because "all relevant communications occurred on Quicken's Website, making Quicken the intended recipient (and a party) to the communications"). Plaintiffs argue that Cigna can be civilly liable under ECPA for "procuring" an interception. To so argue, Plaintiffs rely on a single footnote in *In re Nickelodeon* acknowledging that procurement may constitute a violation under section 2511(1)(a), the criminal provision of the statute not asserted here. 827 F.3d at 276 n.78. They ignore the Third Circuit's key holding that the one-party consent rule applied because "Google was either a party to all communications with the plaintiffs' computers or was permitted to communicate with the plaintiffs' computers by Viacom, who was itself a party to all such communications." *Id.* at 274.

Plaintiffs' procurement theory also fails as a matter of statutory construction. The civil cause of action (section 2520(a)) omits the "procurement" language included in the criminal provision (section 2511). *See* 18 U.S.C. §§ 2511, 2520(a). Plaintiffs cite no authority recognizing "procurement" liability in a civil ECPA action—and for good reason. Courts have declined to extend civil liability beyond the statute's plain text. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247 (10th Cir. 2012); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000). Plaintiffs' own citation even recognizes as much. *See Luis v. Zang*, 833 F.3d 619, 638 (6th Cir. 2016) (discussing analysis in *Peavy*).

Plaintiffs' alternative argument—the crime-tort exception—is equally unavailing. *In re*

*Nickelodeon* reaffirmed that this exception applies only when the alleged interception was undertaken with an independent tortious or criminal purpose, separate from the interception itself. 827 F.3d at 275-76. Plaintiffs' reliance on alleged HIPAA violations does not meet that standard. To qualify, Plaintiffs must plausibly allege that Cigna's primary purpose in deploying Online Technologies was to commit a criminal or tortious act, not simply to operate its websites. *See McManus v. Tufts Med. Ctr., Inc.*, No. 25-cv-10008-ADB, 2025 WL 2778025, at *4 (D. Mass. Sept. 29, 2025) (dismissing ECPA claim against covered entity under party exemption for "fail[ure] to plausibly allege that [defendant's] 'intent to commit a criminal or tortious act' was its 'primary motivation' or a 'determinative factor' in its decision to record health care consumers' communications" (citation omitted)); *see also Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-CV-00382-KDB-SCR, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (same); *Goulart v. Cape Cod Healthcare, Inc.*, No. CV 25-10445-RGS, 2025 WL 1745732, at *4 (D. Mass. June 24, 2025) (same).

Plaintiffs further attempt to salvage their misplaced reliance on the crime-tort exception by arguing that Cigna's BAA with Adobe is irrelevant and that a "signed patient authorization" is required for a business associate to support marketing or analytics. That argument is wrong and, in any event, does not show the required tortious purpose to invoke the crime-tort exception. (*Contra* Opp. at 30.) Patient authorization is ***not*** required for analytics activities that fall within HIPAA's definition of "health care operations." 45 C.F.R. §§ 164.501, 164.506.[1] Nor is authorization required for communications by Cigna to its members about its own health-related

[1] U.S. Dep't of Health & Human Servs., *Uses and Disclosures for Treatment, Payment, and Health Care Operations*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/disclosures-treatment-payment-health-care-operations/index.html (last accessed Oct. 20, 2025).

products or services through a business associate. 45 C.F.R. § 164.501.[2] Plaintiffs nowhere allege that Cigna's use of Adobe's analytic tools exceeded the scope of a HIPAA-compliant BAA, and they identify no communication from Adobe (or any other technology provider) concerning their use of Cigna's services.

Because Plaintiffs allege no facts suggesting that Cigna's purpose in deploying Online Technologies was to violate HIPAA, or that there was a plausible HIPAA violation, their ECPA claim fails as a matter of law under the one-party consent exception.

### E. Plaintiffs' Common-Law Claims Fail

#### 1. There Was No Highly Offensive Conduct or Intrusion Upon Seclusion

Plaintiffs insist that the use of Online Technologies on Cigna's webpages constitutes a "highly offensive" intrusion because the webpages involve "health-related" data. But the Pennsylvania Supreme Court has held that an intrusion must cause "mental suffering, shame or humiliation to a person of ordinary sensibilities." *Pro Golf Mfg., Inc. v. Tribune-Review Newspaper Co.*, 570 Pa. 242, 248 (2002). Plaintiffs ignore Pennsylvania cases holding that the disclosure of health-related information does not meet this standard. *See Yerger v. Landis Mfg. Sys., Inc.*, No. 88-7694, 1989 WL 66443, at *7 (E.D. Pa. June 16, 1989) (finding that disclosure of basic health information is not harmful or offensive to a reasonable person), *aff'd*, 924 F.2d 1050 (3d Cir. 1990); *accord Chicarella v. Passant*, 343 Pa. Super. 330, 339 (1985) (noting that "brief descriptions of appellant's medical treatment cannot be deemed a substantial intrusion").

Consistent with this precedent, numerous courts have rejected similar claims based on the routine use of Online Technologies, holding that the collection of website activity is not "highly

---

[2] *See*, *e.g.*, U.S. Dep't of Health & Human Servs., *Marketing*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html (last accessed October 20, 2025) (explaining "exception to the marketing definition permit[ting] communications by a covered entity about its own products or services").

offensive" conduct. *See, e.g.*, *Beltran v. Drs. Med. Ctr. of Modesto*, No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467, at *7 (E.D. Cal. June 9, 2025) (dismissing invasion of privacy claims premised on "conclusory" allegations that disclosure of medical data is highly offensive); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1088 (W.D. Wash. 2024) (holding that disclosure of voluntarily provided medical information could not support intrusion claim); *see also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023) ("the collection and disclosure of a website visitor's activity does not constitute the highly objectionable conduct needed to state a claim"), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025); *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122 (W.D. Pa. 2019) (same).

Finally, Plaintiffs do not offer any meaningful response to the fact that they cannot bring a claim for intrusion upon seclusion for conduct to which they consented. *See Popa*, 426 F. Supp. 3d at 121 (stating that "[o]ne cannot intrude when one has permission" in the context of an invasion of privacy claim (citation omitted)).

### 2. Cigna Does Not Owe Plaintiffs a Fiduciary Duty

Contrary to Pennsylvania law, Plaintiffs contend that Cigna owes fiduciary duties to insureds because they "entrusted" Cigna with their data. (Opp. at 16.) Multiple courts have rejected this argument. For instance, in *Zimmerman v. Highmark, Inc.*, the court held that even if a healthcare provider owes a duty to safeguard information for purposes of a negligence claim, that duty does not give rise to a fiduciary duty. 780 F. Supp. 3d 588, 602-04 (W.D. Pa. 2025), *certificate of appealability denied*, No. 2:23-cv-250-NR, 2025 WL 1724924 (W.D. Pa. June 20, 2025). An insurer-insured relationship, standing alone, is not enough to establish the "requisite confidential relationship." *Id.* at 604. The same result followed in *Perloff v. Transamerica Life Insurance Co.*, where the court rejected an identical theory and found no fiduciary duty even though the defendant "held itself out as a guard keeper of its policyowner's private personal and

sensitive information." 393 F. Supp. 3d 404, 411 (E.D. Pa. 2019).

### 3. Cigna Was Not Unjustly Enriched

Plaintiffs assert that Cigna was unjustly enriched by "monetizing" user data but identify no cognizable benefit they conferred or any resulting inequity. Repeating the same conclusory allegations that Cigna used Plaintiffs' data for marketing is insufficient. *See, e.g.*, *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 278 (E.D. Pa. 2024) (finding "vague allegations that [defendant] collected information for 'commercial gain' are not sufficient to state a claim for unjust enrichment" (citation omitted)).

Plaintiffs do not cite a single Pennsylvania nor Third Circuit case in support, other than to outline the elements of the claim. (Opp. at 18-19.) The cases that Plaintiffs do cite are mischaracterized. In *Brahm v. Hospital Sisters Health System*, the court allowed an unjust enrichment claim only on a theory of overpayment, *not* because defendant allegedly monetized plaintiff's PHI. No. 23-cv-444-wmc, 2024 WL 3226135, at *8 (W.D. Wis. June 28, 2024). Further, *Riganian v. LiveRamp Holdings, Inc.*, involved a technology provider accused of creating a "surveillance ecosystem" without user consent—a scenario far removed from Cigna's disclosed and consented-to use of Online Technologies. No. 25-cv-00824-JST, 2025 WL 2021802, at *13 (N.D. Cal. July 18, 2025).

Plaintiffs' unjust enrichment claim therefore fails as a matter of law—lawful, disclosed conduct is not unjust. *See Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341-42 (E.D. Pa. 2012) (sale of plaintiffs' patient information not unjust where plaintiffs disclosed information as part of mutually beneficial business relationship for fulfillment of prescriptions).

## III. CONCLUSION

For the reasons stated above and outlined in Cigna's Motion to Dismiss the FAC, Plaintiff's FAC should be dismissed in its entirety, without leave to amend.

Dated: October 20, 2025

By: */s/ Tiffany Cheung*
Tiffany Cheung

TIFFANY CHEUNG (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: KDriscoll@mofo.com

ELISABETH HUTCHINSON (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, CO 80202-5638
Telephone: (303) 592-1500
Email: EHutchinson@mofo.com

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com
Email: BGiroud@stradley.com

***Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group***

**CERTIFICATE OF SERVICE**

I, Tiffany Cheung, hereby certify that on October 20, 2025, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

/s/ *Tiffany Cheung*
Tiffany Cheung