**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,

Defendants.

Case No. 2:25-cv-02384

**PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING STANDING IN RESPONSE TO ORDER TO SHOW CAUSE**

Judge: Hon. Wendy Beetlestone

Date Action Filed: May 9, 2025

## TABLE OF CONTENTS


BACKGROUND ..... 2

A. Plaintiffs Are Defendants' Insureds Who Interacted with Defendants' Website in Connection with Their Health Care ..... 2

B. Defendants' Transmission of Plaintiffs' Private, Health-Care-Related Information to Third Parties ..... 3

C. Defendants Benefited Financially from Their Transmission of Plaintiffs' Private, Health-Care Related Information to Third Parties ..... 4

D. Defendants' Public Statements Concealed Their Transmission of Plaintiffs' Private Health-Care-Related Data to Third Parties ..... 5

E. Plaintiffs' Claims Arising from Defendants' Interception and Transmission of Their Private, Health-Care-Related Information ..... 6

F. Procedural Background ..... 6

ARGUMENT ..... 7

I. Plaintiffs' Allegations That Defendants Disclosed Their Private Health Information Without Consent Satisfies the Injury-in-Fact Requirement ..... 7

A. The Unauthorized Disclosure of *Private* Information Constitutes a Concrete Injury in Fact ..... 8

B. Plaintiffs' Information That Defendants Surreptitiously Disclosed Without Authorization Is Private, Highly Sensitive Health-Related Data ..... 11

C. Cases Involving the Interception of *Non*-Private Information Are Easily Distinguishable ..... 13

II. Plaintiffs Have Standing to Pursue Each Cause of Action Alleged ..... 20

A. Plaintiffs' Federal Wiretap Act Claim Alleges an Injury in Fact ..... 20

B. Plaintiffs' WESCA Claim Alleges an Injury in Fact ..... 21

C. Plaintiffs' Intrusion Upon Seclusion Claim Alleges an Injury in Fact ..... 22

D. Plaintiffs' Breach of Fiduciary Duty Claim Alleges an Injury in Fact ..... 23

E. Plaintiffs' Unjust Enrichment Claim Alleges an Injury in Fact ..... 23

F. Plaintiffs Have Standing to Seek Injunctive Relief ..... 25

CERTIFICATE OF SERVICE ..... 27

## TABLE OF AUTHORITIES

**Cases**

*Adams v. PSP Grp., LLC*,
691 F. Supp. 3d 1031 (E.D. Mo. 2023) .......... 19

*Barclift v. Keystone*,
93 F.4th 136 (2024) .......... 14, 15, 19, 20

*Berger v. New York*,
388 U.S. 41 (1967) .......... 8

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) .......... 24

*Brignola v. Home Properties, L.P.*,
No. 10-3884, 2013 U.S. Dist. LEXIS 60282 (E.D. Pa. Apr. 26, 2013) .......... 16

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .......... 25

*Clemens v. ExecuPharm Inc.,*
48 F.4th 146 (3d Cir. 2022) .......... 26

*Com. v. Brion*,
652 A.2d 287 (Pa. 1994) .......... 21

*Com. v. McCoy*,
275 A.2d 28 (Pa. 1971) .......... 21

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) .......... 16, 19

*Cook v. GameStop, Inc.*,
No. 23–2574, 2025 U.S. App. LEXIS 19955 (3d Cir. 2025) .......... 14, 15, 18, 19

*Cottrell v. Alcon Laboratories*,
874 F.3d 154 (3d Cir. 2017) .......... 7

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2015) .......... 7, 20

*Delanoy v. Twp. of Ocean*,
No. 13-1555, 2015 U.S. Dist. LEXIS 83685 (D.N.J. Jun. 29, 2015) .......... 11

*Delong v. PHE, Inc.,*
No. 24-5212- JFM, 2025 U.S. Dist. LEXIS 164060 (E.D. Pa. Aug. 25, 2025) .......... 16, 18

*DirecTV, Inc. v. Webb*,
545 F.3d 837 (9th Cir. 2008) .......... 20

*Doe v. Delie*,
257 F.3d 309 (3d Cir. 2001) .......... 11

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-2865, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11, 2024) ................................. 12

*Doe v. Post Acute Med., LLC*,
No. 24-547-KMN, 2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) .......................... 12

*Doe v. Southeastern Pennsylvania Transp. Auth.*,
72 F.3d 1133 (3d Cir. 1995) ................................................................................................ 11

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) ................................................................................... 23

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ................................................................................................ 10

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023) ............................................................................ 18, 23

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) ................................................................................................ 10

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ................................................................................................ 10

*Hartley v. Urban Outfitters, Inc.,*
740 F. Supp. 3d 410 (E.D. Pa. 2024) .................................................................................... 16

*Hassan v. City of New York*,
804 F.3d 277 (3d Cir. 2015) .................................................................................................... 7

*Heaven v. Prime Hydration LLC,*
761 F. Supp. 3d 812 (E.D. Pa. 2025) .................................................................................... 16

*Hernandez v. Noom, Inc.*,
No. 23-641, 2023 U.S. Dist. LEXIS 8934019 (D. Md. Dec. 27, 2023).................................. 18

*Huertas v. Bayer US LLC*,
120 F.4th 1169 (3d Cir. 2024) .............................................................................................. 24

*In re BPS Direct, LLC*,
705 F. Supp. 333 (E.D. Pa. 2023) ................................................................................... 18, 19

*In re Effexor Antitrust Litig.*,
357 F. Supp. 3d 363 (E.D. Pa. 2018) .................................................................................... 20

*In re Facebook. Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ................................................................................................ 16

*In re Google Inc. Cookie Placement Cons. Priv. Litig.,*
934 F.3d 316 (3d Cir. 2019) ............................................................................................. 9, 10

*In re Horizon Healthcare Servs. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017) .................................................................................................... 9

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.,*
903 F.3d 278 (3d Cir. 2018) .................................................................................................. 25

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 9, 10

*In re Vizio, Inc. Consumer Privacy Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) .......... 17

*Ingrao v. AddShoppers Inc.*,
No. 24-1022, 2024 U.S. Dist. LEXIS 214748 (E.D. Pa. Nov. 25, 2024) .......... 16, 19

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 17

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 10

*Kamal v. J. Crew Grp., Inc.*,
918 F.3d 102 (3d Cir. 2019) .......... 22, 23

*Lightoller v. JetBlue Airways Corp.*,
No. 23-361, 2023 U.S. Dist. LEXIS 102158 (S.D. Cal. June 12, 2023) .......... 17

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 8

*Lupia v. Medicredit, Inc.*,
8 F.4th 1184 (10th Cir. 2021) .......... 10

*Massie v. Gen. Motors LLC*,
No. 21-787, 2022 U.S. Dist. LEXIS 28969 (D. Del. Feb. 17, 2022) .......... 18

*Matera v. Google Inc.*,
No. 15-4062, 2016 U.S. Dist. LEXIS 130788 (N.D. Cal. Sept. 23, 2016) .......... 21

*McCulley v. Banner Health*,
No. 23-985, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) .......... 12

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 12, 25

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-4674-CMR, 2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) .......... 12

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
45 F.4th 816 (5th Cir. 2022) .......... 10

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) .......... 22

*Popa v. PSP Grp., LLC*,
No. 23-294, 2023 U.S. Dist. LEXIS 191053 (W.D. Wash. Oct. 24, 2023) .......... 19

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 18

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024) .......... 11

*Romero v. Securus Technologies, Inc.*,
216 F.Supp.3d 1078 (S.D. Cal. 2016).......... 21

*Salazar v. NBA*,
118 F.4th 533 (2d Cir. 2024) .......... 10

*Santos v. Healthcare Revenue Recovery Grp.*, LLC.,
90 F.4th 1144 (11th Cir. 2024) .......... 11

*Smidga v. Spirit Airlines, Inc.*,
No. 22-1578, 2024 U.S. Dist. LEXIS 62801 (W.D. Pa. Apr. 5, 2024).......... 17

*Spokeo v. Robins*,
578 U.S. 330 (2016).......... 8, 10

*Straubmuller v. JetBlue Airways Corp.*,
No. 23-384, 2023 U.S. Dist. LEXIS 155704 (D. Md. Sept. 1, 2023).......... 17

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014).......... 25

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......... 7, 8, 9, 20, 22, 23, 25

*United States v. Westinghouse Elec. Corp.*,
638 F.2d 570 (3d Cir. 1980) .......... 11

*Vernars v. Young*,
539 F.2d 966 (3d Cir. 1976) .......... 8

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-1601, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) .......... 12

*Webb v. Injured Workers Pharmacy, LLC*,
72 F.4th 365 (1st Cir. 2023).......... 10

*Williams v. Dukehealth*,
No. 22-727, 2024 U.S. Dist. LEXIS 37500 (M.D.N.C. Mar. 1, 2024).......... 12

**Statutes**

18 Pa. Const. Stat. § 5725(a).......... 21

18 U.S.C. § 2511(1)(a).......... 20

**Regulations**

45 C.F.R. § 164.508(a)(3).......... 13

45 C.F.R. §§ 164.500–534 .......... 13

45 C.F.R. §§164.302–316 .......... 13

**Other Authorities**

Restatement (Second) of Torts (1977).......... 10, 15, 23

**PRELIMINARY STATEMENT**

Because Plaintiffs allege that Defendants captured and surreptitiously disclosed their private health information to third parties, Plaintiffs allege an injury in fact giving rise to Article III standing. In *TransUnion LLC v. Ramirez*, the U.S. Supreme Court was clear: a defendant's "disclosure of *private* information" constitutes an injury in fact. 594 U.S. 413, 425 (2021) (emphasis added). This is what Plaintiffs allege: that Defendants, without authorization, disclosed Plaintiffs' private health-related information to third parties, including information related to medical conditions and health-care benefits that Plaintiffs entered in Defendants' password-protected health-insurance portal. Under binding Supreme Court and Third Circuit authority, the harm alleged is an injury in fact.

That the unauthorized disclose of *private* information is an injury in fact is well established in both Supreme Court and Third Circuit jurisprudence. Consistent with this jurisprudence, the Third Circuit has repeatedly held, including in both *In re Nickelodeon Consumer Privacy Litigation* and *In re Google Inc. Cookie Placement Consolidated Privacy Litigation*, that the alleged disclosure of an individual's "private" information gives rise to Article III standing. 934 F.3d 316, 325 (3d Cir. 2019); 827 F.3d 262, 274 (3d Cir. 2016). Courts throughout the country, including other U.S. Circuit Courts of Appeals and Third Circuit district courts, overwhelmingly agree with this controlling precedent.

Moreover, here there can be no dispute that Plaintiffs have alleged that the personal information that Defendants disclosed to third parties was private. Joining numerous other courts across the country, the Third Circuit has repeatedly held that personal health-related information is private – and has even recognized a constitutional right to privacy in medical information. Indeed, Plaintiffs are aware of no case in which allegations that private health-related

information was disclosed without consent were dismissed for failure to plead an injury in fact. This is wholly in accord with the federal health-care privacy regime, including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and associated regulations, which create special protections for the health-care data of individuals based on the *private* nature of that information.

Furthermore, authorities concerning the disclosure of *non*-private information are easily distinguishable – and courts routinely differentiate cases that do not involve private data and/or individually identifying information. Here, in contrast, Defendants allegedly disclosed private, highly sensitive, health-care information that specifically identified individual insureds. Under binding authority, these alleged unauthorized disclosures give rise to Article III standing as to each of Plaintiffs' causes of action.

## BACKGROUND

### A. Plaintiffs Are Defendants' Insureds Who Interacted with Defendants' Website in Connection with Their Health Care

Plaintiffs are all individuals insured under Defendants' health, dental, and/or vision plans who interacted with Defendants' website and password-protected member portal (collectively, the "Website") in connection with their health care. First Amended Complaint ("FAC") at ¶¶ 23–27, 283–89. Plaintiffs interacted with the Website, for among other reasons, to access information related to personal health-care coverage, review individualized benefit information, and/or obtain materials associated with medical care, including materials related to medical treatments and health-care provider options. *Id.* at ¶¶ 283–89. These activities were performed while Plaintiffs were logged into their health-care accounts on Defendants' "myCigna" portal and/or during Website sessions that were directly associated with Plaintiffs' names, member

identifiers, devices, and/or IP addresses. *Id.*[1]

**B. Defendants' Transmission of Plaintiffs' Private, Health-Care-Related Information to Third Parties**

During Plaintiffs' health-care-related interactions with Defendants' Website, Defendants employed sophisticated tracking technologies supplied by third-party vendors (the "Third-Party Vendors") to (1) intercept and record Plaintiffs' communications related to their health care and (2) transmit those communications directly to the Third-Party Vendors. FAC at ¶¶ 171–289.[2] The health-related information transmitted to the Third-Party Vendors included personal, private, and highly confidential information related to Plaintiffs' health care, and consisted of *all* of the information Plaintiffs provided while interacting with Defendants' Website – including queries associated with health-related issues, as well as activity that took place within Defendants' password-protected portal. FAC at ¶¶ 177–86, 187–98, 199–208, 212–19, 220–26, 283-89. Plaintiffs had no way to prevent Defendants' transmissions of their private health-related information to third parties, and the tracking technologies that Defendants embedded within the

[1] Notably, while Defendants' motion to dismiss tests only the allegations of the operative complaint, Defendants do not dispute in their interrogatory answers that the Website collects personal identifying information. Ex. 1, Cigna Corp. Servs., LLC's Supplemental Responses & Objections to Pls.' First Set of Interrogatories No. 4, at 9–10 (Nov. 14, 2025) ("Information that may be collected from visitors to the Website . . . [includes] identifiers, such as name, contact information, online identifiers, and government-issued ID numbers; commercial information, such as transaction information and purchase history; internet or network activity information, such as interactions with the Website, Internet Protocol (IP) address, Media Access Control (MAC) address, operating system and version, or Internet browser type and version; certain geolocation data; and audio, electronic, visual and similar information.").

[2] In their interrogatory responses, Defendants admit that they have embedded the tracking technologies supplied by the Third-Party Vendors identified in the operative complaint. Ex. 1, Cigna's Suppl. Resps. & Objs., No. 2, at 7 ("Online Technologies previously or currently embedded on Cigna's public-facing Websites include those supplied by Pinterest, Snapchat, The Trade Desk, LiveRamp, Demandbase, MediaMath, Adobe, Google, and Meta. Adobe technology is deployed within the authenticated myCigna website[.]").

Website began immediately intercepting Plaintiffs' information as soon as they interacted with the Website. FAC at ¶¶ 323–25.

Defendants' interception and transmission to the Third-Party Vendors of Plaintiffs' health-care information occurred in the following ways, among others:

- Defendants intercepted Plaintiffs' health-care information *inside* the password-protected myCigna portal, including by disguising third-party marketing code, and then transmitted that information directly to the Third-Party Vendors (*id.* at ¶¶ 271–82);

- Defendants intercepted and transmitted to third parties health-care information that Plaintiffs entered in the Website's search bar, with the exact health-related search queries typed by Plaintiffs transmitted to the Third-Party Vendors (*id.* at ¶¶ 184, 195, 205, 217, 227, 242);

- Defendants intercepted Plaintiffs' health-related interactions with the Website inside the Website's "Knowledge Center," which contains information related to numerous sensitive medical topics, and transmitted these interactions to the Third-Party Vendors (*id.* at ¶¶ 172–73, 209, 230–31, 262–63); and

- Defendants placed tracking "cookies" on the Website that allowed the Third-Party Vendors to monitor Plaintiffs' health-related interactions across different Website sessions, uniquely identify Plaintiffs' devices, and build behavioral profiles that the Third-Party Vendors imported into ad-targeting campaigns for commercial benefit (*id.* at ¶¶ 185–86, 197–98, 207–08, 218–19, 228–29, 243–44, 266, 279).

These transmissions to the Third-Party Vendors, which Plaintiffs could not prevent, broadly disclosed Plaintiffs' private, and highly confidential, health-related information to third parties.

## C. Defendants Benefited Financially from Their Transmission of Plaintiffs' Private, Health-Care Related Information to Third Parties

By surreptitiously embedding tracking technologies on the Website that transmitted Plaintiffs' private, health-care-related information to Third Parties, Defendants obtained significant financial benefits. *Id.* at ¶¶ 175–76, 274–75, 313. The tracking technologies that Defendants embedded allowed Defendants and the Third-Party Vendors to, among other things, sell private health-related data for commercial gain, create advertising profiles, develop targeted marketing, analyze user behavior, refine customer-acquisition strategies, and increase

enrollment, all of which supported Defendants' marketing and analytics efforts and reduced the need for Defendants to spend money on traditional advertising. *Id.* at ¶¶ 2, 176, 201–04, 210, 231, 247, 263; *see also* Ex. 1, Cigna's Suppl. Resps. & Objs., No. 3, at 8 ("Online Technologies may be used for . . . enabling site functionality, measuring and improving performance, personalizing user experience, [and] *supporting marketing and advertising*[.]" (emphasis added)). Defendants intercepted and transmitted Plaintiffs' private health-care data to third parties solely for Defendants' financial benefit, and not for any purpose related to Defendants' provision of health-care services to Plaintiffs.

### D. Defendants' Public Statements Concealed Their Transmission of Plaintiffs' Private Health-Care-Related Data to Third Parties

Defendants' public statements, including on the Website, not only concealed Defendants' transmission of Plaintiffs' private health-care-related information to the Third-Party Vendors, but misrepresented how Plaintiffs' private health-related information was managed. For example, Defendants' Website promised Plaintiffs and other insureds a "secure and *confidential* digital experience," and touted awards for "safeguarding consumer data and privacy." FAC at ¶ 290 (emphasis added). Similarly, Defendants' "Legal and Privacy Information" page on its Website assured Plaintiffs and other insureds that Defendants "value your trust in us and are committed to protecting your *personal* health information." *Id.* at ¶ 292 (emphasis added). And Defendants represented to Plaintiffs and other insureds, unequivocally, that "[i]nformation is *not* shared with any third parties." *Id.* at ¶ 299 (emphasis added). These statements were inaccurate and misleading, and failed to inform Plaintiffs that Defendants were intercepting and transmitting Plaintiffs' private health-related information to third parties via the tracking technologies described above.

### E. Plaintiffs' Claims Arising from Defendants' Interception and Transmission of Their Private, Health-Care-Related Information

Plaintiffs bring five distinct causes of action arising from Defendants' interception and transmission to third parties of their private, health-care related information: (1) a claim under the Federal Wiretap Act, as amended by the Electronic Communications Protection Act ("FWA"), for the intentional interception and use of their electronic communications on the Website (Count I), *id.* at ¶¶ 367–77; (2) a claim under Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") alleging interception without the all-party consent required (Count II), *id.* at ¶¶ 378–95; (3) a common law claim for intrusion upon seclusion based on the surreptitious monitoring and disclosure of Plaintiffs' health-related browsing information (Count III), *id.* at ¶¶ 396–408; (4) a common law claim for breach of fiduciary duty premised on Defendants' failure to discharge their duties to safeguard insureds' health information (Count IV), *id.* at ¶¶ 409–17; and (5) a common law claim for unjust enrichment, based on the commercial benefits Defendants realized through their surreptitious use of tracking technologies (Count V), *id.* at ¶¶ 418–26.

### F. Procedural Background

Plaintiffs filed their initial complaint on May 9, 2025. Doc. 1. On August 1, 2025, Plaintiffs filed a First Amended Complaint, which added an FWA claim and added significant detail to Plaintiffs' tracking allegations. Doc. 31. Defendants moved to dismiss on September 3, 2025. Doc. 45. The parties completed briefing on Defendants' motion to dismiss on October 20, 2025. Docs. 45, 47-48. On November 12, 2025, the Court requested additional briefing related to Article III standing, pursuant to which Plaintiffs submit this supplemental memorandum. Doc. 49.

## ARGUMENT

Plaintiffs have Article III standing to pursue their claims because Plaintiffs allege that Defendant disclosed their *private* health-related information to third parties, which causes an "injury in fact" under controlling Supreme Court and Third Circuit precedent.[3]

### I. Plaintiffs' Allegations That Defendants Disclosed Their Private Health Information Without Consent Satisfies the Injury-in-Fact Requirement

Because Plaintiffs allege that Defendant disclosed their private health information to third parties without authorization, Plaintiffs have alleged an injury in fact, and therefore have standing to bring their claims. Article III standing requires allegations (1) of "injury in fact," (2) that the injury was "likely caused by the defendant," and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Here, because courts universally recognize that a defendant's unauthorized disclosure of private information causes an "injury in fact," because the information alleged to have been disclosed by Defendants is private health information, and because there is no dispute that second and third prongs of the Article III standing test are satisfied, Article III standing is present.[4]

[3] The Third Circuit has emphasized there is "[a] fundamental separation between standing and merits at the dismissal stage." *Cottrell v. Alcon Laboratories*, 874 F.3d 154, 162 (3d Cir. 2017). At the dismissal stage, courts must "assume that the party asserting federal jurisdiction is correct on the legal merits of his claim, that a decision on the merits would be favorable, and that the requested relief would be granted." *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015) (quoting *Cutler v. U.S. Dep't of Health & Human Servs.*, 797 F.3d 1173, 1179 (D.C. Cir. 2015)). By "blend[ing] standing and merits together," a court commits an error that "the Supreme Court has exhaustively cautioned courts against." *Cottrell*, 874 F.3d at 165.

[4] While a court must evaluate Article III standing on a claim-by-claim basis, *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2015), because the harm Plaintiffs allege – i.e., the transmission to third parties of their private health-related information – is the same for most of Plaintiffs' claims (including all of Plaintiffs' statutory claims), Plaintiffs first (in Section I) explain why this harm constitutes an injury in fact, and then (in Section II) explain why there is Article III standing to pursue each one of their claims.

### A. The Unauthorized Disclosure of *Private* Information Constitutes a Concrete Injury in Fact

Under binding U.S. Supreme Court authority, the allegation that a defendant disclosed private information to a third party without consent meets the injury-in-fact requirement for Article III standing. To establish an injury in fact, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized." *Spokeo v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A particularized injury is one that affects the plaintiff in a "personal and individual way." *Spokeo*, 578 U.S. at 339. An injury is "concrete" where the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo*, 578 U.S. at 340–41). Among the specific examples that the Supreme Court has provided of harms that are traditionally recognized at common law, and thus "concrete," are a defendant's "disclosure of private information" and "intrusion upon seclusion." *TransUnion*, 594 U.S. at 425.[5]

In *TransUnion*, the Supreme Court found that plaintiffs whose private information was disclosed to third parties had suffered a concrete harm, and thus did *not* have to demonstrate

[5] It has long been recognized that the unauthorized disclosure of private information gives rise to actionable injury, whether the disclosure occurs as the result of eavesdropping, opening sealed correspondence, or other intrusions into private communications. *E.g.*, *Berger v. New York*, 388 U.S. 41, 45 (1967) ("Eavesdropping is an ancient practice which at common law was condemned as a nuisance."); Restatement (Second) of Torts §§ 652A-I (noting that the right to privacy was first accepted by an American court in 1905, and that it is "now recognized in the great majority of the American jurisdictions that have considered the question."); *see also Vernars v. Young*, 539 F.2d 966, 969 (3d Cir. 1976) ("Just as private individuals have a right to expect that their telephonic communications will not be monitored, they also have a reasonable expectation that their personal mail will not be opened and read by unauthorized persons. Recognition of a cause of action for violation of that expectation seems particularly fitting under the right of privacy doctrine.").

additional harm to satisfy the injury-in-fact requirement. *Id*. at 432-33. The Court further held that the "disclosure of private information" to third parties is an injury that has traditionally been recognized as a basis for lawsuits in American courts. *Id.* at 425 (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008) (finding that the disclosure of personal financial information (i.e., information less sensitive than personal health information) is an injury in fact)).

Controlling Third Circuit precedent similarly holds that allegations that private information was disclosed to a third party satisfies the injury-in-fact requirement. As the Third Circuit articulated in *Nickelodeon* (in 2016), and reiterated in *Google* (in 2019), the harms resulting from the capture of web users' private, personal information are "concrete," as they involve "clear *de facto* injur[ies], *i.e.,* the unlawful disclosure[s] of legally protected information." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *see also id.* ("While perhaps 'intangible,' the harm [of web tracking] is also concrete."); *In re Google Inc. Cookie Placement Cons. Priv. Litig.,* 934 F.3d 316, 325 (3d Cir. 2019) ("[C]oncrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."). As the Third Circuit additionally held in *Nickelodeon*, the Supreme Court's directive in *Spokeo*[6] (which the Supreme Court reiterated in *TransUnion*) that courts must "consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for a lawsuit'" is controlling. *Nickelodeon,* 827 F.3d at 273. The

[6] The Supreme Court did not suggest in *TransUnion* that it was altering the *Spokeo* standing framework. *TransUnion* was merely an application of *Spokeo*; *TransUnion* quoted extensively from *Spokeo* and applies its holding. *TransUnion*, 594 U.S. at 419, 424–25 ("As Spokeo explained, certain harms readily qualify as concrete injuries under Article III."); s*ee also In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017) ("[O]ut of a respect for *stare decisis*, we assume that the law is stable unless there is clear precedent to the contrary. And that means that we do not assume that the Supreme Court has altered the law unless it says so.").

Third Circuit provided further explanatory guidance in *Google*:

> "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain *private*." *Nickelodeon,* 827 F.3d at 274. In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects *private* data [ ] is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise.

*Google*, 934 F.3d at 325 (emphasis added).[7]

Courts across the country have consistently applied *TransUnion's* framework to hold that disclosure of an individual's *private* information constitutes a concrete injury. *See, e.g.*, *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled. A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing." (citation and internal quotation marks omitted)); *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("a legally cognizable privacy injury" establishes "Article III standing"); *see also Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911–13 (7th Cir. 2017) (the dissemination to a third party of information in which a person has a right to privacy is a sufficiently concrete injury for standing purposes); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th Cir. 2017) ("[v]iolations of the right to privacy have long been actionable at common law," even without "additional consequences" beyond "the 'intrusion itself'") (quoting Restatement (Second) of Torts § 652B cmt. b (1977)).[8]

---

[7] Although a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," the view of the legislature that is reflected when a statute creates a cause of action is "instructive and important." *Spokeo*, 578 U.S. at 341.

[8] *See also Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 376 (1st Cir. 2023) (misuse of personal information gives rise to Article III standing); *Salazar v. NBA*, 118 F.4th 533, 542 (2d Cir. 2024) (similar); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022) (similar); *Salazar v. Paramount Glob.*, 133 F.4th 642, 647 (6th Cir. 2025) (similar); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192-93 (10th Cir. 2021) (similar);

B. Plaintiffs' Information That Defendants Surreptitiously Disclosed Without Authorization Is Private, Highly Sensitive Health-Related Data

Here, there can be no serious dispute that the information Plaintiffs allege Defendants disclosed without authorization is private, highly sensitive health-related data – and that the injury-in-fact requirement is therefore satisfied. It is inarguable that health and medical information, extracted on the basis of a confidential insurer-insured relationship, is private. *See, e.g.*, *Doe v. Southeastern Pennsylvania Transp. Auth.*, 72 F.3d 1133, 1140 (3d Cir. 1995) (noting the importance of maintaining the privacy of medical records); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("[Because medical records] may contain intimate facts of a personal nature, [they] are well within the ambit of materials entitled to privacy protection. Information about one's body and state of health is a matter which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life."); *see also Delanoy v. Twp. of Ocean*, No. 13-1555, 2015 U.S. Dist. LEXIS 83685, at *22 (D.N.J. Jun. 29, 2015) ("[T]he Court agrees that Plaintiff's private medical information must be kept private."). The Third Circuit has even recognized a "constitutional right to privacy of medical information in the non-prison context." *Doe v. Delie*, 257 F.3d 309, 331 (3d Cir. 2001); *see also id*. at 315 ("We have long recognized the right to privacy in one's medical information").

Courts outside the Third Circuit are in accord that individuals' health-related information is private, and on this basis have overwhelmingly found standing in cases involving the disclosure of health-related information. *See, e.g.*, *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 361 (E.D.N.C. 2024) ("Disclosing Rodriguez's private *medical* information without the meaningful opportunity to prevent the disclosure satisfies Article III's injury

---

*Santos v. Healthcare Revenue Recovery Grp.*, LLC., 90 F.4th 1144, 1151 (11th Cir. 2024); (similar).

requirement." (emphasis added)); *McCulley v. Banner Health*, No. 23-985, 2024 U.S. Dist. LEXIS 85232, at *10-11 (D. Ariz. May 10, 2024) (sharing of URLs that plaintiffs had searched for, including for medical conditions, gave rise to standing); *Williams v. Dukehealth*, No. 22-727, 2024 U.S. Dist. LEXIS 37500, at *17 (M.D.N.C. Mar. 1, 2024) (in health-related web-tracking case, the complaint "sufficiently allege[d] that an injury in fact occurred as relates to the invasion of [the plaintiff's] privacy and disclosure of her private information"); *see also Walsh v. Dollar Tree Stores, Inc.*, No. 25-1601, 2025 U.S. Dist. LEXIS 204652, at *28–9 (N.D. Cal. Oct. 16, 2025) ("Dollar Tree challenges that the data here is non-sensitive data (*as opposed to, e.g., healthcare data*) and has not traditionally supported Article III standing. This Court disagrees." (emphasis added, citation omitted)); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-2865, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11, 2024) (standing found in medical web tracking case); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 933 (D. Minn. 2024) (similar).

Indeed, defendants in similar cases commonly do not raise standing as a defense. *See, e.g.*, *Doe v. Post Acute Med., LLC*, No. 24-547-KMN, 2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) (neither defendant nor court raised standing in case involving tracking of health-related information); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674-CMR, 2024 U.S. Dist. LEXIS 177625, at *10 (E.D. Pa. Sep. 30, 2024) (standing not raised as a defense where complaint alleged disclosure of health-related information; court found that "Plaintiffs have sufficiently pleaded that Defendant intercepted contents of Plaintiffs' communications under the meaning of the [Electronic Communications Protection Act]"). Plaintiffs are aware of no case in which a complaint alleging that private health-related information was disclosed to a third party without consent has been dismissed for failure to plead an injury in fact.

The federal healthcare-data privacy regime, including HIPAA, further establishes that

individuals have an objectively reasonable expectation of privacy in their health-related information. *See* 42 U.S.C. §§ 1320d–1320d-9 (establishing national privacy protections for health information). Federal regulations governing health information and promulgated by the U.S. Department of Health and Human Services to implement and enforce HIPAA and other statutes further demonstrate that individuals' health-related data is private and entitled to protection. *See, e.g.*, 45 C.F.R. §§164.302–316 (setting forth "Security Rule" safeguarding confidentiality, integrity, and availability of protected health information); 45 C.F.R. §§ 164.500–534 (establishing "Privacy Rule" restricting the use and the disclosure of protected health information); 45 C.F.R. § 164.508(a)(3) (requiring written authorization for use of protected health information for marketing).

In this case, Plaintiffs (i.e., Defendants' insureds) allege that Defendants captured their private health-related communications with the Website – including communications occurring in Defendant's password-protected and purportedly "secure" portal for individuals with health, dental, and/or vision insurance – and caused those private health-related communications to be disclosed to third parties. FAC at ¶¶ 177–86, 187–98, 199–208, 212–19, 220–26, 283–89. The information transmitted to third parties included sensitive queries associated with personal medical-related subjects, interactions concerning various health-related issues, and individualized data concerning health-care treatment and benefit usage. *Id.* at ¶¶ 283–89. Plaintiffs were not informed of and did not consent to Defendants' disclosure of their private health data. FAC at ¶¶ 290, 292, 295–97, 299, 323–25. Plaintiffs' allegations, accordingly, confer Article III standing. *Doe*, 257 F.3d at 315.

C. Cases Involving the Interception of *Non*-Private Information Are Easily Distinguishable

Cases involving electronic privacy violations where standing was found to be lacking are

easily distinguishable – particularly because none deal with the highly sensitive, private health information at issue here.

For example, in *Barclift v. Keystone*, 93 F.4th 136 (2024), the Third Circuit analyzed whether a debt collector's transmittal of basic account information (i.e., name, address, and debt balance) to a third-party mailing vendor constituted a concrete injury for Article III purposes. *Id.* at 140. There was no relationship between the plaintiff and the defendant that gave rise to heightened expectations of confidentiality, and the account information at issue was provided to a commercial vendor that printed and mailed collection notices. *Id.* The court held that the information disclosed was not personal, noting that the information did not include sensitive or identifying details beyond what was needed for the vendor's form letter, and that the plaintiff did not allege that the account information was disseminated beyond the vendor, which was the "intermediary tasked with contacting the customer." *Id.* at 146. On this basis, the court concluded that the harm alleged did not resemble the historically recognized privacy torts involving the unauthorized disclosure of confidential private information. *Id.*; *but see id.* at 147 (standing may have nonetheless been present if "the [disclosed] information [would have] result[ed] in humiliation").

Similarly, *Cook* addressed only *non*-identifying, *non*-sensitive website activity on a public *retail* website. *Cook v. GameStop, Inc.*, No. 23–2574, 2025 U.S. App. LEXIS 19955 (3d Cir. 2025). *Cook* concerned the question of whether the operation of session-replay code on a *retail* website constituted a concrete privacy injury. GameStop, a video game retailer, had deployed code on its website that recorded a user's mouse movements, clicks, keystrokes, and other communications. *Id.* at *1–2. However, the data collected did not include personal details linking the session to the plaintiff's identity, and the plaintiff did not convey any identifying or

sensitive information during her browsing session. *Id.* at *11. The Third Circuit held that these allegations were not analogous to the traditional harms of disclosure of *private* facts or intrusion upon seclusion, emphasizing that, unlike here, the information captured was neither sensitive nor tied to the plaintiff's personal identity. *Id.* at *11–13 ("none of the information Cook entered on GameStop's website was *personal* or *sensitive*" (emphasis added)).[9] On this basis, the court found no Article III injury. *Id.* at *16 (plaintiff failed to show "that her website activity involved her *private* affairs . . . a kind of harm sufficient for standing" (emphasis added)).

Both *Barclift* and *Cook* thus rejected standing because the information at issue was not private.[10] But in doing so, both opinions expressly emphasized that standing *would* exist if the disclosed data involved private information that could be connected to a specific individual. *Cook*, 2025 U.S. App. LEXIS 19955, at *11–16; *Barclift*, 93 F.4th at 146–47. Here, because the information disclosed to third parties *is* private and *is* linked to specific individuals, *Barclift* and *Cook* are easily distinguishable.

Moreover, courts in this District that have held that invasion-of-privacy claims based solely on the tracking of *non*-private online *retail* behavior do not confer Article III standing have acknowledged that private and/or medical information is different, and the unauthorized disclosure of such information *does* give rise to standing. *See, e.g.*, *Delong v. PHE, Inc.,* No. 24-

[9] *Cf.* Restatement (Second) of Torts § 652B, cmt. B (listing examples of intrusion upon seclusion, including "tapping . . . phone lines" and "opening . . . private and personal mail").

[10] Additionally, neither *Barclift* nor *Cook* is factually analogous. As set forth above, *Barclift* involved non-intimate basic account data (name, address, debt amount) sent to a mail processor, which was information the Third Circuit expressly characterized as impersonal and non-sensitive – in contrast to health-related data, which the Third Circuit has repeatedly held is private. *Barclift*, 93 F.4th at 146–47. *Cook* involved anonymous click-stream activity on a video-game retailer's public website, where the plaintiff entered no personal or sensitive information at all. *Cook*, 2025 U.S. App. LEXIS 19955, at *11–13. Here, by contrast, the at-issue data concerns Plaintiffs' medical identities and interactions within a confidential insured-insurer relationship and on a password-protected "secure" portal that exists *precisely* to protect such information.

5212- JFM, 2025 U.S. Dist. LEXIS 164060, at *16 (E.D. Pa. Aug. 25, 2025) ("While a third party collecting certain data like credit card, banking, *or medical information* may constitute concrete harm, that is because such harm is analogous to harms related to different privacy torts — such as public disclosure of private information — and only because such information is private[.]" (emphasis added)); *Heaven v. Prime Hydration LLC,* 761 F. Supp. 3d 812, 819 (E.D. Pa. 2025) (noting that courts analyzing standing from a historical lens have found that privacy torts "protect '*private*' information and concluded that basic online shopping information about a user does not clear this hurdle" (emphasis added)); *Hartley v. Urban Outfitters, Inc.*, 740 F. Supp. 3d 410, 421–22 (E.D. Pa. 2024) (finding that allegations that a defendant recorded *non*-private information about consumers opening promotional emails did not allege an injury in fact because "such details are not comparable to those traditionally contemplated as giving rise to a reasonable privacy interest"); *Ingrao v. AddShoppers Inc.,* No. 24-1022, 2024 U.S. Dist. LEXIS 214748, at *5 (E.D. Pa. Nov. 25, 2024) (finding browsing activity showing when a website was visited and the visitor's email address was not "sufficiently sensitive information" for a concrete injury); *Brignola v. Home Properties, L.P.*, No. 10-3884-CDJ, 2013 U.S. Dist. LEXIS 60282, at *34 (E.D. Pa. Apr. 26, 2013) ("The information alleged to be reported (and included in the exhibits) are Plaintiff's name, address, phone number, etc. These are not *private* facts actionable for an intrusion upon seclusion claim or publication of private life claim." (emphasis added)). These and other courts have found that it is the "nature of the information," and whether it is private, that is paramount in the standing analysis. *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023); *see also In re Facebook. Inc. Internet Tracking Litig.*, 956 F.3d 589, 599–600 (9th Cir. 2020) (holding that when users were not provided with a meaningful opportunity to prevent the unauthorized tracking of "personalized information," the injury-in-fact requirement

was satisfied); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) ("the Court agrees that a privacy claim is dependent on personal information being implicated").

Furthermore, digital wiretapping cases that have been dismissed on standing grounds have not involved the interception of health-related or other private information. Instead, courts in these cases have dismissed claims because the plaintiffs failed to allege that *private* information was intercepted and disclosed to third parties. For example, in *Lightoller v. JetBlue Airways Corp.*, and *Straubmuller v. JetBlue Airways Corp.*, the courts held that bare averments of the elements of state privacy statutes, without allegations of concrete privacy harms related to the disclosure of private information, were insufficient. *Lightoller v. JetBlue Airways Corp.*, No. 23-361, 2023 U.S. Dist. LEXIS 102158, at *9 (S.D. Cal. June 12, 2023); *Straubmuller v. JetBlue Airways Corp.*, No. 23-384, 2023 U.S. Dist. LEXIS 155704, at *6–7 (D. Md. Sept. 1, 2023). These and other similar cases involved generic website interactions, unconnected to any health, medical, identity-verified, or portal-restricted content. *Id.*; *compare In re Vizio, Inc. Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1215–16 (C.D. Cal. 2017) (in FWA case, finding concrete harm due to "the close similarity between the conduct proscribed under the [Federal] Wiretap Act and the tort of intrusion upon seclusion"), *with Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 681 (N.D. Cal. 2021) (finding that plaintiffs asserting FWA claims lacked standing because violations of the statute alone were not sufficient and the plaintiffs did not allege non-speculative, concrete injuries).

Cases in which standing was found to be lacking because the at-issue data was anonymous are likewise easily distinguishable. *See, e.g.*, *Smidga v. Spirit Airlines, Inc.*, No. 22-1578, 2024 U.S. Dist. LEXIS 62801, at *16 (W.D. Pa. Apr. 5, 2024) ("Session Reply Software, operating on Spirit's website, does *not* collect personal identifying information from website

visitors." (emphasis added)); *Massie v. Gen. Motors LLC*, No. 21-787, 2022 U.S. Dist. LEXIS 28969, at *12 (D. Del. Feb. 17, 2022) ("[A] claim of invasion of privacy requires an intrusion upon something over which a person has a reasonable expectation of privacy. 'Eavesdropping' on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury."). These courts analogized the alleged activity to what employees could observe in a physical store – an analogy that makes sense because the at-issue information was not private or health-related. *See Delong*, 2025 U.S. Dist. LEXIS 164060, at *2 ("But the problem is that Mr. Delong has not established that he had any expectation of privacy in his online browsing, just as Mr. Delong could be freely observed by store clerks or nosy neighbors browsing the shelves at a brick-and-mortar Adam & Eve store."); *Cook*, 689 F. Supp. 3d at 66 (analogizing to browsing habits at a store before concluding that "[p]roduct preference information is not personal information[.]"); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 356 (E.D. Pa. 2023) (session replay of public browsing is "no different" than in-store conduct and "Website Users do not have a personal privacy interest in their shopping activity"); *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023) ("novel application of WESCA in the online shopping context" has not "long been seen as injurious"); *cf. Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1357 (S.D. Cal. 2024) ("Plaintiffs' pleading here possesses what Farst's pleading lacked: concrete assertions that Carnival intercepted *personal* information") (emphasis added).

In these cases, courts stressed that the plaintiffs never alleged the capture of any "specific personal information," let alone personal health details. *Hernandez v. Noom, Inc.*, No. 23-641, 2023 U.S. Dist. LEXIS 229357, at *17 (D. Md. Dec. 27, 2023); *see also, e.g.*, *Popa v. PSP Grp.,*

*LLC*, No. 23-294, 2023 U.S. Dist. LEXIS 191053, at *12 (W.D. Wash. Oct. 24, 2023) (no allegations of any personally identifiable information); *Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031, 1041–42 (E.D. Mo. 2023) (similar). In short, none of these cases where standing was found to be lacking involved the unlawful disclosure of private medical information, so are easily distinguishable from this case.

Judge Slomsky's recent order in *Ingrao*, 2024 U.S. Dist. LEXIS 214748, is instructive. There, in finding that tracking the timing of when visitors accessed a website and their email addresses was insufficient to allege an injury in fact, Judge Slomsky summarized the precedents identified by this Court in its request for additional briefing (Doc. 49), and explained what would be required to plead injury in fact:

> But these common law privacy torts necessarily require the information disclosed to be private or personal information. For example, the Third Circuit characterized the harm caused by the tort of public disclosure of private information as "the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Barclift*, 93 F.4th at 145-56 (emphasis added). Similarly, courts have recognized that the harm caused by the intrusion upon seclusion involves the disclosure of private and personal information. *See In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 351 (E.D. Pa. 2023) ("[The plaintiffs] analogize their harms to intrusion upon seclusion and public disclosure of private facts—torts which require the interception or disclosure of private and personal information. The protections which existed traditionally at common law existed only as to private information.") (emphasis in original); *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) ("The requirement of private facts or private affairs in both [the public disclosure of private information and intrusion upon seclusion] torts confirms that the nature of the information is paramount.") Based on these characterizations of the harms protected by the common law privacy torts, to establish a "close relationship" between the asserted harm and one traditionally recognized as providing a basis for a lawsuit, Plaintiffs must allege the disclosure of their private or personal information.

*Ingrao*, 2024 U.S. Dist. LEXIS 214748, at *19–20 (emphasis in original). Here, because Plaintiffs allege the unauthorized disclosure of their *private* health-related information that is linked to their personal identities, they have alleged injuries in fact. *Cook*, 2025

U.S. App. LEXIS 19955, at *11–16; *Barclift*, 93 F.4th at 146–47.

## II. Plaintiffs Have Standing to Pursue Each Cause of Action Alleged

Because Plaintiffs' allegations specify concrete harms underlying each of their causes of action, Plaintiffs have standing to pursue all five of their claims, as well as their claim for injunctive relief.[11] *See Cuno*, 547 U.S. at 352 (analysis of Article III standing requires a claim-by-claim inquiry); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 390 (E.D. Pa. 2018) ("In a putative class action, standing must be analyzed on a claim-by claim basis[.]").

### A. Plaintiffs' Federal Wiretap Act Claim Alleges an Injury in Fact

Plaintiffs' FWA claim alleges a concrete injury sufficient to confer Article III standing: the unauthorized interception and disclosure of Plaintiffs' private communications containing private health-related information. A violation of the FWA occurs when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The FWA protects individuals' right to privacy in electronic communications. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 850 (9th Cir. 2008) (the FWA's "emphasis on privacy is evident in both the legislative history of the Wiretap Act and in the breadth of its prohibitions").

For the reasons set forth in greater detail above, the FWA standing analysis is straightforward. Because a defendant's "disclosure of private information" is a concrete injury conferring Article III standing, *TransUnion*, 594 U.S. at 425, and because Plaintiffs here allege that their private health-related communications were captured and disclosed without consent,

---

[11] Although the Court's Order requests briefing only as to "statutory" claims (Doc. 49), for the sake of completeness, and for the avoidance of doubt, in accordance with *Cuno*, 547 U.S. at 352, Plaintiffs set forth the basis for standing for each claim asserted in the operative complaint, including their common law claims.

Plaintiffs allege a concrete injury based on privacy harms "traditionally recognized as providing a basis for lawsuits," *id.*[12]

B. Plaintiffs' WESCA Claim Alleges an Injury in Fact

Plaintiffs likewise sufficiently allege that they were concretely harmed by Defendant's conduct violating WESCA. WESCA is a state statutory analogue to the FWA, and grants a statutory cause of action to "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [the statute]" against "any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication." 18 Pa. Cons. Stat. § 5725(a).[13]

The WESCA standing analysis is likewise straightforward, also for the reasons set forth above. Here, Plaintiffs allege that they suffered the same concrete injury from Defendants' WESCA violation as from Defendants' FWA violation: the unauthorized interception and disclosure to third parties of Plaintiffs' private health-related information. As WESCA protects the same historically cognizable interest (i.e., an individual's interest in the privacy of his or her private information) that the U.S. Supreme Court recognized in *TransUnion* gives rise to an

[12] It would also make little sense to read *TransUnion* as implicitly erasing the FWA. *TransUnion* requires a concrete injury for damages, but it does not – and cannot – be read to eliminate standing for claims Congress expressly deemed actionable in the FWA. *See Matera v. Google Inc.*, No. 15-4062, 2016 U.S. Dist. LEXIS 130778, at *41 (N.D. Cal. Sept. 23, 2016) (concluding that the "alleged violations of Plaintiff's statutory rights under the Wiretap Act and [California statutory privacy law] constitute concrete injury in fact"); *Romero v. Securus Technologies, Inc.*, 216 F.Supp.3d 1078, 1087-89 (S.D. Cal. 2016) (adopting the reasoning in *Matera*).

[13] The Pennsylvania legislature's purpose in enacting WESCA was to protect the privacy of communications, including those conducted electronically. *See Com. v. McCoy*, 275 A.2d 28, 30 (Pa. 1971) ("[T]he Legislature has determined as a matter of state public policy that the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping."); *see also Com. v. Brion*, 652 A.2d 287, 289 (Pa. 1994) ("[A]n individual can reasonably expect that his right to privacy will not be violated in his home through the use of any electronic surveillance.").

injury in fact, Plaintiffs have Article III standing to assert this claim. *See, e.g.*, *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 271 (W.D. Pa. June 3, 2024) ("In the instant case, Petris has adequately alleged a harm to his privacy interests. The common-law right of privacy and WESCA give Petris the right to control the flow of information concerning his person . . . As alleged, [defendant] surreptitiously disclosed Petris's personal info [] related to his firearm purchase, which is not information 'open to public inspection,' to third parties without his consent.").

C. Plaintiffs' Intrusion Upon Seclusion Claim Alleges an Injury in Fact

Plaintiffs adequately allege an injury in fact arising from Defendants' intrusion upon Plaintiffs' seclusion. The reason is clear-cut: intrusion upon seclusion is a "traditional" common-law tort, which the Supreme Court *expressly* identified in *TransUnion* as an example of a concrete harm. *TransUnion*, 594 U.S. at 425. The Third Circuit has likewise explained that privacy torts – specifically including intrusion upon seclusion – have long been actionable because they protect well-established private rights. *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) ("Harms actionable under traditional privacy torts include 'unreasonable intrusion upon . . . seclusion'"). Because Plaintiffs here allege that Defendants intruded on their seclusion by intentionally accessing their private health information within a health insurance portal presented as secure, and then causing Plaintiffs' private information to be transmitted to third parties, Plaintiffs have standing to bring their intrusion upon seclusion claim. FAC at ¶¶ 177–86, 187–98, 199–208, 212–19, 220–26. Indeed, this interception and disclosure of Plaintiffs' private health information reflects precisely the kind of intrusion-upon-seclusion injury that has long been recognized as concrete for Article III purposes.[14] *TransUnion*, 594 U.S.

[14] At common law, intrusion upon seclusion generally requires a plaintiff to show that the defendant intentionally intruded "upon the solitude or seclusion of another or his private affairs

at 440.

D. Plaintiffs' Breach of Fiduciary Duty Claim Alleges an Injury in Fact

For the same reason Plaintiffs have standing to bring their FWA, WESCA, and intrusion-upon-seclusion claims, Plaintiffs have standing to bring their breach of fiduciary duty claim. The reason is simple: the harm Plaintiffs allege is the unauthorized disclosure of Plaintiffs' private health-related information, which is an injury in fact under controlling Supreme Court and Third Circuit authority. Indeed, the disclosure of confidential information entrusted to a fiduciary has long been actionable at law and equity, and is thus properly understood as a concrete injury. *See, e.g.*, *Kamal*, 918 F.3d at 114 (a breach of fiduciary duty "transpires when a third party gains unauthorized access to a plaintiff's personal information"); *see also id*. (a breach "involves 'the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship'" (citations omitted)); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151 (D. Mass. 2024) ("Plaintiff, a patient at Tenet, states a viable claim of breach of fiduciary duty against her healthcare provider for disclosing her Private Information.").

E. Plaintiffs' Unjust Enrichment Claim Alleges an Injury in Fact

Plaintiffs have standing to bring their unjust enrichment claim because they allege a direct economic loss. "[M]onetary harms are quintessential injuries in fact," *TransUnion*, 594 U.S. at 423, and even modest or indirect financial harms are still concrete, *id.* at 426. Here, Plaintiffs allege that Defendants used their private health-related information – obtained through

---

or concerns," and that such intrusion "would be highly offensive to a reasonable person." *Farst,* 700 F. Supp. 3d at 229 (M.D. Pa. 2023). As the Second Restatement of Torts recognizes, intrusion upon seclusion may occur through "use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by . . . tapping his telephone wires." Restatement (Second) Of Torts § 652B cmt. b (Am. L. Inst. 1977).

unlawful tracking – to derive economic benefits that rightfully belonged to Plaintiffs and were gained only because Defendants violated statutory and common-law duties. FAC at ¶¶ 2, 176, 201–04, 210, 231, 247, 263. These harms are injuries in fact. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 438 (S.D.N.Y. 2016) (finding standing for unjust enrichment claim where defendant sold plaintiffs' information to third parties).[15]

Moreover, the principles espoused by the Supreme Court in *TransUnion* are wholly inconsistent with the well-established principle that a party who receives less than bargained-for value suffers a concrete injury. *E.g.*, *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174–75 (3d Cir. 2024) ("One way 'a plaintiff might successfully plead an economic injury [is] by alleging that she bargained for a product worth a given value but received a product worth less than that value.'") (citations omitted). Where, as here, a defendant promises a certain level of privacy or security, and the plaintiff relies on those promises, the defendant's violation of its promises causes a concrete economic injury: the plaintiff did not receive the service they bargained and paid for. *Id.* This creates a cognizable injury in at least two distinct ways, each independently sufficient after *TransUnion* and *Huertas*: (1) the plaintiff is financially worse off because he or

[15] Here, as Defendants' insureds, Plaintiffs suffered an economic injury because their monthly premiums purchased a health-insurance product marketed as private, secure, and compliant with federal HIPAA confidentiality requirements. FAC at ¶¶ 3–15, 283–99. Defendants held themselves out – both in plan advertising and in their digital interfaces – as providing secure portals that safeguard protected health information, yet delivered a website that covertly tracked and monetized insureds' medical interactions. *Id.* at ¶¶ 290–99. In a competitive insurance marketplace, Plaintiffs could have chosen any number of insurers offering comparable coverage without embedded tracking technologies. *Id.* at ¶¶ 3–15. They instead paid Defendants for a product promising privacy and received one that extracted value from their health inquiries. *Id.* This difference in value – between what was promised and what was provided – is a benefit-of-the-bargain economic injury that gives rise to standing. *Johnson & Johnson*, 903 F.3d at 287 (explaining that a plaintiff is not "required to allege the *exact* value of her economic injury at the pleading stage" and that plaintiff must only show her purchase "was worth less than what she paid for [it]" (emphasis in original)).

she paid for a product or service that did not include the promised level of privacy or security; and (2) the plaintiff was deprived of a bargained-for interest, which is a concrete harm under Article III. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.,* 903 F.3d 278, 282–93 (3d Cir. 2018) (discussing various economic injury theories).

F. Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs inarguably have standing to seek injunctive relief. *TransUnion* recognizes that an ongoing or imminent risk of repeated harm is sufficient to support injunctive relief. *TransUnion*, 594 U.S. at 415 ("material risk of future harm can satisfy the concrete-harm requirement in the context of a claim for injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial[.]"). As Plaintiffs have alleged, Defendants continue to intercept and disclose insureds' communications every time insureds access Defendants' portal – and Defendants admit that such tools remain "currently embedded." FAC at ¶¶ 2, 4; Ex. 1, Cigna's Suppl. Resps. & Objs., No. 2, at 7. This ongoing collection of Plaintiffs' personal health-related information remains beyond Plaintiffs' control, with no opt-out mechanism. *Cf. Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 933–34 (D. Minn. 2024) (plaintiffs had standing to seek injunctive relief in case involving tracking of health-related information by hospital system because of an "adequate likelihood of future harm" as "[plaintiff's] data, already collected by the Pixel, remains beyond her control and may be used in harmful ways"). Because Plaintiffs' interactions with the Website are recurring and Defendants' conduct is ongoing, Plaintiffs face a concrete and imminent risk of continued interception, satisfying Article III's requirements for injunctive relief. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (a claim of future injury can be "imminent" if there is a "substantial risk" that the threatened harm will occur) (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 n.5 (2013)); *see also Clemens v. ExecuPharm Inc.,* 48 F.4th 146, 153 (3d Cir.

2022) (plaintiff sufficiently alleged injury in fact by showing sensitive information may have been taken during a data breach).

**CONCLUSION**

Because Plaintiffs have adequately alleged facts supporting the existence of Article III standing, Defendants' motion to dismiss (Doc. 45) should be denied and this case should proceed to discovery.

Dated: December 1, 2025

s/ Andrew D. Schlichter

Nathan D. Stump (PA Bar No. 90169)
Andrew D. Schlichter (*pro hac vice*)
Jerome J. Schlichter (*pro hac vice*)
Alexander L. Braitberg (*pro hac vice*)
Chen Kasher (*pro hac vice*)
Sean M. Milford (*pro hac vice*)
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-5934 (fax)
nstump@uselaws.com
aschlichter@uselaws.com
jschlichter@uselaws.com
abraitberg@uselaws.com
ckasher@uselaws.com
smilford@uselaws.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of December 2025, a true and correct copy of the foregoing document was filed via the Court's CM/ECF filing system and is available to all counsel of record through that system.

s/ Andrew D. Schlichter
Andrew D. Schlichter