**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,<br><br>Defendants. | Case No. 2:25-cv-02384 |

**DEFENDANTS CIGNA CORPORATE SERVICES, LLC'S AND THE CIGNA GROUP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants Cigna Corporate Services, LLC and The Cigna Group (together, "Cigna") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims in the Second Amended Complaint. In support of this Motion, Cigna incorporates by reference the accompanying Memorandum of Law. A proposed form of Order is attached.

Dated: March 24, 2026

By: /s/ Tiffany Cheung
Tiffany Cheung

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com
Email: BGiroud@stradley.com

TIFFANY CHEUNG (*pro hac vice*)
ALBERTO CORONA (*pro hac vice*)
EDUARDO FIGUEROA (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com
Email: ACorona@mofo.com
Email: EFigueroa@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: KDriscoll@mofo.com

ADAM J. HUNT (*pro hac vice*)
DILLON J. KRAUS (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Email: AdamHunt@mofo.com
Email: DKraus@mofo.com

LAURA HILL (*pro hac vice*)
MORRISON & FOERSTER LLP
925 Fourth Ave, Floor 38
Seattle, WA 98104
Telephone: (206) 327-6500
Email: LHill@mofo.com

***Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,<br><br>Defendants. | Case No. 2:25-cv-02384 |

**[PROPOSED] ORDER GRANTING CIGNA CORPORATE SERVICES, LLC'S AND THE CIGNA GROUP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Before the Court is Defendants Cigna Corporate Services, LLC's and The Cigna Group's (together, "Cigna") Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the papers filed in support and in opposition to the motion, the arguments of counsel, the pleadings and papers on file in this action, and all other matters properly before the Court, and good cause appearing:

IT IS HEREBY ORDERED that Cigna's Motion to Dismiss Plaintiffs' Second Amended Complaint is GRANTED in its entirety without leave to amend, as each of Plaintiffs' causes of action fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

IT IS SO ORDERED.

Dated: ____________________, 2026

______________________________
Chief Judge Wendy Beetlestone

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,<br><br>Defendants. | Case No. 2:25-cv-02384 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CIGNA CORPORATE SERVICES, LLC'S AND THE CIGNA GROUP'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1
II. FACTUAL BACKGROUND ... 3
A. The Second Amended Complaint ... 3
1. Plaintiffs do not allege entry of PII or PHI on the public website. ... 3
2. Plaintiffs' allegations about the authenticated portal are limited to Adobe. ... 4
3. Cigna discloses use of the Online Technologies. ... 4
B. Plaintiffs Consented to the Online Technologies ... 6
III. LEGAL STANDARD ... 6
IV. ARGUMENT ... 7
A. Plaintiffs' Claims Fail Because They Consented to the Activity at Issue ... 7
1. Plaintiffs are estopped from pleading around their own consent. ... 9
2. Plaintiffs consented through their repeated use of the Website and Portal after being put on inquiry notice of the Terms of Use. ... 11
3. Plaintiffs also consented when they accessed the authenticated portal. ... 12
4. Plaintiffs' subjective understanding does not defeat consent. ... 13
5. The Privacy Notice and HIPAA Notice provide sufficient notice of what the Online Technologies may be used for. ... 13
6. The HIPAA Notice discloses that Cigna shares PHI with Business Associates ... 14
B. Plaintiffs Do Not Plead That They Entered any PII or PHI on the Website ... 14
C. Plaintiffs Do Not Plead That Any Purported Transmission of PHI from the Portal Violated the HIPAA Notice ... 17
D. Plaintiffs' ECPA Claim Fails on Multiple Grounds ... 18
1. Cigna was a party to the communications. ... 18
2. ECPA's crime-tort exception does not apply. ... 19
3. Plaintiffs' aiding and abetting theory fails. ... 21
E. Out-of-State Plaintiffs Cannot Bring a Claim Under WESCA ... 22
1. Plaintiffs fail to allege any interception in Pennsylvania. ... 22
2. The choice-of-law provision does not change this result. ... 23
F. The Court Should Dismiss Plaintiffs' Common Law Claims ... 25

**TABLE OF CONTENTS**
(continued)

**Page**

1. Plaintiffs' allegations do not justify the extraterritorial application of Pennsylvania common law. .... 25
2. Plaintiffs fail to state a claim for intrusion upon seclusion. .... 25
3. Plaintiffs fail to state a claim for breach of fiduciary duty. .... 27
4. Plaintiffs fail to state a claim for unjust enrichment. .... 29
V. CONCLUSION .... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Cigna Corp. Servs., LLC*,
2026 WL 295744 (E.D. Pa. Feb. 4, 2026) (C.J. Beetlestone) ........ *passim*

*Adamski v. Johnson*,
80 Pa. D. & C. 4th 69, 2006 WL 4129308 (Pa. Ct. Comm. Pleas 2006) ........ 27

*Allen v. Quicken Loans Inc.*,
2018 WL 5874088 (D.N.J. Nov. 9, 2018) ........ 19

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ........ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*Attias v. CareFirst, Inc.*,
365 F. Supp. 3d 1 (D.D.C. 2019) ........ 29

*Bell Alt. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7, 21

*Berman v. Freedom Fin. Network*,
30 F.4th 849, 856(9th Cir. 2022) ........ 11

*Blackman v. Lincoln Nat'l Corp.*,
2012 WL 6151732 (E.D. Pa. Dec. 10, 2012) ........ 25

*In re Burlington Coat Factory Sec. Litig*.,
114 F.3d 1410 (3d Cir. 1997) ........ 1

*Canot v. City of Easton*,
37 A.3d 53 (Pa. Commw. Ct. 2012) ........ 10

*Checchia v. SoLo Funds, Inc*.,
771 F. Supp. 3d 594 (E.D. Pa. 2025) ........ 11, 12

*Chicarella v. Passant*,
494 A.2d 1009 (Pa. Super. Ct. 1985) ........ 27

*Ciox Health, LLC v. Azar*,
435 F. Supp. 3d 30 (D.D.C. 2020) ........ 21

*Cohen v. Pruco Life Ins. Co.*,
2019 WL 7048969 (E.D. Mo. Dec. 23, 2019) ....................28

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. Super. Ct. 2020)....................8, 11

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ....................15

*De Lage Landen Financial Services, Inc.*
2001 WL 799870 (E.D. Pa. July 12, 2001) ....................24, 27

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .................... 19-20

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ....................17

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001)....................10

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................19

*In re Fed.-Mogul Glob., Inc.*,
526 B.R. 567 (D. Del. 2015)....................10

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007) ....................13

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ....................28

*Gerhart v. Energy Transfer Partners, L.P.*,
2020 WL 1503674 (M.D. Pa. Mar. 30, 2020)....................27

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3rd Cir. 2015) ....................19

*Happy v. Marlette Funding, LLC*,
744 F. Supp. 3d 403 (W.D. Pa. 2024)....................24

*Harris by Harris v. Easton Pub. Co.*,
483 A.2d 1377 (Pa. Super. Ct. 1984)....................26

*HD Brous & Co. v. Mrzyglocki*,
2004 WL 376555 (S.D.N.Y. Feb. 26, 2004)....................10

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ....................23

*Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*,
848 F. Supp. 569 (E.D. Pa. 1994) ....................25

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ....................19

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ....................22

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................19, 26

*Kury v. Abbott Labs., Inc.*,
2012 WL 124026 (D.N.J. Jan. 17, 2012) ....................18

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................14

*Lasche v. New Jersey*,
2022 WL 604025 (3d Cir. Mar. 1, 2022) ....................18

*Marazas v. W.C.A.B. (Vitas Healthcare Corp.)*,
97 A.3d 854 (Pa. Commw. Ct. 2014) ....................9

*Marion v. Bryn Mawr Tr. Co.*,
288 A.3d 76 (Pa. 2023) ....................28

*McDonald v. Wells Fargo Bank, N.A.*,
374 F. Supp. 3d 462 (W.D. Pa. 2019) ....................24

*Monarch Fire Prot. Dist. of St. Louis Cnty., Mo. v. Freedom Consulting & Auditing Servs., Inc.*,
678 F. Supp. 2d 927 (E.D. Mo. 2009), *aff'd*, 644 F.3d 633 (8th Cir. 2011) ....................21

*Morales v. Sun Constructors, Inc.*,
541 F.3d 218 (3d Cir. 2008) ....................13

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ....................16

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024) ....................29

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ....................18, 19

*Parkell v. Markell*,
622 F. App'x 136 (3d Cir. 2015) (per curiam) ....................................................................7

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ...................................................................................22

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)......................................................................19

*Perloff v. Transamerica Life Insurance Co.*,
393 F. Supp. 3d 404 (E.D. Pa. 2019) ........................................................................28

*Philadelphia Factors, Inc. v. Gordon*,
1999 WL 225866 (E.D. Pa. Apr. 16, 1999) ...............................................................24

*Pompa v. St. Luke's Hosp.*,
2023 WL 2332250 (M.D. Pa. Mar. 2, 2023).................................................................30

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)........................................................................ *passim*

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......................................................................11, 22, 23

*Popa v. Harriet Carter Gifts, Inc.*,
772 F. Supp. 3d 592 (W.D. Pa. 2025)..................................................11, 12, 13, 14

*Popa v. Harriet Carter Gifts, Inc.*,
No. 2:19-cv-00450-WSS (W.D. Pa. 2019), ECF No. 1-2...............................................23

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
198 F. Supp. 3d 1183 (D. Ore. 2016)..........................................................................28

*Pricharda v. Checkr, Inc.*,
2022 WL 16749033 (E.D. Pa. Nov. 7, 2022) ...............................................................13

*Pro Golf Mfg. v. Tribune Review Newspaper Co.*,
809 A.2d 243 (Pa. 2002) ...................................................................................26, 27

*Pro. Hockey Corp. v. World Hockey Ass'n*,
143 Cal. App. 3d 410 (Ct. App. 1983)..........................................................................9

*Rand v. Eyemart Express, LLC*,
2024 WL 4376162 (N.D. Tex. Oct. 1, 2024).................................................................15

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ...............................................................20

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996)....................9

*Salvitti v. Lascelles*,
669 F. Supp. 3d 405 (E.D. Pa. 2023)....................29, 30

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024)....................16

*Schall v. Vazquez*,
322 F. Supp. 2d 594 (E.D. Pa. 2004)....................9

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)....................17

*Smart v. Main Line Health*,
2024 WL 2943760 (E.D. Pa. June 10, 2024)....................16

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................15

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)....................11

*Steinberg v. CVS Caremark Corp.*,
899 F. Supp. 2d 331 (E.D. Pa. 2012)....................8, 26

*Stevens v. TD Bank, N.A.*,
2025 WL 1779164 (D.N.J. June 27, 2025)....................30

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....................17

*Yenchi v. Ameriprise Fin., Inc.*,
161 A.3d 811 (Pa. 2017)....................28

*Yerger v. Landis Mfg. Sys., Inc.*,
1989 WL 66443 (E.D. Pa. June 16, 1989)....................26

*Zabokritsky v. JetSmarter, Inc.*,
2019 WL 2563738 (E.D. Pa. June 20, 2019)....................13

**Statutes**

20 Pa.C.S. § 7789....................8

18 Pa. Cons. Stat.
§ 5703....................22
§ 5704(4)....................8

18 U.S.C.
§ 2511 .......... 8, 18, 19
§ 2520 .......... 22

**Other Authorities**

45 C.F.R.
§ 160.103 .......... 15, 16
§ 164.502(e)(1) .......... 21

Fed. R. Civ. P.
8 .......... 21
12(b)(6) .......... 6

## I. INTRODUCTION

The Court should reject Plaintiffs' attempt to artfully plead around their prior admissions. In dismissing the majority of Plaintiffs' First Amended Complaint (ECF No. 31 ("FAC")), the Court held that Plaintiffs' consent to Cigna's Terms of Use and incorporated Privacy Notice was "dispositive" of Plaintiffs' wiretapping and invasion of privacy claims. *Adair v. Cigna Corp. Servs., LLC*, 2026 WL 295744, at *17 (E.D. Pa. Feb. 4, 2026) (C.J. Beetlestone).[1] Plaintiffs' strategic choice to omit from the Second Amended Complaint (ECF No. 89 ("SAC")) an explicit concession that they "accepted these Terms of Use and entered into a direct agreement with [Cigna]" (FAC ¶¶ 47-48), does not change the Court's prior rulings. Plaintiffs continue to invoke the Terms of Use as a binding agreement to plead jurisdiction, venue, and governing law. They cannot seek the benefit of the contract while avoiding the consequences under well-established principles of estoppel. Moreover, Plaintiffs acknowledge that their use of Cigna's public website and password-protected portal establishes consent to the Terms of Use. That is fatal to their claims and cannot be cured. Accordingly, Plaintiffs' SAC should be dismissed again, this time with prejudice.

Nor can Plaintiffs save their claims from dismissal by adding pages of conclusory legal arguments to the SAC that a privacy notice must enumerate every tool, vendor, cookie type, and operational detail used on a website before any user can be deemed to have consented. As the Court previously held, "the unassailable conclusion is that Plaintiffs agreed to Defendants'

[1] The Court may properly consider Cigna's Terms of Use ("Terms of Use"), Website Privacy Notice ("Privacy Notice), and HIPAA Notice of Privacy Practices ("HIPAA Notice"), attached hereto as Exhibits A-C, under the incorporation by reference doctrine because they are "integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Plaintiffs' Second Amended Complaint explicitly cites to and relies on portions of Exhibits A-C. (*See, e.g.*, SAC ¶¶ 49, 55-56, 58, 60-66, 316, 318, 340, 344-46, Fig. 34, Fig. 39.) Consideration of Exhibits A-C under the incorporation by reference doctrine is therefore proper, as the Court previously held. (*See* ECF No. 64 at 7.)

Privacy Notice in addition to their Terms of Use, thereby giving Defendants permission to use the third-party tracking technologies." *Adair*, 2026 WL 295744, at *17. Where, as here, Plaintiffs were put on notice of the Terms of Use and Privacy Notice and proceeded to use the website and portals, their objective assent to the use of marketing technologies precludes their claims.

Regardless, Plaintiffs have not plausibly alleged that any protected health information ("PHI") was improperly shared with third parties. The Privacy Notice explains Cigna's use of cookies, pixels, ad networks, and analytics in connection with online services, including the public website and password protected portal. By contrast Cigna's HIPAA Notice only applies to the collection and use of PHI. Here, however, even after three attempts, Plaintiffs still do not allege that they entered ***any*** identifying and health information that could be considered PHI into the public website. Rather, Plaintiffs only generically allege that they searched for health-related information while logged into the non-public portal. But Plaintiffs do not plausibly allege that any information they entered in the portal was shared with a third party in violation of the HIPAA Notice. Their speculation that Cigna ***may*** have used marketing services provided by Adobe is not enough. The only possible disclosure to Adobe that Plaintiffs identify is for operational analytics under a Business Associate Agreement, which is expressly permitted under the HIPAA Notice.

Finally, the SAC can and should be dismissed on multiple, additional grounds. *First*, Plaintiffs have failed to state a federal wiretapping claim because Cigna is a party to communications on its own website, and the crime-tort exception and procurement theories do not apply. *Second*, Plaintiffs' Pennsylvania wiretapping claim fails because they do not plead any interception in Pennsylvania, and a narrow choice-of-law provision in the Terms of Use cannot expand the statute's territorial reach. *Third*, Plaintiffs' allegations about routine web routing do

not plausibly meet Pennsylvania's "highly offensive" standard required to state an intrusion upon seclusion claim. *Fourth*, Plaintiffs' fiduciary duty claim fails because—even assuming Pennsylvania law applies (and it does not)—Plaintiffs do not plausibly plead that they ceded decision-making control over their website activity. And their unjust enrichment claim fails because Plaintiffs do not plausibly plead a cognizable benefit conferred or inequitable retention, and because the claim is derivative of the SAC's failed statutory and tort theories.

For these reasons, and those set forth below, the SAC should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

### A. The Second Amended Complaint

Plaintiffs are five Cigna members who reside outside Pennsylvania and claim that Cigna deployed certain online technologies on Cigna's public website, www.cigna.com (the "Website"), as well Cigna's authenticated portal, myCigna (the "Portal"). Although Plaintiffs assert that these online technologies capture personally identifying information ("PII") and PHI from the Website and Portal, the SAC does not include ***any*** allegations that Plaintiffs entered information on the public Website, let alone that any such information constituted PII or PHI. (SAC ¶¶ 26-30, 309-15.)

#### 1. Plaintiffs do not allege entry of PII or PHI on the public website.

On the public Website, Plaintiffs allege that Cigna embedded third-party "Tracking Pixels" and "Session Replay Code" provided by Pinterest, Snapchat, The Trade Desk, LiveRamp, Demandbase, MediaMath, Google, and Meta (collectively, the "Website Technologies"). (*Id.* ¶¶ 5-7, 12-13.) The SAC is clear that the Website Technologies are deployed ***only*** on the Website, ***not*** the Portal. (*Id.* ¶¶ 175-76.) According to Plaintiffs, third-party advertising and analytics providers receive information about a user's activity on the Website—pages a user visits, URLs and titles associated with those pages, and the text a user types into on-

site search fields—together with standard online identifiers (*e.g.*, cookies and device/browser identifiers). (*See, e.g.*, *id*. ¶¶ 179, 181-220, 232-43, 252-66, 273-85.)

Notably, the SAC does not allege that any Plaintiff entered their name, member number, or other PII or PHI into any page of the Website. (*See id*. ¶¶ 26-30, 175-76.) Nor do Plaintiffs allege that the public Website solicits or require members to submit PII, PHI, or other member-specific data to browse the Knowledge Center, use public "Find a Doctor" features, or enter general search terms into the homepage search bar. (*See, e.g.*, *id*. ¶¶ 175-76, 181-220, 232-43, 252-66, 273-85.) Instead, the SAC's allegations regarding the Website and Website Technologies focus on generic web-browsing activity, search terms, and anonymous online identifiers associated with a device or browser session. (*See, e.g.*, *id*. ¶¶ 179, 185-89, 252-66.)

**2. Plaintiffs' allegations about the authenticated portal are limited to Adobe.**

The only technology Plaintiffs claim was present on Cigna's password protected Portal is Adobe (together, with the Website Technologies, the "Online Technologies"). (*Id*. ¶¶ 177-78, 286-89.) Plaintiffs allege that, after a member logs in with a username and password, searches and other Portal activity—together with cookie-related identifiers—are transmitted through that Adobe-related infrastructure to Adobe. (*Id*. ¶¶ 286-89, 291-95.) Although Plaintiffs baldly allege that Adobe "uses this information to help its clients obtain marketing insights," they ***do not*** allege they received a single advertisement or any other marketing material from Cigna connected to their activity on the Portal. (*Id*. ¶¶ 26-30, 293, 309-15.)

**3. Cigna discloses use of the Online Technologies.**

Cigna discloses its use of the Online Technologies in its Website Privacy Notice, which is incorporated by reference into the Terms of Use. (*Id*. ¶¶ 49 n.9, 50, 58; Ex. A, Terms of Use.) Specifically, the Privacy Notice states that Cigna "may use cookies, tags, and other tracking

mechanisms to track information about your use of [Cigna's] Services, and to provide, customize, evaluate, and improve [Cigna's] Services." (Ex. B, Privacy Notice at 6.) The Privacy Notice goes on to explain that, in addition to cookies, Cigna uses "Clear GIFs, Pixel Tags and Other Technologies," and defines each of those technologies. (*Id.*; SAC Fig. 41.)

The Privacy Notice also notifies users that Cigna partners with "third-party ad networks, analytics, marketing partners, and others . . . to personalize content and display advertising" on Cigna's Website and in connection with the "Services" Cigna provides, including through the Portal. (Ex. B, Privacy Notice at 7.) By agreeing to the Terms of Use and the incorporated Privacy Notice, users specifically agree that Cigna "and these third-party ad companies may use cookies, pixel[] tags, and other tools to collect browsing and activity information" from the webpages at issue, "as well as IP address, unique ID, cookie and advertising IDs, and other online identifiers." (*Id.*)

Cigna also expressly discloses in its HIPAA Notice that business associates acting on Cigna's behalf, like Adobe, may provide services to consumers, and in doing so, are required by law and contract to protect the privacy and confidentiality of sensitive information, such as PHI. The HIPAA Notice makes clear that "[Cigna] may use and disclose [users'] PHI to carry on [its] business planning and administrative operations" and that it partners with business associates "so that they may help [Cigna] operate more efficiently." (Ex. C, HIPAA Notice at 2.) Specifically, the HIPAA Notice provides:

> We arrange to provide some services through contracts with business associates so that they may help us operate more efficiently. We may disclose your PHI to business associates acting on our behalf. Business Associates are required by law and contract to protect the privacy of sensitive information. If any PHI is disclosed, we will protect your information from unauthorized use and disclosure using confidentiality agreements.

(*Id.*)

### B. Plaintiffs Consented to the Online Technologies

The SAC makes clear that Plaintiffs agreed to Cigna's Terms of Use in multiple ways.

*First*, Plaintiffs invoke Defendants' Terms of Use as an operative, binding agreement between the parties: they rely on the Terms of Use to plead personal jurisdiction and venue in this District (SAC ¶¶ 55-56), and to assert that Pennsylvania law applies broadly to their claims pursuant to a choice-of-law provision. (*Id*. ¶¶ 60-66.)

*Second*, Plaintiffs admit that the Terms of Use and the Website's privacy disclosures are presented to users through the Website itself and that the Terms of Use state that website users have "read, understand, and acknowledge the Site's privacy notice(s)." (*Id*. ¶ 58.) Plaintiffs also concede that the Privacy Notice, HIPAA Notice, and other privacy materials are accessible through links on the persistent footer on each page of the Website clearly titled "Terms of Use" and "Privacy." (*Id*. ¶¶ 340, 344-46, Fig. 39.)

*Third,* Plaintiffs explicitly allege that they viewed and relied upon the representations in Cigna's Privacy Notice and HIPAA Notice. Plaintiffs allege that, "[b]ased on [Cigna's] public representations and statements, insureds [which includes Plaintiffs] understood that their personal and health-related private information would be handled securely." (*Id*. ¶¶ 316, 318.) Indeed, Figure 34 in the SAC reflects Cigna's "Legal and Privacy Information" webpage, which contains links to Cigna's privacy policies, including its Privacy Notice and HIPAA Notice, and is available via hyperlink at the bottom of each page of the Website and Portal. (*Id*. Fig. 34.)

*Third*, every Plaintiff alleges that they accessed the authenticated, password protected Portal. (*Id*. ¶¶ 309-15.) In order to do so, Plaintiffs necessarily agreed to Cigna's Terms of Use and Privacy Notice. (*Id*. ¶¶ 286, 311-14.)

## III. LEGAL STANDARD

A complaint must be dismissed for failure to state a claim under Rule 12(b)(6) where, as

here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts establishing that a claim is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions" or "a formulaic recitation of the elements" do not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). If a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Parkell v. Markell*, 622 F. App'x 136, 141 (3d Cir. 2015) (per curiam) (allegations "equally consistent with lawful and [unlawful] behavior" are "insufficient to state a plausible claim"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The same is true for "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV. ARGUMENT

### A. Plaintiffs' Claims Fail Because They Consented to the Activity at Issue

The Privacy Notice removes any doubt regarding how Online Technologies may be used. The Privacy Notice expressly discloses that Cigna "may use cookies, tags, and other tracking mechanisms to track information about your use of our Services." (Ex. B, Privacy Notice at 6.) It further discloses the use of third-party analytics: "We use third-party tools, such as Google Analytics, . . . to evaluate usage of our Services," and those third-party analytics companies "use cookies, pixels, and other tracking technologies" to collect usage data. (*Id.* at 7; *see also* SAC Fig. 41.) And it expressly discloses third-party advertising and marketing technologies: Cigna

"work[s] with third-party ad networks, analytics, marketing partners, and others," and Cigna and those third parties "may use cookies, pixel[] tags, and other tools to collect browsing and activity information within our Services," including "IP address, unique ID, cookie and advertising IDs, and other online identifiers." (*Id.*) Thus, because Plaintiffs consented to the Privacy Notice, all their claims fail.

Consent is a complete defense to any purported interception or "recording" under the Electronic Communications Privacy Act ("ECPA") and the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"). 18 U.S.C. § 2511(2)(d); 18 Pa. Cons. Stat. § 5704(4). Such consent does not require actual knowledge of a recording—if "the person being recorded 'knew or should have known[] that the conversation was being recorded'" and proceeded anyway, the person is deemed to have consented by conduct. *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. Super. Ct. 2020) (citation omitted); *see also Adair*, 2026 WL 295744, at *17 n.19 (recognizing principle of consent by conduct). The standard is one of a "reasonably intelligent person." *Byrd*, 235 A.3d at 319 (citation omitted).

Consent is also dispositive of Plaintiffs' common law claims, which are each predicated on the theory that Cigna used Online Technologies without authorization. *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 121 (W.D. Pa. 2019) ("[O]ne cannot intrude when one has permission.") (citation omitted) (alteration in original); 20 Pa.C.S. § 7789 ("A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach[.]"); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341-42 (E.D. Pa. 2012) (finding that consent of plaintiffs weighed against finding receipt of profits "unjust" in dismissal of unjust enrichment claim). "One who effectively consents to the conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for the harm resulting

from it." *Schall v. Vazquez*, 322 F. Supp. 2d 594, 601 (E.D. Pa. 2004) (quoting Restatement (Second) Torts § 892A); *cf. Pro. Hockey Corp. v. World Hockey Ass'n*, 143 Cal. App. 3d 410, 412, 417 (Ct. App. 1983) ("The cross-complainant by its own evidence showed a ratification of the very actions upon which it sought to base its claim of violation of a fiduciary duty," and "[t]his being true, it is difficult to conceive how a breach of fiduciary duty may exist in face of the ratification.").[2]

**1. Plaintiffs are estopped from pleading around their own consent.**

This Court previously dismissed nearly all of Plaintiffs' claims due to allegations in the FAC that they "enter[ed] into a direct agreement with Defendants"—through the Terms of Use and the incorporated Privacy Notice—which was "dispositive of Plaintiffs' ECPA, WESCA, and invasion of privacy claims." *Adair*, 2026 WL 295744, at *17. Although Plaintiffs now omit the specific language in the FAC upon which the Court relied, the substance of Plaintiffs' allegations has not changed. Plaintiffs' attempt to avoid dismissal through artful pleading thus fails under principles of judicial and equitable estoppel.

Indeed, the doctrine of judicial estoppel exists to prevent the "assertion of inconsistent positions." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). Although it is not intended to "eliminate all inconsistencies," it is "designed to prevent litigants from playing fast and loose with the courts." *Id.* (citation omitted); *Marazas v. W.C.A.B. (Vitas Healthcare Corp.)*, 97 A.3d 854, 859-60 (Pa. Commw. Ct. 2014) (judicial estoppel is an equitable remedy intended to address a "lack of candor with the tribunal"). Here, judicial estoppel applies because (1) Plaintiffs "assumed an inconsistent position in an earlier action,"

[2] Cigna maintains that Plaintiffs, who are not Pennsylvania residents, cannot bring claims under Pennsylvania law (*supra* § IV.F.1), but nonetheless responds to Plaintiffs' assertion of Pennsylvania law in the SAC. Cigna reserves the right to argue, as appropriate, that the law of each Plaintiff's state of residence governs that Plaintiff's claims.

and (2) their "contention was 'successfully maintained' in that action." *Canot v. City of Easton*, 37 A.3d 53, 60 (Pa. Commw. Ct. 2012) (citation omitted). Specifically, Plaintiffs previously pled that they had agreed to Cigna's Terms of Use and incorporated privacy policies, and the Court relied upon those pleadings in ruling on Cigna's motion to dismiss the FAC. *Adair*, 2026 WL 295744, at *17. Plaintiffs cannot now backpedal on those concessions.

Plaintiffs are also equitably estopped from denying that they agreed to an agreement from which they now seek a benefit. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001) ("courts prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful"); *In re Fed.-Mogul Glob., Inc.*, 526 B.R. 567, 576 (D. Del. 2015) ("Courts will often find implicit adoption when a party who has received benefits of a contract then tries to avoid burdens imposed by the same contract.") Here, Plaintiffs ask for the benefits of the forum-selection, jurisdiction, and choice-of law provisions in the Terms of Use (SAC ¶¶ 49-60), and they rely on Cigna's Legal and Privacy Information page and related privacy policies to allege that Cigna promised a "secure and confidential" experience and committed to protecting users' personal health information. (*Id.* ¶¶ 326-30.) They cannot at the same time seek to avoid being bound by those same policies. *HD Brous & Co. v. Mrzyglocki*, 2004 WL 376555, at *9 (S.D.N.Y. Feb. 26, 2004) ("Petitioner has used the Agreement as a sword against Respondent in the course of this litigation. Having knowingly accepted and sought benefits under the Agreement, Petitioner may not disclaim its duties under [the Agreement].") Moreover, because Plaintiffs contend that the parties are bound by the Terms of Use in arguing that Cigna is "estopped" from avoiding the forum selection clause, Plaintiffs should be estopped from seeking to avoid their consent to the Terms of Use. (SAC ¶¶ 57-58.)

**2. Plaintiffs consented through their repeated use of the Website and Portal after being put on inquiry notice of the Terms of Use.**

A contract entered into on the internet is enforceable if it puts a webpage visitor on inquiry notice of the page's terms. *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 607 (E.D. Pa. 2025). Accordingly, because Plaintiffs allege that they used the Website and Portal after receiving inquiry notice of the Terms of Use and Privacy Notice, Plaintiffs manifested their assent to those agreements.

Actual knowledge is not required for consent. As the Court explained in its prior ruling, Plaintiffs' argument to the contrary "incorrectly implies that actual knowledge is a prerequisite to assent." *Adair*, 2026 WL 295744, at *17 n.19 (citing *Berman v. Freedom Fin. Network*, 30 F.4th 849, 856 (9th Cir. 2022) (noting that Internet users can assent to website agreements under an inquiry notice theory)). Instead, inquiry notice is sufficient where the Website provides "reasonably conspicuous notice" and the user takes action manifesting assent. *Id.*; *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) ("Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility."); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) (observing that "[p]rior consent" under WESCA does not require actual knowledge and, instead, "can be demonstrated when the person being recorded knew or should have known that the conversation was being recorded" (internal brackets omitted) (quoting *Byrd*, 235 A.3d at 319).

"Courts have generally held that constructive knowledge alone is sufficient to establish consent to browsewrap terms and conditions when the website host placed the notice of the terms and agreements prominently and provided easy access to the full terms." *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 605 (W.D. Pa. 2025) (citations omitted). In *Popa*, the court held

that plaintiff consented to the technology at issue because defendant's privacy policy was hyperlinked to the bottom of each page of the defendant's website, as is "in line with common usage." *Id.* at 607. Specifically, the privacy policy was hyperlinked in the webpage's persistent footer, highlighted in white text against a blue background, and provided in the drop-down menu on the left side of the webpage. *Id.* Because the hyperlink was labeled "Privacy Statement," the court found that any webpage visitor "could have easily seen the link and understood exactly what it contained." *Id.* at 606-07.

The same is true here. Just like in *Popa*, the Terms of Use, Privacy Notice and HIPAA Notice are accessible through the "Terms of Use" and "Privacy" hyperlink conspicuously displayed on white text against a blue background in the persistent footers of each page of the Website and Portal. (SAC ¶¶ 340, 344-46, Fig. 39.) The Terms of Use state that Website users have "read, understand, and acknowledge" the Site's privacy notice(s). (*Id*. ¶ 58.) And Plaintiffs allege that they repeatedly used the Website. (*Id*. ¶¶ 26-30.) Under *Checchia* and *Popa*, and consistent with the Court's prior ruling, those allegations establish Plaintiffs' consent to Cigna's alleged conduct.

**3. Plaintiffs also consented when they accessed the authenticated portal.**

Plaintiffs' allegations regarding their use of the myCigna authenticated Portal independently establish consent. The Terms of Use provide that users are "deemed to have accepted" the Terms "each time [they] access a login or authenticated portion of the Site through use of [their] Site login credentials." (Ex. A, Terms of Use at 1.) Plaintiffs allege that the Portal-related conduct occurs only after members "enter their usernames and passwords and log into the portals" (SAC ¶ 286) and concede that they accessed the Portal for various purposes. (*Id*. ¶¶ 311-14.) Those allegations necessarily mean Plaintiffs agreed to the Terms of Use each time they accessed the authenticated Portal environment. *Popa*, 772 F. Supp. 3d at 604-05, 607-08.

#### 4. Plaintiffs' subjective understanding does not defeat consent.

Plaintiffs try to avoid consent by alleging that the Terms of Use state users "read, understand, and acknowledge" privacy notices, but do not use the words "consent," "authorize," or "agree." (SAC ¶¶ 58-59.) They also allege they did not read the policies and so are not bound by them. (*Id.* ¶¶ 337-46.) These arguments cannot defeat consent.

Contract formation turns on outward manifestations, not subjective understanding. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221-24 (3d Cir. 2008) (assent to an agreement is objective, and a party may be bound even if ignorant of the terms). Courts apply that rule in the online context: where a user consents to an online agreement, the user is bound even if the user later claims not to have read the terms. *Zabokritsky v. JetSmarter, Inc.*, 2019 WL 2563738, *3 (E.D. Pa. June 20, 2019) ("Whether the user actually reads the terms to which she assents is immaterial."); *see also Pricharda v. Checkr, Inc.*, 2022 WL 16749033, at *4 (E.D. Pa. Nov. 7, 2022); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236-38 (E.D. Pa. 2007). Applying these principles, *Popa* rejected the same arguments Plaintiffs seek to advance here. The court found constructive consent where the privacy statement was conspicuously available through a persistent footer link and disclosed third-party tracking through cookies and pixel tags—even though the site did not require click-through acceptance and the plaintiff testified she never read the policy. *Popa*, 772 F. Supp. 3d at 604-05, 607-08. Plaintiffs' arguments fail for the same reasons here.

#### 5. The Privacy Notice and HIPAA Notice provide sufficient notice of what the Online Technologies may be used for.

Plaintiffs cannot avoid dismissal by adding pages of legal conclusions to the SAC arguing that consent is effective only if the Privacy Notice includes highly detailed, itemized disclosures about how the Online Technologies may be used. (*See* SAC ¶¶ 348-403.)

"WESCA does not require that the Privacy Policy reveal granular details about the identity of the 'third parties' or the specific type of cookies used." *Popa*, 772 F. Supp. 3d at 604 n.4; *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (finding plaintiffs' consent to defendant's privacy policy defeated ECPA claim, despite plaintiffs' argument that the notice did not disclose use of pixels with sufficiently granular detail). Here, the Privacy Notice expressly discloses the use of cookies, pixel tags, and third-party analytics and advertising technologies (Ex. B, Privacy Notice at 6.) That is more than enough.

#### 6. The HIPAA Notice discloses that Cigna shares PHI with Business Associates

Plaintiffs' claims based on Cigna's alleged disclosure of PHI through the Portal with Adobe similarly fails. Adobe is the ***only*** Online Technology alleged to be used on the Portal. And, in addition to its use being covered by the Privacy Notice, any use of Adobe is also permitted under the HIPAA Notice. Plaintiffs agreed to Cigna's HIPAA Notice, which discloses that PHI may be shared with "undisclosed Business Associates" to "provide, coordinate and manage the delivery of health care." (SAC ¶¶ 286-99, 353-54; Ex. C, HIPAA Notice at 1.) Plaintiffs do not and cannot allege that Adobe falls outside the scope of this provision governing the disclosure of information to Business Associates. Plaintiffs' consent to the HIPAA Notice therefore dooms their claims regarding the Portal.

### B. Plaintiffs Do Not Plead That They Entered any PII or PHI on the Website

Plaintiffs allege that Cigna's HIPAA Notice "supersedes" the Privacy Notice and therefore defeats consent for Online Technologies used on public webpages. (SAC ¶¶ 20, 421-33.) Even accepting that allegation as true, however (and it is not), Plaintiffs' theory still fails to state a claim because Plaintiffs do not allege that they entered any PHI (or other individually identifiable member information) on the public Website, let alone that such information was

captured or transferred without permission.

The SAC describes how the Website Technologies capture ordinary web activity on the public Website—page visits, URLs, and on-site search terms—paired with online identifiers such as cookies and device/browser identifiers not linked to specific individuals. (SAC ¶¶ 175-76, 179, 181-220, 232-43, 252-66, 273-85.) As courts have routinely held, the capture of this type of information cannot support a wiretapping claim. *Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025) (dismissing WESCA claims based on public-website browsing activity because "[m]ost of us understand that what we do on the Internet is not completely private") (citation omitted) (alteration in original); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming lower court's dismissal of ECPA and common law privacy claims where plaintiffs alleged Meta pixel collected their health-related data from public website); *see also Rand v. Eyemart Express, LLC*, 2024 WL 4376162, at *3 (N.D. Tex. Oct. 1, 2024).[3]

Even if Plaintiffs identified some specific, health-related information that they purportedly entered into the public Website, Plaintiffs cannot rely on bare legal conclusions that such information is protected by HIPAA, which defines PHI as "[i]ndividually identifiable health information" ("IIHI"). 45 C.F.R. § 160.103. In turn, HIPAA defines IIHI as:

> [I]nformation that is a subset of health information, including demographic information collected from an individual, ***and***: (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; ***and*** (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment

[3] In *Smith*, "Plaintiffs claim[ed] that—though they gave general consent to Facebook's data tracking and collection practices—they did not consent to the collection of health-related data due to its 'qualitatively different' and 'sensitive' nature." 745 F. App'x at 9. The court "d[id] not agree that the collected data is so different or sensitive. The data show only that [p]laintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." *Id.* The court concluded "the practice complained of f[ell] within the scope of [p]laintiffs' consent to Facebook's Terms and Policies." *Id.*

> for the provision of health care to an individual; ***and*** (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 CFR § 160.103 (emphasis added).

There are no allegations that any Plaintiff entered his or her name, demographic information, member number, or other member-identifying information into the public Website. (*See* SAC ¶¶ 26-30, 175-76.) Rather, Plaintiffs' only allegation that any information was "individually identifiable"—"through their names"—is tied to activity on the authenticated Portal, not the public Website. (*Id.* ¶¶ 309-15.) That is not enough.

Courts in this District have dismissed similar cases where plaintiffs tried to plead HIPAA-regulated information was collected from public webpages but failed to plausibly allege what, if any, protected information was actually transmitted. *See Santoro v. Tower Health*, 2024 WL 1773371, at *3-5 (E.D. Pa. Apr. 24, 2024) (dismissing ECPA claim where complaint lacked specific examples of what HIPAA-protected information from plaintiffs was transferred); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) (dismissing ECPA claim related to Meta pixel on hospital website where general allegations that communications pertained to "medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, doctors' visit notes, medications and treatments, and health insurance and medical bills" were too vague); *Smart v. Main Line Health*, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) (dismissing ECPA and common law privacy claims related to use of Meta pixel on health system website where plaintiff failed to allege what specific legally protected information he provided via his browsing activity that was subsequently disclosed). The same outcome is warranted here.

Moreover, Plaintiffs cannot rely on an HHS Bulletin to argue that general information

about health conditions, treatment, or providers constitutes PHI when linked to identifying data such as an IP address. (SAC ¶¶ 157-68). *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780, 802-04 (N.D. Tex. 2024), is instructive. In *Becerra*, the court rejected this theory and explained that a visitor does not transmit his subjective intent in visiting or searching a public webpage, and information cannot become PHI based solely on the visitor's motive. *Id.* Further, *Becerra* explicitly declared unlawful and vacated the portion of the HHS Bulletin upon which Plaintiffs rely, specifically to the extent that HIPAA obligations are triggered in "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare providers." *Id*. at 789.[4] HHS did not appeal the ruling.

Relatedly, courts across the country have held that transmissions showing navigation to pages describing how to schedule an appointment or logging into a patient portal are insufficient to establish the disclosure of PHI or IIHI without further information demonstrating that the individual actually used those tools or otherwise disclosed patient status. *See Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024).

### C. Plaintiffs Do Not Plead That Any Purported Transmission of PHI from the Portal Violated the HIPAA Notice

Plaintiffs cannot salvage their claims by speculating that because Adobe marketing materials offer certain marketing services, Cigna must have used those services and shared

[4] The Court may properly consider the HHS Bulletin, attached as Exhibit D, because, like Exhibits A-C, Exhibit D is incorporated by reference to Plaintiffs' SAC. (SAC ¶¶ 157-68.) The Court may also take judicial notice of the HHS Bulletin. *See, e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (holding that documents, "like the SEC filings attached by a number of the defendants, are matters of public record of which the court can take judicial notice").

information in violation of the HIPAA Notice. *See Kury v. Abbott Labs., Inc.*, 2012 WL 124026, at *6 (D.N.J. Jan. 17, 2012) (dismissing plaintiff's claim based on "conclusory and vague allegations that Plaintiff suffered damages, mental anguish and pain and suffering"); *Lasche v. New Jersey*, 2022 WL 604025, at *3 (3d Cir. Mar. 1, 2022) (courts should "disregard" "allegations that are 'so threadbare or speculative that they fail to cross the line between the conclusory and the factual'" on a motion to dismiss) (citation omitted). Cigna's HIPAA Notice put Plaintiffs on notice that Cigna may use third parties to support Cigna's provision of healthcare services, and Plaintiffs consented to the HIPAA Notice. (*Supra* § IV.A.) For their part, Plaintiffs, have not plausibly alleged that ***any*** information that was shared with Adobe in violation of the HIPAA Notice. Plaintiffs' claims regarding the Portal fail accordingly.

### D. Plaintiffs' ECPA Claim Fails on Multiple Grounds

#### 1. Cigna was a party to the communications.

To state a claim under ECPA, Plaintiffs must adequately allege that Cigna "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Consent by *either* party to the communication, however, is a complete defense to an ECPA claim. *Id.* § 2511(2)(d). As explained above, Plaintiffs consented to the activity to which they now object. (*Supra* §§ II.B, IV.A.) But even if Plaintiffs' consent is not considered, Cigna's consent alone is sufficient to defeat the ECPA claim.

Courts across the country have recognized that the consent of one party to the communication (*i.e.*, a website host) is a complete defense to an ECPA claim based on the host's use of an Online Technology. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (dismissing ECPA claim against website operator because the operator was a party to

the allegedly intercepted communications); *Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *4 (D.N.J. Nov. 9, 2018) (same). As the Third Circuit explained in dismissing similar wiretapping claims against Viacom, as the owner of the website at issue, Viacom's consent to the use of Google's technologies on its own website defeated the ECPA claims against both Viacom and Google. *In re Nickelodeon*, 827 F.3d at 274; *see also Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *4 (N.D. Cal. Apr. 3, 2024) ("Oracle's customers chose to deploy Oracle's tools on their websites, and it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'") (quoting 18 U.S.C. § 2511(2)(d)); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117-18 (S.D. Cal. 2023) (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 937-38 (N.D. Ill. 2023) (same); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (same).

Here, because Cigna was the intended recipient of any allegedly intercepted communications with its webpages, Cigna was necessarily a party to each communication. By "embedding" the Online Technologies in its own webpages, Cigna consented to any alleged "interception" of its communications. (SAC ¶¶ 5-7.) Plaintiffs' ECPA fails accordingly.

**2. ECPA's crime-tort exception does not apply.**

Plaintiffs' allegation that the crime-tort exception turns on whether a crime has been "committed" is incorrect. (*Id.* ¶ 466.) The standard is higher than that. To invoke the exception, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication ***for the purpose*** of a tortious or criminal act that is ***independent*** of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3rd Cir. 2015) (*"In re Google"*) (citation omitted) (emphasis added). Because Plaintiffs do not (and cannot) plead any such tortious or criminal ***purpose***, the crime-fraud exception does not apply. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *9 (N.D. Cal. Apr. 11,

2024) ("Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere . . . . [T]he 'criminal or tortious purpose must be separate and independent from the act of the recording [*i.e.*, the act of interception].'") (citations omitted); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) ("Alleged interceptions fall within the tort or crime exception only where 'the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously,' . . . [and] cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'") (citations omitted).

Although Plaintiffs suggest they have pleaded a separate HIPAA violation to satisfy the crime-tort exception, Plaintiffs do not plausibly allege any HIPAA violation. Their conclusory allegation that Cigna "disclose[d] 'individually identifiable health information'" in violation of HIPAA is entitled to no weight. (SAC ¶ 466 (citing 42 U.S.C. § 1320d-6).) Indeed, the SAC fails to identify ***any*** information from Plaintiffs at all—let alone their PHI—that was allegedly disclosed from the Website. (*See infra* §§ II.A.1, IV.B.)

Plaintiffs' allegations regarding the Portal fare no better. Although Plaintiffs Emrick, Pham, and Danielson vaguely allege that they used the Portal to "find a provider," "search for prescriptions," "research health conditions," "research health topics," and "review [] health issues"—such generic searches and interactions do not constitute PHI. (SAC ¶¶ 309-15.) The same is true for Plaintiffs Adair and Recchia, who assert that they disclosed unidentified "sensitive medical information" and an unidentified "medical condition." (*Id.* ¶¶ 309, 311.) These vague allegations are insufficient. Moreover, Plaintiffs do not and cannot allege that Cigna's alleged transfer of this unidentified information to Adobe—the only technology allegedly deployed on myCigna—fell outside a HIPAA-compliant business associate agreement.

45 C.F.R. § 164.502(e)(1). HIPAA permits covered entities to disclose PHI to their business associates when a BAA is in place. *See id.* § 164.502(e)(1)(i) ("A covered entity may disclose protected health information to a business associate and may allow a business associate to create, receive, maintain, or transmit protected health information on its behalf, if the covered entity obtains satisfactory assurance that the business associate will appropriately safeguard the information."); *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 39 (D.D.C. 2020) (explaining covered entities may share PHI with business associates); *Monarch Fire Prot. Dist. of St. Louis Cnty., Mo. v. Freedom Consulting & Auditing Servs., Inc.*, 678 F. Supp. 2d 927, 932 (E.D. Mo. 2009), *aff'd*, 644 F.3d 633 (8th Cir. 2011) (same). Because Plaintiffs do not and cannot allege that the challenged disclosure to Adobe fell outside an appropriate BAA, Plaintiffs fail to allege any HIPAA violation. In any event, particularly given Plaintiffs' consent to the challenged conduct on the public Website and the Portal, Plaintiffs do not and cannot allege that Cigna's "primary motivation" was to act with a "criminal or tortious purpose." Plaintiffs thus cannot satisfy the requirements of the crime-tort exception.

**3. Plaintiffs' aiding and abetting theory fails.**

Plaintiffs' theory that Cigna aided or procured Online Technologies providers to allegedly intercept metadata about Plaintiffs' non-sensitive communications or as business associates is not actionable under ECPA.[5] ECPA's private right of action creates a scope of civil

[5] Plaintiffs inconsistently allege that Cigna *and* the Online Technology providers were the interceptors of their communications, so the SAC should also be dismissed for failure to comply with Rule 8. (*Compare, e.g.*, SAC ¶ 2 ("Plaintiffs seek damages and injunctive relief to redress **Defendants' unlawful interception** and misuse of these data.") (emphasis added), *with id.* ¶ 13 ("Defendants thereby permit the **Third-Party Vendors to intercept** Website users' private healthcare data.") (emphasis added)). Rule 8 requires a plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Without sufficient notice as to *which entity* allegedly intercepted Plaintiffs' communications, Cigna is unable to properly defend itself in this litigation.

liability that is narrower than the criminal liability codified in Section 2511. 18 U.S.C. § 2520. Section 2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of wire, oral, or electronic communication—not against any other person for procuring, enabling, or aiding and abetting another's interceptions. *See, e.g.*, *Kirch v. Embarq Mgmt. Co*., 702 F.3d 1245, 1246-47 (10th Cir. 2012) (holding that there is no civil ECPA claim for "procur[ing]" or "aiding and abetting" an interception); *Peavy v. WFAA-TV, Inc*., 221 F.3d 158, 169 (5th Cir. 2000) (same). When Congress enacted ECPA in 1986, it specifically excluded civil liability for procurement (or aiding and abetting), which had previously existed under the 1968 predecessor to ECPA. *See Kirch*, 702 F.3d at 1246-47 (addressing the statutory distinctions between civil and criminal liability under ECPA).

Because ECPA does not provide a private cause of action against an entity that allegedly procured or aided and abetted another party to intercept a communication, Plaintiffs' ECPA claim against Cigna must be dismissed on this independent ground as well.

### E. Out-of-State Plaintiffs Cannot Bring a Claim Under WESCA

#### 1. Plaintiffs fail to allege any interception in Pennsylvania.

To state a claim under any prong of WESCA, Plaintiffs must allege that the contents of their electronic communications were *intercepted*. 18 Pa. Cons. Stat. § 5703.[6] And that interception must occur within Pennsylvania's borders. *See Popa*, 52 F.4th at 129-30 ("Pennsylvania courts have declined to extend the WESCA to cover conduct occurring wholly

---

[6] Section 5703 encompasses (1) intentional interception, (2) intentional disclosure, or (3) intentional use. *Id*. The first prong expressly requires an interception; the second and third prongs also require a predicate interception. Under the "intentional disclosure" and "intentional use" prongs, a plaintiff must demonstrate that the defendant knows or has reason to know "that the information was obtained through the ***interception*** of a wire, electronic or oral communication." *Id*. § 5703(2)-(3) (emphasis added).

outside the Commonwealth[.]"). When it comes to Online Technologies, the Third Circuit has held that interception takes place where the communication is first routed to the defendant's servers, which occurs at the location of the plaintiff's browser. *Id*. at 131. In *Popa*, the case proceeded because there was no question as to where the plaintiff was located when accessing defendant's webpage through her browser, and the plaintiff alleged that she was a Pennsylvania resident. (*See* Compl., *Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-cv-00450-WSS (W.D. Pa. 2019), ECF No. 1-2 ¶ 3.)

***None*** of the Plaintiffs reside in Pennsylvania—they claim to be residents of New York, Minnesota, Ohio, California, and Massachusetts. (SAC ¶¶ 26-30.) And they do not allege that they were in Pennsylvania when they accessed a Cigna webpage. (*See generally* SAC.) Plaintiffs therefore cannot state a viable wiretapping claim under Pennsylvania law because, even in this third iteration of their pleading, they still do not allege that the contents of their communications were "intercepted" in Pennsylvania. *See Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *13 (E.D. Pa. Nov. 25, 2024) (dismissing WESCA claim premised on defendants' alleged use of web-enhancement technologies where plaintiff, a California resident, failed to allege that she accessed the webpage at issue from Pennsylvania).

**2. The choice-of-law provision does not change this result.**

As out-of-state residents, Plaintiffs rely on a choice-of-law provision in Cigna's Terms of Use as a basis to assert claims under Pennsylvania law. (SAC ¶¶ 65-66.) But the Term's choice-of-law provision is narrow and states only that: "These Terms of Use and the Site Specific Terms shall be governed by and construed in accordance with the laws of the State of Pennsylvania, U.S.A., excluding its conflict of laws rules." (Ex. A, Terms of Use at 10.) This provision does not expand WESCA to reach extraterritorial conduct.

"Pennsylvania courts analyze choice of law provisions to 'determine, based on their

narrowness or breadth, whether the parties intended to encompass all elements of their association.'" *Happy v. Marlette Funding, LLC*, 744 F. Supp. 3d 403, 410 (W.D. Pa. 2024) (citation omitted). In *De Lage Landen Financial Services, Inc. v. Cardservice International, Inc.*, the court reviewed a choice-of-law provision requiring the parties' agreement be "governed by and construed in accordance with the laws of Pennsylvania"—the exact language in Cigna's Terms of Use—and found the "operative terms" limited the provision's scope "to the interpretation and enforcement of the agreement." 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001). The court further held that this choice of law provision did not require that Pennsylvania law be applied to claims unrelated to the validity or construction of the agreement. *Id*.

As in *De Lage*, Cigna's choice-of-law provision cannot extend Pennsylvania-specific privacy laws to out-of-state activity. Where a choice of law provision is narrow, as here, courts have found that the contractual provision does not manifest an intent to litigate all tort or statutory claims under Pennsylvania law, nor expand the scope of the relevant statute. *See McDonald v. Wells Fargo Bank, N.A.*, 374 F. Supp. 3d 462, 478 (W.D. Pa. 2019).

Plaintiffs' assertions that Cigna is "estopped from asserting that [it is] not bound" by the choice-of-law provision (SAC ¶ 57), or from "denying that Pennsylvania laws govern disputes arising" from the use of the Website (*id.* ¶ 66), is meritless. Courts regularly find that choice-of-law provisions do not apply if they do not bear a reasonable relation to the claim or transaction at issue—even when the party that drafted the provisions challenges their application. *Philadelphia Factors, Inc. v. Gordon*, 1999 WL 225866, at *3 (E.D. Pa. Apr. 16, 1999). Here, the narrow choice-of-law provision in the Terms of Use applies only to disputes related to the "interpretation and enforcement" of the agreement. *De Lage*, 2001 WL 799870, at *2. It does not apply to privacy torts that do not arise out of the agreement, and it certainly does not transform out-of-

state conduct into Pennsylvania conduct under WESCA.

### F. The Court Should Dismiss Plaintiffs' Common Law Claims

#### 1. Plaintiffs' allegations do not justify the extraterritorial application of Pennsylvania common law.

Consistent with the Third Circuit's holding that WESCA applies only to "interceptions" occurring at a user's browser in Pennsylvania, there is a presumption against the extraterritorial application of state law to "avoid running afoul of the Commerce Clause of the United States Constitution." *Blackman v. Lincoln Nat'l Corp.*, 2012 WL 6151732, at *4 (E.D. Pa. Dec. 10, 2012). Pennsylvania federal courts have thus made clear that forum selection and choice-of-law clauses do not govern common law claims between the parties—"[c]ontractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994).

As explained above, nothing about Cigna's choice-of-law provision in the Terms of Use rebuts that presumption or suggests Pennsylvania law would apply to any of Plaintiffs' common law claims. The choice-of-law provision is a narrow one—it does not direct that Pennsylvania law can be extended to out-of-state Plaintiffs' and out-of-state conduct. (*See supra* § IV.F.)

#### 2. Plaintiffs fail to state a claim for intrusion upon seclusion.

To state a claim for common law intrusion upon seclusion under Pennsylvania law, a plaintiff must show that a defendant "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," and that "the intrusion would be highly offensive to a reasonable person." *Popa*, 426 F. Supp. 3d. at 120 (quoting Restatement (Second) of Torts § 625B). In determining whether conduct would be highly offensive to a reasonable person in the context of intrusion upon seclusion, courts look to whether the

information disclosed would have caused "mental suffering, shame, or humiliation to a person of normal sensibilities." *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 248 (Pa. 2002). Plaintiffs fail to meet this standard.

*First*, intrusion upon seclusion must be dismissed if the alleged intrusion was carried out by third parties. In *Kurowski*, the court rejected the argument that a healthcare provider "intruded upon its patients' seclusion when it allowed third-party source code to collect the data [the plaintiff] alleges it later disclosed," holding that "[t]he actual intrusion upon patients' seclusion, via interception of their communications, [was] carried out by third parties." 659 F. Supp. 3d at 943-44; *see also Steinberg*, 899 F. Supp. 2d at 342-43 (dismissing intrusion upon seclusion claim where defendant legitimately obtains information from a plaintiff, even if the facts are later disclosed to a third party). The same logic applies here. Plaintiffs repeatedly allege that Cigna "embedded" third-party code "to enable" third-party vendors to "intercept" and "collect" users' data. (*See, e.g.*, SAC ¶¶ 188-90, 232, 252.) Such alleged third-party "interception" does not support an intrusion upon seclusion claim against Defendants.

*Second*, Plaintiffs have not alleged conduct that is "highly offensive" to a person with ordinary sensibilities; they allege that Cigna uses Online Technologies that were disclosed to Plaintiffs (repeatedly) and to which they consented (repeatedly). *See Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383-84 (Pa. Super. Ct. 1984) ("There is [] no liability unless the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person.") (citing Restatement (Second) of Torts § 652B, comment d). Consent aside, Pennsylvania courts routinely hold that disclosure of health-related information is not sufficient to sustain a claim for intrusion upon seclusion. *See Yerger v. Landis Mfg. Sys., Inc.*, 1989 WL 66443, at *7 (E.D. Pa. June 16, 1989) ("Medical reports or brief descriptions of

common ailments or treatments are insufficient as a matter of law . . . ."); *accord Chicarella v. Passant*, 494 A.2d 1009, 1114 (Pa. Super. Ct. 1985) ("[T]he information disclosed by the hospital records is not of the sort which would 'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'"); *Adamski v. Johnson*, 80 Pa. D. & C. 4th 69, 75, 2006 WL 4129308 (Pa. Ct. Comm. Pleas 2006) ("There is no suggestion in the complaint that the description of [plaintiff's] surgery would cause her mental suffering, shame or humiliation.").

Here, the type of information allegedly disclosed—keystrokes, mouse clicks, mere presence on a webpage, and generic references to "medical issues" or "providers" (SAC ¶¶ 309-15) in the context of a business associate agreement—does not constitute the type of "highly offensive" conduct that "would have caused mental suffering, shame[,] or humiliation to a person of normal sensibilities." *Gerhart v. Energy Transfer Partners, L.P.*, 2020 WL 1503674, at *26 (M.D. Pa. Mar. 30, 2020) (quoting *Pro Golf Mfg.*, 809 A.2d at 247); *see also Popa*, 426 F. Supp. 3d at 122 ("The act of collecting Popa's keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach.").

**3. Plaintiffs fail to state a claim for breach of fiduciary duty.**

As a threshold matter, Plaintiffs cannot use the Terms of Use's narrow Pennsylvania choice-of-law provision to impose Pennsylvania fiduciary-duty law on out-of-state members' tort claims. Plaintiffs' breach of fiduciary duty claims is not a dispute about "interpretation and enforcement" of the Terms of Use. *De Lage*, 2001 WL 799870, at *2. It is a tort claim premised on Online Technologies. (SAC ¶¶ 57, 60-66, 506-09.) Plaintiffs' effort to use website Terms of Use to convert relationships with members across the country into Pennsylvania fiduciary-duty claims fails for the same reason their WESCA choice-of-law theory fails. (*See supra* § IV.E.)

Regardless, Plaintiffs have failed to plead the elements of a fiduciary duty claim under Pennsylvania law: "the existence of a fiduciary duty between the plaintiff and the defendant, that

defendant negligently or intentionally failed to act in good faith and solely for the plaintiff's benefit, and that the plaintiff suffered an injury cause by the defendant's breach of its fiduciary duty." *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023) (cleaned up).

In its prior decision, the Court recognized that *Perloff v. Transamerica Life Insurance Co.*, stands for the proposition that promises by an insurance company to protect private information on their own do not create a fiduciary duty. *Adair*, 2026 WL 295744, at *18 (citing *Perloff*, 393 F. Supp. 3d 404 (E.D. Pa. 2019)). And it is well-established that, under Pennsylvania law, an insurer-member relationship is typically arm's-length and does not, by itself, create a fiduciary duty. *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819 (Pa. 2017).[7] But the Court determined that Plaintiffs sufficiently alleged that "by entering medical information on Defendants' website, they relinquished control over how that information would be handled." *Adair*, 2026 WL 295744, at *18.

Cigna respectfully contends that the SAC does not plausibly allege that Plaintiffs ceded decision-making control over their data to Cigna as required to state a fiduciary duty claim under Pennsylvania law. *Yenchi*, 161 A.3d at 823. Instead, Plaintiffs allegations mirror exactly the deficient allegations in *Perloff*—that "Plaintiffs entrusted Defendants to protect [their] private and personal health information." (SAC ¶ 506.) This is not enough. Plaintiffs must plausibly allege that they ceded decision-making control to Cigna, not merely that Cigna "required

[7] This is consistent with the law in numerous states. *See, e.g.*, *Cohen v. Pruco Life Ins. Co.*, 2019 WL 7048969, at *3 (E.D. Mo. Dec. 23, 2019) (rejecting argument that HIPAA created a duty of care and fiduciary relationship in connection with insured's health information); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 773-74 (W.D.N.Y. 2017) (because plaintiffs' relationship with defendant health insurer was typical of the insurer-insured relationship, there was no "special relationship of trust and confidence" necessary to state a negligent misrepresentation claim); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1203 (D. Ore. 2016) (health insurer-insured relationship was "not the type of relationship that historically has been considered fiduciary in character").

plaintiffs to provide personal and confidential information" because "this will be the case in almost every insurer-insured relationship." *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 24 (D.D.C. 2019) (dismissing breach of fiduciary duty claim).

**4. Plaintiffs fail to state a claim for unjust enrichment.**

"[T]o prove unjust enrichment, [a plaintiff] must show that '1) [they] conferred benefits on the defendant, 2) the defendant appreciated such benefits, and 3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value.'" *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 412, 415 (E.D. Pa. 2023) (dismissing claim of unjust enrichment because the benefit conferred "cannot be based on 'speculative' or 'intangible benefits'") (citations omitted). Plaintiffs fail to allege any specific allegations to support any of these elements. (*See* SAC ¶¶ 316-23, 510-20.)

Courts regularly dismiss unjust enrichment claims where, like here, plaintiffs assert nothing more than vague allegations that they conferred a benefit to the defendant in the form of their personal information. *See, e.g.*, *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 279 (E.D. Pa. 2024) (dismissing unjust enrichment claim because "vague allegations that [the defendant] collected information for 'commercial gain' are not sufficient to state a claim for unjust enrichment") (citation omitted). In *Tignor v. Energy Fund, Inc.*, the court rejected a "scatter-shot" pleading filled with conclusory allegations, explaining that "bare conclusions are not entitled to the assumption of truth," and holding that the plaintiff did not confer a monetary benefit by providing personally identifiable information. 745 F. Supp. 3d 189, 205 (W.D. Pa. 2024). The same is true here. Plaintiffs do not plausibly allege that Cigna retained any benefit at their expense because Plaintiffs do not show that they expended their own resources or that any purported value in their information was reduced.

Plaintiffs' claim that they paid for privacy does not cure the defect. (SAC ¶¶ 316-18.)

Plaintiffs' allegations are speculative and do not plausibly tie any portion of premiums (or any other payments) to the Website tracking practices at issue. At most, Plaintiffs offer an after-the-fact assertion that "privacy and HIPAA compliance form part of the insurance product's economic value." (SAC ¶¶ 515-17.) *Salvitti* forecloses this kind of theory-by-labeling: unjust enrichment requires a concrete, non-speculative benefit conferred and inequitable retention, not generalized references to market competition and academic studies. 669 F. Supp. 3d at 412, 415.

Finally, Plaintiffs' unjust enrichment claim fails because it is premised on the same baseless and insufficient allegations as the rest of their claims—*i.e.*, the purported disclosure of non-sensitive metadata or information under a business associate agreement to which Plaintiffs consented. *See Pompa v. St. Luke's Hosp.*, 2023 WL 2332250, at *6 (M.D. Pa. Mar. 2, 2023) ("Defendants' unjust enrichment claim is based on the same wrongful conduct alleged in their first three counterclaims; those claims failed, so the unjust enrichment claim 'fall[s] with [them].'") (citations omitted). Because the SAC "improperly relies on the general functionality of the [Online Technologies] and [their] hypothetical capacity to transmit sensitive information," Plaintiffs' claim for unjust enrichment must be dismissed. *Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *5 (D.N.J. June 27, 2025).

## V. CONCLUSION

For the forgoing reasons, Cigna respectfully requests that the Court dismiss Plaintiffs' SAC in its entirety with prejudice. They consented to the conduct at issue and have failed to state a claim upon which relief may be granted.

Dated: March 24, 2026

By: /s/ Tiffany Cheung
Tiffany Cheung

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com
Email: BGiroud@stradley.com

TIFFANY CHEUNG (*pro hac vice*)
ALBERTO CORONA (*pro hac vice*)
EDUARDO FIGUEROA (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com
Email: ACorona@mofo.com
Email: EFigueroa@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: KDriscoll@mofo.com

ADAM J. HUNT (*pro hac vice*)
DILLON J. KRAUS (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Email: AdamHunt@mofo.com
Email: DKraus@mofo.com

LAURA HILL (*pro hac vice*)
MORRISON & FOERSTER LLP
925 Fourth Ave, Floor 38
Seattle, WA 98104
Telephone: (206) 327-6500
Email: LHill@mofo.com

***Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group***

**CERTIFICATE OF SERVICE**

I, Tiffany Cheung, hereby certify that on March 24, 2026, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

*/s/ Tiffany Cheung*
Tiffany Cheung