**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,

Defendants.

Case No. 2:25-cv-02384-WB

# DEFENDANTS CIGNA CORPORATE SERVICES, LLC'S AND THE CIGNA GROUP'S OPPOSITION TO MOTION TO STAY DISCOVERY DEADLINES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Despite Plaintiffs' Delays, Cigna Has Proceeded Diligently to Complete Fact Discovery by April 30 .......... 2

B. The Special Master's Recommendation .......... 5

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. Plaintiffs Cannot Show Good Cause for an Extension Because of Their Lack of Diligence and Strategic Choices. .......... 6

B. Plaintiffs Improperly Attempt to Shift Blame for their Unreasonable Delay. .......... 9

C. The Special Master's Recommendation Does Not Support a Blanket Discovery Extension. .......... 11

D. At Most, It May Be Appropriate to Narrowly Extend Discovery for Party Depositions. .......... 13

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Azuros, Inc. v. Kennedy International, Inc.*,
2025 WL 4672123 (D.N.J. Nov. 17, 2025) ....................13

*Cevdet Aksut Ogullari Koll, STI v. Cavusoglu*,
2017 WL 3013257 (D.N.J. July 14, 2017),
*aff'd sub nom. Cevdet Aksut Ve Ogullari Koll.Sti v. Cavusoglu*,
756 F. App'x 119 (3d Cir. 2018) ....................6, 9, 13

*Courtney v. Ivanov*,
2016 WL 1367755 (W.D. Pa. Apr. 6, 2016)....................7

*Florentino v. City of Newark*,
2022 WL 17820256 (D.N.J. Dec. 20, 2022)....................13

*Harrison Beverage Co. v. Dribeck Imps., Inc.*,
133 F.R.D. 463 (D.N.J. 1990)....................5

*In re Fine Paper Antitrust Litig.*,
685 F.2d 810 (3d Cir. 1982)....................10

*Koplove v. Ford Motor Corp.*,
795 F. 2d 15 (3d Cir. 1986)....................6

*J.G. v. C.M.*,
2014 WL 1652793 (D.N.J. Apr. 23, 2014) ....................5

*Javaid v. Weiss*,
2013 WL 4005390 (M.D. Pa. Aug. 5, 2013) ....................6, 9

*Merit v. Se. Pa. Transit Auth.*,
315 F. Supp. 2d 689 (E.D. Pa. 2004),
*aff'd*, 122 F. App'x 598 (3d Cir. 2005)....................10

*Nestlé Foods Corp. v. Aetna Cas. & Sur. Co.*,
1992 WL 183712 (D.N.J. July 20, 1992)....................6

*Nowell v. Reilly*,
437 F. App'x 122 (3d Cir. 2011) ....................7

*Ramos v. Walmart Inc.*,
2024 WL 4318603 (D.N.J. Sept. 24, 2024) ....................13

*Rearick v. Pa. State Univ.*,
416 F. App'x 223 (3d Cir. 2011) ....................5

*Reisinger v. City of Wilkes-Barre*,
520 F. App'x 77 (3d Cir. 2013) ....................6, 7, 9

*Summy-Long v. Pa. State Univ.*,
2015 WL 5924505 (M.D. Pa. Oct. 9, 2015),
*aff'd*, 715 F. App'x 179 (3d Cir. 2017)....................7

*Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*,
50 V.I. 727 (D.V.I. 2008)....................7

**Federal Rules**

Fed. R. Civ. P.
16(b)(4) ....................5, 6
26(b)(2)(C)(ii) ....................7

## I. INTRODUCTION

Plaintiffs do not and cannot show good cause for their eleventh hour bid to extend the fact discovery deadline for an indefinite time period (or alternatively, at least 75 days). (ECF No. 105-1 at 1, 6.) Based on the search terms that were agreed upon in December 2025, Cigna substantially completed its document production on March 6. Plaintiffs then noticed depositions of nine Cigna witnesses, two of which had already been deposed, and as well as four third parties to take place between April 10 and April 30. But Plaintiffs waited until April 6 to file their motion, less than a month before the fact discovery deadline, based largely on a dispute over search terms and custodians that Plaintiffs argued was still pending before Special Master Merenstein. (ECF No. 82.)

Since that time, Special Master Merenstein has issued his recommendation and rejected many of Plaintiffs' requests, recommending instead that Cigna (1) add four additional custodians out of the 10 custodians Plaintiffs sought and (2) apply certain additional electronic search terms. (*See* Declaration of Tiffany Cheung ("Cheung Decl.") at ¶ 6.) Based on Special Master Merenstein's recommendation, Defendants intend to produce any required supplemental document discovery by the existing fact discovery deadline, April 30.[1] Accordingly, the only extension necessary and appropriate here is a narrow one, limited to completing party depositions by May 29.[2] That limited extension is also warranted so that Cigna can re-open Plaintiffs' depositions based on their admitted failure to search for and produce responsive documents. (*See* Cheung Decl., Ex. B at 283:11-288:22.) Aside from completing these discrete

[1] Although Plaintiffs filed another eleventh-hour discovery dispute letter just 17 days ago (ECF No. 99), Plaintiffs' latest attempt to seek irrelevant and overbroad discovery should be denied.

[2] Defendants also intend to seek leave to provide supplemental submissions to the Special Master, or to renew their motion, in connection with Defendants' request to compel discovery from Plaintiffs, as outlined in Defendants position in the Parties' Joint Stipulation on Discovery Disputes to be Addressed by a Special Master. (ECF No. 82 at 23).

categories of discovery, however, fact discovery—which has been ongoing for nine months (*see* ECF No. 63 at 2)—should close on April 30, consistent with the Court's July 1, 2025 Scheduling Order. (ECF No. 27.)

## II. BACKGROUND

### A. Despite Plaintiffs' Delays, Cigna Has Proceeded Diligently to Complete Fact Discovery by April 30

The discovery chronology makes clear that Plaintiffs waited months or otherwise caused delays in the discovery process, while Cigna attempted to move the case forward.

***Plaintiffs' Discovery to Cigna***

Plaintiffs served their first requests for production on June 23, 2025. (ECF No. 63 at 2.) Defendants served responses and objections on July 23, agreed to produce responsive materials, and made an initial production on September 19. (ECF No. 63 at 2.) On September 23, *Defendants* initiated the process for negotiating search terms to move ESI discovery forward. (ECF No. 63 at 2.) Thus, at the outset of ESI negotiations, Defendants—not Plaintiffs—put forward the first concrete search-term framework tied to the technologies and webpages at issue. (ECF No. 63 at 2; Ex. Q to ECF No. 63 at 1.)

The parties then engaged in iterative negotiations. Plaintiffs did not provide a counterproposal until October 12, when they advanced facially overbroad search terms, such as "privacy," "consent," and "request" with no limiters. (ECF No. 63 at 2.) Defendants responded by revising their proposed searches on October 21 and again in early November, incorporating additional vendor terminology and many of Plaintiffs' concepts, while keeping the searches tethered to the actual claims at issue. (ECF No. 63 at 3.) Defendants also provided targeted hit reports for strings Plaintiffs identified on November 28. (*See* Exs. R at 2, AB at 5-6 to ECF No. 63; ECF No. 63 at 2-3.) On December 11, Plaintiffs agreed to Cigna's then-current search strings

and Cigna promptly began processing the resulting documents. (ECF No. 63 at 3.)

After negotiations during which Plaintiffs continued to insist on overbroad search terms, Plaintiffs submitted a dispute on January 29—three months before the discovery deadline—asserting that Defendants' custodians and search terms were insufficient. (ECF No. 58.)

Plaintiffs' unreasonable positions as to custodians also caused undue delay in the process for negotiating custodians. For example, in October 2025, Plaintiffs requested that Defendants include 10 additional custodians beyond the six Defendants had originally proposed. (Ex. R to ECF No. 63.) These 10 individuals were largely senior engineers and executives that Plaintiffs apparently had found on public websites whose scope of responsibilities were unrelated to the issues in the Complaint. In the spirit of compromise, Defendants agreed to include one of the 10 proposed individuals although he was the manager of an existing custodian. (Ex. V to ECF No. 63.) Demonstrating their unprincipled approach to requesting additional custodians, in January 2026, Plaintiffs largely dropped the original list of 10 new custodians and instead sought a new list of 10 additional custodians, with only one individual overlapping with their prior list. (ECF No. 56.) In an effort to resolve the custodian dispute so that discovery could proceed efficiently without burdening the Court, Defendants proposed a compromise during in-person meet and confer sessions in mid-February, but Plaintiffs refused to move at all from their request for 10 additional custodians. (ECF No. 82 at 15.)

After the parties' in-person meet-and-confer, the Court referred the matter to Special Master Merenstein for a recommendation. (ECF No. 91.)

On March 6, Cigna substantially completed its ESI collection and review based on the December 2026 agreed-upon search terms; in total Cigna produced more than 2,000 documents and approximately 13,500 pages. (ECF No. 103 at 3.) By the end of March, Plaintiffs noticed

depositions of nine Cigna witnesses—including additional 30(b)(6) depositions of Cigna and CCS, which had already been deposed in December. (*See* ECF No. 58 at 4; ECF No. 103 at 2.) Cigna provided dates for all witnesses, with the exception of two in-house attorneys for whom Cigna is seeking a protective order.[3] (*See* ECF No. 100 at 1.) On March 24, less than a month before the April 30 discovery deadline, Plaintiffs submitted another discovery dispute regarding objections that Cigna made to 11 of Plaintiffs' RFPs *nearly eight months ago* on July 23, 2025. (*See* ECF No. 99; *see also* ECF No. 103 at 1, 3.)

***Cigna's Discovery***

Cigna completed depositions of the named Plaintiffs on April 3. (*See* Cheung Decl. ¶ 4.) Those depositions confirmed that Plaintiffs' document productions were deficient. For example, Plaintiff Carla Danielson testified at her deposition [redacted] (*See* Cheung Decl., Ex. B at 283:11-288:22; ECF No. 63 at 2.) Those requests included a request for information regarding the device, browser, cookie, and online identifier data from the devices and browsers Plaintiffs allegedly used to access the Website at issue. Such requests are directly related to verifying Plaintiffs' allegations regarding their alleged visits to the website at issue. (*See* ECF No. 63 at 6-7.) And in fact, Plaintiffs, including Plaintiff Danielson, [redacted] (Cheung Decl., Ex. A at 7.) However, Plaintiffs have not produced any documents responsive to this request, and at deposition, Plaintiff Danielson testified [redacted]

[3] The dispute concerning Plaintiffs' efforts to depose Cigna's in-house attorneys was among the issues later referred to the Special Master. (*See* ECF No. 100 at 1; ECF No. 105-1 at 5-6.)

[redacted] (*See* Cheung Decl., Ex. B at 283:11-288:22, 79:5-80:21) Plaintiffs' counsel had not previously alerted Defendants regarding Plaintiffs' deletion of relevant information, though Cigna requested that information more than *eight months* earlier. Defendants are still awaiting sufficient document productions from Plaintiffs. For example, on April 7, a named plaintiff produced nearly 500 pages of additional documents in the week *following* her deposition. (Cheung Decl. ¶ 5.)

### B. The Special Master's Recommendation

On March 12, 2026, this Court referred Plaintiffs' January 29, 2026 discovery dispute concerning search terms and custodians to Special Master Merenstein. (ECF No. 91.) In their dispute, Plaintiffs argued that Cigna should add 10 custodians—including three in-house attorneys—and run broad search terms without any reasonable limitations. (ECF No. 82 at 3-6.) After further briefing and argument, Special Master Merenstein recommended on April 7 that Cigna (1) add four additional custodians, though one custodian would be subject to limited search terms; and (2) apply certain additional or modified search terms. (Cheung Decl. ¶ 6.) Otherwise, Special Master Merenstein did not recommend ordering the broad discovery Plaintiffs sought. (*Id.*)

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." To establish "good cause," the party seeking to alter a schedule must show that the deadlines in an order "cannot reasonably be met despite the diligence of the party seeking the extension." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) (citation omitted); *see Rearick v. Pa. State Univ.*, 416 F. App'x 223, 224-25 (3d Cir. 2011). The good cause standard is "not a low threshold." *J.G. v. C.M.*, 2014 WL 1652793, at *1 (D.N.J. Apr. 23, 2014). A scheduling order "is not a frivolous

piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted); *see Nestlé Foods Corp. v. Aetna Cas. & Sur. Co.*, 1992 WL 183712, at *2 (D.N.J. July 20, 1992). Permitting discovery extensions in the absence of good cause would "deprive the trial judges of the ability to effectively manage the cases on their overcrowded dockets." *Koplove v. Ford Motor Corp.*, 795 F. 2d 15, 18 (3d Cir. 1986). Parties must diligently pursue discovery and timely pursue an extension only if necessary despite that diligence. *Cevdet Aksut Ogullari Koll, STI v. Cavusoglu*, 2017 WL 3013257, at *4 (D.N.J. July 14, 2017), *aff'd sub nom. Cevdet Aksut Ve Ogullari Koll.Sti v. Cavusoglu*, 756 F. App'x 119 (3d Cir. 2018).

## IV. ARGUMENT

### A. Plaintiffs Cannot Show Good Cause for an Extension Because of Their Lack of Diligence and Strategic Choices.

Plaintiffs' failure to move discovery forward for months while waiting until the last minute to seek relief from the Scheduling Order falls far short of satisfying the "good cause" standard under Rule 16(b)(4). Courts in this Circuit routinely deny requests to extend discovery deadlines where the movant had sufficient opportunity to complete discovery but failed to do so, or where the need for an extension arises from the movant's own lack of diligence. *See Reisinger v. City of Wilkes-Barre*, 520 F. App'x 77, 81 (3d Cir. 2013) (movant "provide[d] plausible explanations for many of the delays," but the district court did not err in declining to extend discovery where movant "failed to demonstrate 'that more diligent discovery was impossible'" (citation omitted)); *Javaid v. Weiss*, 2013 WL 4005390, at *6 (M.D. Pa. Aug. 5, 2013) ("This total failure to engage in the discovery process also undermines the plaintiff's belated request to extend this discovery period for some additional period of time"). A court must limit the extent of discovery otherwise allowed "if it determines that . . . the party seeking discovery has had

ample opportunity to obtain the information by discovery in the action." *Courtney v. Ivanov*, 2016 WL 1367755, at *5 (W.D. Pa. Apr. 6, 2016) (quoting Fed. R. Civ. P. 26(b)(2)(C)(ii)).

A party cannot establish "good cause" where it had the information or opportunity necessary to meet the existing schedule but failed to act. *See Summy-Long v. Pa. State Univ.*, 2015 WL 5924505, at *5 (M.D. Pa. Oct. 9, 2015) (denying motion to compel where "Plaintiff waited until the very last of the discovery period to attempt to compel Defendants to produce an overbroad swathe of documents"), *aff'd*, 715 F. App'x 179 (3d Cir. 2017); *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*, 50 V.I. 727, 739-40 (D.V.I. 2008) (denying plaintiff's motion to extend the fact discovery deadline for lack of diligence where the plaintiff, among other things, delayed noticing depositions, including 30(b)(6) depositions, until the end of discovery).

For example, in *Reisinger*, the Third Circuit affirmed a denial of a motion to extend the discovery period because the movant was "routinely dilatory in compliance with deadlines" and introduced "scheduling difficulties" that interfered with "the efficient administration of justice." 520 F. App'x at 81. In refusing to extend the discovery deadline, the district court cited "judicial economy and administrative efficiency." *Id.* at 78-80. Similarly, in *Nowell v. Reilly*, the Third Circuit affirmed a denial of a motion to compel discovery where the movant filed a request for production of documents "only nineteen days before the close of discovery" and, upon receiving objections to that request, waited twenty days before responding or speaking with defendant's counsel via telephone. 437 F. App'x 122, 124-25 (3d Cir. 2011).

Like in *Reisinger* and *Nowell*, Plaintiffs move for an extension though they are the source of delay. Despite the nine months Plaintiffs have had to conduct discovery, Plaintiffs failed to proceed reasonably and diligently with negotiations over custodians and search terms. Moreover, Plaintiffs waited until the eve of the discovery cutoff to move to compel large, broad

categories of documents. (ECF No. 99.) Plaintiffs' delay tactics and prejudicial strategic decisions do not justify their requested open-ended discovery extension.

***First***, Plaintiffs did not reasonably move forward with search-term negotiations to move along document production. Plaintiffs knew Defendants' responses and objections to their requests for production as early as July 23, yet they did not propose search terms in the three months afterwards. (*See* ECF No. 63 at 1.) Rather, Defendants made an initial production on September 19 and, on September 23, *Defendants* initiated search term negotiations to move ESI discovery forward. (ECF No. 63 at 2.) Plaintiffs did not provide a counterproposal until October 12, when they advanced facially overbroad terms, such as "Adobe," "Google," "Meta," "cookie," "pixel," "analytic," "tracking," "privacy," "consent," and "request" with no limiters. (ECF No. 63 at 2.) Defendants then revised their searches multiple times in an attempt to reach agreement, leveraging additional vendor terminology, Plaintiffs' concepts, and hit reports. (ECF No. 63 at 2-3.) Plaintiffs finally agreed to proposed search terms on December 11. (ECF No. 63 at 3.)

***Second***, Plaintiffs did not engage in good faith discovery negotiations as they pushed for expanded discovery without a justifiable reason. Despite the months-long search term negotiations, Plaintiffs alleged on January 29—three months before the discovery deadline—that Defendants' custodians and search terms were insufficient. (*See* ECF No. 58.) On March 6, Defendants substantially completed their production based on the search terms Cigna understood the parties had agreed to, and on March 25 made an additional production of redacted documents and family members of privileged documents, along with a privilege log. But Plaintiffs did not seek Court intervention on their discovery requests until March 24, 2026—months after discovery negotiations and only weeks before fact discovery closed. (*See* ECF No. 99; *see also* ECF No. 103 at 1, 3.) Defendants should not be penalized for Plaintiffs' repeated dilatory

practices and inefficiencies.

Finally, Plaintiffs cannot use the recent filing of a Second Amended Complaint—more than a month after the Court's order granting in part Cigna's motion to dismiss their First Amended Complaint—as a basis for extending discovery. Plaintiffs cannot manufacture "good cause" for an extension by relying on amendments of their own making; courts in this Circuit routinely reject attempts to extend deadlines based on self-inflicted developments in the case or their own strategy. *See Cevdet Aksut Ogullari Koll, STI*, 017 WL 3013257, at *5 (rejecting plaintiffs' argument that an extension was warranted based on discovery issues that were a direct result of their pleading strategy); *see also Reisinger*, 520 F. App'x at 81 (party moving to extend discovery was the source of scheduling difficulties and delay); *Javaid*, 2013 WL 4005390, at *6 (denying motion to extend where plaintiff was source of delay and case "languished, and continues to languish, despite the defendant's efforts to work with the plaintiff"). The Second Amended Complaint has not injected a genuinely new factual issue justifying an extension of the fact discovery cutoff. Rather, it reasserts a claim that Plaintiffs did not consent to the challenged practices when the Court has already ruled that they did consent. (*See* ECF No. 101 at 22-24.) Reasserting an argument already rejected by the Court does not constitute good cause for extending fact discovery. Plaintiffs' decision to reassert theories previously rejected by the Court does not justify an extension of the fact discovery cutoff, much less an indefinite one.

### B. Plaintiffs Improperly Attempt to Shift Blame for their Unreasonable Delay.

Plaintiffs' attempt to shift the blame for their own delay to Defendants is meritless. *See Cevdet Aksut Ogullari Koll, STI* 2017 WL 3013257, at *5 (rejecting plaintiffs' blame on the defendant in preventing the completion of discovery, noting, "[t]he record does not support Plaintiff's contention that Defendants are 'culpable.'") Courts in this Circuit look to the actual

chronology of events—not an opposing party's characterization—in evaluating diligence, and they routinely reject arguments that a party "delayed" where the timing of a motion was driven by ongoing disputes or circumstances outside that party's control. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982) (relying on the record of discovery rather than the representations of the party that sought to extend discovery); *Merit v. Se. Pa. Transit Auth.*, 315 F. Supp. 2d 689, 697 (E.D. Pa. 2004) (denying motion to extend a pretrial filing deadline and compel additional discovery where plaintiff failed to show defendant's responses were inadequate, and the responses were otherwise timely and subject to limited, reasonable objections), *aff'd*, 122 F. App'x 598 (3d Cir. 2005).

Cigna did not sit on discovery here. After timely serving written responses and objections on July 23, 2025, Cigna made an initial production on September 19, but under the ESI protocol, the parties were required to negotiate search terms in order to move forward with Defendants' ESI productions. (ECF No. 39.) Plaintiffs, however, did not proceed diligently or reasonably with such negotiations. On September 23, Defendants proposed targeted, technology and website-specific search terms to move ESI discovery forward. (ECF No. 63 at 2-3; Ex. Q to ECF No. 63.) Plaintiffs did not provide a counterproposal until October 12. (Ex. R to ECF No. 63.) Cigna then revised its proposed searches on October 21 and November 4 and provided the hit reports Plaintiffs requested on November 28. Throughout these negotiations, Plaintiffs' continued insistence on facially overbroad search terms caused additional unreasonable delay. Ultimately, on December 11, Plaintiffs asked Defendants, "in the interest of moving discovery forward," to "proceed immediately" with the November 4 search strings. (Exs. W and AC to ECF No. 63.) On March 6, Cigna substantially completed its production of documents based on those search terms. And Cigna worked to find mutually available dates for five Cigna witnesses

to sit for depositions before the April 30 deadline. That chronology does not show obstruction; instead, it shows ongoing efforts by Defendants to negotiate search terms and move the ESI production forward.

Plaintiffs likewise were not diligent in raising the disputes they now invoke to justify a broad extension. Defendants objected to the 11 RFPs at issue in Plaintiffs' latest discovery letter on July 23, 2025. But Plaintiffs did not seek Court intervention on those requests until March 24, 2026, only weeks before fact discovery closed. (ECF No. 103 at 1, 3.) By then, Defendants had substantially completed their production, and Plaintiffs had noticed 12 upcoming depositions and noticed three more the following week. (*Id*. at 2-3, 6.) And as of March 24, five of the seven Cigna witness depositions noticed by Plaintiffs (all witnesses except the Cigna attorneys) were confirmed to proceed on agreed dates. (ECF No. 100 at 1.) The Special Master's recommendation—to grant only some of Plaintiffs' requested custodians and search terms—further confirms that the majority of Plaintiffs' requests were overbroad, and this is not a case of Defendants refusing to participate in discovery. Plaintiffs attempt to blame Defendants for Plaintiffs' own discovery delays should be rejected.

### C. The Special Master's Recommendation Does Not Support a Blanket Discovery Extension.

Plaintiffs' request for a broad extension of fact discovery is centered on a discovery dispute previously outstanding before the Special Master. Their request has been mooted by the issuance of the Special Master's recommendation on April 7. (*See* Cheung Decl. ¶ 6.) The Special Master is recommending Defendants produce limited additional discovery: to collect and produce documents from certain additional custodians, and to conduct targeted searches for responsive documents. (*Id.*) Contrary to Plaintiffs' assertions, Defendants intend to comply with this recommendation by the current April 30 deadline.

The limited remaining disputes likewise do not justify moving that deadline. (*See* ECF Nos. 99, 103.) First, Plaintiffs' late-raised complaints about 11 requests for production do not support an extension. Defendants properly objected to these RFPs eight months ago on July 23, 2025, while agreeing to produce documents in response to other requests after a reasonably diligent search. (ECF No. 103 at 1.) As Defendants explained, the at-issue requests are facially overbroad, untethered to the technologies and websites actually at issue, and directed to sweeping categories of technical, marketing, compliance, regulatory, and legal material beyond Plaintiffs' claims. (*Id.*) Defendants already agreed to search for and produce documents concerning the relevant websites and online technologies. (ECF No. 103 at 1, 3-4, 6-7.) Despite Defendants' good faith efforts, Plaintiffs did not meaningfully meet-and-confer regarding Defendants' responses and objections to these RFPs before submitting their discovery letter on March 24. (*See* ECF No. 103 at 1.) Even if the Special Master were to require some limited supplemental production, that would not, on the current record, justify extending the date by which document production must be completed. Second, Plaintiffs' effort to depose Cigna's in-house counsel does not warrant extending the document-production deadline. Defendants have explained that Plaintiffs cannot satisfy the standard for deposing opposing counsel, and the Special Master likewise declined to recommend adding those attorneys as custodians, making it unlikely their depositions will be necessary in any event. (ECF No. 100 at 1-5.) Even if such depositions were later permitted, that issue would affect, at most, deposition scheduling—not the deadline for completing document production. Third, Plaintiffs' clawback challenge concerns a single document that Defendants promptly re-produced in redacted form after inadvertent production. If the Special Master were to disagree with Defendants' privilege position, that issue can be resolved—and the document produced, if necessary—by April 30. (ECF No. 103 at 1-2,

7-8.)

The mere existence of ongoing discovery disputes—or the referral of those disputes to a Special Master—does not constitute good cause to stay or extend discovery. Courts consistently hold that discovery must proceed notwithstanding unresolved disputes, and that special masters are appointed to *facilitate* efficient case progression, not to halt it. *See Ramos v. Walmart Inc.*, 2024 WL 4318603, at *4 (D.N.J. Sept. 24, 2024) (affirming the denial of additional discovery under the "good cause" standard notwithstanding the involvement of a special master); *Florentino v. City of Newark*, 2022 WL 17820256, at *2-4 (D.N.J. Dec. 20, 2022) (affirming a magistrate judge's denial of an appeal an order declining to extend a discovery deadline); *see also Cevdet Aksut Ogullari Koll, STI*, 2017 WL 3013257, at *5 (the complexity of the case and ongoing discovery disputes were not reasonable bases for extending discovery). Allowing a stay here would invert that principle by converting the Special Master process into a basis for delay rather than progress. The Special Master's recommendation confirms that any remaining discovery is discrete and manageable and thus provides no basis to disturb the Court's schedule.

### D. At Most, It May Be Appropriate to Narrowly Extend Discovery for Party Depositions.

While a broad, wholesale extension of discovery is not warranted, it would be appropriate to narrowly extend discovery for party depositions to May 29 to enable document production relevant to each party witness to be completed before their deposition is taken. This would obviate any claim by Plaintiffs that they are entitled to reopening depositions of Defendants' witnesses and corporate designees. (ECF No. 100 at 1; ECF No. 103 at 2-3.) With this salve, Plaintiffs cannot claim that they need a broad, lengthy extension in fact discovery.

Such a course would align with practice in this circuit. For example, in *Azuros, Inc. v. Kennedy International, Inc.*, the court rejected the plaintiff's expansive requests for additional

discovery but permitted "limited," "targeted" discovery that "provide[d] a fair process to both sides." 2025 WL 4672123, at *5 (D.N.J. Nov. 17, 2025). Similarly, this Court can achieve a just outcome with a very narrow extension of discovery.

## V. CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' request for an open-ended extension of the April 30 fact discovery deadline set by the Court on July 1, 2025. (ECF No. 27.) At most, an extension of the fact discovery cutoff should be limited only to completing party depositions.

Dated: April 10, 2026

By: */s/ Tiffany Cheung*
Tiffany Cheung

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com
Email: BGiroud@stradley.com

TIFFANY CHEUNG (*pro hac vice*)
ALBERTO CORONA (*pro hac vice*)
EDUARDO FIGUEROA (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com
Email: ACorona@mofo.com
Email: EFigueroa@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: KDriscoll@mofo.com

ADAM J. HUNT (*pro hac vice*)
DILLON J. KRAUS (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Email: AdamHunt@mofo.com
Email: DKraus@mofo.com

LAURA HILL (*pro hac vice*)
MORRISON & FOERSTER LLP
925 Fourth Ave, Floor 38
Seattle, WA 98104
Telephone: (206) 327-6500
Email: LHill@mofo.com

***Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group***

**CERTIFICATE OF SERVICE**

I, Tiffany Cheung, hereby certify that on April 10, 2026, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

/s/ *Tiffany Cheung*
Tiffany Cheung