**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,

Defendants.

Case No. 2:25-cv-02384-WB

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Judge: Hon. Wendy Beetlestone

Date Action Filed: May 9, 2025

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ....................................................................................................2

A. Defendants' Use of Tracking Technologies to Intercept Plaintiffs' Communications ....................................................................................2

1. Defendants' Interception of Plaintiffs' Communications on Defendants' Website ....................................................................................2

2. Defendants' Interception of Plaintiffs' Communications in the myCigna Portal ....................................................................................3

B. Defendants' Interception of Plaintiffs' Private Health Data ....................................3

C. Defendants' Concealment of Their Privacy Policies ....................................4

D. Defendants' Failure to Obtain the Authorizations Required by the HIPAA Notice, Which Supersedes Defendants' Privacy Notice ....................................4

E. Plaintiffs' Lack of Consent to the At-Issue Conduct ....................................5

F. Procedural Posture ....................................................................................5

ARGUMENT ....................................................................................................6

I. Plaintiffs Did Not Consent to Defendants' Transmission of Their Protected Health Information to Third Parties ....................................7

A. Defendants' HIPAA Notice Expressly Controls and Required Authorizations ....................................................................................7

B. Under the Terms of Defendants' HIPAA Notice, Plaintiffs Never Consented to the Interception and Disclosure of Their PHI to Third Parties for Marketing Purposes ....................................................................................8

C. Plaintiffs Plausibly Allege That They Did Not Consent to Defendants' Privacy Notice by Merely Using the Website and Patient Portal ....................................................................................10

D. Plaintiffs Plausibly Allege That They Could Not Have Consented to Practices That Were Not Disclosed to Them ....................................12

II. Plaintiffs Are Not Estopped from Amending Their Allegations ....................................13

A. There Is No Basis to Invoke Judicial Estoppel to Bar Plaintiffs from Amending Their Allegations ....................................................................................13

B. Equitable Estoppel Does Not Apply to This Action ....................................17

III. Plaintiffs Plausibly State Claims Upon Which Relief May Be Granted ....................................18

A. Plaintiffs Plausibly State an ECPA Claim ....... 19
B. Plaintiffs Plausibly State a Claim for Intrusion Upon Seclusion ....... 23
C. Plaintiffs Plausibly State a Claim for Unjust Enrichment ....... 25
D. Plaintiffs Plausibly State a Claim for Breach of Fiduciary Duty ....... 26

IV. Defendants' Residency and Territorial Arguments Fail ....... 27

A. Defendants' Terms of Use Require Application of Pennsylvania Law ....... 27
B. Controlling Authority Confirms that Pennsylvania Statutes May Apply to Non-Residents ....... 28
C. Choice-of-Law Principles Favor Applying Pennsylvania Law Here ....... 29
D. Situs of Interception Is a Factual Issue Inappropriate for Determination at the Motion-to-Dismiss Stage ....... 30

CONCLUSION ....... 30

# TABLE OF AUTHORITIES

## Cases

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24-1404, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sep. 9, 2024) .................................. 22

*Almond v. Janssen Pharms., Inc.*,
No. 20-2183, 2020 U.S. Dist. LEXIS 207900 (E.D. Pa. Nov. 6, 2020) .................................. 28

*Arkema Inc. v. Maviro Catalyst, Inc.*,
No. 24-6130, 2025 U.S. Dist. LEXIS 87697 (E.D. Pa. May 8, 2025) .................................. 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................. 18

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................. 11, 12

*Borse v. Piece Goods Shop, Inc.*,
963 F.2d 611 (3d Cir. 1992) .................................. 24

*Britton v. Whittmanhart, Inc.*,
No. 09-1593, 2009 U.S. Dist. LEXIS 71813 (E.D. Pa. Aug. 14, 2009) .................................. 27

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .................................. 25

*Checchia v. Solo Funds*,
No. 23-444-KSM, 2023 U.S. Dist. LEXIS 98889 (E.D. Pa. June 7, 2023) .................................. 10, 11

*Checchia v. SoLo Funds, Inc.*,
771 F. Supp. 3d 594 (E.D. Pa. 2025) .................................. 10, 12

*Childs v. Fitness Int'l LLC*,
No. 2:22-cv-05196-JDW, 2023 U.S. Dist. LEXIS 88780 (E.D. Pa. May 22, 2023) .................................. 11

*Claudio v. MGS Mach. Corp.*,
798 F. Supp. 3d 575 (E.D. Pa. 2011) .................................. 16, 17

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .................................. 22

*Danganan v. Guardian Protection Servs., Inc.*,
645 Pa. 181 (Pa. 2018) .................................. 28

*Davis v. Facebook, Inc.*
*(In re Facebook Inc. Internet Tracking Litig.)*,
956 F.3d 589 (9th Cir. 2020) .................................. 25

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) .................................. 26

*Doe v. Post Acute Med, LLC*,
No. 24-547, 2025 U.S. Dist. LEXIS 26667 (M.D. Pa. Feb. 14, 2025) .................................. 30

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022) .................................................................................... 9

*Dukich v. Ikea US Retail LLC*,
No. 20-2182, 2021 U.S. Dist. LEXIS 7271 (E.D. Pa. Jan. 14, 2021)...................................... 28

*Farrell v. David Davis Enters., Inc.*,
No. 95-2986, 1996 U.S. Dist. LEXIS 481 (E.D. Pa. Jan. 19, 1996)........................................ 29

*Flora v. Cnty. of Luzerne*,
776 F.3d 169 (3d Cir. 2015) .................................................................................... 9

*Franz v. Beiersdorf, Inc.*,
745 F. App'x 47 (9th Cir. 2018) ................................................................................ 26

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019) ..................................................................................... 14

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
615 F.3d 159 (3d Cir. 2010) .................................................................................... 26

*Ho-Ho-Kus, Inc. v. Sucharski*,
No. 2:23-cv-01677, 2025 U.S. Dist. LEXIS 162444 (D.N.J. Aug. 21, 2025)............. 15, 16, 17

*In re Google Cookie*,
806 F.3d 125 (3d Cir. 2015) .................................................................................... 21

*In re Meta Pixel Healthcare Litig.,*
647 F. Supp. 3d 778 (N.D. Cal. 2022) ......................................................................... 23

*In re Nickelodeon*,
827 F.3d 262 (3d Cir. 2015) .................................................................................... 20

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 1, 2024).................................................... 25

*Ingrao v. Addshoppers, Inc.*,
No. 24-1022, 2024 U.S. Dist. LEXIS 214748 (Nov. 25, 2024)............................................ 29

*Kruzits v. Okuma Mach. Tool Inc.*,
40 F.3d 52 (3d Cir. 1994) ....................................................................................... 27

*Lionetta v. InMarket Media, LLC*,
798 F. Supp. 3d 139 (D. Mass. 2025) ......................................................................... 25

*Lowery v. Stovall*,
92 F.3d 219 (4th Cir. 1996) .................................................................................... 17

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .................................................................................... 20

*McTernan v. City of York,*
564 F.3d 636 (3d Cir. 2009) .................................................................................... 18

*Montrose Med. Group Participating Sav. Plan v. Bulger*,
243 F.3d 773 (3d Cir. 2001) .................................................................................... 14

*Murphy v. Thomas Jefferson Univ. Hosps. Inc.*,
No. 22-4674-CMR, 2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) ........................ 22

*New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*,
101 F.3d 1492 (3d Cir. 1996) ........................................................................................ 14

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)........................................................................ 23

*O'Hanlon v. Uber Techs.*,
990 F.3d 757 (3d Cir. 2021) .......................................................................................... 18

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988) .......................................................................................... 14

*Ott v. Goodwin*,
No. 14-785, 2018 U.S. Dist. LEXIS 50783 (M.D. Pa. Mar. 27, 2018) ................................... 20

*PAE Gov't Servs. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) ......................................................................................... 15

*Palcsesz v. Midland Mut. Life. Ins. Co.*,
87 F. Supp. 2d 409 (D.N.J. 2000) ................................................................................... 17

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ........................................................................................ 9, 18

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ................................................................................ 27, 29, 30

*Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*,
No. 2:18-cv-00345, 2019 U.S. Dist. LEXIS 135203 (W.D. Pa. Aug. 12, 2019)................ 23, 27

*Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*,
809 A.2d 243 (Pa. 2002)............................................................................................ 24, 25

*Rodriguez v. Google LLC*,
No. 20-04688, 2026 U.S. Dist. LEXIS 20412 (N.D. Cal. Jan. 30, 2026)................................ 26

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996) ............................................................................................ 13

*Smart v. Main Line Health*,
No. 22-5239, 2026 U.S. Dist. LEXIS 81515 (E.D. Pa. April 16, 2026).................................. 21

*Styer v. Hugo*,
422 Pa. Super. 262 (1993) ............................................................................................ 25

*Torchia v. Torchia*,
346 Pa. Super. 229 (1985). ........................................................................................... 25

*Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*,
864 F. Supp. 2d 301 (E.D. Pa. 2012) .............................................................................. 29

*Unisys Fin. Corp. v. U.S. Vision, Inc.*,
428 Pa. Super. 107 (Pa. 1993) ....................................................................................... 29

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
712 F.3d 165 (3d Cir. 2013) .......... 14

*W.W. v. Allegheny Health Network*,
No. 2:23-cv-01163-CCW, 2025 U.S. Dist. LEXIS 35164 (W.D. Pa. Feb. 27, 2025) .......... 11

*W.W. v. Orlando Health, Inc.*,
No. 24-1068, 2025 U.S. Dist. LEXIS 40038 (M.D. Fla. Mar. 6, 2025) .......... 22

*Wiggins v. Lab'y Corp. of Am. Holdings*,
No. 24-0648, 2024 U.S. Dist. LEXIS 185859 (E.D. Pa. Oct. 11, 2024) .......... 12

*Wolfson v. Lewis*,
924 F. Supp. 1413 (E.D. Pa. 1996) .......... 24

**Statutes**

18 U.S.C. § 2511(1)(a) .......... 19, 20

18 U.S.C. § 2511(1)(c) .......... 20

18 U.S.C. § 2511(1)(d) .......... 20

18 U.S.C. § 2511(2)(d) .......... 21

**Regulations**

45 C.F.R. § 160.103 .......... 4, 21

45 C.F.R. § 164.508(a)(3) .......... 23

45 C.F.R. § 164.508(c)(1) .......... 9

45 C.F.R. § 164.508(c)(6)(vi) .......... 23

**Other Authorities**

Restatement (Second) of Torts § 652B .......... 24

## PRELIMINARY STATEMENT

Plaintiffs' Second Amended Complaint ("SAC") cures the deficiencies identified by the Court in its February 4, 2026, Order (the "Order"). As an initial matter, the SAC makes clear that Defendants' HIPAA Notice – *not* the privacy notice upon which Defendants urge the Court to rely – governs Defendants' handling of Plaintiffs' health information. Under the terms of the HIPAA Notice, Defendants were *required* to obtain Plaintiffs' express authorization prior to disclosing their health information to third parties for marketing purposes – the exact type of disclosure Plaintiffs allege occurred here. It is undisputed that Defendants failed to obtain this authorization. In the absence of such authorization, Plaintiffs could not have consented to the disclosure of their protected health information to third parties.

Defendants, for their part, largely ignore the SAC's extensive new allegations. Instead, Defendants again invoke the privacy notice referenced in the Court's Order, insisting that Plaintiffs consented to the disclosure of their private health information under the terms of that notice, even though Plaintiffs' SAC makes clear that a separate, more restrictive notice (i.e., the HIPAA Notice) supersedes the privacy notice and applies to Plaintiffs' claims. Additionally, Defendants fixate on an edit in a single paragraph of Plaintiffs' SAC and demand the Court break new legal ground by dismissing Plaintiffs' entire case with prejudice as an apparent sanction for amending their allegations – notwithstanding the fact that Defendants fail to identify *any* court, in this Circuit or elsewhere, that has adopted Defendants' novel, and legally incorrect, estoppel argument. Defendants then assert that Plaintiffs fail to state a claim for relief, again invoking the privacy policy referenced in the Court's Order and ignoring the dozens of new paragraphs of factual allegations in Plaintiffs' amended complaint. Finally, relying on a misapplication of black letter law, Defendants regurgitate the same residency and extraterritoriality objections they raised in

their prior motion to dismiss, which the Court did not adopt.

Because none of these arguments provide a basis for dismissal, Defendants' motion to dismiss should be denied.

## BACKGROUND

### A. Defendants' Use of Tracking Technologies to Intercept Plaintiffs' Communications

Plaintiffs are insureds of Defendants' health plans whose electronic communications were surreptitiously intercepted by Defendants. SAC at ¶¶ 3–15. Between May 2023 and the present, Plaintiffs accessed Defendants' www.cigna.com website (the "Website") and the myCigna portal to manage their healthcare. *Id.* Plaintiffs allege that Defendants embedded on the Website and the myCigna portal tracking technologies – including tracking pixels and session replay code[1] – from certain third-party vendors ("Third-Party Vendors"). *Id.* These tracking technologies captured Plaintiffs' private communications, including keystrokes, search queries, and portal activity ("Website Communications"), and transmitted data concerning Plaintiffs' communications to Defendants and the Third-Party Vendors. *Id.* at ¶¶ 7, 286–87, 337, 341, 374.

#### 1. Defendants' Interception of Plaintiffs' Communications on Defendants' Website

Plaintiffs allege that the tracking technologies embedded on Defendants' Website allowed Defendants and Third-Party Vendors to intercept the health-related communications of Plaintiffs and the proposed class. *Id.* at ¶¶ 174–308. For instance, when an insured individual entered a private query on the Website, Defendants' code captured the full search text, placed cookies on the individual's device to track subsequent activity, and assigned the individual's device a unique identifier – a digital "tag" that allowed Defendants and the Third-Party Vendors to monitor the

[1] A tracking pixel is a "a piece of code that tracks users' interactions with a website, including their pages visited, any buttons clicked, and the full text of any search queries entered." SAC at ¶ 247. Session replay is code that "logs and tracks *everything* a user does on a webpage, including mouse movements, clicks, scrolls, and taps[.]." SAC at ¶ 121.

individual's activities. *Id.* These tracking technologies allowed Defendants and the Third-Party Vendors to intercept confidential search queries and build profiles that followed insured individuals across the internet. *Id.* at ¶¶ 177–86, 187–98, 199–208, 212–19, 220–26. In addition, Defendants employed session replay technology on their Website. *Id.* at ¶¶ 260–67. Unlike tracking pixels, which record discrete interactions, the session replay code that Defendants embedded recreated entire browsing session in real time, logging every keystroke, mouse movement, scroll, and click, and transmitting that private data to Defendants. *Id.*

2. <u>Defendants' Interception of Plaintiffs' Communications in the myCigna Portal</u>

Plaintiffs further allege that Defendants deployed tracking technology inside the myCigna portal, which serves insured individuals. While this tracking technology appeared to send private health-related data to the "smetrics.cigna" domain, the "smetrics.cigna" domain actually transmitted Plaintiffs' confidential health-related information to Adobe, a Third-Party Vendor. Plaintiffs' SAC newly alleges that Defendants used Adobe Analytics and Adobe Advertising together to optimize advertising campaigns, predict user value, and inform bidding decisions for advertisements across the internet. *Id*. at ¶¶ 301–06. If an insured clicked on an advertisement while logged into the myCigna portal and then returned to the Website, that activity was tracked, logged, and linked to the insured's profile. *Id*. at ¶ 305. Through such tracking, Defendants not only enabled third parties to collect and monetize the sensitive health-related information of insureds, but also benefited directly. The private data intercepted from searches and portal interactions allowed Defendants to segment insureds into categories and refine marketing strategies to increase enrollment and revenue. *Id.* at ¶¶ 176, 183, 192, 204, 216, 225.

**B. Defendants' Interception of Plaintiffs' Private Health Data**

Plaintiffs allege that each Plaintiff was tracked in the ordinary course of managing his or her healthcare on the Website and in the myCigna portal, and that the intercepted information falls

within the Health Insurance Portability and Accountability Act's ("HIPAA") definition of "protected health information" ("PHI"). *Id.* at ¶¶ 287–99. This is because Plaintiffs allege that queries entered by insured individuals on the Website and myCigna portal are individually identifiable and "relate[] to the past, present, or future physical or mental health condition of an individual; the provision of health care to an individual, or the payment for health care." 45 C.F.R. § 160.103; *id.* at ¶¶ 16, 315, 405. Plaintiffs further allege that the act of logging into the myCigna portal itself constitutes protected health information, because it discloses that an identified individual has received or is receiving health benefits and services. *Id.* at ¶ 288.

**C. Defendants' Concealment of Their Privacy Policies**

As Defendants concede, Defendants never obtained authorizations from Plaintiffs permitting Defendants to intercept and disclose Plaintiffs' PHI to third parties for marketing and advertising purposes. *See* Mem. at 12–13. Instead, Defendants buried the link to their Terms of Use, Website Privacy Notice ("Privacy Notice"), and HIPAA Notice of Privacy Practices ("HIPAA Notice") in the footer of their Website. SAC at ¶ 340. Plaintiffs allege that these disclosures, which were deficient, were further concealed behind multiple hard-to-locate links. *Id.* at ¶¶ 344–46. To access Defendants' disclosures, Plaintiffs allege that a Website user was required to click through a series of links, download a PDF, and then scroll through several pages. *Id.*

**D. Defendants' Failure to Obtain the Authorizations Required by the HIPAA Notice, Which Supersedes Defendants' Privacy Notice**

Plaintiffs allege that Defendants violated their own HIPAA Notice by disclosing Plaintiffs' PHI to third parties for marketing and advertising purposes without first obtaining Plaintiffs' authorizations. *Id*. at ¶ 355–57. Significantly, the SAC newly alleges that Defendants' Privacy Notice explicitly represents that "[i]dentifiable member information we collect will be treated as protected health information ('PHI') under HIPAA, ***at which point the terms of the [HIPAA***

***Notice] will apply and will supersede this notice***." *Id*. at Fig. 1 (emphasis added). The HIPAA Notice expressly states that "uses and disclosures [of PHI] for marketing purposes and disclosures that constitute a sale of PHI ***require an authorization***." *Id*. at ¶ 355 (emphasis added). The SAC alleges – and Defendants do not dispute, *see* Mem. at 12–13 – that Defendants never obtained this authorization from any Plaintiff. *Id*. at ¶ 427.

### E. Plaintiffs' Lack of Consent to the At-Issue Conduct

Apart from the SAC's allegations that Defendants did not obtain the authorization expressly required by the HIPAA Notice in connection with the disclosure of Plaintiffs' PHI, Plaintiffs independently allege in the SAC that they did not consent to the following alleged conduct: (i) contemporaneous interception of Plaintiffs' PHI by third parties (SAC at ¶¶ 348–52); (ii) third-party acquisition of the contents of Plaintiffs' confidential health communications (*id*. at ¶¶ 353-61); (iii) use of Plaintiffs' PHI for hyper-specific marketing by third parties (*id*. at ¶¶ 278–85); (iv) disclosure of Plaintiffs' PHI to third parties competing in advertising auctions (*id*. at ¶¶ 305-08); (v) disclosure of Plaintiffs' PHI to social media networks (*id*. at ¶¶ 386-95); (vi) ongoing reuse and long-term storage of Plaintiffs' PHI (*id*. at ¶¶ 197–209; 275–79; 305–08); and (vii) continuous monitoring of Plaintiffs across the internet based on their private information (*id*. at ¶¶ 197–211).

### F. Procedural Posture

Plaintiffs filed their original complaint on May 9, 2025 (ECF No. 1), and filed the FAC on August 1, 2025 (ECF No. 31) before Defendants filed any motion to dismiss. After Plaintiffs filed the FAC, Defendants moved to dismiss, which the Court granted in part and denied in part on February 4, 2026. ECF No. 65. In its accompanying Opinion, the Court concluded that "Plaintiffs have sufficiently alleged that the [third-party] technologies captured information pertaining to *their* patient status, medical conditions, procedures, medications, providers, and insurance benefits."

ECF No. 66 at 21 (original emphasis). As the Court noted in permitting Plaintiffs' breach of fiduciary duty claims to proceed, "[f]ew things are more sensitive and personal than information about one's health." *Id*. at 18, 35–38. The Court dismissed Plaintiffs' ECPA, WESCA, and invasion of privacy claims solely based on Defendants' consent affirmative defense, writing, "[a]t least as currently alleged and argued, consent is dispositive of Plaintiffs' claims." *Id*. at 35.

Plaintiffs moved for leave to file the SAC on March 6, 2026. ECF No. 85-1. Therein, Plaintiffs argued that leave to amend should be granted because the SAC contained dozens of new paragraphs of detailed factual allegations supporting Plaintiffs' claims that the Court previously dismissed without prejudice, including new allegations that (i) a different, far more restrictive privacy policy (i.e., the HIPAA Notice) expressly superseded the Privacy Notice and was controlling on the question of whether Plaintiffs consented to Defendants claims; (ii) Defendants failed to disclose the myriad ways in which Plaintiffs' data were used; and (iii) Defendants' HIPAA-compliant handling of Plaintiffs' data was a material element of the insurance Plaintiffs purchased from Defendants. ECF No. 85-1. The Court granted Plaintiffs' motion for leave to amend on March 10, 2026, after which Plaintiffs filed the SAC and Defendants again moved to dismiss.

## ARGUMENT

Defendants' motion to dismiss is wholly without merit. *First*, because, as Defendants concede, Plaintiffs did not provide the authorizations that Defendants' HIPAA Notice expressly requires, Plaintiffs did not consent to the interception and transmission of their PHI to third parties. *Second*, Defendants' novel theory that Plaintiffs should be estopped from amending their allegations is both legally incorrect and entirely unsupported by authority from any jurisdiction. *Third*, Plaintiffs' *highly* detailed SAC plausibly alleges violations of WESCA and ECPA, unjust

enrichment, and intrusion upon seclusion, in addition to breach of fiduciary duties. *Fourth*, Defendants' premature affirmative-defensive arguments regarding WESCA's applicability and Plaintiffs' consent are wholly inappropriate at the motion-to-dismiss stage, and, in any event, groundless.

## I. Plaintiffs Did Not Consent to Defendants' Transmission of Their Protected Health Information to Third Parties

While the Court's February 4 Order turned on Plaintiffs' constructive knowledge and acceptance of the Privacy Notice, the new allegations in Plaintiffs' SAC make clear that Defendants' HIPAA Notice – *not* Defendants' Privacy Notice – is controlling on the question of whether Plaintiffs' consented to Defendants' conduct. The HIPAA Notice, *un*like the Privacy Notice, explicitly represents that Defendants will disclose PHI to third parties *only* with a user's express authorization. Inquiry notice, the standard applied by the Court in its February 4 Order, thus does not apply. Accordingly, given there is no dispute that Defendants did not obtain Plaintiffs' authorization to disclose their PHI, Plaintiffs cannot have consented to Defendants' disclosure of their PHI to third parties.

### A. Defendants' HIPAA Notice Expressly Controls and Required Authorizations

While Defendants spend pages of their memorandum insisting that Plaintiffs had inquiry notice of Defendants' Privacy Notice (Mem. at 9–14), whether Plaintiffs had constructive knowledge of Defendants' Privacy Notice is irrelevant to the disposition of this action. That is because the question of whether Plaintiffs consented to the interception and collection of their private health data – the crux of Plaintiffs' allegations – is governed by Defendants' HIPAA Notice, *not* Defendants' Privacy Notice. As the new allegations in the SAC make clear, Defendants explicitly represented that their HIPAA Notice "supersede[s]" the Privacy Notice when a user's PHI is collected. *See* SAC at ¶ 20. There can accordingly be no serious dispute that the HIPAA

Notice, not the Privacy Notice, controls on the question of Plaintiffs' consent to Defendants' conduct.

Moreover, unlike the Privacy Notice, which includes various disclosures regarding the provision of data to third parties (which Plaintiffs allege are inadequate), Defendants' HIPAA Notice affirmatively represents to users that "uses and disclosures [of PHI] for marketing purposes and disclosures that constitute a sale of PHI *require an authorization*[.]" Id. at ¶ 355 (emphasis added). Because the crux of Plaintiffs' claims is that their PHI was used and disclosed for marketing purposes, there can be no serious dispute that Plaintiffs' authorizations were required.

B. Under the Terms of Defendants' HIPAA Notice, Plaintiffs Never Consented to the Interception and Disclosure of Their PHI to Third Parties for Marketing Purposes

Defendants do not dispute that they never received authorizations from Plaintiffs permitting Defendants to transmit and disclose Plaintiffs' PHI to third parties for marketing purposes, as required by Defendants' HIPAA Notice. *See* SAC at ¶¶ 354–57. By transmitting and disclosing Plaintiffs' PHI to unidentified third parties for marketing purposes without Plaintiffs' authorizations, Defendants thus violated the terms of their own HIPAA Notice. It is irrelevant whether, as Defendants claim, Mem. at 11–12, Plaintiffs had notice of Defendants' Privacy Notice or HIPAA Notice – Defendants' own policies make clear that inquiry notice cannot constitute consent.

Defendants do not, because they cannot, address the fact that they failed to obtain from Plaintiffs the authorizations required by the HIPAA Notice. Instead, Defendants suggest that, because Plaintiffs "admit" that the Terms of Use appear on the website and "the Terms of Use state that website users have 'read, understand, and acknowledge the Site's privacy notice(s)[,]'" Plaintiffs *implicitly* consented to the transmission of their PHI to third parties. Mem. at 6. But the controlling HIPAA Notice demands that Defendants obtain authorizations, not implicit consent.

This is consistent with HIPAA itself, pursuant to which inquiry notice does not constitute authorization. *See* 45 C.F.R. § 164.508(c)(1) (identifying requirements for valid authorization, which includes an individual's signature).[2]

Still, Defendants insist that "because Plaintiffs consented to the *Privacy Notice*, all their claims fail." Mem. at 8 (emphasis added). But, as explained above and in Plaintiffs' SAC, even Plaintiffs consented to the Privacy Notice, which they did not, the Privacy Notice does not govern Plaintiffs' claims because it is *expressly* superseded by the HIPAA notice. Whether Plaintiffs had inquiry notice of the Privacy Notice is thus irrelevant. The HIPAA Notice required express authorization prior to disclosure of Plaintiffs' PHI for marketing and advertising purposes, which Plaintiffs never provided.

Nevertheless, Defendants assert that, to the extent they transmitted PHI to third parties, any such PHI was only shared with "Business Associates" to "provide, coordinate and manage the delivery of health care." Mem. at 14 (cleaned up). But this is a quintessential attempt to "rais[e] matters outside the pleadings and therefore . . . inappropriate in a motion to dismiss." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 174-75 n. 8 (3d Cir. 2015); *see also Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) ("The proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment."). At this stage, the Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Plaintiffs' SAC includes detailed allegations that "Defendants used Adobe Analytics and Adobe Advertising together so that user activity on the Website could be used to optimize advertising

---

[2] Similarly, any purported reliance by Plaintiffs on Defendants' public statements cannot satisfy HIPAA's authorization requirement. *Cf.* Mem. at 6.

campaigns, predict user value, and inform bidding decisions for advertisements shown across the internet." SAC at ¶ 301. Plaintiffs expressly allege that this collection occurred both on the public Website and on "the purportedly secure portions of the Website's medical and dental portals." *Id*. at ¶ 300. Taking Plaintiffs' well-pleaded allegations as true, Plaintiffs plausibly allege that Defendants permitted a third party to intercept their Website Communications without prior authorization, in direct contravention of Defendants' HIPAA Notice.

C. Plaintiffs Plausibly Allege That They Did Not Consent to Defendants' Privacy Notice by Merely Using the Website and Patient Portal

Even if Defendants' HIPAA Notice did not expressly supersede the Privacy Notice and defeat Defendants' consent argument – and it irrefutably does – Plaintiffs independently plausibly allege that they lacked notice of Defendants' wrongdoing. SAC at ¶¶ 339–47.

Defendants do not contend Plaintiffs had *actual* knowledge of Defendants' Privacy Notice. Mem. at 11. Instead, Defendants insist that Plaintiffs manifested their assent to the terms of Defendants' Privacy Notice by merely continuing to use the website, *id.* at 11–14 – or, in other words, that Plaintiffs had inquiry notice of the Privacy Notice. *Checchia v. Solo Funds*, No. 23-444-KSM, 2023 U.S. Dist. LEXIS 98889 (E.D. Pa. June 7, 2023), at *27 ("Because SoLo has not provided any proof that Checchia had actual notice of SoLo's Terms, the Court considers only whether Checchia had constructive, or inquiry, notice of the Terms.").

However, as this Court explained in its Order on Defendants' prior motion to dismiss, "courts are normally 'reticent to find mutual assent when a website offers terms that are disclosed only through a hyperlink and the user manifests assent to those terms simply by continuing to use the website[.]'" ECF No. 64 at 34 (quoting *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 607 (E.D. Pa. 2025) (cleaned up). Accordingly, to establish inquiry notice, a website's terms must be "reasonably conspicuous." *Checchia*, 2023 U.S. Dist. LEXIS 98889, at *27 (citing *Berman v.*

*Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (inquiry notice exists if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.")).

As detailed in the SAC, Defendants' Privacy Notice does not come close to satisfying this requirement. *See* ECF No. 89 at ¶¶ 338-420. As an initial matter, Defendants' Privacy Notice is buried in a footer at the bottom of its Website, hidden among a myriad of other links. SAC at ¶¶ 339-40. Courts in this Circuit have consistently found that a website's terms are not reasonably conspicuous if they are one of many hyperlinks buried in a website's footer. *See*, *e.g.*, *Childs v. Fitness Int'l LLC*, No. 2:22-cv-05196-JDW, 2023 U.S. Dist. LEXIS 88780, at *6-7 (E.D. Pa. May 22, 2023) (terms were not reasonably conspicuous when they were "one of many small hyperlinks at the bottom of the . . . website"); *W.W. v. Allegheny Health Network*, No. 2:23-cv-01163-CCW, 2025 U.S. Dist. LEXIS 35164, at *16 (W.D. Pa. Feb. 27, 2025) (terms were not reasonably conspicuous when users were required "to scroll past several sections of content to reach the footer containing the hyperlink" and the hyperlink was "one of over forty links in the footer") (appeal pending). Further, there is nothing on Defendants' Website directing users to scroll down to the footer or instructing users to click on any of the links contained there. *See Childs*, 2023 U.S. Dist. LEXIS 88780, at *7 (terms were not reasonably conspicuous when plaintiff was not "directed to the Terms and Conditions, warned that creating an online account would subject her to the Terms and Conditions, or notified that continued use of the LA Fitness website or app constitutes assent to the Terms and Conditions"). This alone supports a finding that Plaintiffs lacked inquiry notice of Defendants' Privacy Notice.

Nevertheless, Defendants insist that Plaintiffs' use of the patient portal, specifically,

establishes consent to Defendants' data collection and disclosure practices. Mem. at 12. However, as Defendants concede, users of Defendants' patient portal were never asked whether they agree to Defendants' Terms of Use or Privacy Notice. *See* Mem. at 12 ("[T]he privacy policy was hyperlinked in the webpage's persistent footer[.]"). Nor do Defendants argue that the hyperlink to the Terms of Use or Privacy Notice was adjacent to any button users click during the account creation or login process. Instead, hyperlinks to the Terms of Use and Privacy Notice were buried in the footer; accordingly, a user of Defendants' patient portal would have no notice of these documents. *C.f.*, *Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-0648, 2024 U.S. Dist. LEXIS 185859, at *23 (E.D. Pa. Oct. 11, 2024) (finding inquiry notice of website's terms of use when defendant "included [a] checkbox underneath the final heading on the registration page in a section clearly marked 'Authorization' . . . and placed the hyperlinked text adjacent to that button").

Ultimately, Defendants were in "complete control" of the design of their Website. *See Berman*, 30 F.4th at 857 ("Because online providers have complete control over the design of their websites, the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers[.]") (citations omitted). Defendants could have implemented a pop-up notification regarding Defendants' use of private data at the time of account creation, or, at minimum, placed a hyperlink to the Terms of Use and Privacy Notice adjacent to the account creation button. *See*, *e.g.*, *Checchia*, 771 F. Supp. 3d at 610 ("[T]he Court also finds it significant that the hyperlink [to the terms of use] appears on the same screen as (and above) the check box[.]"). Defendants failed to adequately inform website users of its practices, and cannot now bind Plaintiffs to terms of which Plaintiffs had no notice.

D. Plaintiffs Plausibly Allege That They Could Not Have Consented to Practices That Were Not Disclosed to Them

Though Plaintiffs plausibly allege that the HIPAA Notice, not the Privacy Notice, governs

this action, the Privacy Notice would not bar Plaintiffs' claims even if Plaintiffs had constructive knowledge of it (and they did not). This is because, as alleged in significant detail in the SAC (including in numerous new paragraphs), the Privacy Notice failed to disclose the kind and type of transmission that occurred here. SAC at ¶¶ 347–420.

Among other things, Plaintiffs allege in the SAC that Defendants' Privacy Notice describes the use of cookies, pixels, and third-party analytics and advertising partners in, at best, highly *general* terms, and does not disclose the specific wrongdoing that Plaintiffs allege. *Id.* at Fig. 41. For example, the SAC alleges that the Privacy Notice generally states, in vague, nonspecific language, that tracking technologies may collect information such as browsing activity, device identifiers, and usage patterns, and that third-party partners may assist with analytics, advertising, and website performance measurement. *Id.* But the Privacy Notice frames these tracking technologies as tools used to analyze site usage and "support" *Defendants'* business-related activities – not tools that facilitate the transmission of Plaintiffs' private health information to third parties for unrestricted use in marketing for the third parties' financial benefit. *Id.* Plaintiffs cannot possibly have consented to practices of which they could not know.

## II. Plaintiffs Are Not Estopped from Amending Their Allegations

### A. <u>There Is No Basis to Invoke Judicial Estoppel to Bar Plaintiffs from Amending Their Allegations</u>

Pointing to a single alleged inconsistency between Plaintiffs' FAC and SAC, Defendants insist that the Court should adopt the "extraordinary remedy" of judicial estoppel and dismiss Plaintiffs' entire complaint with prejudice based on a difference between the FAC and SAC. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996); *see* Mem. at 9–11. However, as the Third Circuit has cautioned, "[j]udicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to 'secure substantial equity.'" *Id*. (quoting *Oneida*

*Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 424 (3d Cir. 1988). "It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts." *Id*. Instead, judicial estoppel is *only* appropriate when three stringent requirements are met: (1) "the party to be estopped must have taken two positions that are *irreconcilably* inconsistent"; (2) the party must have changed their position "in bad faith – i.e., with intent to play fast and loose with the court"; and (3) "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (emphasis added). None of these requirements are met here, rendering judicial estoppel wholly inappropriate.

As an initial matter, Defendants do not identify a single authority, in this Circuit or otherwise, in which a court has invoked judicial estoppel at the pleading stage to bar an amended complaint based on alleged inconsistencies between an amended complaint and a prior version of the complaint filed in the same action. This is because it is black letter law that "an amended pleading supersedes the original pleading and renders the original pleading a nullity[.]" *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019); *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc*., 101 F.3d 1492, 1504 (3d Cir. 1996)) (noting that an amended pleading "'supersedes the original and renders it of no legal effect'"). This principle is consistent with the strong interest at the pleading stage in "ensur[ing] that a particular claim will be decided on the merits rather than on technicalities." *Huntington Nat'l Bank*, 712 F.3d at 171. Indeed, as the Third Circuit has made clear, courts acknowledge and permit amended complaints to contain allegations that "flatly contradict[]" allegations in earlier complaints. *Id*. at 172. As the

Ninth Circuit explained in *PAE Gov't Servs. v. MPRI, Inc.*,

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

514 F.3d 856, 858–59 (9th Cir. 2007).

At least one court in this Circuit has considered and rejected a judicial estoppel argument on similar facts. In *Ho-Ho-Kus, Inc. v. Sucharski*, No. 2:23-cv-01677 (BRM) (JSA), 2025 U.S. Dist. LEXIS 162444, at *21–25 (D.N.J. Aug. 21, 2025), the plaintiff argued that allegations in the defendants' amended counterclaims contradicted allegations contained in the defendants' original counterclaims. On this basis, the plaintiff requested that the court apply judicial estoppel and dismiss the defendants' amended counterclaims with prejudice. *Id*. The court rejected the plaintiff's argument, finding that inconsistent or changed positions are common when pleadings are amended "as that procedural act very commonly involves deleting, reconfiguring, and adding new allegations." *Id*. at *30. As the court in *Sucharski* noted, the plaintiff could not cite a single case in which a court applied judicial estoppel "to dismiss a pleading amended in response to a court order granting leave to amend." *Id*. at *25. Finally, the court concluded that judicial estoppel was an extreme remedy for a problem that, if it existed at all, could be solved by "granting [d]efendants further leave to amend" the paragraph of the counterclaims with which the plaintiff took issue. *Id*. Ultimately, the court declined to apply judicial estoppel, particularly when the court

explicitly granted the defendants leave to amend. *Id*. at *31.

*Sucharski* is instructive. Like in *Sucharski*, Plaintiffs amended their allegations after the Court expressly granted leave to amend. *See* ECF No. 88. As is typical when amending a complaint, Plaintiffs "delet[ed], reconfigur[ed], and add[ed] new factual allegations." *Sucharski*, 2025 U.S. Dist. LEXIS 162444, at *30. *See also Huntington Nat'l Bank*, 712 F.3d at 172 ("Plaintiffs routinely amend complaints to correct factual inadequacies in response to a motion to dismiss . . . .This is so even when the proposed amendment flatly contradicts the initial allegation."). Inconsistencies are not only permitted but anticipated at this stage and do not supply a basis for application of the "extraordinary" remedy of judicial estoppel. As in *Sucharski*, the Court should decline Defendants' invitation to create brand new law and radically expand the scope of the judicial estoppel doctrine by extending that doctrine to the act of amending a complaint.

In any event, the purported inconsistency between the FAC and SAC to which Defendants allude is illusory, and any suggestion that Plaintiffs have acted in "bad faith" is egregiously incorrect as a matter of law. To be clear: Plaintiffs have consistently maintained that Defendants did not obtain their consent to the misconduct alleged. *E.g.*, ECF No. 47 at 2; FAC at ¶¶ 290–341. And here, to the extent there is any inconsistency, it is a purely legal one. The original allegation – that Plaintiffs accepted the Terms of Use by continuing to use Defendants' Website – was a legal conclusion rather than an assertion of fact. *See Claudio v. MGS Mach. Corp.*, 798 F. Supp. 3d 575, 585 (E.D. Pa. 2011) (inconsistent assertions regarding the defendant's status as an individual's employer were "largely legal conclusions, making judicial estoppel all the less appropriate"). Further, there is no bad faith "when the inconsistent positions advanced represent legal theories rather than factual matters." *Claudio*, 798 F. Supp. 3d at 584 (citing *Palcsesz v. Midland Mut. Life.*

*Ins. Co.*, 87 F. Supp. 2d 409, 413 (D.N.J. 2000) ("[C]ourts have been reluctant to apply judicial estoppel where a statement contains a legal conclusion, as distinguished from a purely factual inconsistency.")); *see also Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) ("[T]he position sought to be estopped must be one of fact rather than law or legal theory."). As a legal matter, a changed legal theory cannot support a finding of bad faith.

Finally, Defendants entirely fail to demonstrate the lack of availability of lesser remedies. Even if this Court broke entirely new legal ground by adopting Defendants' argument and concluding that judicial estoppel can apply to inconsistent allegations at the pleading stage, there are an array of other remedies available, including granting Plaintiffs further leave to amend to modify the single paragraph with which Defendants take issue. *See*, *e.g.*, *Sucharski*, 2025 U.S. Dist. LEXIS 162444, at *25 (finding amendment was an available lesser remedy but declining to apply it at the pleading stage). Defendants offer no authority to support the idea that this element has been satisfied, and Plaintiffs are aware of no such authority.

B. Equitable Estoppel Does Not Apply to This Action

Relying solely on cases from the arbitration context, Defendants erroneously insist that Plaintiffs should be equitably estopped from "denying" a contract from which they seek to benefit. Mem. at 10. But Plaintiffs are not seeking to avoid the burdens of a contract. As alleged at length in the SAC, Defendants breached their *own* privacy policies in disclosing Plaintiffs' PHI without Plaintiffs' authorization. It is Plaintiffs' position is that *Defendants* should have abided by their own policies – not, as Defendants suggest, that the Court should strike Defendants' privacy policies while enforcing its forum selection clause. There can be no equitable estoppel when Plaintiffs allege that they never received the benefits of any contract – i.e., Defendants' promised data privacy protections. *See O'Hanlon v. Uber Techs.*, 990 F.3d 757, 767 (3d Cir. 2021) ("[E]quitable estoppel is inapposite where there is no evidence that the nonparties availed

themselves of the . . . agreement or received any benefit under that agreement.") (cleaned up).

## III. Plaintiffs Plausibly State Claims Upon Which Relief May Be Granted

Plaintiffs plausibly state claims upon which relief may be granted. To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter" to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 requires only a "short and plain statement" that makes relief plausible. *Twombly*, 550 U.S. at 573.[3] This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.'" *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009).

Despite the SAC's dozens of paragraphs of additional detailed allegations supporting Plaintiffs' claims and lack of consent to Defendants' alleged misconduct, Defendants' motion largely regurgitates the same arguments raised in their prior motion to dismiss – and Defendants primarily fall back on their argument that Plaintiffs consented to the at-issue alleged misconduct. *See, e.g.*, Mem. at 8–9. However, Defendants almost entirely ignore Plaintiffs' new allegations that make clear that the HIPAA Notice, *not* the Privacy Notice, governs the question of whether Plaintiffs provided consent. SAC at ¶¶ 20–21, 343–36, 365; *see also* SAC at Fig. 1 (Defendants' Privacy Notice states that "identifiable member information we collect will be treated as [PHI]

[3] While Rule 8 applies to the pleadings in this matter, even under a heightened pleading standard, such as that of Rule 9, Plaintiffs adequately allege the who (Defendants and the Third-Party Vendors), the what (tracking technologies like session replay and pixels), the where (Defendants' public website pages and myCigna portal), the when (since May 2023), and the how (capturing and transmitting health-related content). *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

under HIPAA, at which point the terms of the applicable HIPAA Notice of Privacy Practices will apply and will *supersede this notice*" (emphasis added)). Because Plaintiffs did not consent to the transmission of their PHI to third parties for marketing and advertising purposes and plausibly allege each of the elements of their claims, Plaintiffs have stated claims for relief.

A. Plaintiffs Plausibly State an ECPA Claim

The SAC's new allegations make clear that (1) Defendants' consent to the interception of Plaintiffs' data does not absolve Defendants of liability, and (2) Defendants' interceptions fall within the crime-tort exception. Plaintiffs, accordingly, plausibly state an ECPA claim.

1. *Defendants' Consent to the Interception of Plaintiffs' Data Does Not Preclude Plaintiffs' ECPA Claim*

Plaintiffs plausibly allege that Defendants violated the ECPA by embedding tracking technologies on their Website that intercepted Plaintiffs' Website Communications in real-time and transmitted them to the Third-Party Vendors. Defendants' recycled contention that that they cannot be liable under the ECPA because they were a "party" to Plaintiffs' Website Communications, Mem. at 18–19, is incorrect as a matter of governing law. This is because, as set forth in Plaintiffs' prior briefing on this matter, Defendants' "party" status does not immunize simultaneous third-party interception under ECPA Section 2511(1)(a), which makes it unlawful not only to "intercept" a communication but also to "procure[] any other person to intercept" an electronic communication. 18 U.S.C. § 2511(1)(a). Since procurement refers to the act of causing or arranging for another party to carry out the interception, a defendant that arranges for a third party to intercept a communication is subject to ECPA liability. *See In re Nickelodeon*, 827 F.3d 262, 276 n. 78 (3d Cir. 2015) (acknowledging procurement as a valid theory of liability under the ECPA but finding it was pleaded in a conclusory manner). Here, the SAC specifically alleges, in extensive detail, that Defendants embedded tracking technologies that captured the contents of

Plaintiffs' Website Communications in real time and transmitted that private information to the Third-Party Vendors. SAC at ¶¶ 174–79, 287–308, 459–69. At the pleading stage, this is more than sufficient to proceed. *Luis v. Zang*, 833 F.3d 619, 638–39 (6th Cir. 2016) (procurement theory valid where defendant engaged in wiretap violation).

Nor do Plaintiffs allege that Defendants merely "aided" the interceptions of the Third-Party Vendors. *Cf*. Mem. at 18–19. Instead, Plaintiffs allege that Defendants directly embedded the at-issue tracking code on the Website. SAC at ¶¶ 7–12, 174–79. That alleged conduct falls squarely within the ECPA's prohibition that renders liable any person who "intercepts, endeavors to intercept, or procures any other person to intercept" a communication. 18 U.S.C. § 2511(1)(a); *Zang*, 833 F.3d at 638–39. Plaintiffs' allegations that Defendants profited from their intercepted protected health information, SAC at ¶¶ 2, 14, 174, 498, 511, also fit squarely within the ECPA's prohibition on using or disclosing the contents of communications with knowledge that they were unlawfully intercepted. 18 U.S.C. §§ 2511(1)(c)–(d); *Ott v. Goodwin*, No. 14-785, 2018 U.S. Dist. LEXIS 50783, at *35 (M.D. Pa. Mar. 27, 2018) ("[I]t must be established that there was an unlawful interception and that the defendant knew or had reason to know that the information obtained from that unlawful interception was in violation of the Federal Wiretap Act.").

2. *Plaintiffs Adequately Allege Defendants' Interceptions Fall Within the Crime-Tort Exception*

Defendants' argument that Plaintiffs' ECPA claim should be dismissed additionally fails because Plaintiffs sufficiently allege that Defendants' interceptions fall within the crime-tort exceptions of the ECPA. The ECPA allows interceptions with the consent of one party, but that provision does not apply if the interception was undertaken "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). The Third Circuit has explained that, to invoke this exception, the alleged purpose of the at-issue conduct must be

tortious or criminal in a way that is independent of the act of interception. *In re Google Cookie*, 806 F.3d 125, 145 (3d Cir. 2015) (wiretapping case in which plaintiffs did not allege violations of HIPAA or any other federal statute). Here, Plaintiffs plausibly allege that Defendants' interceptions were carried out to further tortious acts, including violations of WESCA, intrusion upon seclusion, and the unauthorized disclosure of personal health information in violation of HIPAA's marketing restrictions. Additionally, Plaintiffs allege that Defendants violated 42 U.S.C. § 1320d-6 of HIPAA, which makes it a federal crime to knowingly disclose individually identifiable health information[4] to third parties. SAC at ¶¶ 466. At a minimum, this presents factual questions that are inappropriate for resolution on a motion to dismiss.

Notably, a court in this District recently found virtually identical allegations sufficient to invoke the ECPA's crime-tort exception. *Smart v. Main Line Health*, No. 22-5239, 2026 U.S. Dist. LEXIS 81515, at *5–6 (E.D. Pa. April 16, 2026). The defendant in *Smart*, a healthcare provider, installed third-party tracking technologies on its website, and the plaintiff alleged those technologies "intercepted sensitive communications – including attempts by users to schedule appointments and to log-in to a patient portal[.]" *Id*. The defendant, as here, argued that the alleged criminal use – the disclosure of the plaintiff's information in violation of HIPAA – "[was] not an act distinct from the interception." *Id*. at *7. The court disagreed, explaining "[j]ust because [the capture and disclosure of information for marketing purposes] happen at nearly the same time does

[4] Individually identifiable health information is defined under HIPAA as information that is a subset of health information, including demographic information collected from an individual, and (1) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) that identifies the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual. 45 C.F.R. § 160.103.

not mean the act is singular . . . . The use of the intercepted communications is distinct from the capture of those communications." *Id*. at *8–9. Accordingly, the court found that the plaintiff had alleged a violation of HIPAA sufficient to invoke the ECPA's crime-tort exception, and therefore stated an ECPA claim.[5] *Id*. In any event, HIPAA violations are but one category of tortious or criminal acts that Plaintiffs allege.

Defendants' contention that Plaintiffs fail to allege that any of *their* PHI was disclosed by Defendants to the Third-Party Vendors, Mem. at 20, is similarly unavailing. In ruling on Defendants' prior motion to dismiss, the Court expressly found that "Plaintiffs ha[d] sufficiently alleged that the technologies captured information pertaining to *their* patient status, medical conditions, procedures, medications, providers, and insurance benefits." ECF No. 64 at 21 (emphasis original). The SAC contains identical allegations to the FAC regarding Plaintiffs' use of Defendants' Website. *See* SAC at ¶¶ 309–15 (identifying the information each Plaintiff input into Defendants' Website). Given the Court's prior ruling on identical allegations, which is law of the case, *Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*, No. 2:18-cv-00345, 2019 U.S. Dist. LEXIS 135203, at *28 (W.D. Pa. Aug. 12, 2019), there can be no serious dispute that Plaintiffs have plausibly alleged that the Third-Party Vendors' technologies captured their PHI.

[5] This same position has been adopted by a wide array of courts that have considered the issue. *See*, *e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps. Inc.*, No. 22-4674-CMR, 2024 U.S. Dist. LEXIS 177625, at *11 (E.D. Pa. Sep. 30, 2024) ("Courts have found the intention to violate HIPAA sufficient to invoke the crime-tort exception to the ECPA."); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-1404, 2024 U.S. Dist. LEXIS 161090, at *7 (N.D. Ill. Sep. 9, 2024) (allegations that defendant disclosed PHI for financial gain "in violation of 42 U.S.C. 1320d–6 [the same statute alleged in Plaintiffs' Amended Complaint] sufficient at pleading stage"); *W.W. v. Orlando Health, Inc.*, No. 24-1068, 2025 U.S. Dist. LEXIS 40038, at *23–24 (M.D. Fla. Mar. 6, 2025) (allegations plausibly support inference defendant "for commercial ends, intentionally disclosed" PHI in violation of HIPAA; denying motion to dismiss Wiretap Act claim); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (denying motion to dismiss because intentional disclosure of PHI constitutes a crime under HIPAA, with enhanced penalties for disclosures made for "commercial advantage" or "personal gain").

Defendants' attempted reliance on their "business associate" agreements with the Third-Party Vendors is also unavailing. *See* Mem. at 19. HIPAA permits covered entities to share information with "business associates" for limited health care operations, but requires a *signed* patient authorization for marketing or analytics uses. 45 C.F.R. § 164.508(a)(3); (c)(6)(vi) ("Signature of the individual and date."). Defendants do not contend they collected any such signed authorizations here. And to the extent Defendants contend that any disclosures were purely related to the provision of healthcare, in tension with Plaintiffs' well-pleaded allegations to the contrary, this is a factual dispute that is inappropriate for a motion to dismiss.

Furthermore, by embedding their improper tracking inside the myCigna portal available only to insured individuals, Defendants violated HIPAA's privacy rules by improperly disclosing personal healthcare information to third parties. This violation occurred even if Plaintiffs had not performed a single search, as patient status *itself* is protected health information under HIPAA; Plaintiffs' logins confirmed that they are receiving or have received care. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081–82 (W.D. Wash. 2024) (stating, under HIPAA, "[a]s other Courts within this Circuit have acknowledged, the transmission of information submitted to a *private patient portal* – such as a user clicking on the 'log in' button on that webpage – reveals patient status, which in and of itself is protected health information."); *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) ("patient status is protected health information" under HIPAA).

B. <u>Plaintiffs Plausibly State a Claim for Intrusion Upon Seclusion</u>

Like the Court's dismissal of Plaintiffs' ECPA claim, the Court's dismissal of Plaintiffs' intrusion upon seclusion claim was based entirely on Plaintiffs' alleged consent to the practices outlined in Defendants' Privacy Notice. Order at 35. However, Plaintiffs' new allegations make clear that Plaintiffs did *not* consent to the transmission of their PHI for marketing purposes,

resolving the issue the Court identified in Plaintiffs' FAC. Consent, accordingly, cannot be dispositive of Plaintiffs' claim for intrusion upon seclusion.

Moreover, contrary to Defendants' assertions, Mem. at 25–27, Plaintiffs have adequately pleaded each element of intrusion upon seclusion. SAC at ¶¶ 488–500. Intrusion upon seclusion is the intentional intrusion, "physical[] or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." *Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611, 622 (3d Cir. 1992) (recognizing Restatement (Second) of Torts § 652B as the Pennsylvania standard). Intrusion upon seclusion may occur through "(1) physical intrusion into a place where the plaintiff has secluded himself or herself; (2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns." *Borse,* 963 F.2d at 622. Generally, harms arising from intrusion upon seclusion involve invasions of privacy that disturb reasonable expectations of solitude, causing "mental suffering, shame[,] or humiliation" to "a person of ordinary sensibilities." *Id.* at 278-79 (quoting *Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.,* 809 A.2d 243, 247 (Pa. 2002) (citations omitted).

Plaintiffs have plausibly alleged such an intrusion here. Plaintiffs allege that Defendants intentionally embedded tracking technologies within the Website and the myCigna portal designed to surreptitiously capture Plaintiffs' personal, and protected, health information. FAC at ¶¶ 290, 292, 295–97, 299; *Wolfson v. Lewis*, 924 F. Supp. 1413, 1419 (E.D. Pa. 1996) ("It may also be by the use of the defendant's sense, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs . . . [like] taping his telephone wires."). As the Court previously noted, "Plaintiffs' alleged loss of privacy in their private affairs, caused by the unconsented interception of their healthcare-related data, is analogous to the harm associated with intrusion upon seclusion."

ECF No. 64 at 17 (citation omitted). This conduct is plausibly "highly offensive to a reasonable person," because secretly diverting and then broadly disclosing to third parties private health-related interactions, including those occurring in a password-protected "secure" portal, is the kind of offensive intrusion that Pennsylvania law prohibits. *See Pro Golf*, 809 A.2d at 248 ("information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities").

C. Plaintiffs Plausibly State a Claim for Unjust Enrichment

Plaintiffs adequately plead unjust enrichment. The elements of unjust enrichment in Pennsylvania are (1) benefits conferred on the defendant by the plaintiff, (2) appreciation of such benefits by the defendant, and (3) acceptance and retention of such benefits under circumstances pursuant to which it would be inequitable for the defendant to retain the benefit. *Styer v. Hugo*, 422 Pa. Super. 262, 267 (1993). Unjust enrichment focuses on the benefit to the defendant, not the diminution to the plaintiff. *Torchia v. Torchia*, 346 Pa. Super. 229, 233 (1985).

Numerous courts have recognized that one of the remedies to which plaintiffs are entitled if a defendant wrongfully obtains data is disgorgement, via an unjust enrichment claim, of the profits the defendant generates through the misuse of the data. *E.g., Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.),* 956 F.3d 589, 600 (9th Cir. 2020) (plaintiffs had Article III standing to bring unjust enrichment claim against Facebook for selling data); *Lionetta v. InMarket Media, LLC*, 798 F. Supp. 3d 139, 152 (D. Mass. 2025) (similar); *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 U.S. Dist. LEXIS 178597, at *59–60 (N.D. Ill. Oct. 1, 2024) (similar); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (similar).

These decisions reflect black letter law: when a defendant profits from violating legally protected rights – such as privacy rights in personal data – the defendant's wrongful gain should be disgorged. Restatement (Third) of Restitution and Unjust Enrichment § 1; *see also Rodriguez*

*v. Google LLC*, No. 20-04688, 2026 U.S. Dist. LEXIS 20412, at *17 (N.D. Cal. Jan. 30, 2026) (noting restitution may be available for "the net profit attributable to certain misconduct" including misuse of personal data).

The SAC cures the standing deficiency identified by the Court in its February 4 Order. *See* ECF No. 64 at 23 (noting that the most significant element of the unjust enrichment doctrine is "whether the enrichment of the defendant is unjust"). This is because the SAC ties Plaintiffs' unjust enrichment claim expressly to Defendant's wrongful acts – i.e., its improper collection of Plaintiffs' private medical data. SAC at ¶¶ 510–26. Additionally, the SAC newly alleges that confidentiality of medical information and compliance with federal privacy laws were material components of the health insurance coverage Defendants sold. SAC at ¶¶ 319–37. Because Defendants unlawfully monetized insureds' medical data in violation of HIPAA and related duties, Plaintiffs did not receive the legally compliant insurance product for which they bargained – giving rise to an unjust enrichment claim. SAC at ¶¶ 512–16; *see Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010); *see also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1080 (11th Cir. 2019) (consumer suffered an injury in fact when she allegedly spent money to purchase a product that should not have been sold because it was illegal to sell the product) (citing *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47 (9th Cir. 2018)).

D. Plaintiffs Plausibly State a Claim for Breach of Fiduciary Duty

In its prior Order, the Court determined that Plaintiffs adequately stated a claim for breach of fiduciary duty. Order at 35–38. As Defendants cannot, and do note, dispute, the allegations in Plaintiffs' SAC related to this claim are materially identical to the allegations the Court found sufficient in Plaintiffs' FAC, and, as such, again state a claim for breach of fiduciary duty. SAC at ¶¶ 501–09; *Prime Energy & Chem.,* 2019 U.S. Dist. LEXIS 135203, at *28 (court's prior denial of a motion to dismiss was law of the case).

## IV. Defendants' Residency and Territorial Arguments Fail

Plaintiffs' WESCA claims are properly before this Court because Defendants' Terms of Use and controlling Pennsylvania and Third Circuit precedent compel application of WESCA to the interceptions at issue. Defendant's contrary position (Mem. at 20–23) is contrary to binding authority from the Pennsylvania Supreme Court and the Third Circuit. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132–33 (3d Cir. 2022) (situs of interception is a factual issue).

### A. Defendants' Terms of Use Require Application of Pennsylvania Law

Defendants' Terms of Use expressly provide that disputes arising from use of the Website and portals are governed by Pennsylvania law. SAC at ¶¶ 62–66. Courts enforce such choice-of-law provisions. *E.g.*, *Kruzits v. Okuma Mach. Tool Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them"); *Britton v. Whittmanhart, Inc.*, No. 09-1593-JCY, 2009 U.S. Dist. LEXIS 71813, at *6 (E.D. Pa. Aug. 14, 2009) (applying a choice-of-law clause as written and applying Illinois law). And this Court recently held that a similar choice-of-law provision required application of Pennsylvania law. *Arkema Inc. v. Maviro Catalyst, Inc.*, No. 24-6130-WB, 2025 U.S. Dist. LEXIS 87697, at *16 (E.D. Pa. May 8, 2025) (Beetlestone, J.).

Here, because *Defendants* drafted and inserted the at-issue choice-of-law clause, they cannot credibly argue that Pennsylvania's wiretap statute is inapplicable. Accordingly, the governing law clause in Defendants' Terms of Use ("These Terms of Use and the Site Specific Terms shall be governed by and construed in accordance with the laws of the state of Pennsylvania, U.S.A.") requires applying WESCA. Mem. at 23 (quoting the governing law clause). No authority cited by Defendants suggests otherwise.

B. Controlling Authority Confirms that Pennsylvania Statutes May Apply to Non-Residents

Defendants' argument that Plaintiffs' WESCA claims are not properly before this Court is contrary to precedent from the Pennsylvania Supreme Court, which has confirmed Pennsylvania statutes apply to non-residents where a choice-of-law clause is present and the at-issue misconduct occurred in Pennsylvania. In *Danganan v. Guardian Protection Servs., Inc.*, 645 Pa. 181 (Pa. 2018), the Pennsylvania Supreme Court held that the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") applied to a Washington, D.C. resident whose transaction arose from conduct occurring in Pennsylvania. As the court explained, the UTPCPL is a statute that protects "the public at large" and applies to wrongful acts arising from Pennsylvania conduct. *Id.* at 186. What mattered to the Pennsylvania Supreme Court was that the defendant's conduct took place in Pennsylvania and the underlying agreement contemplated Pennsylvania law. Here, just as in *Danganan*, (1) Defendants selected Pennsylvania law and (2) conduct tied to Pennsylvania strongly supports application WESCA to out-of-state plaintiffs. Notably, federal courts have cited *Danganan* to reject residency-based attacks on Pennsylvania statutory claims. *See Dukich v. Ikea US Retail LLC*, No. 20-2182-HB, 2021 U.S. Dist. LEXIS 7271 (E.D. Pa. Jan. 14, 2021) (allowing Minnesota plaintiffs to represent a nationwide class in case arising under the UTPCPL); *cf. Almond v. Janssen Pharms., Inc.*, No. 20-2183-WB, 2020 U.S. Dist. LEXIS 207900 (E.D. Pa. Nov. 6, 2020) (Beetlestone, J.) (declining to apply *Danganan* to a common law medical monitoring tort claim *without* a choice-of-law provision).

Defendants cannot distinguish *Danganan* by asserting it should be limited to the UTPCPL because the UTPCPL and WESCA are construed with the same territorial scope and therefore apply similarly. *Danganan*, 645 Pa. 186–88. Defendants' contrary argument that only Pennsylvania residents may bring suit here, Mem. at 21, is not supported by WESCA or other

authority. *See Harriet Carter Gifts*, 52 F.4th at 131-32 (situs of interception under WESCA is a factual question); *cf. Ingrao v. Addshoppers, Inc.*, No. 24-1022-JHM, 2024 U.S. Dist. LEXIS 214748, at *38 (Nov. 25, 2024) (granting dismissal at pleadings stage where, unlike here, there were no alleged facts tying situs to Pennsylvania). Nothing in the statute's text, or in any other applicable authority, limits WESCA's application to violations committed against Pennsylvania residents. 18 Pa. C.S. § 5703.

C. Choice-of-Law Principles Favor Applying Pennsylvania Law Here

Even if Defendants' selection of Pennsylvania as the appropriate forum is not dispositive, Pennsylvania choice-of-law principles favor the application of Pennsylvania law here. Pennsylvania has a strong interest in regulating the conduct of its corporations. *See Unisys Fin. Corp. v. U.S. Vision, Inc.*, 428 Pa. Super. 107, 111 (Pa. 1993) (affirming application of Pennsylvania law to a statute-of-limitations issue because "[t]he role of Pennsylvania in the instant litigation goes beyond that of the forum state to a state which has an interest in the protection of one of the parties, i.e., a corporate entity organized and existing pursuant to its laws"); *Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 312 (E.D. Pa. 2012) (applying Pennsylvania law to the defendant because "Pennsylvania's interest in regulating insurance contracts made in Pennsylvania, and issued to Pennsylvania corporations that transact all of their business from their Pennsylvania headquarters 'is paramount'"); *Farrell v. David Davis Enters., Inc.*, No. 95-2986-JRP, 1996 U.S. Dist. LEXIS 481, at *12 (E.D. Pa. Jan. 19, 1996) (holding "this case presents a 'false conflict' warranting the application of Pennsylvania law" because "[a]pplying the foreign law . . . would hamper Pennsylvania's interest in deterring tortious conduct by its resident corporations"). The fact that Defendants are Pennsylvania corporations, accordingly, strongly favors application of Pennsylvania law.

D. Situs of Interception Is a Factual Issue Inappropriate for Determination at the Motion-to-Dismiss Stage

Additionally, Defendants' assertion that the at-issue interceptions occurred outside Pennsylvania is factually premature. In *Harriet Carter Gifts*, the Third Circuit explained that an interception occurs "where [the defendants] routed those communications to its own servers," which can include both the user's browser *and* the Defendants' infrastructure. 52 F.4th at 131–32. That is because, the *Harriet Carter Gifts* court noted, Pennsylvania courts have interpreted WESCA's "acquisition" requirement to mean that interceptions that occur at least *in part* within the Commonwealth are covered by WESCA, and that an acquisition may happen at *multiple* locations. *Id.* at 130. Here, Plaintiffs allege that Defendants deployed third-party tracking technologies that acquired their information at the point of transmission and through infrastructure tied to Defendants' operations and management of the Website in Pennsylvania. At a minimum, the question of where the interception occurred is a fact issue inappropriate for resolution at this time. *Doe v. Post Acute Med., LLC*, No. 24-547, 2025 U.S. Dist. LEXIS 26667 at *12 (M.D. Pa. Feb. 14, 2025) (denying motion to dismiss and finding that "Doe includes sufficient factual material to support the plausible inference that the intercept happened in Pennsylvania, where defendants maintain their respective principal places of business, and not Ohio, where he accessed the webpage").

## CONCLUSION

This Court should deny Defendants' Motion to Dismiss.

Dated: April 23, 2026

Respectfully submitted,

s/ Andrew D. Schlichter

Nathan D. Stump (PA Bar No. 90169)
Jerome J. Schlichter (*pro hac vice*)
Andrew D. Schlichter (*pro hac vice*)
Alexander L. Braitberg (*pro hac vice*)
Chen Kasher (*pro hac vice*)
Scott A. Bumb (*pro hac vice*)
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-5934 (fax)
jschlichter@uselaws.com
aschlichter@uselaws.com
abraitberg@uselaws.com
nstump@uselaws.com
ckasher@uselaws.com
sbumb@uselaws.com

Zoë E. Seaman-Grant (*pro hac vice*)
SCHLICHTER BOGARD LLC
33 North Dearborn Street, Suite 1170
Chicago, IL 60602
(630) 919-9301
zseamangrant@uselaws.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of April, 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF filing system and is available to all counsel of record through that system.

s/ Andrew D. Schlichter
Andrew D. Schlichter