**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JERRY M. ADAIR, CARLA DANIELSON, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,

Defendants.

Case No. 2:25-cv-02384

**DEFENDANTS CIGNA CORPORATE SERVICES, LLC'S AND THE CIGNA GROUP'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Nothing in Plaintiffs' Opposition changes the Court's prior finding that Plaintiffs consented to Cigna's use of Online Technologies through Cigna's Terms of Use ("Terms") and incorporated Privacy and HIPAA Notices. The Privacy Notice disclosed the use of cookies, pixels, third-party analytics, and advertising technologies—the same categories of data collection Plaintiffs contest. The HIPAA Notice, in turn, disclosed permissible uses of Protected Health Information ("PHI") that did not require authorization. The Second Amended Complaint ("SAC") makes clear that these disclosures were available via conspicuous hyperlinks on Cigna's Website, and that Plaintiffs accessed and relied on them.

Plaintiffs attempt to sidestep their consent by arguing that Cigna breached a provision in the HIPAA Notice that required Cigna to obtain authorization before disclosing PHI under specified circumstances. That theory is meritless because, based on Plaintiffs' own allegations, no authorizations were required. Eight of the nine challenged technologies operate exclusively on Cigna's public-facing Website, where Plaintiffs do not allege that they entered PHI. As to the sole Portal technology—Adobe—the SAC does not plausibly allege that any Portal data was disclosed to Adobe for "marketing purposes" or as a "sale" of PHI that would trigger the HIPAA Notice's authorization requirement. Consent alone warrants dismissal.

Plaintiffs' other arguments similarly fail to salvage their claims. The ECPA claim should be dismissed because the crime-tort exception requires an independent tortious purpose that Plaintiffs do not plead, and because their procurement theory lacks legal support. Nor is there any basis for Plaintiffs' WESCA claim because no Plaintiff accessed the Website or Portal from Pennsylvania. And the common law claims cannot survive dismissal, either: consent is fatal to Plaintiffs' intrusion upon seclusion and unjust enrichment claims, and Plaintiffs fail to allege that they ceded decision-making control sufficient to support a fiduciary duty claim.

The Court should dismiss the SAC with prejudice.

## II. ARGUMENT

### A. Plaintiffs Consented to the Use of Online Technologies.

#### 1. Plaintiffs cannot deny the terms of an agreement they rely on.

Plaintiffs are equitably estopped from disclaiming the consent and disclosure provisions incorporated into the Terms through the Privacy Notice while at the same time affirmatively relying on the Terms. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001). Plaintiffs concede the Terms are an agreement "between a [website] user" and Cigna and invoke them to establish personal jurisdiction, venue, and governing law. (SAC ¶¶ 49-66.) The Terms expressly incorporate (i) the Privacy Notice, which disclosed Cigna's use of cookies, pixels, analytics tools, and third-party advertising technologies, and (ii) the HIPAA Notice, which details Cigna's permissible uses of PHI, including those that do not require a separate authorization.[1] (SAC ¶¶ 49-50, Fig. 41; ECF No. 101-1 at 2.) Plaintiffs cannot invoke the Terms for jurisdiction and choice-of-law while disavowing their prior admission that they were bound by the Privacy Notice.

Plaintiffs' primary authorities in opposition are inapposite. In *O'Hanlon v. Uber Technologies, Inc.*, 990 F.3d 757 (3d Cir. 2021), the plaintiffs had never "downloaded Uber's app, used its service, or otherwise availed themselves of any aspect of Uber's service agreement." *Id.* at 767. Here, not only do Plaintiffs invoke the Terms to establish jurisdiction and governing law, they allege repeated, sustained use of both the Website and the Portal. (SAC ¶¶ 26-30, 49-66, 309-15.) Further, unlike the routine amendment in *West Run*—to correct sales numbers that plaintiffs had determined were erroneous—Plaintiffs here retracted their core

[1] Plaintiffs label these disclosures as "vague" and "nonspecific" (ECF No. 117 (Opp.) at 12-13), yet cite no authority requiring greater granularity, nor do they distinguish Defendants' contrary authority. (ECF No. 101 ("Mot.") at 26.)

concession that they "agreed" to the Terms only after this Court relied on that concession to dismiss four of their five claims. *See Adair v. Cigna Corp. Servs., LLC*, 2026 WL 295744, at *17 (E.D. Pa. Feb. 4, 2026); *cf. W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172-73 (3d Cir. 2013). And *Garrett*, *West Run Student Housing Associates*, and *New Rock Asset Partners* (Opp. at 14) merely hold that an amended complaint supersedes its predecessor for purposes of stating a claim—none addresses judicial estoppel. Nor did Plaintiffs "change[] [their] position in light of facts uncovered through discovery," *Claudio v. MGS Mach. Corp.*, 798 F. Supp. 2d 575, 585 (E.D. Pa. 2011), or advance new "legal theories rather than factual matters," *cf. Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012) (intent to be bound by contract is "factual in nature"). And Plaintiffs identify no newly-discovered facts bearing on their consent.

Accordingly, the factors necessary to establish judicial estoppel are satisfied here: (1) Plaintiffs' positions are irreconcilable because they treat the Terms as binding on jurisdictional issues while disclaiming their consent provisions; (2) their reversal was based in gamesmanship because Plaintiffs identify no newly-discovered facts to justify the amendment; and (3) dismissal is appropriate because Plaintiffs' consent warrants dismissal of all their claims and Plaintiffs have already had multiple opportunities to amend their complaint. *See Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001).

**2. Plaintiffs constructively consented to the Privacy and HIPAA Notices.**

Ruling on Defendants' prior motion to dismiss, the Court expressly noted that inquiry notice is sufficient to establish consent. *See Adair*, 2026 WL 295744, at *17 n.19. Here, the SAC satisfies both elements this Court identified as necessary for inquiry notice: (1) the hyperlinks were reasonably conspicuous because Plaintiffs allege that they successfully located and navigated them (SAC ¶¶ 328, 330, 340, 344-45 & Figs. 39-40); and (2) Plaintiffs took

affirmative action because they clicked through to the Legal and Privacy Information page and reviewed its contents. (*Id.*) Moreover, the Terms state that Website users have "read, understand, and acknowledge" the privacy notices. (*Id.* ¶ 58.) Plaintiffs expressly allege that they repeatedly used the Website and Portal ***and*** relied on the privacy disclosures in the Terms and Privacy Notice. (*Id.* ¶¶ 26-30, 309-16, 330.)

Based on their own allegations, Plaintiffs cannot plausibly claim ignorance. None of these hyperlinks were "hidden" or "buried." (Opp. at 11-12.) Rather, the hyperlinks to the Terms, Privacy Notice, and HIPAA Notice were by definition "reasonably conspicuous" since Plaintiffs successfully found them, reviewed them, and relied on them. *See Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 605-07 (W.D. Pa. 2025) (citation omitted), *vacated and remanded on other grounds*, 2026 WL 837280 (3d Cir. Mar. 26, 2026).

Plaintiffs' cases are distinguishable. *Childs v. Fitness International LLC*, 2023 WL 3594180, at *3 (E.D. Pa. May 22, 2023), and *W.W. v. Allegheny Health Network*, 2025 WL 634390, at *6 (W.D. Pa. Feb. 27, 2025), involved hyperlinks to arbitration clauses the plaintiffs never clicked on. Here, Plaintiffs admittedly ***did*** navigate to the webpage linking to the Privacy and HIPAA Notices. (SAC ¶ 330.)

**3. The HIPAA Notice does not provide a basis for relief.**

**a. There are no plausible allegations that the HIPAA Notice is triggered by activity on the public Website.**

Plaintiffs rely on a clause in the Privacy Notice stating that identifiable member information will be treated as PHI to argue that the HIPAA Notice applies to all activity on both the Website ***and*** the Portal. (SAC Fig. 1; Opp. at 4-5.) But their own allegations make clear that

this argument is meritless.[2] That clause in the Privacy Notice applies only when Cigna collects information that identifies an individual ***and*** relates to health status, care, or payment—*i.e.*, PHI. *See* 45 C.F.R. § 160.103; (ECF No. 101-2 at 2). Critically, the SAC ***does not allege*** that any Plaintiff entered identifying information on the public-facing Website. Rather, the only Website activity they allege involves anonymous browsing activity, search queries, and device identifiers on a public website—without any login, authentication, or link to any individual's health plan. (SAC ¶¶ 26-30, 309-15.) None of that activity implicates "[i]ndividually identifiable health information." *See id.*; *cf. Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081-82 (W.D. Wash. 2024) (distinguishing between "patient status" disclosed through an authenticated portal and browsing a public website). As the Court previously held, the Privacy Notice—which expressly discloses the use of cookies, pixels, and third-party advertising technologies (SAC Fig. 41)—governs Plaintiffs' use of the public Website. Plaintiffs' consent to the Privacy Notice bars their claims related to the eight technologies they allege to be present on the Website.[3]

**b. Plaintiffs do not plausibly allege that Portal activity triggered the HIPAA Notice's authorization requirement.**

Plaintiffs suggest that any use of PHI for "marketing" or "analytics" requires a signed HIPAA authorization. (Opp. at 23); *see* 45 C.F.R. § 164.508(a)(3). That both misstates HIPAA's requirements and ignores the fatal deficiencies in the SAC's allegations.

Under HIPAA, express authorization is not required for operational uses such as analytics. 45 C.F.R. § 164.506. Consistent with HIPAA, the HIPAA Notice does not, for example, require authorizations for using PHI in connection with "[h]ealth [c]are [o]perations,"

---

[2] After receiving Plaintiffs' Opposition and upon further consideration, Defendants withdraw their arguments in their opening memorandum that specifically refer to business associate relationships and/or a BAA. (Mot. at 2, 5, 14, 20, 21, 27, 30.) Striking those references does not impact Plaintiffs' failure to state any of the causes of action in the SAC, as detailed in Defendants' Motion and this Reply. The Court did not rely on any business associate relationships with Online Technology providers in its Opinion on the prior motion to dismiss. (ECF No. 64.)

[3] *I.e.*, Pinterest, Snapchat, The Trade Desk, LiveRamp, Demandbase, MediaMath, Google, and Meta. (SAC ¶ 5.)

"business planning and administrative operations," or using "de-identified information to conduct certain business activities." (ECF No. 101-3 at 2-3.) Thus, Plaintiffs' allegations that Defendants used PHI for analytics purposes do not state a HIPAA violation or a breach of the HIPAA policy.

Moreover, the SAC does not plausibly allege that any PHI was shared for marketing purposes with Adobe—the only technology alleged to operate in the Portal. (SAC ¶ 286.) Instead, Plaintiffs rely on conclusory allegations that information was shared "for marketing purposes" or constituted a "sale of PHI." (Opp. at 4-5; SAC ¶¶ 355-57.) But the SAC contains no nonconclusory allegation that Cigna disclosed any ***Plaintiff's*** PHI to Adobe for marketing. Indeed, Plaintiffs' theories based on communications promoting health-related products or services included in a covered entity's plan of benefits are expressly excluded under HIPAA's definition of "marketing." 45 C.F.R. § 164.501.[4] (SAC ¶¶ 179, 303.) And the SAC does not allege that any Plaintiff received any advertisement tied to their Portal activity or any Adobe data transmission. (*See generally* SAC.)

Nor are there any nonconclusory allegations that Adobe received remuneration for PHI constituting a "sale." (SAC ¶¶ 286-308.) Plaintiffs' speculation—based on generic Adobe marketing materials—that Cigna *must have* used Adobe's advertising capabilities cannot salvage their claims; the mere fact that Adobe offers marketing products does not plausibly allege that Cigna used them or "sold" PHI to Adobe in violation of HIPAA. (*Id.* ¶¶ 301-06); *see Lasche v. New Jersey*, 2022 WL 604025, at *3 (3d Cir. Mar. 1, 2022).

**B. Plaintiffs' ECPA Claim Still Fails.**

**1. Plaintiffs' procurement theory is unsupported by law.**

[4] *See also* HHS, *Marketing* (last revised June 2024), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html.

Plaintiffs ask the Court to expand ECPA's civil remedy beyond direct interception, disclosure, or use. (Opp. at 19-20.) The Third Circuit rejected a similar argument as "entirely conclusory," and there is no reason for this Court to reach a different conclusion. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 276 n.78 (3d Cir. 2016). As other Courts of Appeals have held, ECPA does not create a private right of action for procurement alone. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012). In *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), the Sixth Circuit held that Congress's deletion of "procure" from § 2520 forecloses civil liability based on procurement alone; liability requires that the defendant directly "engaged in" the violation and remained "actively involved in the operation" of the technology. *Id.* at 637-38. Plaintiffs' procurement theory fails accordingly.

**2. The crime-tort exception does not apply.**

Plaintiffs do not plausibly allege that Cigna had the specific intent required for the crime-tort exception, which applies only where the defendant intercepted the communication "for the purpose of" committing a tortious or criminal act "independent" of the recording. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (citation omitted). Plaintiffs plead no nonconclusory allegations showing that Cigna's primary motivation or a determining factor was to violate HIPAA—at most, Plaintiffs allege a purely commercial purpose: to "segment insureds into categories and refine marketing strategies to increase enrollment and revenue." (Opp. at 3.) That does not plausibly allege that committing a tort was the "primary motivation or a determining factor" for any alleged interception. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (citations omitted); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024).

Further, Plaintiffs have not plausibly alleged any HIPAA violation. No Plaintiff alleges entering PHI on the Website, and the SAC does not plead nonconclusory facts showing that any

disclosures through the Portal were "for marketing purposes" or constituted a "sale of PHI." (SAC ¶¶ 305, 355-57.)

Plaintiffs' reliance on *Smart v. Main Line Health* is misplaced. 2026 WL 1008171 (E.D. Pa. Apr. 14, 2026). In *Smart*, the defendant shared captured PHI with marketers for user outreach—a use distinct from the interception itself. *Id.* at *3-4. Here, the SAC alleges no comparable third-party marketing disclosure of PHI, no outreach to marketers for targeted advertising, and no targeted advertisement received by any Plaintiff. Their speculative marketing allegations are not tied to any Plaintiffs' own Website use or Portal use at all.[5]

**C. WESCA Does Not Reach Plaintiffs' Out-of-State Activity.**

WESCA requires an interception in Pennsylvania. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129-30 (3d Cir. 2022). Yet, no Plaintiff resides in or alleges accessing the Website or Portal from Pennsylvania. (SAC ¶¶ 26-30.) Plaintiffs cite *Danganan v. Guardian Protection Services, Inc.*, 645 Pa. 181 (2018), to argue that state statutes may apply to non-residents. (Opp. at 28.) But *Danganan* concerned the UTPCPL, not WESCA, and Plaintiffs cite no authority extending its reasoning to WESCA. (*Id.*; Mot. at 22-25.)

Nor does the Terms' choice-of-law clause save Plaintiffs' WESCA claim. The Terms govern ***contract*** disputes, not tort or statutory claims arising from out-of-state conduct (ECF No. 101-1 at 11), and contain no language indicating an intent to litigate such claims under Pennsylvania law. *See De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l, Inc.*, 2001 WL 799870, at *2 (E.D. Pa. July 12, 2001); *McDonald v. Wells Fargo Bank, N.A.*, 374 F. Supp. 3d 462, 478 (W.D. Pa. 2019). Plaintiffs' cases are distinguishable because they concern ***contract***

[5] The same distinction applies to the cases Plaintiffs cite in a footnote, which involved alleged disclosure of identifiable patient information to advertising platforms for targeted advertising; here, no Plaintiff alleges identifiable PHI transmitted on the Website, and the SAC does not plausibly allege that the Portal's Adobe-related activity involved marketing disclosures or sales of PHI. (Opp. at 22 n.5.)

disputes governed by choice-of-law clauses, not statutory or tort claims. *See Arkema Inc. v. Maviro Catalyst, Inc.*, 2025 WL 1346869 (E.D. Pa. May 8, 2025); *Britton v. Whittmanhart, Inc.*, 2009 WL 2487410 (E.D. Pa. Aug. 13, 2009); *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52 (3d Cir. 1994).

Further, applying Pennsylvania law is disfavored where Plaintiffs' home states have the greater interest in protecting their citizens. *See Karnuth v. Rodale, Inc.*, 2005 WL 1683605, at *4 (E.D. Pa. July 18, 2005) (class members' home states have "paramount interest" in protecting their consumers) (citations omitted). And *Popa* forecloses Plaintiffs' "infrastructure" theory. (Opp. at 30.) The Third Circuit held that the "place of interception is the point at which the signals were routed to [the third party's] servers"—*i.e.*, at the user's browser, "not where the signals were received at [the third party's] servers." *Popa*, 52 F.4th at 131-32. No Plaintiff resides in or alleges that their browser routed communications from Pennsylvania. (SAC ¶¶ 26-30.)

### D. Plaintiffs' Common Law Claims Still Fail.

#### 1. Intrusion Upon Seclusion is defeated by Plaintiffs' consent.

Consent defeats Plaintiffs' intrusion claim because Plaintiffs consented to the Privacy Notice, and "[o]ne cannot intrude when one has permission." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 121 (W.D. Pa. 2019). Intrusion upon seclusion requires conduct that would be "highly offensive to a reasonable person." *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 248 (Pa. 2002). The information allegedly disclosed here—keystrokes, mouse clicks, presence on a webpage, and generic references to medical issues or providers—fails to meet that standard. (*See* SAC ¶¶ 7, 350, 419, 484.) Plaintiffs' reliance on the Court's observation that the alleged interception is "analogous to the harm associated with intrusion upon seclusion" (Opp. at 24-25) omits the fact that the Court made that observation *before* finding consent

dispositive. *Adair*, 2026 WL 295744, at *7. Moreover, the Court's determination relied on allegations related only to Plaintiffs' use of the Portal, and therefore only to the Adobe technology. But even as to the Portal, the SAC does not plead nonconclusory facts showing that Plaintiffs' Portal interactions were disclosed for third-party marketing or advertising—rather than for routine portal analytics or operations—that could constitute the kind of "highly offensive" conduct this tort requires.

**2. Unjust Enrichment still fails under the Court's prior reasoning.**

Plaintiffs' unjust enrichment claim remains derivative of Plaintiffs' failed statutory and tort theories and should be dismissed for the same reasons. *Pompa v. St. Luke's Hosp.*, 2023 WL 2332250, at *6 (M.D. Pa. Mar. 2, 2023). Because Plaintiffs consented to the data collection, Cigna's retention of any benefit cannot be inequitable. *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341-42 (E.D. Pa. 2012). And Plaintiffs' theory that privacy and HIPAA compliance formed part of Cigna's product's economic value (SAC ¶¶ 515-17) is conclusory. *See In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 279 (E.D. Pa. 2024).

**3. Plaintiffs fail to rebut Cigna's Breach of Fiduciary Duty arguments.**

Plaintiffs do not dispute that the SAC lacks allegations that they ceded decision-making control sufficient to create a fiduciary duty. (Mot. at 28.) This constitutes waiver. *See*, *e.g.*, *Perez v. IMA Group*, 2024 WL 2925960, at *2 (E.D. Pa. June 10, 2024). Plaintiffs instead invoke the law of the case (Opp. at 26), but that doctrine is a discretionary prudential principle, not an inflexible command. *See Arizona v. California*, 460 U.S. 605, 618 (1983); *Reinig v. RBS Citizens, N.A.*, 2024 WL 5443175, at *2 (W.D. Pa. Feb. 2, 2024). Cigna's renewed motion presents new analysis, and Plaintiffs offer no substantive response; they simply assert that their current allegations are "materially identical" to their earlier ones. (Opp. at 26.)

Dated: May 11, 2026

By: /s/ Tiffany Cheung
Tiffany Cheung

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com
Email: BGiroud@stradley.com

TIFFANY CHEUNG (*pro hac vice*)
MICHELLE SOSA-ACOSTA (*pro hac vice*)
ALBERTO CORONA (*pro hac vice*)
EDUARDO FIGUEROA (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com
Email: MSosaAcosta@mofo.com
Email: ACorona@mofo.com
Email: EFigueroa@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: KDriscoll@mofo.com

ADAM J. HUNT (*pro hac vice*)
DILLON J. KRAUS (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Email: AdamHunt@mofo.com
Email: DKraus@mofo.com

LAURA HILL (*pro hac vice*)
MORRISON & FOERSTER LLP
925 Fourth Ave, Floor 38
Seattle, WA 98104
Telephone: (206) 327-6500
Email: LHill@mofo.com

***Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group***

**CERTIFICATE OF SERVICE**

I, Tiffany Cheung, hereby certify that on May 11, 2026, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

*/s/ Tiffany Cheung*
Tiffany Cheung