**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JERRY M. ADAIR, KATHERINE J. EMRICK, PRESTON PHAM, and EVA D. RECCHIA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CIGNA CORPORATE SERVICES, LLC, and THE CIGNA GROUP,

Defendants.

Case No. 2:25-cv-02384-WB

**DEFENDANTS CIGNA CORPORATE SERVICES, LLC'S AND THE CIGNA GROUP'S OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND FACT DISCOVERY DEADLINE DUE TO PENDING MOTIONS TO QUASH AND IMPLEMENTATION OF SPECIAL MASTER'S JULY 28, 2026 RECOMMENDATION**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Plaintiffs Already Obtained Two Extensions of the Fact Discovery Deadline, Totaling Nearly 100 Days ..... 3

B. Plaintiffs Delayed Depositions While Pursuing Meritless Discovery Disputes ..... 3

C. Plaintiffs Never Sought Leave to Take More Than 10 Depositions. ..... 5

D. Plaintiffs Inexplicably Waited Until the 11th Hour to Subpoena Ms. Vishwanathan. ..... 6

E. Plaintiffs Delayed Seeking to Compel a Subpoena Response from Adobe ..... 7

F. The Special Master Largely Rejected Plaintiffs' First Attempt to Challenge Defendants' Privilege Log. ..... 8

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 10

A. Plaintiffs' Own Delay Defeats Good Cause. ..... 10

B. The Court Should Reject Plaintiffs' Attempt to Obtain an Extension to Raise Even More New Discovery Disputes. ..... 12

V. CONCLUSION ..... 15

## I. INTRODUCTION

There is no basis to give Plaintiffs a four-week, blanket extension of the August 7 discovery deadline. Fact discovery has already been extended twice, by nearly 100 days. Yet Plaintiffs refused to start taking depositions until July 17—***three weeks before the deadline***—because they chose to mount a meritless challenge to Defendants' production of source code. Defendants offered deposition dates for witnesses in April and then again in June so there would be ample time to complete depositions before the August 7 cutoff. And Defendants stressed that only one witness, the one who actually pulled the code, would be knowledgeable about it. But Plaintiffs insisted that ***no*** depositions could proceed unless Defendants agreed to (i) remove any confidentiality designations for the code under the Protective Order and (ii) produce additional code that was not called for by their own request for production, much less the Special Master's Recommendation regarding source code.

To keep the case on schedule, and avoid the burden of motion practice, Defendants agreed to produce the source code as "Highly Confidential," rather than requiring Plaintiffs to follow the procedures for inspection required by the "Highly Confidential – Source Code" designation under the Protective Order. The Special Master also rejected Plaintiffs' attempts to challenge the confidentiality designation and their demand for additional code. After nearly a month of waging a fruitless battle on source code, purportedly because Plaintiffs needed to ask every witness about source code, Plaintiffs questioned only two of Defendants' witnesses about the source code at their depositions. The scramble to complete depositions during the last three weeks of discovery was a problem entirely of Plaintiffs' own decision to delay.

Plaintiffs' last-ditch effort to notice depositions of two non-parties, Adobe and former Cigna employee Vidya Vishwanathan, for the last week of discovery similarly does not justify the requested extension. Plaintiffs claimed to identify Adobe as key to their case in August 2025 and

described former Cigna employee Vidya Vishwanathan as "centrally involved" in March 2026. Yet Plaintiffs waited until July 16 to serve Adobe with a subpoena setting a deposition for August 7. And Plaintiffs served Ms. Vishwanathan on July 27, purporting to schedule a deposition six business day s later — at her private home without her consent, and to be conducted by Zoom without any agreement or court order to do so. By the time of Ms. Vishwanathan's (improperly) scheduled deposition on August 5, Plaintiffs had already taken 10 depositions in the case. But they never sought leave to exceed the ten-deposition limit in Rule 30.

Nor can Plaintiffs obtain additional time based on their serial efforts to challenge Defendants' privilege log. Plaintiffs first raised a challenge in April, did nothing for over a month, and then largely lost that fight when the Special Master found that most of the 33 challenged documents were properly withheld or redacted. Plaintiffs then demanded on August 3—four days before the discovery cutoff—that Defendants produce 122 privileged documents identified on a privilege log Defendants served more than a month earlier, on June 23. Defendants reviewed the entries for those documents, revised them as necessary, and served an updated log on August 7.

Rule 16 does not permit Plaintiffs to convert their intentional decision to delay into good cause. Plaintiffs refused to confirm previously-noticed party depositions while pursuing a meritless source-code dispute, compressed the deposition schedule into the final weeks, and failed to seek required leave for more than 10 depositions. The complaints Plaintiffs now raise are the predictable consequences of their own conduct—not independent events that prevented diligent completion of discovery. They should not receive a blank check for more unnecessary and unreasonable discovery.

## II. BACKGROUND

### A. Plaintiffs Already Obtained Two Extensions of the Fact Discovery Deadline, Totaling Nearly 100 Days

Fact discovery has already proceeded under a substantially extended schedule. On April 6, 2026, Plaintiffs moved to stay the discovery deadlines—or alternatively for a 90-day extension. (Dkt. Nos. 105, 105-1.) Defendants opposed a broad, open-ended extension, and on April 13 the Court extended fact discovery from April 30 to June 29. (Dkt. Nos. 108, 114 at 1.) During that extended period, the Special Master addressed, and resolved, numerous discovery disputes that Plaintiffs raised. (Declaration of Tiffany Cheung ("Cheung Decl.") Exs. 1-5.) The parties then jointly stipulated to a further 39-day extension through August 7, citing ongoing document discovery as a result of the Special Master's recommendations and the need "to coordinate to complete depositions," which the Court granted on June 15. (Dkt. Nos. 125 at 2, 126.) Between those two extensions, Plaintiffs had therefore received nearly 100 extra days to pursue discovery, depose witnesses, and seek any necessary relief.

### B. Plaintiffs Delayed Depositions While Pursuing Meritless Discovery Disputes.

Plaintiffs' own strategic decisions resulted in depositions occurring in July, three weeks before the twice-extended discovery cutoff. In February 2026, Plaintiffs requested availability for Defendants' individual witnesses; Defendants provided dates on February 27, and on March 6 Plaintiffs noticed the depositions for April. (Dkt. No. 138-1, Exs. D-J.) After the Court first extended discovery, Defendants on April 29 offered additional availability for their witnesses in June. (Cheung Decl. Ex. 6 at 1.) But Plaintiffs did not confirm those dates, instead maintaining—over Defendants' objection—that depositions could not be scheduled until Defendants produced source code related to the Online Technologies at issue in the case. (Cheung Decl. Ex. 7.) Defendants repeatedly advised Plaintiffs that the depositions could proceed for the numerous

witnesses who lacked knowledge of, or technical responsibility for, the source code. (*Id.*) Because Plaintiffs refused to confirm the proposed June dates for any witness, Defendants proactively provided, on June 18, additional witness availability for July. (Cheung Decl. Ex. 8.) Plaintiffs, however, continued to insist that no depositions at all could proceed until after Defendants completed a production of source code. (Cheung Decl. Exs. 7, 9.)

But even when source code was made available to Plaintiffs consistent with the Protective Order, Plaintiffs refused to inspect it. First on June 18 and again on June 30, Defendants offered to make the source code available to Plaintiffs for inspection as "Highly Confidential – Source Code" pursuant to Section 8(c) of the Protective Order. (Cheung Decl. Exs. 8-9, Dkt. No. 43 at 10-11.) Plaintiffs declined to conduct that inspection, claimed that the source code was in fact not confidential at all, and demanded that Defendants produce the code without any confidentiality designations. (Cheung Decl. Ex. 9 at 7.) The Special Master rejected Plaintiffs' designation challenge as premature. (*Id.* at 1-2.) Nevertheless, in order to avoid burdening the Court and Special Master with more disputes, Defendants agreed on July 2 to produce the source code as "Highly Confidential – Attorneys' Eyes Only." (Cheung Decl. Ex. 7 at 1-2.) Defendants made the source code available for inspection on June 18 and June 30. (Cheung Decl. ¶ 2.) Depositions of Cigna's individual witnesses began on July 17.

On July 20, Plaintiffs wrote to the Special Master, claiming that Defendants' source code production was deficient and asserting the right to reopen any depositions that had occurred or would occur before a replacement production. (Cheung Decl. ¶ 13.) The Special Master rejected that challenge, concluding that "[D]efendants' response to [the source code RFP was not] deficient or in violation of [the Special Master's] . . . Recommendation." (Cheung Decl. Ex. 4 at 1.) Plaintiffs have not thereafter raised any dispute with the Special Master concerning Defendants' source code

production.

And after arguing for months that source code was "critical" and a "necessary foundation for all witnesses," Plaintiffs ***showed the produced source code to only two of the Cigna witnesses they deposed***.[1] (Cheung Decl. ¶ 2, Ex. 24.)

### C. Plaintiffs Never Sought Leave to Take More Than 10 Depositions.

Throughout discovery, Plaintiffs have ignored Rule 30's presumptive 10-deposition limit. By March, Plaintiffs had noticed 12 depositions, and Defendants asked Plaintiffs to identify which notices they would withdraw to comply with Rule 30(a)(2)(A)(i); Plaintiffs did not respond. (Dkt. No. 138-1, Ex. T.) Defendants raised the deposition count again during meet-and-confers on July 14 and 17, in a July 20 email, and again on July 27 and 29, repeatedly advising Plaintiffs that they would need either to prioritize among proposed deponents or seek leave to exceed 10 depositions. (Dkt. No. 138-1, Exs. U, W.) Plaintiffs nevertheless continued to notice additional depositions, including Caitlin Gailey on August 4, Ms. Vishwanathan on August 5, Joseph Bruno on August 6, and Adobe on August 7. (Dkt. No. 138-1, Exs. P, R, S, AB.) Due to Plaintiffs' efforts to squeeze multiple depositions in during the last week of discovery, Defendants could not be certain which examination would be the first to exceed Rule 30's limit. Plaintiffs took their tenth deposition on August 5, and Defendants promptly sought a protective order the next day to preclude Plaintiffs from taking more than ten depositions, other than Mr. Bruno's, which Defendants, in the spirit of compromise, agreed could proceed.[2] (Cheung Decl. ¶ 3; Dkt. No. 138.) Plaintiffs never sought leave or obtained a ruling permitting additional depositions of Adobe and Ms. Vishwanathan.

---

[1] In addition to Mahmoud Al Shalabi, who collected the source code, Plaintiffs also asked Jim Dreischmeier about the produced source code. Consistent with Defendants' representations, Mr. Dreischmeier explained that he was not familiar with the source code. (Cheung Decl. Ex. 32 at 18-20.)

[2] As of the time of this filing, Defendants' motion for a protective order remains pending before the Special Master.

### D. Plaintiffs Inexplicably Waited Until the 11th Hour to Subpoena Ms. Vishwanathan.

Ms. Vishwanathan is a nonparty and former Cigna employee. (Dkt. No. 138-1, Ex. X.) On March 24, Plaintiffs sent an email to Defendants asserting their belief that Vidya Vishwanathan was "centrally involved" in the implementation of the tracking technologies at issue and asking Defendants to confirm they would add her as a custodian. (Cheung Decl. Ex. 11.) Five days later, on March 29, Plaintiffs submitted supplemental information to the Special Master related to a pending dispute, requesting that Ms. Vishwanathan, along with several other individuals, be added as an ESI custodian. (Cheung Decl. ¶ 16.) On April 2, Defendants responded, arguing that Ms. Vishwanathan was unlikely to have unique, non-duplicative information beyond what would be obtained from other custodians. (*Id.*.) The Special Master agreed with Defendants and rejected Plaintiffs' request in his April 7 Recommendation, finding that it was "not clear from the [Plaintiffs'] submission that Ms. Vishwanathan was 'heavily' involved in relevant matters" or that she was likely to possess documents not already in the files of existing or newly added custodians. (Cheung Decl. Ex. 1 at 9.) On April 11, Plaintiffs accepted the Recommendation. (Cheung Decl. ¶ 4.)

In contravention of their assertion that Ms. Vishwanathan was a "central" witness, Plaintiffs waited until July 27 to serve a subpoena on her. Plaintiffs' subpoena attempted to unilaterally schedule Ms. Vishwanathan's deposition on August 5—six business days after service and two days before the close of fact discovery. (Dkt. No. 138-1, Ex. P.) The subpoena was facially invalid: it listed the place of compliance as Ms. Vishwanathan's private home, and the accompanying notice asserted that the deposition would be conducted via Zoom despite no agreement or court order permitting a virtual deposition. (Dkt. No. 138-1, Ex. P.) Ms. Vishwanathan promptly engaged counsel on July 29, informed Plaintiffs that she objected to the

subpoena on multiple grounds, and moved to quash in the appropriate venue—the Western District of Texas—on August 4, the day after Plaintiffs confirmed that they would not withdraw the subpoena. (Dkt. No. 138-1, Ex. Q.)

### E. Plaintiffs Delayed Seeking to Compel a Subpoena Response from Adobe.

Plaintiffs identified Adobe in their amended complaint in August 2025 and served Adobe with a subpoena *duces tecum* on December 19, 2025. (Dkt. Nos. 31, 138-1, Ex. Z; Cheung Decl. Ex. 12.) Adobe objected on January 16. (Cheung Decl. Ex. 13.) On March 23, Plaintiffs served a Rule 30(b)(6) deposition subpoena on Adobe. (Cheung Decl. Ex. 14.) Adobe thereafter produced product materials and instructions explaining how its customers could export data from Adobe's systems, but Plaintiffs moved to compel additional production on May 6. (Cheung Decl. Ex. 15.) On July 13, the Northern District of California largely rejected the motion, observing that "Plaintiffs do not attempt to justify the very broad scope of RFPs 4 and 5." (Cheung Decl. Ex. 16 at 7.) On July 16, Plaintiffs served another document subpoena containing nearly identical requests to those that the Northern District of California found to be overbroad, vague, and burdensome. (Cheung Decl. Ex. 17). Plaintiffs also issued a Rule 30(b)(6) subpoena to Adobe, scheduling Adobe's deposition for August 7. (Cheung Decl. Ex. 18 at 1.) On July 31, Adobe requested leave to move to quash and to stay the deposition, and on August 3 the Northern District of California transferred the dispute to this Court.[3] (Cheung Decl. Exs. 19-20.)

On August 6, the Court granted a two-week extension, limited to resolving the Adobe dispute. (Dkt. No. 137.)

---

[3] On August 13, 2026, the Special Master issued a recommendation on the Adobe motion to quash. As of the time of this filing, the parties and third-party Adobe have not yet responded to that recommendation.

### F. The Special Master Largely Rejected Plaintiffs' First Attempt to Challenge Defendants' Privilege Log.

On April 13, Plaintiffs filed a letter asserting that Defendants' privilege log was deficient and challenging the designation of 33 documents as privileged. (Dkt. No. 113.) Plaintiffs ***took no further action*** on that letter for over a month until May 28, when they wrote to the Special Master asking whether the dispute would be referred to his attention. (Cheung Decl. Ex. 21.) Nearly two weeks later, Plaintiffs filed another letter with the Court on June 9, seeking referral of the issue to the Special Master. (Dkt. No. 123.) Yet Plaintiffs never sought to confer with Defendants regarding the issues raised in Plaintiffs' letters. (Dkt. No. 127.) Accordingly, Defendants responded on June 24, correcting Plaintiffs' misrepresentation of the record and explaining that the issue was not yet ripe. (*Id.*) Defendants also noted that, notwithstanding the pending dispute, they had voluntarily undertaken a re-review of their privilege log and, on June 23, 2026, narrowed or withdrew privilege assertions for 16 documents. (*Id.* at 3) Defendants also served an updated privilege log that day. (*Id.*)

Following a conference with the Special Master on June 29, Defendants' further re-review of their privilege log, and a subsequent meet-and-confer between the parties, the Special Master conducted an *in camera* review of certain of the disputed entries and considered the 33 documents at issue. On July 28, the Special Master determined that Defendants ***had properly withheld or redacted 28 of the 33 documents at issue***. (Cheung Decl. Ex. 22 at 1, 12.) The Special Master recommended limited production associated with only five entries and directed Defendants to review their revised privilege log for other entries implicated by his specific conclusions. (*Id.* at 12.)

All parties accepted the Recommendation on July 31, and Defendants produced the identified documents on August 3, the next business day. (Cheung Decl. ¶ 28.) The same day,

Plaintiffs sent Defendants a 10-page letter demanding re-review of Defendants' entire privilege log, and challenging an additional 122 privilege log entries. (Cheung Decl. ¶29.) Plaintiffs further demanded that Defendants complete that review in one day, by August 4. (*Id.*) Defendants completed the re-review, including review of the documents identified in Plaintiffs' August 3 letter, and served an updated privilege log, as well as two documents over which Defendants withdrew their privilege assertions, on August 7. (Cheung Decl. Ex. 23.) Four days later, after the close of fact discovery—with the limited exception of resolving the Adobe subpoena issue—Plaintiffs wrote to the Special Master seeking to raise new privilege log issues regarding the updated privilege log Defendants had served on August 7. (Cheung Decl. ¶ 31.)

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Whether good cause exists depends on the diligence of the party seeking modification. *Premier Comp Sol., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) (Rule 16(b)(4) focuses on the movant's "burden to show due diligence"). Good cause exists where a scheduling deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment.

The good cause standard is "not a low threshold." *J.G. v. C.M.*, 2014 WL 1652793, at *1 (D.N.J. Apr. 23, 2014). A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted); *see Nestlé Foods Corp. v. Aetna Cas. & Sur. Co.*, 1992 WL 183712, at *2 (D.N.J. July 20, 1992).

Rule 26 separately directs courts to limit discovery when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P.

26(b)(2)(C)(ii). Thus, a court acts within its discretion in denying last-minute discovery that could have been pursued earlier. *See, e.g.*, *United States ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, 2020 WL 1888966, at *5 (E.D. Pa. Apr. 16, 2020) (denying motion to compel filed a day before the close of discovery because "no explanation" was given "for [demanding party's] failure to make an earlier request" and demanding party's "failure to take more timely action stemmed solely from its own lack of diligence").

## IV. ARGUMENT

### A. Plaintiffs' Own Delay Defeats Good Cause.

Plaintiffs cannot convert the consequences of their own delay strategy into good cause for another blanket extension. "[W]hether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence." *Premier Comp Sols.*, 970 F.3d at 319 (citation omitted). An extension is properly denied where the movant cannot show "that more diligent discovery was impossible," *Reisinger v. City of Wilkes-Barre*, 520 F. App'x 77, 81 (3d Cir. 2013) (citation omitted), or where the party had the opportunity to pursue discovery and seek necessary relief within the scheduled period. *See Nestlé Foods Corp.*, 1992 WL 183712, at *2 (affirming denial of untimely discovery where party had "ample opportunity" to raise the issue but failed to seek relief within the scheduled discovery period).

That is what occurred here. Plaintiffs chose to delay party depositions, purportedly because they could not take a single Cigna witness deposition without the source code production. But Defendants had made the source code available for inspection, as contemplated by the Protective Order, on June 18 and again on June 30, with ample time to begin depositions in June. In any event, Plaintiffs' refusal to confirm depositions without source code was nothing more than a litigation tactic; they ***only showed the source code to two witness.*** Similarly, Defendants had warned Plaintiffs ***since March*** that their deposition notices appeared to exceed Rule 30's

presumptive limit and repeatedly advised them to prioritize deponents or seek leave. (Cheung Decl. Ex. 25.) Plaintiffs did neither. Rather, they elected to pursue meritless discovery disputes, while declining to take any depositions. Plaintiffs cannot establish diligence when they made intentional and unreasonable decisions to delay depositions. *See Babakr v. Fowles*, 2022 WL 1302817, at *3 (D. Kan. May 2, 2022) (denying extension where movant chose to await written-discovery responses before taking depositions, thereby leaving insufficient time to complete them).

Indeed, the disputes concerning Plaintiffs' subpoenas to Adobe and Ms. Vishwanathan are the predictable result of Plaintiffs' tactical choices, ***not*** intervening events or some action by Defendants. Plaintiffs claimed that Ms. Vishwanathan was "centrally involved" and announced their intent to depose her in March, yet waited until July 27 to serve her with a subpoena. (Dkt. No. 138-1, Exs. Y, P.) Plaintiffs likewise served a document subpoena on Adobe in December but did not seek to compel responses for over four months. (Dkt. No. 138-1, Ex. Z.) Incredibly, when the Northern District of California largely denied their motion to compel on July 13, Plaintiffs issued a subpoena scheduling Adobe's deposition for the very last day of discovery. (Dkt. No. 138-1, Ex. AB.) Yet Plaintiffs never even attempted to seek leave of the Court to take either Ms. Vishwanathan's or Adobe's depositions, both of which exceed the presumptive 10-deposition limit under Rule 30(a)(2)(A)(i). Ms. Vishwanathan's and Adobe's depositions are Plaintiffs' twelfth and thirteenth depositions. (Dkt. No. 138 at 3-4.) Plaintiffs' failure to seek leave before noticing those depositions reflects a lack of diligence, and there is no basis for extending the discovery deadline to accommodate depositions that should never have been noticed without court authorization.[4]

[4] Contrary to Plaintiffs' mischaracterization of the timeline, Defendants did not wait to file a motion for a protective order. Because Plaintiffs noticed overlapping depositions, Defendants could not know which deposition would actually exceed Rule 30's limit until Plaintiffs took their tenth deposition on August 5. Defendants sought relief the very next day. (Dkt. No. 138.)

In other words, Plaintiffs had ample opportunity to act earlier, but failed to do so. There is no excuse for Plaintiffs' delay: if information from Adobe or Ms. Vishwanathan were truly crucial, Plaintiffs "should have acted with diligence to obtain it." *United States ex rel. Gohil*, 2020 WL 1888966, at *5; *see also Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 221-22 (3d Cir. 2014) (affirming denial of schedule extension to depose witness whose involvement had long been known because movant failed to act diligently to secure the deposition).

The cases Plaintiffs cite are materially different because they involved genuinely new circumstances that could not reasonably have been addressed earlier. *See In re Chocolate Confectionary Antitrust Litig.*, 2013 WL 3873225, at *1 (M.D. Pa. July 25, 2013) (more than 230,000 documents produced days before the filing of the motion); *Boyington v. Percheron Field Servs., LLC*, 2017 WL 5633171, at *3 (W.D. Pa. Nov. 21, 2017) (good cause where, after key witnesses were deposed and discovery closed, they left defendant's employ amid reports of misconduct tied to the underlying dispute); *Rivera v. Knapp*, 2024 WL 247071, at *2 (M.D. Pa. Jan. 23, 2024) (extension based on procedural errors that prevented completion of otherwise timely discovery); *Cincinnati Ins. Co. v. Hawkins*, 2007 WL 2310866, at *3 (W.D. Pa. Aug. 9, 2007) (extension granted in conjunction with joinder of a new necessary party and ongoing discovery in a parallel action). Here, no comparable late-arising event prevented Plaintiffs from seeking relief earlier. And the Court has already granted a targeted two-week extension to resolve the Adobe dispute. (Dkt. No. 137.) That tailored relief is sufficient and does not justify an open-ended extension of fact discovery.

### B. The Court Should Reject Plaintiffs' Attempt to Obtain an Extension to Raise Even More New Discovery Disputes.

Plaintiffs argue in their motion that an extension is warranted because they ***may*** seek to

re-litigate a challenge to Defendants' privilege log that the Special Master largely rejected.[5] That falls far short of establishing good cause. Rule 16 requires a concrete need for additional discovery. *See J.G.*, 2014 WL 1652793, at *2 (affirming denial where the movant failed to identify with particularity the evidence sought or explain why it was crucial).

Again, Plaintiffs' own delay is the root cause of their new discovery dispute. Defendants produced an updated privilege log on June 23, 2026. (Cheung Decl. ¶ 32.) On July 16, Defendants informed Plaintiffs and the Special Master they would produce a further updated privilege log after the pending dispute was resolved, in order to account for the Special Master's forthcoming Recommendation. (Cheung Decl. Ex. 26 at 1.) Plaintiffs neither objected to that approach nor sought an extension of discovery on that basis. The Special Master then issued a Recommendation on July 28, 2026, largely rejecting Plaintiffs' challenges to Defendants' privilege assertions, and the parties accepted the Recommendation on July 31. (Cheung Decl.Ex. 22.) For the limited documents requiring modifications, Defendants produced them the next business day, on August 3. And, as promised, Defendants produced a revised privilege log on August 7, before the close of fact discovery.

Plaintiffs, meanwhile, sat on Defendants' June 23 privilege log for over six weeks. Then, on August 3—just four days before the close of fact discovery—Plaintiffs sent a dispute letter challenging over 120 entries and demanding a response by the next day. Defendants produced the revised privilege log on August 7, updating descriptions for all of the documents identified in Plaintiffs' August 3 letter. Plaintiffs nonetheless seek another open-ended discovery extension to

---

[5] Indeed, since filing the motion to extend the discovery deadlines, and after the August 7 deadline for non-Adobe fact discovery had closed, Plaintiffs wrote to the Special Master on August 11 seeking review *in camera* of the 122 documents identified in Plaintiffs' August 3 letter.

endlessly contest Defendants' privilege log and raise even more new discovery disputes.[6] (Dkt. No. 139-1 at 4.) *McElyea v. Navistar Int'l Transp. Corp.*, 788 F. Supp. 1366, 1371 & n.8 (E.D. Pa.), ("the end of discovery . . . will be an ever receding target" if discovery is extended whenever a defendant develops and discloses plausible defenses) *aff'd sub nom. McElyea v. Cooper Tire & Rubber Co.*, 950 F.2d 723 (3d Cir. 1991). Plaintiffs should not be permitted to continuously extend discovery deadlines when they have had ample opportunity to develop any evidence that may exist to support their claims.

Accordingly, Plaintiffs' authorities are inapposite because, unlike here, they involved situations in which specific discovery remained to be completed. In *Avandia*, plaintiffs lacked access to roughly 17 million pages of documents produced in a related MDL, and the Special Discovery Master expressly recommended a three-month extension months before the cutoff, which both sides accepted. *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2022 U.S. Dist. LEXIS 106627, at *3-5 (E.D. Pa. June 10, 2022). In *Navient*, the court simultaneously ordered production of previously withheld borrower records and former-employee contact information and found that "substantial production" remained outstanding, warranting an extension. *Consumer Fin. Prot. Bureau v. Navient Corp.*, 2018 WL 3824367, at *4 (M.D. Pa. Aug. 10, 2018). The court in *Johnson* likewise reopened discovery while compelling the defendant to cure deficient responses to requests timely served during discovery. *Johnson v. Miskell*, 2017 WL 3701784, at *1-4 (M.D. Pa. Aug. 28, 2017). *Shammouh* involved an

---

[6] This is not just hypothetical: on August 7—the last day of fact discovery and one day after filing their motion to extend—Plaintiffs filed a separate letter seeking additional Rule 30(b)(6) testimony based on alleged deficiencies in Defendants' witness preparation. (Dkt. No. 141.) Plaintiffs had taken Mr. Al Shalabi's Rule 30(b)(6) examination on July 30 and did not identify any purported lack of preparation as a basis for extending discovery in their August 6 motion. Plaintiffs thus cannot use this new discovery dispute—filed hours before the close of discovery—to try to justify an extension of the discovery period. *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (affirming refusal to consider Rule 16(b)(4) good-cause argument where movant failed to raise it in its opening motion and asserted it only in reply).

exceptionally contentious record of 21 prior discovery orders, defects in existing responses, and documents that still remained to be produced; the court granted a final extension expressly to complete that outstanding discovery and comply with its prior orders. *Shammouh v. Karp*, 1997 WL 727494, at *1-2 (E.D. Pa. Nov. 17, 1997). In *Stillman*, although it expressly found no good cause, the court afforded narrow relief only because the defendant had promised to produce readily available, essentially undisputed information and the issue surfaced during trial. *Stillman v. Staples*, 2009 WL 1437817, at *6 (D.N.J. May 15, 2009). None of these cases supports extending discovery where, as here, all outstanding, properly issued discovery has been completed.

## V. CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion, preserve only the existing Adobe-specific extension, and leave all other deadlines unchanged.

Dated: August 14, 2026

By: /s/ Tiffany Cheung
Tiffany Cheung

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com
Email: BGiroud@stradley.com

TIFFANY CHEUNG (*pro hac vice*)
MICHELLE SOSA-ACOSTA (*pro hac vice*)
ALBERTO J. CORONA (*pro hac vice*)
EDUARDO FIGUEROA (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com
Email: MSosaAcosta@mofo.com
Email: ACorona@mofo.com
Email: EFigueroa@mofo.com

KATHERINE E. DRISCOLL (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: KDriscoll@mofo.com

ADAM J. HUNT (*pro hac vice*)
DILLON J. KRAUS (*pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Email: AdamHunt@mofo.com
Email: DKraus@mofo.com

LAURA HILL (*pro hac vice*)
SHIREEN LANKARANI (*pro hac vice*)
MORRISON & FOERSTER LLP
925 Fourth Ave, Floor 38
Seattle, WA 98104
Telephone: (206) 327-6500
Email: LHill@mofo.com

*Counsel for Defendants Cigna Corporate Services, LLC and The Cigna Group*

**CERTIFICATE OF SERVICE**

I, Tiffany Cheung, hereby certify that on August 14, 2026, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

/s/ *Tiffany Cheung*
Tiffany Cheung